IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | :<br>: |
| v. | :<br>:  Criminal Indictment No. |
| TODD CHRISLEY,<br>JULIE CHRISLEY, and<br>PETER TARANTINO, | :<br>:  1:19-CR-297-ELR-JSA<br>:<br>: |
| Defendants. | :<br>: |

**DEFENDANTS TODD CHRISLEY AND JULIE CHRISLEY'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANTS EXECUTED AT 4125 WELCOME ALL ROAD AND 1800 CENTURY BOULEVARD NE AND MEMORANDUM OF LAW IN SUPPORT**

COME NOW Defendants, Todd Chrisley and Julie Chrisley, by and through their undersigned counsel, and, pursuant to Federal Rules of Criminal Procedure 12(b) and 41(h), file this Motion to Suppress Evidence Seized pursuant to two search warrants executed on February 7, 2018.[1] The warrants violated the Fourth Amendment to the Constitution and accordingly all evidence derived from the searches should be suppressed. Additionally,

---

[1] There were two separate search warrants applied for and authorized for two locations.  Both were issued on the basis of identical applications and affidavits.  The search warrant for 4125 Welcome All Road is attached to this Motion as EXHIBIT A.  The application and affidavit for this search warrant is attached as EXHIBIT B.  The search warrant for 1800 Century Boulevard NE is attached to this Motion as EXHIBIT C.  The application and affidavit for this search warrant is attached as EXHIBIT D.

1

pursuant to Rule 41(g), Fed. R. Crim. P., the property of the Defendants seized pursuant to these unlawful warrants should be returned to the Defendants. In support of this request, Defendants respectfully show this Court the following:

## I. INTRODUCTION

On February 1, 2018, IRS Special Agent Larry Arrow presented applications and affidavits seeking the issuance of two search warrants. The agent sought search warrants for the search and seizure of property in the custody of the Georgia Department of Revenue being stored at two locations: a storage facility located at 4125 Welcome All Road, Atlanta, Georgia 30349 and Georgia Department of Revenue Headquarters located at 1800 Century Boulevard, NE, Atlanta, Georgia 30345. Stored at both locations was the property of Todd and Julie Chrisley and their businesses. The Defendants' property had been previously seized by the Georgia Department of Revenue (GDOR) from Printer & Parts Warehouse located in Duluth, Georgia. Once seized by GDOR it had been relocated to the Welcome All Road and Century Boulevard locations.

The subject search warrants were issued by United States Magistrate Judge Catherine M. Salinas on February 1, 2018 to be executed on or before February 14, 2018.

2

Federal agents executed both warrants on February 7, 2018, and seized all of the property set forth in inventories filed with the Court. See EXHIBIT E.

Defendants respectfully show that the warrants obtained from Magistrate Judge Salinas by Special Agent Arrow are the product of an initial illegal seizure and search by GDOR in violation of the Defendants' rights under the Fourth Amendment to the United States Constitution. As such, the fruits of the wrongful searches should be suppressed. Defendants respectfully submit that this Court should issue an Order suppressing any and all evidence obtained as a result of the two searches and seizures. At a minimum, this Court should order a hearing into the facts surrounding the seizure of said property.

## II. STATEMENT OF FACTS

### A. The GDOR Seizure.

Sometime prior to 2017, GDOR began an investigation into Todd and Julie Chrisley as a result of their failure to file state tax returns and pay state taxes during years that they potentially lived in the State of Georgia. On February 27, 2017 and March 2, 2017, the GDOR Commissioner issued tax

executions against the Chrisleys.[2]  Almost immediately, on March 7, 2017, GDOR seized significant amounts of the Chrisleys' property which was located in a warehouse used by the Chrisleys located at 3270 Summit Ridge Parkway, No. 110, Duluth, Gwinnett County, Georgia 30096.  GDOR then relocated the property seized to its own warehouse/storage facility located at 4125 Welcome All Road, Atlanta, Georgia and certain of the property to its headquarters located at 1800 Century Center Boulevard, Atlanta, Georgia.

