

DUPLICATE
(USAO GAN 8/90 Search Warrant)

FILED IN CHAMBERS
U.S.D.C. Atlanta

FEB 01 2018

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

# United States District Court

## NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

materials seized from Printer & Parts Warehouse located at
3270 Summit Ridge Parkway #110, Duluth, GA 30096,
currently located at Georgia Department of Revenue's
storage facility located at 4125 Welcome All Road, Atlanta,
GA 30349.

**APPLICATION AND
AFFIDAVIT FOR
SEARCH WARRANT**
Case number: 1:18-MC-0134
**UNDER SEAL**

I, Larry Arrow, being duly sworn depose and say:

I am a Special Agent of the All Internal Revenue and have reason to believe that on the property
described as:

### See Attachment A

in the Northern District of Georgia there is now concealed certain property and certain data, namely,

### See Attachment B,

which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and
property designed for use, intended for use, or used in committing a crime, concerning violations of Title
26, United States Code, Section(s) 7201, 7203, and Title 18, United States Code, Section 371. The facts to
support a finding of Probable Cause are as follows:

### SEE ATTACHED AFFIDAVIT

Continued on attached sheet made a part hereof.

Sworn to before me, and subscribed in my
presence

_____
Signature of Affiant

Larry Arrow

February 1, 2018
Date

Atlanta, Georgia
City and States

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer
AUSA Thomas J. Krepp

_____
Signature of Judicial Officer

**EXHIBIT B**
**p. 1 of 30**

## ATTACHMENT A
## <u>DESCRIPTION OF THE PREMISES</u>

The property to be searched are materials seized from Printer & Parts Warehouse located at 3270 Summit Ridge Parkway #110, Duluth, GA 30096, currently located at Georgia Department of Revenue's storage facility located at 4125 Welcome All Road, Atlanta, GA 30349.

4125 Welcome All Road, Atlanta, GA 30349 is a commercial light brown building with several business establishments including Georgia Department of Revenue:



## ATTACHMENT B
## LIST OF ITEMS TO BE SEIZED

1.  For the period January 1, 2008, through the present, all paper and electronic files of "Chrisley and Company," "Chrisley Asset Management," "7C's Productions," Michael Todd Chrisley, and Julie Chrisley, and any other businesses, nominees and associates that may contain evidence, instrumentalities, fruits and contraband concerning violations of Title 26, United States Code, Sections 7201 and 7203, and Title 18, United States Code, Section 371, as follows:

a.  Financial records, including receipts, checks, bank and savings and loan records of deposit, withdrawal and wire transfer, statements and other bank records, letters of credit, credit card statements, money orders, cashier's checks, passbooks, cancelled checks, certificates of deposit, loan records, customer account information, income and expense summaries, cash disbursement journals, financial statements, and state and federal individual and corporate tax returns.

b.  Records reflecting business operations, including business incorporation documents, employment records, paychecks, and work schedules.

c.  Records relating to co schemers, including correspondence, notes, ledgers, appointment calendars, lists, address books, digital contact lists, diaries, photographs, and videos.

d. All contracts, sales agreements, purchase agreements, lease agreements and financing applications/agreements. Invoices, bills and receipts for the sale or purchase of motor vehicles or vessels. Real estate purchase records, sale records and mortgage documentation to include security deeds, warranty deeds, and settlement documents.

e. All records pertaining to personal expenses to include vacations, entertainment, and dining.

f. Credit cards, debit cards, prepaid debit cards, driver's licenses, passports, and other identification documents.

g. Safe deposit box lease agreements and safe deposit box keys.

h. Safes, locked containers and shipping containers and storage containers within the premise including anywhere on the property, including opening and seizing the contents.

i. Documents in any format or medium that concern any accounts with an Internet Service Provider.

j. Documents in any format or medium that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

k. Items reflecting the use of file-sharing technology (not to include contents of files shared that are not otherwise within the scope of this attachment).

l. Documents concerning ownership or use of computer equipment found in the Subject Items, such as sales receipts, bills for Internet access, and handwritten notes.

m. Any currency – foreign or domestic - as well as any and all records relating to transactions conducted in currency and currency equivalents including, but not limited to cashier's checks, traveler's checks, money orders, and bank drafts, stocks or bonds.

