IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| *v.* | 1:19-CR-297-ELR-JSA |
| TODD CHRISLEY (A/K/A MICHAEL TODD CHRISLEY) AND JULIE CHRISLEY | |

**United States' Response to the Chrisley Defendants' Motion to Suppress Evidence**

The United States of America, by Byung J. Pak, United States Attorney, and Thomas J. Krepp and Annalise K. Peters, Assistant United States Attorneys for the Northern District of Georgia, files this Response to the Chrisley Defendants' Motion to Suppress Evidence.

## I.    Background

On August 13, 2019, the grand jury returned an indictment against defendants Todd Chrisley, Julie Chrisley (hereinafter, "the Chrisley defendants"), and Peter Tarantino.  (Doc. 1).  The Chrisley defendants are charged with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count 1), five counts of bank fraud, in violation of 18 U.S.C. § 1344 (Counts 2-6), one count of wire fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count 7), one count of wire fraud, in violation of 18 U.S.C. § 1343 (Count 8), one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 9), and one count of tax

1

evasion, in violation of 26 U.S.C. § 7201 (Count 10).  They were arraigned on these charges on August 14, 2019.  (Doc. 10).

On December 20, 2019, the Chrisley defendants filed a number of motions, including a motion to suppress evidence, (Docs. 36, 41), which the United States responds to here.

### A. Georgia Department of Revenue collection activities against Todd and Julie Chrisley.

As referenced in the Chrisley defendants' motion to suppress evidence, their years of fraudulent conduct did not just draw the attention of federal officials. Because the Chrisley defendants refused to file their state income tax returns or pay any state income taxes for multiple years, the Georgia Department of Revenue was forced to resort to a three-step tax collection process.  *See* Doc. 36 at 3; Ex. A, Search Warrant Application and Affidavit of IRS Special Agent Larry Arrow, attached hereto as Exhibit A (hereinafter, "Arrow Affidavit") at ¶ 25. First, Department of Revenue officials obtained a "jeopardy assessment" against the Chrisley defendants for their unpaid taxes from the 2009 tax year.  Ex. A, Arrow Affidavit at ¶ 25.  Second, on March 2, 2017, Department of Revenue officials filed "state tax executions" (sometimes referred to as a "lien") with the Clerk of Fulton County Superior Court that attached to the Chrisley defendants' properties.  Ex. A, Arrow Affidavit at ¶ 25; Ex. C (state tax executions).  Finally, after learning that that the Chrisley defendants had stored a number of personal items at a warehouse in Gwinnett County, Department of Revenue civil revenue employees completed an "entry of levy" and seized those personal items to

satisfy the state tax executions.  Ex. A, Arrow Affidavit at ¶ 25; Ex. D (entry of levy).

**B. Federal Search Warrants**

Separate from the state of Georgia's civil tax investigation, the United States Attorney's Office for the Northern District of Georgia, the Federal Bureau of Investigation ("FBI"), and the Internal Revenue Service ("IRS") had launched a grand jury investigation into the Chrisley defendants' fraudulent conduct.  Ex. A, Arrow Affidavit at ¶ 25.  Federal investigators learned that the Georgia Department of Revenue had seized materials from the warehouse and that those materials contained, among other things, "bank records . . . showing Chrisley's and his wife's income . . . [and] a number of electronic devices and storage mediums . . . ."  *Id.* at ¶ 26.  By this point in the federal investigation, agents knew that "during tax years 2013 through 2016, the Chrisleys had earned substantial income but failed to file federal income tax returns."  *Id.* at ¶ 13.

Based upon information presented by IRS Special Agent Larry Arrow in a sworn affidavit, on February 1, 2018, the Honorable Catherine M. Salinas authorized two search warrants for the materials that had previously been taken from the warehouse and that were in the possession of the Georgia Department of Revenue.[1]  Exs. A, B. On February 7, 2018, federal agents seized these

---

[1] The United States obtained two search warrants because the Georgia Department of Revenue was storing the materials seized from the warehouse in two locations.  Special Agent Arrow's affidavit was identical in the two search warrant applications.  *See* Exs. A, B.  For simplicity's sake, the Government refers

materials from the Department of Revenue in accordance with the federal search warrants. Ex. E.  The seized materials included physically cut-and-pasted, doctored up bank statements that were sent in furtherance of the wire fraud conspiracy alleged in Count Seven of the Indictment.