### III. ARGUMENT AND CITATION OF AUTHORITIES

#### A.  GDOR seizure was wrongful and in violation of the Chrisleys' Fourth Amendment rights

The seizure of the Chrisleys' property by the GDOR was based on its assessment of taxes under the state "jeopardy assessment" power.  Georgia law allows GDOR to "make an arbitrary assessment" of tax and "proceed under the assessment to collect the tax" "[i]f the commissioner reasonably finds that a taxpayer gives evidence of intention to leave the state, to remove his property from the state" or do other acts "tending to prejudice or render wholly or partly ineffective proceedings to…collect any state tax."[3]  Official

---

[2] Copies of the State Tax Executions are collectively attached hereto as EXHIBIT F.
[3] In March 2017 the Chrisleys were already residing in Tennessee.  Further, the seizure of property such as filing cabinets, files and financial records cannot be argued to have been done to collect revenue for the state, as they have no value.

4

Code of Georgia Annotated Section 48-2-51 (hereinafter O.C.G.A.). Here, no such factual determination was made, and, therefore, the seizure was improper.

Pretermitting whether the assessment was proper in this case, that assessment, by itself, did not give GDOR the authority to seize the subject property. The jeopardy assessment permitted the State to assess a tax. However, to authorize a legal seizure of property in satisfaction of that tax obligation, GDOR had to follow additional requirements of Georgia law. Its failure to do so, rendered the seizure of the Defendants' property illegal.

To collect the tax, GDOR chose to issue an execution, a way of collecting on a lien. See *Black v. Black*, 245 Ga. 281, 282 (1980) ("executions are issued for the purpose of authorizing sheriffs…to proceed with levy with real and personal property."). In 2017[4], Georgia law allowed the commissioner to "issue an execution for the collection of any tax," which a sheriff or other authorized official could enforce the same as any other writ of execution. See O.C.G.A. §48-3-1 (2017). However, a tax lien for income taxes[5], which the execution enforces, did not arise or attach to the taxpayer's

---

[4] Georgia law governing tax executions underwent a significant overhaul in 2017, with multiple new provisions and changes taking effect in 2018. As the collection activity here occurred in 2017, the law as it then stood applies.

[5] The State execution makes clear that the assessment was made for Todd Chrisley and Julie Chrisley's alleged failure to pay personal income taxes. As such, the provisions of O.C.G.A. §48-2-56(e) apply.

5

property until "the time a tax execution for [those] taxes is entered upon the general execution docket." O.C.G.A. §48-2-56(e) (2017). The "general execution docket" is a registry Georgia law requires all Superior Courts to maintain. See O.C.G.A. §9-12-81(a). Accordingly, until the execution is filed on the general docket of the appropriate Superior Court, no lien exists. See *Maria v. Khiani Alpharetta, LLC*, No. 1:13-CV-01415-RWS, 2015 WL 1569185, at *2 (N.D. Ga. Apr. 7, 2015) ("under Georgia Law, to establish a lien on Defendant's property plaintiffs may record the writ of execution on the general execution docket in the appropriate county."). The subject writs of execution were never filed in Gwinnett County, where the property was seized. Therefore, GDOR had no valid lien.

Because GDOR had no lien, it could not seize the Chrisleys' property. <u>Cf</u> *Hopson v. Bank of N. Ga.*, 258 Ga. App. 360, 362 (2002) (concluding trial court did not err by granting petition to foreclose where creditor had an interest in the property); *Murphey v. Smith*, 85 S.E. 791, 792 (Ga. App. 1915) (holding that because the plaintiff did not comply with all filing requirements, "the levy [was] proceeding illegally"). Here, GDOR never filed the execution on the general execution docket in the county where the property was located. Therefore, GDOR never obtained a lien on the Chrisleys' property. Without a valid lien, GDOR had no interest in the property and no right to

6

seize it. Thus, the seizure of the Chrisleys' property was unlawful. Accordingly, GDOR's possession of the property when the IRS executed the search warrant on February 7, 2018, was unlawful.

### B. The GDOR seizure constituted a Fourth Amendment violation.

Until a proper execution in support of a jeopardy assessment is filed on the general docket of the Superior Court, no lien exists proffering rights upon GDOR. As no lien was ever filed and recorded on the general execution docket in the appropriate county, GDOR had no lien and could not seize the property. Having not complied with the law, the seizure was in violation of Georgia law.