2. Computers or storage media used as a means to commit the violations described above, including Title 26, United States Code, Sections 7201 and 7203, and Title 18, United States Code, Section 371.

3. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

4.  Routers, modems, and network equipment used to connect computers to the Internet.

As used above and in my affidavit, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Larry Arrow, being first duly sworn, hereby depose and state as follows:

### I.   INTRODUCTION AND AGENT BACKGROUND

1.   I make this affidavit in support of an application for a warrant to search:

    a.   materials seized from Printer & Parts Warehouse located at 3270 Summit Ridge Parkway #110, Duluth, GA 30096, currently located at Georgia Department of Revenue's headquarters at 1800 Century Blvd NE, Atlanta, GA 30345; and

    b.   materials seized from Printer & Parts Warehouse located at 3270 Summit Ridge Parkway #110, Duluth, GA 30096, currently located at Georgia Department of Revenue's storage facility located at 4125 Welcome All Road, Atlanta, GA 30349,

as further described in Attachment A, (collectively referred to as the **Subject Items**), for evidence, instrumentalities, fruits, and contraband described further in Attachment B, concerning violations of 26 U.S.C. § 7201 (tax evasion), 26 U.S.C. § 7203 (willful failure to file tax returns), and 18 U.S.C. § 371 (conspiracy to defraud the IRS).

2.   I am a Special Agent ("SA") with the Internal Revenue Service – Criminal Investigation ("IRS-CI") and have been for approximately 10 years.  I am currently assigned to the Atlanta, Georgia field office.  Upon joining IRS-CI, I attended a twelve-week Criminal Investigator Training Program and a sixteen week Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia.  I previously earned a Master of Science degree in Accounting from the University of Dallas in Irving, Texas, and two Bachelor of Arts degrees in Biological Sciences and Mathematics from Southern Methodist University in Dallas, Texas.  I am also a Certified Public Accountant licensed in the State of Texas. In my

1

capacity as an IRS-CI Special Agent, I have received training, both formal and informal, in the enforcement and investigation of these laws, interviewing techniques, and the use of physical and electronic surveillance.

3.     In connection with my official duties, I investigate criminal violations of federal law, including tax offenses such as tax evasion (26 U.S.C. § 7201), willful failure to file or pay taxes (26 U.S.C. § 7203), and conspiracy to defraud the United States (18 U.S.C. § 371), as well as other financial crimes, such as wire and mail fraud (18 U.S.C. §§ 1341, 1343), and money laundering (18 U.S.C. § 1956). Additionally, I have participated in, and also led, the execution of search warrants for documents and other evidence in cases involving tax and financial crimes.

4.     The facts set forth in this Affidavit are based on (a) my personal observations; (b) my training and experience; and (c) information obtained from other agents and witnesses. Because I submit this Affidavit for the limited purpose of showing probable cause, I have not included in this Affidavit each and every fact that I and other agents have learned in this investigation.

## II.     PROBABLE CAUSE

### A.     *Summary of Evidence*

5.     I believe that the **Subject Items** will contain evidence of federal criminal tax offenses, including tax evasion, in violation of 26 U.S.C. § 7201, willful failure to pay taxes, in violation of 26 U.S.C. § 7203, and conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. The investigation has thus far revealed that Michael Todd Chrisley and Julie Chrisley ("the Chrisleys") have engaged in a conspiracy to defraud the government by failing to file tax returns and failing to report a substantial amount of income during the 2013, 2014,

EXHIBIT B
p. 9 of 30

2015, and 2016 tax years.  Georgia Department of Revenue officials seized the **Subject Items**

when executing a state tax levy in July 2017 against the Chrisleys and have maintained control

over those items.  As set forth in this affidavit, I believe that the **Subject Items** contain evidence

of federal tax crimes.