### C. The Chrisley Defendants' Motion to Suppress Evidence

On December 20, 2019, the Chrisley defendants filed a motion to suppress the materials that federal investigators seized pursuant to the two federal search warrants.[2]  (Docs. 36, 41).  The Chrisley defendants do not take issue with Judge Salinas' probable cause determination, Agent Arrow's Affidavit, the scope of the materials seized, or the manner in which federal investigators executed the warrants.  Instead, the Chrisley defendants argue that the highly probative evidence seized pursuant to the warrants should be suppressed because civil revenue officials from the Georgia Department of Revenue violated the Fourth Amendment by purportedly filing state tax execution paperwork in the wrong county.  That argument is entirely without merit.

## II.    Argument

As an initial matter, the Chrisley defendants have failed to allege – much less demonstrate – that they have standing to challenge these two warrants.  Even

---

to the affidavit attached to Warrant No. 1:18-MC-0134 (Exhibit A) throughout this Response Brief.

[2] Julie Chrisley filed her motion to suppress on December 20, 2019, but it is identical to Todd Chrisley's motion.  For simplicity's sake, the government refers to Todd's motion (Doc. 36) throughout this Response Brief.

assuming that they do have standing, their entire motion is based on an incorrect reading of the plain language of the Georgia state tax execution statute. And even if their reading of the statute were correct (which it isn't), they still have not alleged a Fourth Amendment violation. At most, they would have shown that the Georgia Department of Revenue violated a state law a full year before the United States obtained the federal search warrants. Even if the Chrisleys could prove that the Georgia Department of Revenue violated state law (again, they cannot under the plain language of the statute), they have not established that invoking the exclusionary rule is necessary or appropriate.

### A. The Court should decline to address the merits of the motion to suppress because the Defendants failed to demonstrate standing.

As a threshold matter, the Chrisley defendants fail to demonstrate they have standing to challenge the two federal search warrants. *See Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S. Ct. 2556, 2561, 65 L. Ed. 2d 633 (1980). The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Fourth Amendment protections are individual – that is, only people who have a reasonable expectation of privacy in a place that was searched have standing to challenge that search. *Rakas v. Illinois*, 439 U.S. 128, 133-34, 99 S. Ct. 421, 425, 58 L. Ed. 2d 387 (1978). Accordingly, the Court should not consider the merits of a defendant's suppression motion until standing has been established. *See United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984)

(court may deny a motion to suppress if defendant fails to allege facts that, if proven, would require relief).

A defendant bears the burden of proving that he has standing. *See Rawlings*, 448 U.S. at 104, 100 S. Ct. at 2561 (defendant "bears the burden of proving . . . that he had a legitimate expectation of privacy"); *see also United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) ("individual challenging the search bears the burdens of proof and persuasion"). Specifically, a defendant must establish both a subjective and an objective expectation of privacy to contest a search. *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006); *United States v. Ramos*, 12 F.3d 1019, 1023 (11th Cir. 1994).

Here, the Chrisley defendants have offered no proof whatsoever to establish standing to challenge the two search warrants at issue. For example, they have not submitted an affidavit stating that they owned any of the materials seized from the Georgia Department of Revenue (and, in particular, the cut-and-pasted bank statements found there). *See Segura-Baltazar*, 448 F.3d at 1286; *see also United States v. Archie, et. al.*, 1:15-CR-338-MHC-CMS, (Doc. 98), 2016 U.S. Dist. LEXIS 70301 at *9 n.2 (N.D. Ga. May 5, 2016) (denying a motion to suppress on the merits but also indicating that the defendants failed to demonstrate standing in the pleadings: "In failing to point to evidence showing who had access to the accounts, the purpose of the accounts, or any other such facts that might shed light on the issue, Defendant has failed to demonstrate that he had a legitimate expectation of privacy in any of the email accounts."). At best, the Chrisley defendants' motion passingly refers to the seized materials as "the property of