The GDOR seizure of the Defendants' property was unconstitutional. Clearly, the jeopardy assessment was a "seizure" within the context of the Fourth Amendment. See *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *Andrews v. Crump*, 984 F.Supp. 393, 410 (W.D. NC 1996) (concluding merely applying a tax lien on the plaintiffs' property was a seizure)). Furthermore, no other legal basis existed to justify the taking of the Chrisleys' property.

### C. The evidence obtained through the execution of the subject federal search warrants should be excluded.

Once established that the property's seizure by the State was unconstitutional, any such property or evidence is subject to the exclusionary rule. The exclusionary rule should be applied to the category of cases where it will "result in appreciable deterrence." *United States v. Janis*, 428 U.S. 433, 454 (1976).

The 11th Circuit has held that for the exclusionary rule to apply, there must be three elements. First, there must be misconduct by the police or by adjuncts to the law enforcement team. Second, application of the rule must result in appreciable deterrence of that misconduct. Finally, the benefits of the rule's application must not outweigh its costs. *United States v. Herring*, 492 F.3d 1212, 1217 (11th Cir. 2007). In applying these factors, it is clear that the exclusionary rule should apply here. The misconduct was twofold – the decision to seize the Chrisleys' property without following the law. Second, having seized and examined the Defendants' property and having located what it believed could be information helpful to IRS special agents and federal prosecutors, state GDOR personnel notified Agent Arrow, the search warrant application affiant, of the existence of this evidence. Applying the exclusionary rule to the evidence seized by GDOR and later seized by federal agents in this case would deter law enforcement from acting in

violation of the law.  And, the cost of excluding the evidence seized as a result is clearly outweighed by the deterrent effect on police misconduct.

### D.  The federal search warrants are fruit of the poisonous tree

Federal authorities cannot benefit from the illegal seizure by the state in violation of the Chrisleys' Fourth Amendment rights.  The state's misconduct is clearly imputable to the federal agents who obtained the subject search warrants.  The exclusionary rule encompasses both the "primary evidence obtained as a direct result of an illegal search or seizure" and, "evidence later discovered and found to be derivative of an illegality," the so-called "fruit of the poisonous tree."  *Segura v. United States*, 468 U.S. 796, 804 (1984); *Wong Sun v. United States*, 371 U.S. 471 (1963).

In determining whether the initial illegal seizure has tainted the subsequently discovered evidence, the Court should look to three factors.  First, the "temporal proximity" between the unconstitutional conduct and the discovery of the evidence to determine how closely the discovery of evidence followed the unconstitutional search.  Second, the Court considers "the presence of intervening circumstances." Third, and particularly significant, the Court examines "the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603-604 (1975).

As to the first element, the amount of time that passed between the illegal conduct and the discovery of the evidence, while almost a year passed between the initial seizure and the subsequent federal seizure, federal investigators were contacted by GDOR about the potential evidence of the seizure.  Furthermore, federal investigators and state investigators met multiple times after the state's seizure but before the federal warrant to discuss the Chrisley investigations.  This included correspondence from GDOR to the federal investigators requesting a "parallel investigation."

As to the second element, whether the initial illegal seizure contributed to the discovery of the tainted evidence, the evidence seized by federal agents was the direct result of the illegal taking by the state.  Absolute evidence of this is set forth in the search warrant affidavit which states facts that could only have been obtained from the seizure and search by GDOR.  In the Arrow affidavit attached hereto as EXHIBITS B and D, at page 13 the affiant states:

> "I have learned that the Georgia Department of Revenue has had an investigation into the Chrisleys as a result of their failure to file state tax returns during years that they potentially lived in the State of Georgia.  During the course of the state tax investigation, the Georgia Commissioner of Revenue obtained a jeopardy assessment against Michael Todd Chrisley for tax year 2009.  Revenue agents also obtained a lien against Chrisley's property. …the state revenue officials learned that the Chrisleys had stored personal belongings (the Subject Items) in a 10,000 sq.ft.

storage facility rented from a printing business in Suwanee, Georgia.  In July 2017 (sic), the Georgia Commissioner of Revenue issued a levy, pursuant to O.C.G.A. § 48-2-55, against the Subject Items…in July 2017 (sic), Georgia Department of Revenue officials travelled to the Suwanee storage facility where they executed the levy and seized the Subject Items.