    **B.**   ***Background Information***

    6.    Generally speaking, individuals earning over a certain amount of gross income are

required to report their income on a U.S. Individual Income Tax Return, Form 1040.  IRS

Publication Form 501 included the below-listed filing requirements for individuals:

| 2013 Filing Requirements Chart for Most Taxpayers IF your filing status is... | AND at the end of 2013 you were...* | THEN file a return if your gross income was at least...** |
|---|---|---|
| Single | under 65 | $10,000 |
| 65 or older | | $11,500 |
| head of household | under 65 | $12,850 |
| 65 or older | | $14,350 |
| married, filing jointly*** | under 65 (both spouses) | $20,000 |
| 65 or older (one spouse) | | $21,200 |
| 65 or older (both spouses) | | $22,400 |
| married, filing separately | any age | $3,900 |
| qualifying widow(er) with dependent child | under 65 | $16,100 |
| 65 or older | | $17,300 |

    7.    Similar publications were issued for tax years 2014, 2015, and 2016.  Each of these

publications stated that the minimal filing requirement was at least as much as what was

specified in the above-listed 2013 table.  Unless they obtained an extension, taxpayers were

typically required to file their tax returns by on or about April 15 following those tax years.

    8.    Title 26, United States Code, Section 61(a) states that "gross income means all

income from whatever source derived, including (but not limited to) . . . compensation for

services [ ] . . . and gross income derived from business . . ."  Income earned through closely held corporations must be reported to the IRS by the individual taxpayer.  "S corporations," are closely held corporations that elect to pass corporate income, losses, deductions, and credits through to their shareholders for federal tax purposes.  Alternatively, income from a single member limited liability company ("LLC") is reported on an attached schedule to a taxpayer's individual income tax return (commonly referred to as "Schedule C" income).  In both situations, the individual taxpayer is required to report income earned through these businesses on his or her individual income tax returns.

9.     Tax crimes may be prosecuted as felonies or misdemeanors under Titles 18 and 26. In what is known as the tax evasion statute, Title 26, United States Code, Section 7201 states in relevant part, "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . . ."  Failing to file a return, when coupled with an affirmative act of evasion and a tax due and owing, is typically referred to as a *Spies*-evasion. *See United States v. Spies,* 317 U.S. 492, 499 (1943).  Individuals who willfully fail to file their income tax returns or pay their taxes – but who do not engage in affirmative acts of evasion – may still face misdemeanor charges.  Title 26, United States Code, Section 7203 states in relevant part, "[a]ny person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor . . . ."  In a so-called

*Klein*-conspiracy, at least two individuals conspire to defraud the United States for the purpose of "impeding, impairing, obstructing and defeating the lawful government functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes." *United States v. Klein*, 247 F.2d 908, 915 (2d Cir. 1957).

10.  I know from my training and experience that in order to prove a tax due and owing in a tax evasion prosecution, the government can rely upon direct or indirect methods of proof. The most common direct method of proof is the "specific items" method of proof, which focus on specific financial transactions (e.g. payroll deposits into an individual's personal bank account).  Indirect methods of proof can include methodologies such as net worth, bank deposits, and expenditures.  Critical to an indirect methods of proof is the establishment of non-taxable money that the individual had at his or her disposal (e.g. cash on hand at the start of a tax year, repayment of loans, and gifts).