Todd and Julie Chrisley and their businesses." (Doc. 36 at 2). Those unsworn and conclusory declarations – by the Chrisley defendants' lawyers – do not satisfy their individual burdens to allege standing. *See United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992) ("vague, conclusory allegations" are insufficient to establish standing). Likewise, the Chrisley defendants have not alleged that they had a "subjective or objective" expectation of privacy in the warehouse they had been renting. *See United States v. Cooper*, 113 F.3d 1394, 1398 (11th Cir. 1998). At best, their counsel vaguely claims that the Georgia Department of Revenue "seized significant amounts of the Chrisleys' property which was located in a warehouse used by the Chrisleys." (Doc. 36 at 4). Such conclusory allegations by the lawyers are insufficient to satisfy the Chrisley defendants' burden of demonstrating that they have standing to make these challenges.

In the end, the Chrisley defendants have failed to allege – much less establish – standing to claim they had a subjective or objective expectation of privacy, and therefore, the Court should deny their motion.

## B. The Chrisley defendants' argument ignores the plain language of the Georgia Code.

Even if the Court were to consider the merits of the Chrisley defendants' motion, their arguments are meritless. The thrust of their argument is not constitutional but statutory—namely, that the Georgia Department of Revenue filed state tax execution paperwork in the wrong county, in violation of Georgia law. (Doc. 36 at 6-7). Specifically, they claim that the Department of Revenue violated Georgia law by filing paperwork in Fulton County instead of in

Gwinnett County, where their personal property was ultimately seized.  (Doc. 36 at 6).  But a plain language reading of the Georgia Code makes it clear that the Chrisleys' argument is meritless.

The Department of Revenue's seizure of the materials from the warehouse involved a three-step process authorized by Georgia law:  (1) imposing a jeopardy assessment against the Chrisleys, (2) filing a state tax execution (i.e., a lien) in Fulton County Superior Court against the Chrisleys' property based on the jeopardy assessment, and (3) seizing the Chrisleys' personal property from the warehouse pursuant to the filed lien and delivering an entry of levy (i.e., notice that personal property was being seized).  Each step is described below.[3]

*First*, Title 48 of the Georgia Code governs state income tax law in Georgia. The Georgia Department of Revenue, under the direction of the state revenue commissioner, is responsible for administering and enforcing those laws.  *See* O.C.G.A. § 48-2-1.  As part of its enforcement responsibility, the Georgia Assembly has authorized the Department of Revenue to make tax assessments against recalcitrant individuals like the Chrisley defendants who evade the payment or collection of state taxes.  Specifically,

> [i]f the commissioner reasonably finds that a taxpayer gives evidence of intention to leave the state, to remove his property from the state, to conceal himself or his property, to discontinue business, or to do any other act tending to prejudice or render wholly or partly

---

[3] The United States agrees with the Chrisley defendants that the Georgia tax code was revised in 2018. (Doc. 36 at 4).  This brief cites to the Georgia Code as it existed in 2017 except where otherwise noted.

> ineffective proceedings to compute, assess, or collect any state tax, whereby it becomes advisable that such proceedings be brought without delay, the commissioner shall declare the taxable period for such taxpayer terminated forthwith and shall give notice of such finding and demand immediate payment of such tax as may be due. The commissioner may immediately make an arbitrary assessment and may proceed under the assessment to collect the tax or require the taxpayer to file with him a bond satisfactory to the commissioner as security for payment of the tax.

O.C.G.A. § 48-2-51(a).  This process is commonly called a "jeopardy assessment."

Taxpayers seeking to challenge a jeopardy assessment bear a heavy burden because

> the tax and penalties assessed by the commissioner are presumed to be valid and correctly determined and assessed. With respect to any administrative or civil proceedings regarding the assessment or collection under this subsection of any taxes, interest, or penalties imposed by this title, the burden shall be upon the taxpayer to show their incorrectness or invalidity.