Pursuant to their agency's policy, Georgia Department of Revenue officials inventoried the Subject Items…during the course of the inventory, the officials determined that there were a number of financial records within the Subject Items, to include, but limited to, boxes of the following types of financial records: bank records; mortgage documents; personal and business checkbooks; ledger books; receipt books; insurance records; records showing Chrisley's and his wife's income; correspondence between Chrisley and his accountant covering tax years 2006-2013; and individual and business tax records. Additionally, the Subject Items included a number of electronic devices and storage mediums…the Subject Items remain at the locations specified in Attachment A."

It is clear from the above that the knowledge of the "Subject Items" illegally seized by GDOR came to federal authorities directly from the GDOR wrongdoers.  The facts contained in the affidavit came from GDOR officials. But for the communication of this information to federal authorities, the existence of the "Subject Items" would never have been known to federal authorities.

The third element, "the purpose and flagrancy of the official misconduct", is likewise a factor supporting suppression.  GDOR officials, believed to be Katy Colvin and Josh Waites, targeted Todd Chrisley and Julie

11

Chrisley for investigation and prosecution both by the state and federal authorities. As previously stated, GDOR representatives contacted federal investigators, met multiple times with them both before and after the seizure but before the federal warrant, to coordinate "parallel investigations." If the evidence is not suppressed, there is no prohibition on state agencies acting improperly and providing federal investigators with illegally seized evidence and allowing federal investigators to "cure" the illegal seizure by obtaining their own warrant. See *United States v. Cordero-Rosario*, 252 F.Supp. 3d 779 (D. PR 2017) (Evidence otherwise properly seized by federal authorities was nonetheless tainted by the initial illegal seizure by local authorities).

## IV. THE CHRISLEYS' PROPERTY THAT WAS UNLAWFULLY SEIZED MUST BE RETURNED PURSUANT TO RULE 41(G)

Rule 41(g), Federal Rules of Criminal Procedure, provides, in pertinent part, that "[a] person aggrieved by an unlawful search and seizure of property or the deprivation of property may move for the property's return." The initial seizure and search of the Chrisleys' property executed by GDOR in 2017 was an "unlawful search and seizure" as it was conducted in violation of Georgia law. This illegal search and seizure was exploited by law enforcement directly resulting in the seizure of the Defendants' property by federal agents. Therefore, the items seized in this search and seizure were

seized in an "unlawful search and seizure", and should be returned to the Defendants.[6]

WHEREFORE, Defendants respectfully pray that the Court inquire into the facts set forth in this Motion and issue an Order suppressing any and all evidence obtained from the subject search warrants and all fruits derived therefrom.  At a minimum, the Court should order an evidentiary hearing to inquire into the issues set forth above.

                Respectfully submitted,

                */s/ Bruce H. Morris*
                Bruce H. Morris
                Georgia Bar No. 523575
                Counsel for Todd Chrisley

Finestone, Morris & White, LLP
Suite 2540 Tower Place
3340 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 262-2500
bmorris@fmattorneys.com

                */s/ Stephen M. Friedberg*
                Stephen M. Friedberg
                Georgia Bar No. 277350
                Counsel for Julie Chrisley

Suite 2250, Resurgens Plaza

---

[6] Because the evidence was not properly seized under the search warrants – pretermitting the questions of the validity of the search warrants in the larger sense – and because none of the property is contraband, illegal or otherwise forfeitable, the property should be returned to the Defendants immediately.

945 East Paces Ferry Road, NE
Atlanta, Georgia 30326
(404) 842-7243
steve@smflawdawg.com

CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing "DEFENDANTS TODD CHRISLEY AND JULIE CHRISLEY'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANTS EXECUTED AT 4125 WELCOME ALL ROAD AND 1800 CENTURY BOULEVARD NE AND MEMORANDUM OF LAW IN SUPPORT" through this District's ECF system, which will automatically serve all counsel of record.

This 20th day of December, 2019.

/s/ Bruce H. Morris
Bruce H. Morris