C. *Michael Todd Chrisley and Julie Chrisley's Federal Income Tax Return Submissions to the IRS - 2009-2012*

11.  Since 2009, the Chrisleys had multiple homes in a number of states, including Tennessee, South Carolina, Florida, and Georgia.  One of their homes was located within the Northern District of Georgia and the Chrisleys engaged in financial transactions within the Northern District of Georgia.  IRS records show that the Chrisleys filed federal income tax returns for tax years 2009, 2010, 2011, and 2012.  IRS records show that the Chrisleys' 2010 and 2011 tax returns were electronically filed over the Internet.  The following chart summarizes the Chrisleys' tax returns for these years.  The 2009 income tax return was filed by Michael Todd Chrisley with the filing status of "married filing separately" while the 2010, 2011, and

EXHIBIT B
p. 12 of 30

2012 income tax returns were filed by the Chrisleys with the filing status of "married filing

jointly":

| Tax Year | Filing Date (approximate) | Taxable Income Amount | Tax Due and Owing |
|----------|---------------------------|-----------------------|-------------------|
| 2009 | October 15, 2010 | $1,698,900 | $701,249 |
| 2010 | May 6, 2011 | $0 | $0 |
| 2011 | October 15, 2012 | $0 | $50,073 |
| 2012 | December 16, 2013 | $0 | $23,959 |

12.   Per IRS records, it appears the Chrisleys have not personally made any payments

towards the above-listed taxes.  On July 21, 2016, the IRS filed a "Notice of Federal Tax Lien" in

the Superior Court of Fulton County in Atlanta, Georgia.  This notice was filed against the

Chrisley's residence at 4015 Anson Avenue, Alpharetta, GA 30022 because of the Chrisley's

failure to pay taxes and fines amounting to $561,197.80 for tax years 2009 through 2011.  On

May 3, 2017, the IRS received a completed Form 14135, "Application for Certificate of

Discharge of Property from Federal Tax Lien" from attorney Max Benkel on behalf of the

Chrisleys requesting the removal of the aforementioned lien in exchange for $105,649.  This

application was approved and appears to have resulted in the payment credit of $94,832.22 on

or about August 3, 2017 and an additional payment credit of $5,296.71 on or about September

29, 2017, both of which were applied towards the aforementioned 2009 income tax liability.

The Chrisleys have a balance of approximately $675,152.07 in unpaid taxes for tax years 2009

through 2012.  Per information from IRS Collection, discharge applications are approved only

after taxpayers are able to prove that they have little to no means to fulfill the payments on

their tax liabilities.  Representatives from IRS Collection made several attempts over the years

to collect the aforementioned tax due and owing from the Chrisleys through their Power of

Attorney and have not been successful.  At times, they were informed of the Chrisleys'

insolvency although their lifestyle indicates the contrary.

### D.   *The Chrisleys' Failure to File Tax Returns in Tax Years 2013, 2014, 2015, and 2016*

13.   The investigation has thus far revealed that during tax years 2013 through 2016,

the Chrisleys earned substantial income but failed to file federal income tax returns.  IRS

Collection spoke with the Chrisleys' Power of Attorney in March 2017 and January 2018 who

stated to the IRS that he would be preparing the Chrisleys' 2013 through 2016 income tax

returns.  However, IRS has not received these returns.  Since March 2014, the Chrisleys have

starred on a reality television program on USA Network entitled, "Chrisley Knows Best."

According to its website:

> USA Network's hit reality series Chrisley Knows Best follows the shenanigans of
> outspoken, helicopter parent Todd Chrisley and his over-the-top Southern family,
> which includes his loving wife Julie, and their charming, outspoken children
> Lindsie, Chase, Savannah, and Grayson. Chrisley Knows Best is a three-time NATPE
> (National Association of Television Program Executives) winner for Best Docusoap.
> Bucking industry trends, Season 5 of Chrisley Knows Best was the show's best
> season to date in all key demographics. It is produced by Maverick TV and
> All3Media America, with Adam Greener, Simon Knight, Jim Sayer, Greg Lipstone,
> and Todd Chrisley serving as executive producers. Annie Kate Pons serves as
> supervising producer.