O.C.G.A. § 48-2-51(b)(3).  Here, the Chrisley defendants concede, as they must, that the Georgia Department of Revenue made a jeopardy assessment against them for unpaid state income taxes.[4]  (Doc. 36-6).

*Second*, at least 30 days after the Department of Revenue notifies a delinquent taxpayer of the assessment against him, the Department of Revenue files a "state tax execution" on the general execution docket of a Superior Court, which serves

---

[4] Their motion vaguely alleges that the Department of Revenue made "no factual determination" in the jeopardy assessment.  (Doc. 36 at 5).  It is unclear what this phrase means since it appears to be uncontested that a jeopardy assessment was made.  In any event, the Chrisley defendants failed to develop this argument in their brief.

as a lien against the delinquent taxpayer's property.  *See* O.C.G.A. § 48-3-3(b) (authorizing issuance of state tax execution 30 days after giving notice to delinquent taxpayer); O.C.G.A. § 48-3-40(c)(6) (defining "state tax execution"). Notably, the operative version of the 2017 statute did not require the Department of Revenue to file the tax execution on the general execution docket of any *particular* Superior Court; it simply stated that the lien shall "arise and cover all property of the taxpayer as of the time a tax execution [] is entered upon the general execution docket."  O.C.G.A. § 48-2-56(e)(1).[5]  But the operative statute required that "before the lien [] shall apply to *real property* it shall be recorded *in the county where the real property is located*."  *Id.* (emphasis added). That language makes it clear that a properly filed lien attached to all of a delinquent taxpayer's *personal property* — regardless of whether the personal property was in the county where the tax execution was filed.  *Id.*

The Chrisley defendants concede that the Department of Revenue filed state tax executions for both Todd Chrisley and Julie Chrisley with the Clerk of the Fulton County Superior Court on March 2, 2017.  (Doc. 36-6 at 9-10); Ex. C.  Both documents stated, "to ALL and singular sheriffs of this state, the State Revenue

_____

[5] The current version of the statute states that a lien against all of the taxpayer's property attaches when the "tax execution [] is filed with the clerk of superior court *of the county of the last known address of the taxpayer appearing on the records of the department at the time the state tax execution is filed*." O.C.G.A. § 48-2-56(e)(1) (2018) (emphasis added).  That version of the statute was not in effect during the relevant time, but regardless, the Chrisleys have not alleged that their last known address to the Department of Revenue was not in Fulton County, where the Department of Revenue filed the tax execution.

Commissioner or his authorized representative, greetings:  You are commanded that of the good and chattels, or if none be found, then the land and tenements of [Todd and Julie Chrisley] you cause to be made by levy and sale the sum of the dollars and cents hereinafter shown . . . ." Ex. C.  The filing of those tax executions caused a lien to attach to all of the Chrisleys' personal property in the state of Georgia.  *See* O.C.G.A. § 48-2-56(e)(1).  Furthermore, the notice of state tax execution explicitly instructed the Chrisleys that '[i]f you disagree with the amount due, you may file an appeal with the Georgia Tax Tribunal or the appropriate Superior Court." (Doc. 36-6 at 1, 5); Ex. C.

*Finally*, the Georgia Assembly has given the Department of Revenue a powerful mechanism to collect the unpaid taxes:  levying a delinquent taxpayer's property.  O.C.G.A. § 48-2-55 (authorizing the Department of Revenue to levy property to collect unpaid taxes).  Under O.C.G.A. § 48-3-4,

> a defendant against whom an execution has been issued by a tax collector or tax commissioner may select the property upon which the fi. fa. shall be levied. It shall be within the discretion and power of the tax collector or tax commissioner, however, to have the proper officer levy the execution on any other property the tax collector or tax commissioner may select whenever he deems it necessary to secure the prompt collection of the tax fi. fa.