14.   Over the past decade or so, the Chrisleys have operated through a number of legal

entities, including Chrisley and Company, Chrisley Asset Management, and 7Cs Productions

(variant 7Cs Production Company).  It appears that the Chrisleys conduct their entertainment

business - at least in part - through 7Cs Productions.  The website "toddchrisley.org," which

appears to be an older website that claims to be operated by Todd Chrisley, contains an article

entitled, "Todd Chrisley Starts Film Production Company - 7CsProduction" stating:

**EXHIBIT B**
**p. 14 of 30**

7Cs production company was formed to make an impact in everyday life, from the images we see on TV and movies to the music we listen to daily. At 7Cs we seek to spread our message through creative and original material. 7Cs is an audio/video & music production house that specializes in video production, motion graphics and original music.  Our approach to production is based on professional craftsmanship with the most up-to-date technology. Our team of professionals is a diverse and multi-talented group that is capable of exceeding clients' needs and expectations.

15.   Georgia and Tennessee Secretary of State records further confirm that the Chrisleys control 7Cs Productions.  According to Georgia Secretary of State records, 7Cs Productions was formed in Georgia on July 2, 2013, and dissolved on December 7, 2016.  Julie Chrisley was listed as the registered agent for 7Cs Productions.  According to Tennessee Secretary of State records, 7Cs Productions was formed in Tennessee on January 13, 2016, where it remains active.  The registered agent in Tennessee is Elizabeth Faye Chrisley, who is Michael Todd Chrisley's mother.

16.   IRS records indicate that a company named 7Cs Productions with EIN 46-3112606 received multiple Forms 1099-MISC during the 2013 through 2016 tax years.  The Forms 1099-MISC were issued by a number of entities mostly listing an address of "PO Box 7836" in Burbank, California.  An internet search revealed that this address was associated with at least one entity that handles payroll and payments on behalf of entertainment professionals.  The majority of the Forms 1099-MISC listed 7Cs Productions' address as "10945 State Bridge Road Suite 401-300, Alpharetta, GA 30022" for tax years 2013 through 2016.  This address is a UPS store.  One Form 1099-MISC issued for tax year 2016 listed 7Cs Productions' address as "806 Lynnwood Blvd, Nashville, TN 37203," which is the Chrisleys' home address in Tennessee.  For tax year 2016, property record searches reveal that this home was owned by Julie Chrisley. These Forms 1099-MISC stated that 7Cs Productions earned the amounts listed below during the tax years listed below:

| Tax Year | Amount |
|----------|--------|
| 2013 | $175,360 |
| 2014 | $345,975 |
| 2015 | $1,122,985 |
| 2016 | $1,083,264 |
| Total | $2,727,584 |

17.  IRS records confirm that the IRS has yet to receive any individual income tax returns for Michael Todd Chrisley or Julie Chrisley for tax years 2013 through 2016.  Moreover, IRS records confirm that the IRS has yet to receive any corporate tax returns for 7Cs Productions, (EIN 46-3112606) for tax years 2013 through 2016.

18.  I have reviewed financial records and uncovered additional evidence showing that the Chrisleys made a number of large expenditures during the 2013 through 2016 tax years, at least some of which is tied to the revenue earned by 7Cs Productions.  Bank of America business checking account number ending in 6044, in the name of "7Cs Productions, Inc.", was opened on July 28, 2014.  Julie Chrisley was listed as account owner and was the only one with signatory authority.  On March 7, 2017, Julie Chrisley was removed from the account and replaced with Elizabeth Faye Chrisley (Michael Todd Chrisley's mother).  Elizabeth Faye Chrisley was listed as the President of 7Cs Productions Inc. on the bank records and was thereafter the only one with signatory authority.