Importantly, "[i]f there is not sufficient property in the county in which the taxpayer resides to satisfy the tax execution, property of the taxpayer situated in *any other county* shall be subject to *levy and sale*."  O.C.G.A. § 48-3-5 (emphasis added).  Moreover, the Department of Revenue is not required to give a delinquent taxpayer notice before levying personal property—only afterwards

through a written entry of levy.  *See Anderson v. Ford*, 261 Ga. App. 34, 35 (2003).

Though they did not address the levy process in their motion, the Chrisleys

presumably do not dispute that the Department of Revenue seized *personal*

property, as opposed to *real* property, from the Gwinnett County warehouse

after filing the tax execution.  (Doc. 36 at 11).  *See also* Ex. D (entry of levy dated

March 28, 2017).

So what is the Chrisley defendants' complaint?  They say that the Department

of Revenue violated Georgia law by filing the tax executions in *Fulton* County

and then seizing personal property in *Gwinnett* County.  (Doc. 36 at 4-8).  But, as

noted above, the operative Georgia Code did not require (nor does it now

require) the Department of Revenue to file tax executions in the county where

*personal* property was located.  The Chrisleys cite no cases that support their

position and ignore the plain language of the law, which required county-

specific recording only for levies involving real property, which is not at issue

here.[6]  *Compare* O.C.G.A. § 48-2-56(e)(1) ("the lien for taxes . . . shall arise and

cover *all property* of the taxpayer as of the time a tax execution for these taxes is

entered upon the general execution docket") (emphasis added), *with* O.C.G.A.

§ 48-2-56(e) ("before the lien provided for in this subsection [quoted above] shall

apply to *real property* it shall be recorded *in the county where the real property is

located*") (emphasis added).

_____

[6] The Chrisleys do not cite to a single case where a Georgia court has held that
O.C.G.A. § 48-2-56 required state tax executions be filed in the county where
personal property was located.

The Chrisley defendants ask this Court to ignore blackletter law to *first* look to the plain language of the statute. *See Owens v. Samkle Auto. Inc.*, 425 F.3d 1318, 1321 (11th Cir. 2005) ("As in any case of statutory construction, our analysis begins with the 'language of the statute.' And where the statutory language provides a clear answer, it ends there as well.") (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S. Ct. 755, 142 L. Ed. 2d 881 (1999) (internal quotation omitted)); *Arby's Rest. Grp., Inc. v. McRae*, 292 Ga. 243, 245 (2012) ("Courts must afford the words of the statute their 'ordinary signification, [and] we must presume that the General Assembly meant what it said and said what it meant. [] Further, when interpreting a statute courts must give meaning and intent to all words, bearing in mind that [w]here the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden.") (internal citations and quotations omitted); *O'Neal v. State*, 288 Ga. 219, 222 n.2 (2010) (reading the "plain language of the statute" is a "basic rule[] of statutory construction").

The Chrisley defendants' interpretation is also flawed because it renders superfluous § 48-2-56(e)'s language stating that real property liens "shall be recorded in the county where the real property is located." If that was also required of liens against personal property, that statutory clause would be meaningless. That kind of interpretation is verboten. *See Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1303 (11th Cir. 2008) (It is a "cardinal principal of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or

insignificant."); *Kennedy v. Carlton*, 294 Ga. 576, 578 (2014) (Courts must avoid "a statutory construction that will render some of the statutory language mere surplusage; in considering the appropriate construction, this Court must seek to effectuate the intent of the General Assembly."); *Luangkhot v. State*, 292 Ga. 423, 427-28 (2013) ("where qualifying phrase [is] found in one statutory provision and not another, there is a presumption that the latter provision was not intended to be so qualified").

Because the Chrisley defendants' entire motion is predicated upon a misreading of the plain language of the Georgia Code, their motion to suppress should be denied on that ground alone.

## C. Even if the Chrisley defendants' improper interpretation of the Georgia tax laws was right, they fail to point to any reason the Court should invoke the Fourth Amendment's exclusionary rule.