19.  I reviewed the account records and saw evidence that the Chrisleys were earning substantial sums of money in years that they had not filed personal income tax returns.  For

EXHIBIT B
p. 16 of 30

Season 2 of the Chrisleys' show, several checks were issued to 7Cs Productions, Inc. and

deposited into account number ending 6044 for services of ("fso") various family members of

the Chrisleys including Julie and Michael Todd Chrisley by GEP Talent Services, LLC located at

2835 N. Naomi St. 2nd Floor, Burbank, CA 91504. By way of example, a number of checks from

"GEP Talent Services, LLC" were deposited into this bank account.  Several checks included an

annotation stating "fso" and then a Chrisley family member name (meaning, "for the services

of" that particular family member). The below-listed chart summarizes a sample of 17 checks

issued by GEP Talent Services and later deposited into this bank account along with the name of

the Chrisley family member listed on the check:

| Item | Check # | Check Date | Amount | For Services Of ("FSO") |
|------|---------|------------|--------|-------------------------|
| 1 | 19081433 | 07/24/14 | $4,112.50 | Julie Chrisley |
| 2 | 19081446 | 07/24/14 | $5,142.90 | Julie Chrisley |
| 3 | 19081434 | 07/24/14 | $4,935.00 | Julie Chrisley |
| 4 | 19081435 | 07/24/14 | $4,112.50 | Julie Chrisley |
| 5 | 19081436 | 07/24/14 | $4,935.00 | Julie Chrisley |
| 6 | 19081447 | 07/24/14 | $5,142.90 | Michael Todd Chrisley |
| 7 | 19081442 | 07/24/14 | $4,935.00 | Michael Todd Chrisley |
| 8 | 19081441 | 07/24/14 | $4,935.00 | Michael Todd Chrisley |
| 9 | 19081440 | 07/24/14 | $4,112.50 | Michael Todd Chrisley |
| 10 | 19081439 | 07/24/14 | $4,935.00 | Michael Todd Chrisley |
| 11 | 19081438 | 07/24/14 | $4,112.50 | Michael Todd Chrisley |
| 12 | 19081432 | 07/24/14 | $4,935.00 | Chase Chrisley[1] |
| 13 | 19081428 | 07/24/14 | $4,112.50 | Chase Chrisley |
| 14 | 19081445 | 07/24/14 | $5,142.90 | Chase Chrisley |
| 15 | 19081431 | 07/24/14 | $4,935.00 | Chase Chrisley |
| 16 | 19081430 | 07/24/14 | $4,112.50 | Chase Chrisley |
| 17 | 19081429 | 07/24/14 | $4,935.00 | Chase Chrisley |
| | | | $79,583.70 | |

---

[1] Chase Chrisley, Savannah Chrisley, and Grayson Chrisley are the children of Michael Todd and Julie Chrisley.

EXHIBIT B
p. 17 of 30

20.  Altogether, a total of $130,718.70 was deposited into this account in late July 2014. Following these deposits, $23,600 was withdrawn in cash from the account.  The funds were then used on personal expenses such as grocery and clothing purchases.

21.  As their show progressed, the 7Cs Productions bank account received increasingly large payments from GEP Talent Services.  The below-listed chart summarizes a sample of 8 checks issued by GEP Talent Services and later deposited into this bank account along with the name of the Chrisley family member listed on the check:

| Item | Check # | Check Date | Amount | For Services Of ("FSO") |
|------|---------|-----------|--------|--------------------------|
| 1 | 44198664 | 12/15/16 | $6,650.00 | Chase Chrisley |
| 2 | 44203919 | 12/15/16 | $6,650.00 | Chase Chrisley |
| 3 | 44198665 | 12/15/16 | $5,440.00 | Grayson Chrisley |
| 4 | 44203920 | 12/15/16 | $5,440.00 | Grayson Chrisley |
| 5 | 44198667 | 12/15/16 | $26,160.00 | Michael Todd Chrisley |
| 6 | 44203922 | 12/15/16 | $26,160.00 | Michael Todd Chrisley |
| 7 | 44198666 | 12/15/16 | $26,160.00 | Julie Chrisley |
| 8 | 44203921 | 12/15/16 | $26,160.00 | Julie Chrisley |
| | | | **$128,820.00** | |

22.  A number of personal expenditures were made out of this account following this time period, including $4,574 at Nordstrom on December 22, 2016; an additional $10,196.13 at Nordstrom on December 29, 2016; and a wire payment to Printer and Parts Warehouse for $4,048 on December 20, 2016.