### 1. The Eleventh Circuit has repeatedly held that a violation of a state statute is not a basis to suppress evidence.

The Chrisley defendants' do not allege that the Georgia tax collection process is unconstitutional.  Nor do they allege that they had in fact properly paid their state taxes all along.  Nor do they allege that the Department of Revenue was wrong to seize their personal property on that basis.  Their only claim—and the sole basis of their motion – is that the Department of Revenue supposedly violated a state statute by filing a lien in one county and seizing their personal property in an adjacent county. (Doc. 36 at 6-7)  However, the Eleventh Circuit has repeatedly held that "statutory violations by themselves are insufficient to justify the exclusion of any evidence."  *United States v. Thompson*, 936 F.2d 1249,

1251 (11th Cir. 1991). Even more importantly, "[f]ederal law, not state law, governs the admissibility of evidence in federal court and complaints that the evidence was obtained in violation of state law are of no effect." *United States v. Ortega*, 679 F. App'x 766, 767 (11th Cir. 2017). Accordingly, even if the Chrisley defendants' plainly incorrect interpretation of state tax law was correct, they have not pointed to anything but a technical violation of state law, which – standing alone – cannot form the basis of a federal motion to suppress evidence.

## 2. The Chrisley defendants fail to point to anything that would justify invoking the exclusionary rule.

Even if the Chrisley defendants could show that Department of Revenue officials violated state law *and also* violated their Fourth Amendment rights (which they cannot), they have still failed to establish that the Court should invoke the exclusionary rule to suppress highly probative evidence that federal agents properly seized pursuant to valid search warrants.

A court's finding that a search or seizure was unreasonable under the Fourth Amendment "does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140, 129 S. Ct. 695, 700, 172 L.Ed.2d 496 (2009). The purpose of the exclusionary rule is "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.*, 555 U.S. at 144, 129 S. Ct. at 702 (2009). It is a "'judicially created remedy' that is meant to prevent violations of the Fourth Amendment 'through its deterrent effect.'" *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (citing *United States v. Calandra*, 414 U.S. 338, 347-48, 94 S. Ct. 613, 619-20, 38 L.

Ed.2d 561 (1974)). And, as this Court has held, "[t]he Eleventh Circuit has emphasized that 'suppression of evidence has always been a last resort, not a first impulse.'" *Fountain v. Hyundai Motor Co.*, No. 1:15-CV-00446-ELR, 2016 U.S. Dist. LEXIS 119604, at *12-13 (N.D. Ga. Mar. 29, 2016) ("Indeed, '[t]he Supreme Court has consistently recognized that unbending application of the exclusionary sanction would impede unacceptably the truth-finding functions of judge and jury, and it has repeatedly emphasized that the rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application.'") (citing *Herring*, 555 U.S. at 141)).

The Chrisley defendants do not say the evidence should be suppressed because federal agents did or said a single thing wrong in obtaining or executing the two federal search warrants. Instead, they ask this Court to read a requirement into state law that flies in the face of basic statutory construction principles and then immediately jump to the extraordinary remedy of preventing the jury from seeing their physically doctored-up bank statements. That would indeed be a "costly toll upon truth-seeking." *See Hyundai Motor Co.*, 2016 U.S. Dist. LEXIS 119604, at *12-13. Other than vaguely alleging that they suspect two Department of Revenue employees of some form of misconduct, (Doc. 36 at 11-12), the Chrisleys fail to advance any argument whatsoever about how the filing of paperwork in the incorrect county was done "deliberate[ly], reckless[ly] . . . [or] grossly negligent[ly]" or is indicative of "systemic negligence." *See Herring*, 555 U.S. at 144, 129 S. Ct. at 702. Nor have they even attempted to argue that filing a lien against a delinquent taxpayer's personal property in the county

where that property is located (regardless of where the delinquent taxpayer lives) somehow protects against an unreasonable search or seizure.