23.  In August 2012, Michael Todd Chrisley filed for bankruptcy in the Northern District of Florida; this was before the 7Cs Productions' Forms 1099-MISC began to be issued.  Venue in the bankruptcy action was transferred to the Northern District of Georgia on March 21, 2013,

and the bankruptcy was discharged on March 27, 2015. The summary of schedules filed in the

bankruptcy action contained a document entitled, "Schedule J – Current Expenditures of

Individual Debtor(s)."  This schedule states that Chrisley and his family spent, on average

$78,773.96 per month which included $4,000 per month on home maintenance, $2,400 per

month on food, $2,500 per month on clothing, as well as $10,972.75 on tax expenditures.

Immediately following this schedule, Chrisley signed a "declaration concerning debtor's

schedules" stating, "I declare under penalty of perjury that I have read the foregoing summary

and schedules, consisting of 31 sheets, and that they are true and correct to the best of my

knowledge, information, and belief."  The document is dated September 14, 2012, and contains

an electronic signature for Michael Todd Chrisley.  On October 3, 2012, Chrisley gave a

statement under oath during a meeting of the creditors, conducted pursuant to 11 U.S.C. § 341.

During this meeting, Chrisley answered questions about the aforementioned schedule of

expenditures.  When asked about the $2,400 per month on food, he indicated that was what

his wife spent. When asked about the $2,500 per month of clothing, he indicated it was for his

children's' uniforms and "things like that."[2]  Chrisley indicated that his wife provided the funds

for these expenses.  While these expenditures pre-dated the 2013-2016 tax years, they show

that - at least historically - the Chrisleys spent significant sums of money each year.  This is also

in keeping with the Chrisleys' public persona as well as the above-described expenditures in the

7C's Productions account.

---

[2] Chrisley did file amendments during the bankruptcy proceedings but does not appear to have
changed his position that he and his family made substantial personal expenditures per month
during this timeframe.

EXHIBIT B
p. 19 of 30

24.   In early 2017, a portion of an interview of Michael Todd Chrisley was posted on YouTube by the Domenick Nati Show (which is advertised as a celebrity news program). Chrisley was asked about a news report that claimed he had failed to file Georgia state income tax returns and had falsely claimed to be a Florida resident.  In response to this, Chrisley stated that he had in fact been a Florida resident and then stated, "obviously the federal government likes my tax returns because I pay 750,000 to 1 million dollars just about every year so the federal government doesn't have a problem with my taxes."  Contrary to these public statements, IRS has not received individual income tax returns for Michael Todd Chrisley (or his wife, Julie) for tax years 2013, 2014, 2015, or 2016.

### E.   The Subject Items

25.   I have learned that the Georgia Department of Revenue has had an investigation into the Chrisleys as a result of their failure to file state tax returns during years that they potentially lived in the state of Georgia.[3]  During the course of the state tax investigation, the Georgia Commissioner of Revenue obtained a jeopardy assessment against Michael Todd Chrisley for tax year 2009.  Revenue officials also obtained a lien against Chrisley's property.  In July 2017, state officials learned that the Chrisleys planned to sell a substantial number of their personal items at an auction.  The state revenue officials learned that the Chrisleys had stored personal belongings (the **Subject Items**) in a 10,000 square foot storage facility rented from a printing business in Suwanee, Georgia.  In July 2017, the Georgia Commissioner of Revenue issued a levy, pursuant to O.C.G.A. § 48-2-55, against the **Subject Items** before they were

---

[3] For their part, the Chrisleys have repeatedly denied wrongdoing, have maintained that they were not Georgia residents, and are currently challenging the state actions.

**EXHIBIT B**
**p. 20 of 30**

dissipated.  In July 2017, Georgia Department of Revenue officials traveled to the Suwanee storage facility where they executed the levy and seized the **Subject Items**.