Furthermore, the exclusionary rule is not necessary or appropriate since the Georgia Department of Revenue reasonably filed the liens and levied personal property in accordance with the plain language of the then-existing statute. As the Eleventh Circuit summarized in *United States v. Davis*, "the [Supreme] Court has gradually expanded [the] good-faith exception to accommodate objectively reasonable police reliance on:

- Subsequently invalidated search warrants, *Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677;

- Subsequently invalidated statutes, *Illinois v. Krull*, 480 U.S. 340 , 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987);

- Inaccurate court records, *Arizona v. Evans*, 514 U.S. 1 , 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995); and

- Negligently maintained police records, *Herring*, 129 S. Ct. 695, 172 L. Ed. 2d 496."

598 F.3d 1259, 1265 (11th Cir. 2010), *affirmed Davis v. United States,* 564 U.S. 229, 131 S. Ct. 2419, 180 L. Ed. 2d 285. Because a reasonable interpretation of the Georgia Code allowed revenue officials to file the state tax executions in Fulton County, there is no reason to invoke the exclusionary rule.

Finally, there is no conduct to "deter" given that the current version of the Georgia tax laws still do not require filing a tax execution in the same county as a delinquent taxpayer's personal property. *See Wigington*, 811 F.3d at 1267 (noting

that the exclusionary rule's purpose is deterrence).  The revised law, which took effect in 2018, clarified that a tax execution should be filed "with the clerk of superior court of the county of *the last known address of the taxpayer* appearing on the records of the department at the time the state tax execution is filed." O.C.G.A. § 48-2-56(e)(1) (2018) (emphasis added).  (Notably, the statute still contains a carve-out that requires the Department of Revenue to file a tax execution in the county where real property is located before levying that real property.)  Here, Department of Revenue officials filed the tax execution where the Chrisley defendants last lived: Fulton County.  Ex. C.  It is hard to fathom how "deterrence" can be accomplished when Department of Revenue officials would – again – be required to file state tax executions in Fulton County if confronted with the same situation.

Because the Chrisley defendants have not alleged a constitutional – nor even a statutory – violation, and because they fail to demonstrate that the "last resort" of the exclusionary rule is appropriate, their motion to suppress fails.

**D. The Chrisley defendants have not made allegations sufficient to warrant an evidentiary hearing.**

The Chrisley defendants are not entitled to an evidentiary hearing as there is no disagreement about the facts – namely, that the Georgia Department of Revenue seized personal property from a warehouse and that federal agents later obtained two valid search warrants for that property.  *See United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (holding that district court did not abuse its discretion in refusing evidentiary hearing on suppression motion where

defendant failed to raise disputed material issue of fact); *United States v. Mejia*, 953 F.2d 461 (9th Cir. 1991) (noting that suppression hearing unnecessary where parties dispute legal significance of undisputed facts).

To the extent the Court does order an evidentiary hearing, the United States respectfully seeks leave to offer additional arguments regarding the admissibility of these materials after developing a factual record.[7]  However, for the reasons stated above, the Chrisley defendants' motion can be denied based only on the pleadings.

---

[7] For instance, the Government would refute through testimony the Chrisleys' conclusory allegations that the Department of Revenue was an "adjunct" to the law enforcement team.  *See United States v. Laist*, 702 F.3d 608, 615 (11th Cir. 2012) ("*Leon* instructs us that the identity of the responsible party is indispensable to determining whether courts should apply exclusion as a remedy).  Similarly, evidence that would inevitably be discovered would not be subject to the exclusionary rule.  *See, e.g. United States v. Terzado-Madruga*, 897 F.2d 1099, 1113 (11th Cir. 1990).

## III.    Conclusion

For the reasons stated in this Response Brief, the Chrisley defendants' motion to suppress evidence should be denied.

Respectfully submitted,

BYUNG J. PAK
    *United States Attorney*


/s/THOMAS J. KREPP
    *Assistant United States Attorney*
    Georgia Bar No. 346781
    thomas.krepp@usdoj.gov


/s/ANNALISE K. PETERS
    *Assistant United States Attorney*
    Georgia Bar No. 550845
    annalise.peters@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Counsel for Todd Chrisley

Counsel for Julie Chrisley

Counsel for Peter Tarantino

February 7, 2020

/s/ THOMAS J. KREPP

THOMAS J. KREPP

*Assistant United States Attorney*