26.  Pursuant to their agency's policy, Georgia Department of Revenue officials inventoried the **Subject Items** to determine if personal property could be sold to satisfy the aforementioned jeopardy assessment.  During the course of the inventory, the officials determined that there were a number of financial records within the **Subject Items**, to include, but not limited to, boxes of the following types of financial records: bank records; mortgage documents; personal and business checkbooks; ledger books; receipt books; insurance records; records showing Chrisley's and his wife's income; correspondence between Chrisley and his accountant covering tax years 2006 through about 2013; and individual and business tax records.  Additionally, the **Subject Items** included a number of electronic devices and storage mediums, to include at least two older versions of iPhones, two laptops, CDs, and at least one thumb drive.  The **Subject Items** remain at the locations specified in Attachment A.

27.  It is believed that the **Subject Items** contain evidence relevant to the criminal tax scheme under investigation, including evidence regarding the Chrisleys' income sources, disposition of proceeds, and states of mind.  Financial records will aid in determining the Chrisleys' income sources and their cash on hand.  I know from my training and experience that individuals typically keep much of this information in electronic form.  Therefore, the aforementioned electronic devices and storage medium will likely contain records related to income, taxes, expenditures and the Chrisleys' states of mind related to the federal tax crimes under investigation.  These materials will be critical in making either a specific items method of proof (e.g. by showing that Chrisleys' have ownership over revenue-earning entities or their

receipt of income) or an indirect method of proof, such as net worth, bank deposits or expenditures (e.g. by showing the Chrisley's cash on hand before January 1, 2013, or showing which income came from non-taxable sources, such as repayment of loans).

### III.   TECHNICAL TERMS

28.   Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c.  Storage medium: A storage medium is any physical object upon which computer

data can be recorded.  Examples include hard disks, RAM, floppy disks, flash

memory, CD-ROMs, and other magnetic or optical media.

## IV.   ELECTRONIC STORAGE AND FORENSIC ANALYSIS

29.  As described above and in Attachment B, this application seeks permission to

search for records that might be found within the **Subject Items**, in whatever form they are

found.  One form in which the records might be found is data stored on a computer's hard drive

or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic

storage media or, potentially, the copying of electronically stored information, all under Rule

41(e)(2)(B).

30.  *Probable cause.*  I submit that if any computers or storage mediums found within

the **Subject Items**, there is probable cause to believe those records will be stored on that

computer or storage medium, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or

remnants of such files can be recovered months or even years after they have

been downloaded onto a storage medium, deleted, or viewed via the Internet.

Electronic files downloaded to a storage medium can be stored for years at little

or no cost.  Even when files have been deleted, they can be recovered months or

years later using forensic tools.  This is so because when a person "deletes" a file

on a computer, the data contained in the file does not actually disappear; rather,

that data remains on the storage medium until it is overwritten by new data.

**EXHIBIT B**
p. 23 of 30

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e. Based on actual inspection of other evidence related to this investigation, including records from financial institutions and the IRS, I am aware that computer equipment was used to generate, store, and print documents related to the Chrisleys' sources of income and tax filings.

31. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes

described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the **Subject Items** because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

    b.  As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information,

communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may

also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

**EXHIBIT B**
**p. 27 of 30**

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.  I know that when an individual uses a computer to engage in a fraud scheme, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The computer is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

32.  *Necessity of seizing or copying entire computers or storage media.*  In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage

media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a.  The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b.  Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on PREMISES 1 and PREMISES 2. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

**EXHIBIT B**
p. 29 of 30

c.   Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

33. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## V.   CONCLUSION

34.   Based on the above information, I respectfully submit that there is probable cause to believe that tax fraud offenses, in violation of Title 26, United States Code, Section 7201 and 7203, as well as Title 18, United States Code, Section 371, have been committed, and that evidence, instrumentalities, fruits, and contraband relating to this criminal conduct, as further described in Attachment B, will be found in the **Subject Items**, as further described in Attachment A.

35.   I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

EXHIBIT B
p. 30 of 30