# EXHIBIT A

# CUBESMART
self storage + logistics

# GEORGIA SELF-STORAGE RENTAL AGREEMENT

THIS GEORGIA SELF-STORAGE RENTAL AGREEMENT ("Agreement") is executed by CUBESMART MANAGEMENT, LLC ("Agent") solely as agent for the owner of the facility described below ("Owner") and the OCCUPANT described below ("Occupant"). In this Agreement, Owner will be referred to as "We", "Us", or "Our", and Occupant will be referred to as "I", "You", "Your", "Yourself" or "My". This Agreement is effective on _____06/22/2014_____ ("Effective Date"). You and We agree as follows:

## OCCUPANT NAME & CONTACT INFORMATION:

| | |
|---|---|
| **Name:** | Julie Chrisley Hughes |
| **Address:** (*Residential*) | 10945 State Bridge Rd ALPHARETTA GA 30022 |
| **Home Phone #:** | 310-882-0957 |
| **Work Phone #:** | |
| **Cell Phone #:** | |
| **E-Mail Address*:** | jhughes6873@gmail.com |
| **Driver's License #:** | DL# State Exp 5120 - GA - Exp : 01/2019 |
| **Date of Birth:** | 01/12/1973 |
| **Occupant's Military Status:** | _____ Military Member (*military ID must be presented at time of rental*) If in Military, list Service Branch: _____ ✔ Non-Military Member |

*All written notices may be sent to Your e-mail address if legally permitted

## OWNER CONTACT INFORMATION:

| | |
|---|---|
| **Address:** | 3495 Lawrenceville Suwanee Road Suwanee GA 30024 |
| **Phone #:** | (770)271-3711 |
| **E-Mail Address:** | STORE0698@CUBESMART.COM |

## SPACE:

| | |
|---|---|
| **Storage Unit # ("Space"):** | 110 |
| **Size of Space:** (*Approximate*) | 10x25 |
| **Access/Gate Code #:** | 11073 |
| **Facility Address:** | 3495 Lawrenceville Suwanee Road Suwanee GA 30024 |
| **Temperature Controlled Space** | ____Yes  ✔ No |
| **If a vehicle (car, boat, trailer, motorcycle, etc.) is stored in the Space:** | Make: _____ Year: _____ Model: _____ Color: _____ VIN:_____ License Plate #:_____ State: _____ |

## AGENT*:

| | |
|---|---|
| **Name:** | |
| **Address:** | |
| **E-Mail Address:** | |

*Legally required notices will be mailed to person & address listed above (if any). Agent is **not** granted any rights under this Agreement.

## LIENHOLDER(S)* (*list any person/entity with a lien/security interest in any items stored or to be stored in the Space*):

| | |
|---|---|
| **Lienholder Name(s):** | |
| **Lienholder Address(es):** | |
| **Amount of Lien(s):** | |
| **Items Subject to Lien(s):** | |

*Attach separate page if necessary

## SUMMARY OF MONTHLY CHARGES AND APPLICABLE PROMOTION(S)*:

| | |
|---|---|
| Monthly Rent (must be paid on the Effective Date & on or before the same day of each subsequent calendar month): | 150.30 |
| Monthly Insurance Premium, if any: | 12.00 |
| Monthly Invoice Fee (Optional): | 0.00 |
| Promotion: | |
| **TOTAL MONTHLY AMOUNT DUE** (plus applicable taxes) | 162.30 |
| **RENT PAID THROUGH DATE** | 7/21/2014 |

*Excludes late fees & other charges that may result from a default or otherwise under this Agreement.

| | | |
|---|---|---|
| 1. | **SPACE** | You accept the Space "as is" condition. You have inspected the Space and agree that the Space is in good condition and suitable for Your storage needs. You will not modify or alter the Space without Our written consent which We may give or withhold at Our discretion. If You modify or alter the Space without Our written consent, You will pay to Us all costs that We incur to return the Space to its original condition. You will not allow any person or entity (other than You) to use the Space. |
| 2. | **LOCKING & SECURING THE SPACE** | We do not secure the Space or the items in the Space (collectively, the "<u>Space Contents</u>"). You must secure the Space and the Space Contents and You must lock the Space with Your lock. Any lock that You purchase from Us is Your lock. We may (but We are not obligated to) place a temporary lock on the Space if We find the Space unlocked, or for any other reason described in this Agreement, or for any other business reason in each case without causing a bailment. If You do not replace a temporary lock within 5 days after Our notice to You, You will be deemed to have purchased the temporary lock and You will be charged for the cost of the temporary lock and, if applicable, the cost to mail to You the keys for the temporary lock. |
| 3. | **TERM & AUTOMATIC RENEWAL** | The initial term of this Agreement is 1 month beginning on the Effective Date and ending at 11:59pm on the day before the 1 month anniversary of the Effective Date. This Agreement will renew automatically upon expiration of the initial term and each renewal term for successive 1 month terms until either You or We terminate this Agreement as permitted in this Agreement. |
| 4. | **RENT** | In consideration for Your right to use the Space You will pay to Us in advance, without demand, setoff, or reduction, the Monthly Rent shown on <u>Page 1</u> of this Agreement, together with any tax or other assessment levied on the Monthly Rent by any state, county, or local authority. The 1st installment of Monthly Rent is due on the Effective Date, and each subsequent installment of Monthly Rent is due on or before the monthly anniversary of the Effective Date. We will not send a monthly rent invoice to You unless You request a monthly rent invoice and pay to Us the Invoice Fee shown on <u>Schedule 1</u> attached to and made a part of this Agreement. We may increase the Monthly Rent amount by sending notice to You 30 days in advance of the increase. All fees, charges, and other amounts You are required to pay under this Agreement are considered "additional rent," and Monthly Rent and "additional rent" are collectively referred to as "<u>Rent</u>". All past due Rent must be paid in cash, a cashier's check, or a money order. You must obtain a receipt from Us for any Cash payments or else they are invalid. Rent payments may be sent to the Facility Address on <u>Page 1</u> of this Agreement. |
| 5. | **PARTIAL PAYMENTS** | Our acceptance of a partial Rent payment will not cure Your default or waive or preclude Our right to exercise Our remedies under this Agreement or otherwise regardless of any endorsement on, or instruction letter accompanying, the partial Rent payment, and any such endorsements or instruction letters are void and of no effect. Any partial Rent payment will be applied 1st to applicable fee(s) and then to the oldest outstanding Rent until exhausted. |
| 6. | **LATE PAYMENT & LATE FEE** | Any time We do not receive Rent when due, You will pay to Us late fee(s) in the amount and on the date(s) shown on <u>Schedule 1</u>. You agree that the late fee(s) is reasonable, is not a penalty, and has been agreed upon due to the difficulty of calculating actual damages We may sustain when Rent is paid late. |
| 7. | **INSUFFICIENT FUND FEE** | If any check, ACH, credit card, or other similar Rent payment is rejected, You will pay to Us the Insufficient Fund Fee shown on <u>Schedule 1</u> in addition to the late fee(s) described in <u>Paragraph 6</u>. |
| 8. | **LIENHOLDER; AGENT** | You represent and warrant that only the lienholder(s) listed on <u>Page 1</u> of this Agreement, if any, has a lien or security interest in the Space Contents. You will send written notice to Us of the name and address of any other party that obtains a lien or security interest in any Space Contents. If You provide on <u>Page 1</u> of this Agreement (or in a subsequent written notice delivered to Us in accordance with <u>Paragraph 33</u> below) the name and address of an agent to receive notices ("<u>Agent</u>"), We will send to the Agent a copy of all notices that We are required to send to You under the State Self-Service Storage Facility Act (specifically excluding bills and invoices). |
| 9. | **OWNER'S STATUTORY LIEN & ADMINISTRATIVE LIEN FEE** | **PURSUANT TO THE STATE SELF-SERVICE STORAGE FACILITY ACT, WE HAVE A LIEN ON ALL SPACE CONTENTS FOR RENT, LABOR, OR OTHER CHARGES, PRESENT OR FUTURE, IN RELATION TO THE SPACE CONTENTS, AND FOR EXPENSES NECESSARY FOR THE PRESERVATION OF THE SPACE CONTENTS, OR FOR EXPENSES REASONABLY INCURRED IN THE SALE OR OTHER DISPOSITION OF THE SPACE CONTENTS. <u>THE SPACE CONTENTS WILL BE SOLD OR OTHERWISE DISPOSED OF IF NO PAYMENT HAS BEEN RECEIVED FOR A CONTINUOUS 30 DAY PERIOD AFTER DEFAULT.</u>** You will pay to Us the Administrative Lien Fee on the date and in the amount shown on <u>Schedule 1</u> to reimburse Us for Our internal costs to prepare for, and, if applicable, to sell or dispose of the Space Contents (whether or not We actually sell or dispose of the Space Contents). You agree that this fee is reasonable, does not constitute a penalty, and has been agreed upon due to the difficulty of calculating these internal costs. You will also pay to Us any costs We incur from unrelated third parties to enforce Our lien rights. |
| 10. | **DEFAULT, REMEDIES** | You will be in default of this Agreement if (i) We do not receive any Rent when due, (ii) You fail or refuse to perform any of Your other obligations under, or violate any of the terms of, this Agreement, (iii) in Our opinion, You have acted in an abusive or harassing manner towards Our employees, agents, contractors, guests, customers, tenants, or occupants, and/or (iv) You are in default of any other |

agreement(s) between You and Us. If You are in default of this Agreement, We may, at Our option (a) immediately terminate this Agreement, (b) if it is a monetary default, commence to sell, and sell, the Space Contents as set forth in Paragraph 9 and this Agreement will terminate on the sale date (and, if the Space Contents do not sell, We may dispose of the Space Contents), and/or (c) exercise any other remedy in this Agreement, at law, or in equity. You will pay to Us any attorneys' fees, court costs, or other expenses that We incur in connection with Your default.

| 11. **PERMITTED USE & PROHIBITED ITEMS** | The Space may only be used for the storage of Your own personal property but specifically excluding (i) Prohibited Items (defined below) (ii) items with an aggregate value of more than $5,000.00 unless We have consented in writing, or (iii) items with special or sentimental value or with unknown immediate resale or market value such as collectibles, heirlooms, jewelry, furs, works of art, books, or writings. UNLESS WE HAVE AGREED IN WRITING THAT YOU MAY STORE ITEMS IN THE SPACE WITH AN AGGREGATE VALUE OF MORE THAN $5,000, THE SPACE CONTENTS WILL BE DEEMED TO HAVE AN AGGREGATE VALUE OF NOT MORE THAN $5,000. You will NOT use the Space (a) for residential purposes such as sleeping or living in the Space; (b) to conduct a business, occupation, trade, or hobby; (c) to manufacture, exhibit, or sell items; or (d) for any illegal or illicit purposes. **You will NOT store any of the following "Prohibited Items" in the Space:**<br>• animals, food or other perishable items;<br>• items that, in Our determination, attract vermin or create a nuisance;<br>• items that, in Our determination, have a noxious odor or stench;<br>• items that, in Our determination, danger the safety or health of people or the environment;<br>• illegal drugs, firearms, explosives, stolen, or counterfeit goods; and/or<br>• substances that are toxic, ignitable, reactive, volatile, flammable, explosive, hazardous, or corrosive or that are, at any time, regulated by state, Federal or local authorities;<br>If We believe there are Prohibited Items in the Space, We may, in addition to any other remedies under this Agreement, enter the Space (with or without law enforcement or other governmental authorities), remove and dispose of any Prohibited Items, and charge to Your account any costs We incur to do so. You will not connect to electricity (including plugging into any electrical outlets), cable, internet, and/or any other utilities serving the Space or the Facility unless We have, in our sole discretion, provided written consent to You. |
| --- | --- |
| 12. **ACCESS & DENIAL OF ACCESS** | You will have access to the Space during Our business hours which are posted in Our office at the Facility. **IF YOU DO NOT PAY RENT WHEN DUE, WE MAY, WITHOUT NOTICE, DENY YOU ACCESS TO THE SPACE BY DEACTIVATING YOUR ELECTRIC GATE ACCESS CODE, IF ANY, AND/OR OVERLOCKING THE SPACE; PROVIDED, HOWEVER, THAT WE WILL NOT OVERLOCK YOUR SPACE UNTIL THE DATE SHOWN ON SCHEDULE 1.** If You cut or tamper with any overlock, You will pay to Us the cost to replace the overlock. If Rent is 30 days or more past due, We will remove Your lock from the Space to prepare for the sale of the Space Contents. If We receive all past due Rent before the sale date, We will reactivate Your access code, if applicable, and remove Our overlock from the Space. If Your lock was removed, You will secure the Space with a new lock or We will, without any obligation, place a temporary lock on the Space. We may also deny You access to the Space if You are in default of any other terms of this Agreement until You have cured the default. |
| 13. **TERMINATION** | Either You or We may terminate this Agreement by providing written notice to the other ("Termination Notice") at least 10 days before the end of any monthly term. If a Termination Notice is received less than 10 days before the end of a monthly term, then this Agreement will terminate at the end of the next monthly term. If You vacate the Space before this Agreement terminates, You will not receive a Rent refund. If We find the Space unlocked and vacant (except for what appears, in our determination, to be trash), We may assume that You terminated this Agreement, dispose of the trash, and rent the Space to another. |
| 14. **MOVING OUT; HOLDOVER; & HOLDOVER RENT** | Before this Agreement terminates You must remove Your lock and all Space Contents from the Space, and You must repair, to Our reasonable satisfaction, any damage that You or Your invitees have caused. If You do not repair this damage, You will pay to Us any costs that We incur to repair the damage. If Your lock and/or any Space Contents remain in or about the Space after this Agreement terminates, or if You have not completed any required repairs, We may, at Our option, either (1) deem Your lock and/or Space Contents abandoned and dispose of these at Your cost, or (2) consider You a holdover occupant at sufferance from the termination date until You properly move out of and/or repair the Space ("Holdover Period"). The terms of this Agreement will apply during any Holdover Period except that Monthly Rent will automatically increase to 200% of the Monthly Rent in effect immediately before the Holdover Period. We may also exercise any remedies in this Agreement, at law, or in equity. |
| 15. **NO BAILMENT** | This Agreement does not create a "bailment"; We are not a warehouseman engaged in the business of storing goods for hire; We do not assume custody of, or control over, the Space Contents (even if We enter or overlock the Space); and We are not responsible to safekeep or return the Space Contents. |
| 16. **INSURANCE; RELEASE; &** | **YOU WILL MAINTAIN INSURANCE OR A PROTECTION PLAN COVERING THE LOSS OF, OR DAMAGE TO, THE SPACE CONTENTS. WE DO NOT INSURE THE SPACE** |

| | |
|---|---|
| **WAIVER OF SUBROGATION** | **CONTENTS, AND WE ARE NOT LIABLE FOR ANY LOSS OF, OR DAMAGE TO, THE SPACE CONTENTS. YOU BEAR THE ENTIRE RISK OF LOSS WITH RESPECT TO THE SPACE CONTENTS.** You waive and release Us, Agent, CubeSmart, L.P., and each of their respective officers, directors, employees, subsidiaries, parents, affiliates, successors, and assigns (collectively, "<u>Released Parties</u>") from any and all claims for the loss of, or damage to, the Space Contents whether by reason of fire, water, elements, acts of God, theft, burglary, vandalism, mysterious disappearance, mold, mildew, rodents, insects, any additional services provided by Us, and/or for any other reason including strict liability or Our negligence, and regardless of whether You maintain insurance or a protection plan or the amount of any proceeds payable by Your insurance or protection plan provider. You waive any right of subrogation Your insurance company may have against any of the Released Parties, and You will cause Your insurance policy to reflect this waiver. This Paragraph is a specific bargained for condition of this Agreement and We would not have entered into this Agreement without it. |
| **17. INDEMNITY** | You will indemnify, defend, and hold each of the Released Parties harmless from and against any and all losses, claims, actions, causes of action, costs, expenses (including, without limitation, attorneys' fees and court costs), liabilities, and/or damages arising out of (i) Your or Your agents or invitees acts or omissions, (ii) Your default under this Agreement, (iii) Your or Your agents or invitees use of the Space or the Facility, (iv) any damage to or loss of the Space Contents, and/or (v) the sale of any Space Contents after Your default, including, without limitation any Files described in <u>Paragraph 28</u>. |
| **18. CONSEQUENTIAL DAMAGES** | The Released Parties are not liable for, and You release each Released Party from, any indirect, incidental, special, or consequential damages, including, without limitation, emotional or sentimental attachment, arising out of the Space or this Agreement even if a Released Party has been advised of the possibility of such damages. |
| **19. LIMITATION OF LIABILITY** | **THE MAXIMUM AGGREGATE LIABILITY OF THE RELEASED PARTIES, IF ANY, IN CONNECTION WITH THE SPACE CONTENTS IS $5,000, AND YOU WAIVE THE RIGHT TO CLAIM SUCH DAMAGES IN ANY AMOUNT ABOVE $5,000.00.** |
| **20. RULES AND REGULATIONS** | You will obey all reasonable rules and regulations for the Facility, and You will conduct Yourself in a businesslike manner with Our agents and employees. We may modify, amend, or supplement Our rules and regulations at any time. |
| **21. NO SUBLETTING OR ASSIGNMENT** | You will not assign this Agreement or sublease the Space without Our written consent which We may withhold at Our discretion. Any attempt by You to assign this Agreement or sublease the Space without Our written consent is void. You may be required to pay an administrative transfer fee as shown on <u>Schedule 1</u> with respect to any assignment or sublease. |
| **22. REPAIRS & INSPECTION** | You will give Us access to the Space within 10 days after We notify You that We need access to the Space to perform any non-emergency (i) repair, maintenance, or other work or (ii) inspection. If, in Our opinion, We need access to the Space due to an emergency (or if You do not give Us access to the Space within the 10 day period referenced above), We may, without notice (or additional notice) and without incurring any liability, remove Your lock, access the Space, perform the work or inspection, and place a temporary lock on the Space. |
| **23. RELOCATION** | If We need to use the Space for any reason, You will relocate the Space Contents to a different space at the Facility or at another facility within 30 days after Our notice to You ("<u>Space Relocation</u>"). If, in Our opinion, the Space Relocation is an emergency (or if You do not perform the Space Relocation within 30 days after Our notice to You), We may, without notice (or additional notice) and without incurring any liability, remove Your lock, access the Space, perform the Space Relocation, and place a temporary lock on the Space. After a Space Relocation, the relocated space will be deemed to be the "Space" under this Agreement. You will pay to Us all costs We incur to perform a Space Relocation unless it resulted from an emergency not caused in any way by You. |
| **24. SECURITY SYSTEMS** | Any security systems at the Facility including, without limitation, fencing, gates, and video cameras are for the protection of Our property not Yours. These security systems may not be on, monitored, or operational, and We are not liable for any loss You may suffer if any of these security systems fail. You will not rely on any of Our security systems to protect the Space Contents, and You will not substitute any of Our security systems for Your purchase of insurance, a suitable lock, or other security measures. |
| **25. ELECTRIC GATES** | You waive and release each of the Released Parties from any and all claims for loss of, or damage to You, Your passengers, and/or Your vehicle if You follow another car though any electric gates at the Facility without using Your gate code, or if You otherwise use the electric gates improperly. If You damage any gates at the Facility, You will pay to Us all costs We incur to repair and/or replace the gates. |
| **26. TEMPERATURE** | We do not control the temperature in the Space unless the Space is identified as "temperature controlled" on <u>Page 1</u> of this Agreement. If the Space is identified as "temperature controlled", we will use reasonable efforts to maintain a temperature in the Space of between 55 and 80 degrees Fahrenheit. Mold and mildew may grow on the Space Contents regardless of whether the Facility is temperature controlled. You will regularly inspect the Space and protect the Space Contents from the growth of mold or mildew. We are not liable for the growth of mold or mildew on the Space Contents. |
| **27. PETS** | No pets are allowed in the Facility other than trained service dogs. If You bring a pet to the Facility, You will be responsible for any damages that Your pet causes whether to person or property. |

| 28. STORAGE OF FILES/PERSONAL INFORMATION | We are not responsible and You assume all risk, for any injury, breach, damage, cost, or liability that You or anyone else may suffer if the Space Contents include any Files (defined below) and any of those Files are lost, damaged, destroyed, or sold. If You are in default We may, without any obligation (i) require that You remove Files from the Space within 5 days after Our notice to You, or (ii) after the Space Contents sale date set forth in any notice to You, destroy or dispose of Files, and You will pay to Us any costs We incur to destroy or dispose of Files. "Files" are any documents, film, or electronic data containing any personal information relating to You or Your clients, customers, patients, or others such as social security numbers; credit card, debit card, bank account or passport information; or tax, employment, medical, or legal records. |
|---|---|
| 29. VEHICLE STORAGE | If the Space Contents include a motorized vehicle such as a car, boat, trailer, motorcycle, snow mobile, wave runner, or other vehicle governed by applicable motor vehicle laws, the vehicle must be in good, operational condition and stored over drip trays or cardboard to prevent fluids from leaking into the Space. If the vehicle is stored indoors, the gas tank must be drained prior to storage. At Our request, You will place identification stickers, decals, or tags in the vehicle. If You are in default or if the vehicle remains at the Facility after termination of this Agreement, We may, without notice and without incurring any liability, have the vehicle towed from the Facility at Your expense and/or relocate the vehicle to a different space or to a different facility. If fluids from the vehicle leak into the Space or Facility, You will, at Your expense, remediate such leak in accordance with all applicable laws. |
| 30. LAW ENFORCEMENT DIRECTIVES | If We receive what appears to be a search warrant, We may, without incurring any liability, remove Your lock, allow the Space to be searched and, if applicable, the Space Contents to be seized, and We may, without any obligation, place a temporary lock on the Space. If We receive what appears to be a subpoena or if what appears to be a law officer or governmental official requests documents or information about You or the Space, We may provide such information or documents (other than credit reports or other similar financial information, if any) without incurring any liability. |
| 31. ADDITIONAL SERVICES | Any additional services that We may provide to You at the Facility or in connection with the Space are subject to Paragraphs 15 through 20, inclusive, together with any other applicable provisions of this Agreement. Any fees for these additional services are considered Rent under this Agreement. You will secure any equipment (such as remote controls or other portable electronic devices) that We may provide in connection with any additional services, and You will be solely responsible for any damages, loss, or costs resulting from or arising out of the loss of or damage to any such equipment. You will pay to Us the cost to replace and/or repair any lost or damaged equipment. |
| 32. LIMITATION OF WARRANTIES | WE DO NOT MAKE, AND WE EXPRESSLY DISCLAIM, ANY WARRANTY OF ANY KIND IN CONNECTION WITH THE FACILITY, THE SPACE, ANY ITEMS THAT YOU PURCHASE FROM US (WHICH MAY INCLUDE LOCKS, BOXES, AND PACKING SUPPLIES), AND/OR OUR SERVICES INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, HABITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. YOU WAIVE ANY EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THE FACILITY, THE SPACE, ANY ITEMS THAT YOU PURCHASE FROM US (WHICH MAY INCLUDE LOCKS, BOXES, AND PACKING SUPPLIES), AND/OR OUR SERVICES. |
| 33. NOTICES; ADDRESS CHANGE; & ADVERTISEMENTS | Any notices, demands, or requests from You to Us will be in writing and sent by certified mail RRR and postage prepaid to the Facility Address on Page 1 of this Agreement. Unless otherwise required by the state's self-service storage law, any notices, demands, or requests from Us to You will be by phone, e-mail, or regular mail to Your street address, phone number, or e-mail address on Page 1 of this Agreement. You will notify Us immediately in writing if You move or change Your phone number or e-mail address; otherwise, You will not receive important notices. We may, without any obligation, advertise on Our website (www.cubesmart.com or www.cubesmart.com/storage-auctions/) the sale of the Space Contents as described in Paragraph 9. This may be the only advertisement of the Space Contents. |
| 34. PERMISSION TO CALL & E-MAIL | You and We have entered into a business relationship and You agree that We may contact You by phone, e-mail, or otherwise with business related communications. |
| 35. CHANGES TO AGREEMENT | We may change the terms of this Agreement at any time upon 30 days prior notice to You. Your continued use of the Space after this 30 day period means You agree to and accept the changes. |
| 36. ATTORNEY FEES | If We retain counsel to enforce any of Our rights under this Agreement, You will pay Our reasonable attorneys' fees, court costs, and expenses whether incurred during or after the term of this Agreement. |
| 37. OCCUPANT'S REPRESENTATION AND WARRANTY | You represent and warrant that all information provided by You in connection with this Agreement is complete, true, and accurate, and that (i) You have at all times been, are now, and will in the future be, in compliance with U.S. Executive Order 13224 ("Order"), and no action, proceeding, investigation, charge, claim, report, or notice has been filed, commenced, or threatened against You alleging any failure to so comply; (ii) You have no knowledge or notice of any fact, event, circumstance, situation, or condition that could reasonably be expected to result in (a) any action, proceeding, investigation, charge, claim, report, or notice being filed, commenced, or threatened against You alleging any failure to comply with the Order, or (b) the imposition of any civil or criminal penalty against You for any failure |

| | to so comply and (iii) You are not included in the OFAC List in the Order or in 31 CFR Ch V (Part 595) Appendix A (i.e., You are not a Blocked Person, Specially Designated National, Terrorist, or Global Terrorist, or part of a Foreign Terrorist Organization or Specially Designated Narcotics Trafficker, etc.). |
|---|---|
| **38. MISCELLANEOUS** | This Agreement is the entire agreement between You and Us. You are not relying on anything We have told You if it is different from what is written in this Agreement. You have read and understand all of the terms of, and had the opportunity to consult an attorney before signing, this Agreement. This Agreement binds and inures to the benefit of You, Us, and Our respective successors, heirs, administrators, legal representatives and permitted assigns. YOU AND WE EACH WAIVE OUR RIGHTS TO A TRIAL BY JURY IN ANY ACTION ARISING OUT OF THIS AGREEMENT. This Agreement is governed by the laws of the state in which the Facility is located regardless of its conflict of laws provisions or Your state of residence. If any part of this Agreement is unenforceable, the remaining parts of this Agreement will remain valid and enforceable. Any claim, cause of action, liability or obligation (including without limitation payment and reimbursement obligations) under this Agreement arising during the term of this Agreement will, to the extent not fully performed, survive the expiration or termination of this Agreement. Our delay in taking any action in connection with Your default does not constitute a waiver of the default. Our pursuit of one or more remedies does not preclude Us from pursuing any other remedy. |

You and We, intending to be legally bound, have signed this Agreement as of the Effective Date. **YOU AGREE THAT OUR LIABILITY REGARDING THE SPACE CONTENTS, IF ANY, IS LIMITED TO $5,000 AS DESCRIBED IN <u>PARAGRAPH 19</u>.**

CUBESMART MANAGEMENT, LLC, as Owner's agent                    OCCUPANT

By: _____/S/_____          _____
            Manager

**SCHEDULE E TO**
**GEORGIA SELF-STORAGE RENTAL AGREEMENT**

<u>Fees and Important Dates of the Effective Date*</u>

| Description of Fee or Action | Fee Amount | Date Fee Assessed / Date Action Taken |
|---|---|---|
| Invoice Fee (¶4) | $1.00 per month | Due on same day each month as Monthly Rent. |
| Late Fee (¶6) | $25.00 | • $10.00 if We do not receive all outstanding Rent by 11:59pm local time on the **6th** day after it became due.<br>• Additional $15.00 if We do not receive all outstanding Rent by 11:59pm local time on the **16th** day after it became due. |
| Insufficient Fund Fee (¶7) | $30.00 | Anytime a check, ACH, credit card, or other similar Rent payment is reversed, returned, or refused due to insufficient funds, balance, or otherwise. |
| Administrative Lien Fee (¶9) | $110 | If We do not receive all Rent by 11:59pm local time on the **30th** day after it became due. |
| Date We will overlock the Space or otherwise deny You access to the Space (¶12) | N/A | After You have been in default under the Agreement for **7** continuous days. |
| Administrative Transfer Fee (¶21) | $19 | Upon Our approval of an assignment of this Agreement or sublease of the Space. |

*The above Schedule does not include all fees, expenses, or charges that You may be required to pay under the Agreement. We reserve the right to increase, decrease, supplement, or otherwise modify the above fees and/or dates by posting a notice of any such change in Our office at the Facility 30 days before any such increase, decrease, supplement, or modification becomes effective.

**CUBESMART**
self storage + logistics

# GEORGIA SELF-STORAGE RENTAL AGREEMENT

THIS GEORGIA SELF-STORAGE RENTAL AGREEMENT ("Agreement") is executed by CUBESMART MANAGEMENT, LLC ("Agent") solely as agent for the owner of the facility described below ("Owner") and the OCCUPANT described below ("Occupant"). In this Agreement, Owner will be referred to as "We", "Us", or "Our", and Occupant will be referred to as "I", "You", "Your", "Yourself" or "My". This Agreement is effective on _____07/28/2014_____ ("Effective Date"). You and We agree as follows:

**OCCUPANT NAME & CONTACT INFORMATION:**

| | |
|---|---|
| **Name:** | Julie Chrisley Hughes |
| **Address:** (*Residential*) | 10945 State Bridge Rd ALPHARETTA GA 30022 |
| **Home Phone #:** | 310-882-0957 |
| **Work Phone #:** | |
| **Cell Phone #:** | |
| **E-Mail Address\*:** | jhughes6873@gmail.com |
| **Driver's License #:** | DL# State Exp 5120 - FL - Exp : 01/2019 |
| **Date of Birth:** | 01/12/1973 |
| **Occupant's Military Status:** | _____ Military Member (*military ID must be presented at time of rental*) If in Military, list Service Branch: _____ **✔** Non-Military Member |

*\*All written notices may be sent to Your e-mail address if legally permitted*

**OWNER CONTACT INFORMATION:**

| | |
|---|---|
| **Address:** | 3495 Lawrenceville Suwanee Road Suwanee GA 30024 |
| **Phone #:** | (770)271-3711 |
| **E-Mail Address:** | STORE0698@CUBESMART.COM |

**SPACE:**

| | |
|---|---|
| **Storage Unit # ("Space"):** | 116 |
| **Size of Space:** (*Approximate*) | 10x30 |
| **Access/Gate Code #:** | 508 |
| **Facility Address:** | 3495 Lawrenceville Suwanee Road Suwanee GA 30024 |
| **Temperature Controlled Space** | ____Yes **✔** No |
| **If a vehicle (car, boat, trailer, motorcycle, etc.) is stored in the Space:** | **Make:** _____ **Year:** _____ **Model:** _____ **Color:** _____ **VIN:**_____ **License Plate #:**_____ **State:** _____ |

**AGENT\*:**

| | |
|---|---|
| **Name:** | |
| **Address:** | |
| **E-Mail Address:** | |

*\*Legally required notices will be mailed to person & address listed above (if any). Agent is not granted any rights under this Agreement.*

**LIENHOLDER(S)\*** (*list any person/entity with a lien/security interest in any items stored or to be stored in the Space*):

| | |
|---|---|
| **Lienholder Name(s):** | |
| **Lienholder Address(es):** | |
| **Amount of Lien(s):** | |
| **Items Subject to Lien(s):** | |

*\*Attach separate page if necessary*

## SUMMARY OF MONTHLY CHARGES AND APPLICABLE PROMOTION(S)\*:

| | |
|---|---|
| Monthly Rent (must be paid on the Effective Date & on or before the same day of each subsequent calendar month): | 184.00 |
| Monthly Insurance Premium, if any: | 12.00 |
| Monthly Invoice Fee (Optional): | 0.00 |
| Promotion: | |
| **TOTAL MONTHLY AMOUNT DUE** (plus applicable taxes) | 196.00 |
| **RENT PAID THROUGH DATE** | 7/28/2014 |

*\*Excludes late fees & other charges that may result from a default or otherwise under this Agreement.*

| 1. | SPACE | You accept the Space in its "as-is" condition. You have inspected the Space and agree that the Space is in good condition and suitable for Your storage needs. You will not modify or alter the Space without Our written consent which We may give or withhold at Our discretion. If You modify or alter the Space without Our written consent, You will pay to Us all costs that We incur to return the Space to its original condition. You will not allow any person or entity (other than You) to use the Space. |
|---|---|---|
| 2. | LOCKING & SECURING THE SPACE | We do not secure the Space or the items in the Space (collectively, the "Space Contents"). You must secure the Space and the Space Contents and You must lock the Space with Your lock. Any lock that You purchase from Us is Your lock. We may (but We are not obligated to) place a temporary lock on the Space if We find the Space unlocked, or for any other reason described in this Agreement, or for any other business reason in each case without causing a bailment. If You do not replace a temporary lock within 5 days after Our notice to You, You will be deemed to have purchased the temporary lock and You will be charged for the cost of the temporary lock and, if applicable, the cost to mail to You the keys for the temporary lock. |
| 3. | TERM & AUTOMATIC RENEWAL | The initial term of this Agreement is 1 month beginning on the Effective Date and ending at 11:59pm on the day before the 1 month anniversary of the Effective Date. This Agreement will renew automatically upon expiration of the initial term and each renewal term for successive 1 month terms until either You or We terminate this Agreement as permitted in this Agreement. |
| 4. | RENT | In consideration for Your right to use the Space You will pay to Us in advance, without demand, setoff, or reduction, the Monthly Rent shown on <u>Page 1</u> of this Agreement, together with any tax or other assessment levied on the Monthly Rent by any state, county, or local authority. The 1st installment of Monthly Rent is due on the Effective Date, and each subsequent installment of Monthly Rent is due on or before the monthly anniversary of the Effective Date. We will not send a monthly rent invoice to You unless You request a monthly rent invoice and pay to Us the Invoice Fee shown on <u>Schedule 1</u> attached to and made a part of this Agreement. We may increase the Monthly Rent amount by sending notice to You 30 days in advance of the increase. All fees, charges, and other amounts You are required to pay under this Agreement are considered "additional rent," and Monthly Rent and "additional rent" are collectively referred to as "<u>Rent</u>". All past due Rent must be paid in cash, a cashier's check, or a money order. You must obtain a receipt from Us for any Cash payments or else they are invalid. Rent payments may be sent to the Facility Address on <u>Page 1</u> of this Agreement. |
| 5. | PARTIAL PAYMENTS | Our acceptance of a partial Rent payment will not cure Your default or waive or preclude Our right to exercise Our remedies under this Agreement or otherwise regardless of any endorsement on, or instruction letter accompanying, the partial Rent payment, and any such endorsements or instruction letters are void and of no effect. Any partial Rent payment will be applied 1st to applicable fee(s) and then to the oldest outstanding Rent until exhausted. |
| 6. | LATE PAYMENT & LATE FEE | Any time We do not receive Rent when due, You will pay to Us late fee(s) in the amount and on the date(s) shown on <u>Schedule 1</u>. You agree that the late fee(s) is reasonable, is not a penalty, and has been agreed upon due to the difficulty of calculating actual damages We may sustain when Rent is paid late. |
| 7. | INSUFFICIENT FUND FEE | If any check, ACH, credit card, or other similar Rent payment is rejected, You will pay to Us the Insufficient Fund Fee shown on <u>Schedule 1</u> in addition to the late fee(s) described in <u>Paragraph 6</u>. |
| 8. | LIENHOLDER; AGENT | You represent and warrant that only the lienholder(s) listed on <u>Page 1</u> of this Agreement, if any, has a lien or security interest in the Space Contents. You will send written notice to Us of the name and address of any other party that obtains a lien or security interest in any Space Contents. If You provide on <u>Page 1</u> of this Agreement (or in a subsequent written notice delivered to Us in accordance with <u>Paragraph 33</u> below) the name and address of an agent to receive notices ("<u>Agent</u>"), We will send to the Agent a copy of all notices that We are required to send to You under the State Self-Service Storage Facility Act (specifically excluding bills and invoices). |
| 9. | OWNER'S STATUTORY LIEN & ADMINISTRATIVE LIEN FEE | **PURSUANT TO THE STATE SELF-SERVICE STORAGE FACILITY ACT, WE HAVE A LIEN ON ALL SPACE CONTENTS FOR RENT, LABOR, OR OTHER CHARGES, PRESENT OR FUTURE, IN RELATION TO THE SPACE CONTENTS, AND FOR EXPENSES NECESSARY FOR THE PRESERVATION OF THE SPACE CONTENTS, OR FOR EXPENSES REASONABLY INCURRED IN THE SALE OR OTHER DISPOSITION OF THE SPACE CONTENTS. THE SPACE CONTENTS WILL BE SOLD OR OTHERWISE DISPOSED OF IF NO PAYMENT HAS BEEN RECEIVED FOR A CONTINUOUS 30 DAY PERIOD AFTER DEFAULT.** You will pay to Us the Administrative Lien Fee on the date and in the amount shown on <u>Schedule 1</u> to reimburse Us for Our internal costs to prepare for, and, if applicable, to sell or dispose of the Space Contents (whether or not We actually sell or dispose of the Space Contents). You agree that this fee is reasonable, does not constitute a penalty, and has been agreed upon due to the difficulty of calculating these internal costs. You will also pay to Us any costs We incur from unrelated third parties to enforce Our lien rights. |
| 10. | DEFAULT, REMEDIES | You will be in default of this Agreement if (i) We do not receive any Rent when due, (ii) You fail or refuse to perform any of Your other obligations under, or violate any of the terms of, this Agreement, (iii) in Our opinion, You have acted in an abusive or harassing manner towards Our employees, agents, contractors, guests, customers, tenants, or occupants, and/or (iv) You are in default of any other |

agreement, or between You and Us. If You are in default of this Agreement, We may, at Our option (a) immediately terminate this Agreement, (b) if it is a monetary default, commence to sell, and sell, the Space Contents as set forth in <u>Paragraph 9</u> and this Agreement will terminate on the sale date (and, if the Space Contents do not sell, We may dispose of the Space Contents), and/or (c) exercise any other remedy in this Agreement, at law, or in equity. You will pay to Us any attorneys' fees, court costs, or other expenses that We incur in connection with Your default.

| 11. **PERMITTED USE & PROHIBITED ITEMS** | The Space may only be used for the storage of Your own personal property <u>but specifically excluding</u> (i) Prohibited Items (defined below) (ii) items with an aggregate value of more than $5,000.00 unless We have consented in writing, or (iii) items with special or sentimental value or with unknown immediate resale or market value such as collectibles, heirlooms, jewelry, furs, works of art, books, or writings. UNLESS WE HAVE AGREED IN WRITING THAT YOU MAY STORE ITEMS IN THE SPACE WITH AN AGGREGATE VALUE OF MORE THAN $5,000, THE SPACE CONTENTS WILL BE DEEMED TO HAVE AN AGGREGATE VALUE OF NOT MORE THAN $5,000. You will NOT use the Space (a) for residential purposes such as sleeping or living in the Space; (b) to conduct a business, occupation, trade, or hobby; (c) to manufacture, exhibit, or sell items; or (d) for any illegal or illicit purposes. **<u>You will NOT store any of the following "Prohibited Items" in the Space:</u>** <br>• animals, food or other perishable items; <br>• items that, in Our determination, attract vermin or create a nuisance; <br>• items that, in Our determination, have a noxious odor or stench; <br>• items that, in Our determination, danger the safety or health of people or the environment; <br>• illegal drugs, firearms, explosives, stolen, or counterfeit goods; and/or <br>• substances that are toxic, ignitable, reactive, volatile, flammable, explosive, hazardous, or corrosive or that are, at any time, regulated by state, Federal or local authorities; <br>If We believe there are Prohibited Items in the Space, We may, in addition to any other remedies under this Agreement, enter the Space (with or without law enforcement or other governmental authorities) remove and dispose of any Prohibited Items, and charge to Your account any costs We incur to do so. You will not connect to electricity (including plugging into any electrical outlets), cable, internet, and/or any other utilities serving the Space or the Facility unless We have, in our sole discretion, provided written consent to You. |
|---|---|
| 12. **ACCESS & DENIAL OF ACCESS** | You will have access to the Space during Our business hours which are posted in Our office at the Facility. **IF YOU DO NOT PAY RENT WHEN DUE, WE MAY, WITHOUT NOTICE, DENY YOU ACCESS TO THE SPACE BY DEACTIVATING YOUR ELECTRIC GATE ACCESS CODE, IF ANY, AND/OR OVERLOCKING THE SPACE; PROVIDED, HOWEVER, THAT WE WILL NOT OVERLOCK YOUR SPACE UNTIL THE DATE SHOWN ON <u>SCHEDULE 1</u>.** If You cut or tamper with any overlock, You will pay to Us the cost to replace the overlock. If Rent is 30 days or more past due, We will remove Your lock from the Space to prepare for the sale of the Space Contents. If We receive all past due Rent before the sale date, We will reactivate Your access code, if applicable, and remove Our overlock from the Space. If Your lock was removed, You will secure the Space with a new lock or We will, without any obligation, place a temporary lock on the Space. We may also deny You access to the Space if You are in default of any other terms of this Agreement until You have cured the default. |
| 13. **TERMINATION** | Either You or We may terminate this Agreement by providing written notice to the other ("<u>Termination Notice</u>") at least 10 days before the end of any monthly term. If a Termination Notice is received less than 10 days before the end of a monthly term, then this Agreement will terminate at the end of the next monthly term. If You vacate the Space before this Agreement terminates, You will not receive a Rent refund. If We find the Space unlocked and vacant (except for what appears, in our determination, to be trash), We may assume that You terminated this Agreement, dispose of the trash, and rent the Space to another. |
| 14. **MOVING OUT; HOLDOVER; & HOLDOVER RENT** | Before this Agreement terminates You must remove Your lock and all Space Contents from the Space, and You must repair, to Our reasonable satisfaction, any damage that You or Your invitees have caused. If You do not repair this damage, You will pay to Us any costs that We incur to repair the damage. If Your lock and/or any Space Contents remain in or about the Space after this Agreement terminates, or if You have not completed any required repairs, We may, at Our option, either (1) deem Your lock and/or Space Contents abandoned and dispose of these items at Your cost, or (2) consider You a holdover occupant at sufferance from the termination date until You properly move out of and/or repair the Space ("<u>Holdover Period</u>"). The terms of this Agreement will apply during any Holdover Period except that <u>Monthly Rent will automatically increase to 200% of the Monthly Rent in effect immediately before the Holdover Period.</u> We may also exercise any remedies in this Agreement, at law, or in equity. |
| 15. **NO BAILMENT** | This Agreement does not create a "bailment"; We are not a warehouseman engaged in the business of storing goods for hire; We do not assume custody of, or control over, the Space Contents (even if We enter or overlock the Space); and We are not responsible to safekeep or return the Space Contents. |
| 16. **INSURANCE; RELEASE; &** | **YOU WILL MAINTAIN INSURANCE OR A PROTECTION PLAN COVERING THE LOSS OF, OR DAMAGE TO, THE SPACE CONTENTS. WE DO NOT INSURE THE SPACE** |

| WAIVER OF SUBROGATION | CONTENTS, AND WE ARE NOT LIABLE FOR ANY LOSS OF, OR DAMAGE TO, THE SPACE CONTENTS. YOU BEAR THE ENTIRE RISK OF LOSS WITH RESPECT TO THE SPACE CONTENTS. You waive and release Us, Agent, CubeSmart, L.P., and each of their respective officers, directors, employees, subsidiaries, parents, affiliates, successors, and assigns (collectively, "Released Parties") from any and all claims for the loss of, or damage to, the Space Contents whether by reason of fire, water, elements, acts of God, theft, burglary, vandalism, mysterious disappearance, mold, mildew, rodents, insects, any additional services provided by Us, and/or for any other reason including strict liability or Our negligence, and regardless of whether You maintain insurance or a protection plan or the amount of any proceeds payable by Your insurance or protection plan provider. You waive any right of subrogation Your insurance company may have against any of the Released Parties, and You will cause Your insurance policy to reflect this waiver. This Paragraph is a specific bargained for condition of this Agreement and We would not have entered into this Agreement without it. |
|---|---|
| 17. INDEMNITY | You will indemnify, defend, and hold each of the Released Parties harmless from and against any and all losses, claims, actions, causes of action, costs, expenses (including, without limitation, attorneys' fees and court costs), liabilities, and/or damages arising out of (i) Your or Your agents or invitees acts or omissions, (ii) Your default under this Agreement, (iii) Your or Your agents or invitees use of the Space or the Facility, (iv) any damage to or loss of the Space Contents, and/or (v) the sale of any Space Contents after Your default, including, without limitation any Files described in Paragraph 28. |
| 18. CONSEQUENTIAL DAMAGES | The Released Parties are not liable for, and You release each Released Party from, any indirect, incidental, special, or consequential damages, including, without limitation, emotional or sentimental attachment, arising out of the Space or this Agreement even if a Released Party has been advised of the possibility of such damages. |
| 19. LIMITATION OF LIABILITY | **THE MAXIMUM AGGREGATE LIABILITY OF THE RELEASED PARTIES, IF ANY, IN CONNECTION WITH THE SPACE CONTENTS IS $5,000, AND YOU WAIVE THE RIGHT TO CLAIM SUCH DAMAGES IN ANY AMOUNT ABOVE $5,000.00.** |
| 20. RULES AND REGULATIONS | You will obey all reasonable rules and regulations for the Facility, and You will conduct Yourself in a businesslike manner with Our agents and employees. We may modify, amend, or supplement Our rules and regulations at any time. |
| 21. NO SUBLETTING OR ASSIGNMENT | You will not assign this Agreement or sublease the Space without Our written consent which We may withhold at Our discretion. Any attempt by You to assign this Agreement or sublease the Space without Our written consent is void. You may be required to pay an administrative transfer fee as shown on Schedule 1 with respect to any assignment or sublease. |
| 22. REPAIRS & INSPECTION | You will give Us access to the Space within 10 days after We notify You that We need access to the Space to perform any non-emergency (i) repair, maintenance, or other work or (ii) inspection. If, in Our opinion, We need access to the Space due to an emergency (or if You do not give Us access to the Space within the 10 day period referenced above), We may, without notice (or additional notice) and without incurring any liability, remove Your lock, access the Space, perform the work or inspection, and place a temporary lock on the Space. |
| 23. RELOCATION | If We need to use the Space for any reason, You will relocate the Space Contents to a different space at the Facility or at another facility within 30 days after Our notice to You ("Space Relocation"). If, in Our opinion, the Space Relocation is an emergency (or if You do not perform the Space Relocation within 30 days after Our notice to You), We may, without notice (or additional notice) and without incurring any liability, remove Your lock, access the Space, perform the Space Relocation, and place a temporary lock on the Space. After a Space Relocation, the relocated space will be deemed to be the "Space" under this Agreement. You will pay to Us all costs We incur to perform a Space Relocation unless it resulted from an emergency not caused in any way by You. |
| 24. SECURITY SYSTEMS | Any security systems at the Facility including, without limitation, fencing, gates, and video cameras are for the protection of Our property not Yours. These security systems may not be on, monitored, or operational, and We are not liable for any loss You may suffer if any of these security systems fail. You will not rely on any of Our security systems to protect the Space Contents, and You will not substitute any of Our security systems for Your purchase of insurance, a suitable lock, or other security measures. |
| 25. ELECTRIC GATES | You waive and release each of the Released Parties from any and all claims for loss of, or damage to You, Your passengers, and/or Your vehicle if You follow another car though any electric gates at the Facility without using Your gate code, or if You otherwise use the electric gates improperly. If You damage any gates at the Facility, You will pay to Us all costs We incur to repair and/or replace the gates. |
| 26. TEMPERATURE | We do not control the temperature in the Space unless the Space is identified as "temperature controlled" on Page 1 of this Agreement. If the Space is identified as "temperature controlled", we will use reasonable efforts to maintain a temperature in the Space of between 55 and 80 degrees Fahrenheit. Mold and mildew may grow on the Space Contents regardless of whether the Facility is temperature controlled. You will regularly inspect the Space and protect the Space Contents from the growth of mold or mildew. We are not liable for the growth of mold or mildew on the Space Contents. |
| 27. PETS | No pets are allowed in the Facility other than trained service dogs. If You bring a pet to the Facility, You will be responsible for any damages that Your pet causes whether to person or property. |

| 28. STORAGE OF FILES/PERSONAL INFORMATION | We are not responsible, and You assume all risk, for any loss, breach, damage, costs or liability that You or anyone else may suffer if the Space Contents include any Files (defined below) and any of those Files are lost, damaged, destroyed, or sold. If You are in default We may, without any obligation (i) require that You remove Files from the Space within 5 days after Our notice to You, or (ii) after the Space Contents sale date set forth in any notice to You, destroy or dispose of Files, and You will pay to Us any costs We incur to destroy or dispose of Files. "Files" are any documents, film, or electronic data containing any personal information relating to You or Your clients, customers, patients, or others such as social security numbers; credit card, debit card, bank account or passport information; or tax, employment, medical, or legal records. |
|---|---|
| 29. VEHICLE STORAGE | If the Space Contents include a motorized vehicle such as a car, boat, trailer, motorcycle, snow mobile, wave runner, or other vehicle governed by applicable motor vehicle laws, the vehicle must be in good, operational condition and stored over drip trays or cardboard to prevent fluids from leaking into the Space. If the vehicle is stored indoors, the gas tank must be drained prior to storage. At Our request, You will place identification stickers, decals, or tags in the vehicle. If You are in default or if the vehicle remains at the Facility after termination of this Agreement, We may, without notice and without incurring any liability, have the vehicle towed from the Facility at Your expense and/or relocate the vehicle to a different space or to a different facility. If fluids from the vehicle leak into the Space or Facility, You will, at Your expense, remediate such leak in accordance with all applicable laws. |
| 30. LAW ENFORCEMENT DIRECTIVES | If We receive what appears to be a search warrant, We may, without incurring any liability, remove Your lock, allow the Space to be searched and, if applicable, the Space Contents to be seized, and We may, without any obligation, place a temporary lock on the Space. If We receive what appears to be a subpoena or if what appears to be a law officer or governmental official requests documents or information about You or the Space, We may provide such information or documents (other than credit reports or other similar financial information, if any) without incurring any liability. |
| 31. ADDITIONAL SERVICES | Any additional services that We may provide to You at the Facility or in connection with the Space are subject to Paragraphs 15 through 20, inclusive, together with any other applicable provisions of this Agreement. Any fees for these additional services are considered Rent under this Agreement. You will secure any equipment (such as remote controls or other portable electronic devices) that We may provide in connection with any additional services, and You will be solely responsible for any damages, loss, or costs resulting from or arising out of the loss of or damage to any such equipment. You will pay to Us the cost to replace and/or repair any lost or damaged equipment. |
| 32. LIMITATION OF WARRANTIES | WE DO NOT MAKE, AND WE EXPRESSLY DISCLAIM, ANY WARRANTY OF ANY KIND IN CONNECTION WITH THE FACILITY, THE SPACE, ANY ITEMS THAT YOU PURCHASE FROM US (WHICH MAY INCLUDE LOCKS, BOXES, AND PACKING SUPPLIES), AND/OR OUR SERVICES INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, HABITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. YOU WAIVE ANY EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THE FACILITY, THE SPACE, ANY ITEMS THAT YOU PURCHASE FROM US (WHICH MAY INCLUDE LOCKS, BOXES, AND PACKING SUPPLIES), AND/OR OUR SERVICES. |
| 33. NOTICES; ADDRESS CHANGE; & ADVERTISEMENTS | Any notices, demands, or requests from You to Us will be in writing and sent by certified mail RRR and postage prepaid to the Facility Address on Page 1 of this Agreement. Unless otherwise required by the state's self-service storage law, any notices, demands, or requests from Us to You will be by phone, e-mail, or regular mail to Your street address, phone number, or e-mail address on Page 1 of this Agreement. You will notify Us immediately in writing if You move or change Your phone number or e-mail address; otherwise, You will not receive important notices. We may, without any obligation, advertise on Our website (www.cubesmart.com or www.cubesmart.com/storage-auctions/) the sale of the Space Contents as described in Paragraph 9. This may be the only advertisement of the Space Contents. |
| 34. PERMISSION TO CALL & E-MAIL | You and We have entered into a business relationship and You agree that We may contact You by phone, e-mail, or otherwise with business related communications. |
| 35. CHANGES TO AGREEMENT | We may change the terms of this Agreement at any time upon 30 days prior notice to You. Your continued use of the Space after this 30 day period means You agree to and accept the changes. |
| 36. ATTORNEY FEES | If We retain counsel to enforce any of Our rights under this Agreement, You will pay Our reasonable attorneys' fees, court costs, and expenses whether incurred during or after the term of this Agreement. |
| 37. OCCUPANT'S REPRESENTATION AND WARRANTY | You represent and warrant that all information provided by You in connection with this Agreement is complete, true, and accurate, and that (i) You have at all times been, are now, and will in the future be, in compliance with U.S. Executive Order 13224 ("Order"), and no action, proceeding, investigation, charge, claim, report, or notice has been filed, commenced, or threatened against You alleging any failure to so comply; (ii) You have no knowledge or notice of any fact, event, circumstance, situation, or condition that could reasonably be expected to result in (a) any action, proceeding, investigation, charge, claim, report, or notice being filed, commenced, or threatened against You alleging any failure to comply with the Order, or (b) the imposition of any civil or criminal penalty against You for any failure |

| | to occupy] and (iii) You are not included in the OFAC List in the Order or in 31 CFR Ch V (Part 595) Appendix A (i.e., You are not a Blocked Person, Specially Designated National, Terrorist, or Global Terrorist, or part of a Foreign Terrorist Organization or Specially Designated Narcotics Trafficker, etc.). |
|---|---|
| **38. MISCELLANEOUS** | This Agreement is the entire agreement between You and Us. You are not relying on anything We have told You if it is different from what is written in this Agreement. You have read and understand all of the terms of, and had the opportunity to consult an attorney before signing, this Agreement. This Agreement binds and inures to the benefit of You, Us, and Our respective successors, heirs, administrators, legal representatives and permitted assigns. YOU AND WE EACH WAIVE OUR RIGHTS TO A TRIAL BY JURY IN ANY ACTION ARISING OUT OF THIS AGREEMENT. This Agreement is governed by the laws of the state in which the Facility is located regardless of its conflict of laws provisions or Your state of residence. If any part of this Agreement is unenforceable, the remaining parts of this Agreement will remain valid and enforceable. Any claim, cause of action, liability or obligation (including without limitation payment and reimbursement obligations) under this Agreement arising during the term of this Agreement will, to the extent not fully performed, survive the expiration or termination of this Agreement. Our delay in taking any action in connection with Your default does not constitute a waiver of the default. Our pursuit of one or more remedies does not preclude Us from pursuing any other remedy. |

You and We, intending to be legally bound, have signed this Agreement as of the Effective Date. **YOU AGREE THAT OUR LIABILITY REGARDING THE SPACE CONTENTS, IF ANY, IS LIMITED TO $5,000 AS DESCRIBED IN <u>PARAGRAPH 19</u>.**

CUBESMART MANAGEMENT, LLC, as Owner's agent                    OCCUPANT

By: _____/S/_____

    Manager

# SCHEDULE B TO
# GEORGIA SELF-STORAGE RENTAL AGREEMENT

## Fees and Important Dates of the Effective Date*

| Description of Fee or Action | Fee Amount | Date Fee Assessed / Date Action Taken |
|---|---|---|
| Invoice Fee (¶4) | $1.00 per month | Due on same day each month as Monthly Rent. |
| Late Fee (¶6) | $25.00 | • $10.00 if We do not receive all outstanding Rent by 11:59pm local time on the **6th** day after it became due.<br>• Additional $15.00 if We do not receive all outstanding Rent by 11:59pm local time on the **16th** day after it became due. |
| Insufficient Fund Fee (¶7) | $30.00 | Anytime a check, ACH, credit card, or other similar Rent payment is reversed, returned, or refused due to insufficient funds, balance, or otherwise. |
| Administrative Lien Fee (¶9) | $110 | If We do not receive all Rent by 11:59pm local time on the **30th** day after it became due. |
| Date We will overlock the Space or otherwise deny You access to the Space (¶12) | N/A | After You have been in default under the Agreement for **7** continuous days. |
| Administrative Transfer Fee (¶21) | $19 | Upon Our approval of an assignment of this Agreement or sublease of the Space. |

*The above Schedule does not include all fees, expenses, or charges that You may be required to pay under the Agreement. We reserve the right to increase, decrease, supplement, or otherwise modify the above fees and/or dates by posting a notice of any such change in Our office at the Facility 30 days before any such increase, decrease, supplement, or modification becomes effective.

# GEORGIA SELF-STORAGE RENTAL AGREEMENT

THIS GEORGIA SELF-STORAGE RENTAL AGREEMENT ("Agreement") is executed by CUBESMART MANAGEMENT, LLC ("Agent") solely as agent for the owner of the facility described below ("Owner") and the OCCUPANT described below ("Occupant"). In this Agreement, Owner will be referred to as "We", "Us", or "Our", and Occupant will be referred to as "I", "You", "Your", "Yourself" or "My". This Agreement is effective on _____06/22/2014_____ ("Effective Date"). You and We agree as follows:

**OCCUPANT NAME & CONTACT INFORMATION:**

| | |
|---|---|
| **Name:** | Julie Chrisley Hughes |
| **Address:** (*Residential*) | 10945 State Bridge Rd ALPHARETTA GA 30022 |
| **Home Phone #:** | 310-882-0957 |
| **Work Phone #:** | |
| **Cell Phone #:** | |
| **E-Mail Address*:** | jhughes6873@gmail.com |
| **Driver's License #:** | DL# State Exp 5120 - FL - Exp : 01/2019 |
| **Date of Birth:** | 01/12/1973 |
| **Occupant's Military Status:** | _____ Military Member (*military ID must be presented at time of rental*) If in Military, list Service Branch: _____ _____ ✔ Non-Military Member |

*All written notices may be sent to Your e-mail address if legally permitted

**OWNER CONTACT INFORMATION:**

| | |
|---|---|
| **Address:** | 3495 Lawrenceville Suwanee Road Suwanee GA 30024 |
| **Phone #:** | (770)271-3711 |
| **E-Mail Address:** | STORE0698@CUBESMART.COM |

**SPACE:**

| | |
|---|---|
| **Storage Unit # ("Space"):** | 200 |
| **Size of Space:** (*Approximate*) | 10x25 |
| **Access/Gate Code #:** | 11073 |
| **Facility Address:** | 3495 Lawrenceville Suwanee Road Suwanee GA 30024 |
| **Temperature Controlled Space** | ____ Yes ✔ No |
| **If a vehicle (car, boat, trailer, motorcycle, etc.) is stored in the Space:** | Make: _____ Year: _____ Model: _____ Color: _____ VIN:_____ License Plate #:_____ State: _____ |

**AGENT*:**

| | |
|---|---|
| **Name:** | |
| **Address:** | |
| **E-Mail Address:** | |

*Legally required notices will be mailed to person & address listed above (if any). Agent is <u>not</u> granted any rights under this Agreement.

**LIENHOLDER(S)*** (*list any person/entity with a lien/security interest in any items stored or to be stored in the Space*):

| | |
|---|---|
| **Lienholder Name(s):** | |
| **Lienholder Address(es):** | |
| **Amount of Lien(s):** | |
| **Items Subject to Lien(s):** | |

*Attach separate page if necessary

## SUMMARY OF MONTHLY CHARGES AND APPLICABLE PROMOTION(S)*:

| | |
|---|---|
| Monthly Rent (must be paid on the Effective Date & on or before the same day of each subsequent calendar month): | 167.00 |
| Monthly Insurance Premium, if any: | 12.00 |
| Monthly Invoice Fee (Optional): | 0.00 |
| Promotion: | |
| **TOTAL MONTHLY AMOUNT DUE** (plus applicable taxes) | 179.00 |
| **RENT PAID THROUGH DATE** | 7/21/2014 |

*Excludes late fees & other charges that may result from a default or otherwise under this Agreement.

| 1. | **SPACE** | You accept the Space on an "as is" condition. You have inspected the Space and agree that the Space is in good condition and suitable for Your storage needs. You will not modify or alter the Space without Our written consent which We may give or withhold at Our discretion. If You modify or alter the Space without Our written consent, You will pay to Us all costs that We incur to return the Space to its original condition. You will not allow any person or entity (other than You) to use the Space. |
|---|---|---|
| 2. | **LOCKING & SECURING THE SPACE** | We do not secure the Space or the items in the Space (collectively, the "<u>Space Contents</u>"). You must secure the Space and the Space Contents and You must lock the Space with Your lock. Any lock that You purchase from Us is Your lock. We may (but We are not obligated to) place a temporary lock on the Space if We find the Space unlocked, or for any other reason described in this Agreement, or for any other business reason in each case without causing a bailment. If You do not replace a temporary lock within 5 days after Our notice to You, You will be deemed to have purchased the temporary lock and You will be charged for the cost of the temporary lock and, if applicable, the cost to mail to You the keys for the temporary lock. |
| 3. | **TERM & AUTOMATIC RENEWAL** | The initial term of this Agreement is 1 month beginning on the Effective Date and ending at 11:59pm on the day before the 1 month anniversary of the Effective Date. This Agreement will renew automatically upon expiration of the initial term and each renewal term for successive 1 month terms until either You or We terminate this Agreement as permitted in this Agreement. |
| 4. | **RENT** | In consideration for Your right to use the Space You will pay to Us in advance, without demand, setoff, or reduction, the Monthly Rent shown on <u>Page 1</u> of this Agreement, together with any tax or other assessment levied on the Monthly Rent by any state, county, or local authority. The 1st installment of Monthly Rent is due on the Effective Date, and each subsequent installment of Monthly Rent is due on or before the monthly anniversary of the Effective Date. We will not send a monthly rent invoice to You unless You request a monthly rent invoice and pay to Us the Invoice Fee shown on <u>Schedule 1</u> attached to and made a part of this Agreement. We may increase the Monthly Rent amount by sending notice to You 30 days in advance of the increase. All fees, charges, and other amounts that You are required to pay under this Agreement are considered "additional rent," and Monthly Rent and "additional rent" are collectively referred to as "<u>Rent</u>". All past due Rent must be paid in cash, a cashier's check, or a money order. You must obtain a receipt from Us for any Cash payments or else they are invalid. Rent payments may be sent to the Facility Address on <u>Page 1</u> of this Agreement. |
| 5. | **PARTIAL PAYMENTS** | Our acceptance of a partial Rent payment will not cure Your default or waive or preclude Our right to exercise Our remedies under this Agreement or otherwise regardless of any endorsement on, or instruction letter accompanying, the partial Rent payment, and any such endorsements or instruction letters are void and of no effect. Any partial Rent payment will be applied 1st to applicable fee(s) and then to the oldest outstanding Rent until exhausted. |
| 6. | **LATE PAYMENT & LATE FEE** | Any time We do not receive Rent when due, You will pay to Us late fee(s) in the amount and on the date(s) shown on <u>Schedule 1</u>. You agree that the late fee(s) is reasonable, is not a penalty, and has been agreed upon due to the difficulty of calculating actual damages We may sustain when Rent is paid late. |
| 7. | **INSUFFICIENT FUND FEE** | If any check, ACH, credit card, or other similar Rent payment is rejected, You will pay to Us the Insufficient Fund Fee shown on <u>Schedule 1</u> in addition to the late fee(s) described in <u>Paragraph 6</u>. |
| 8. | **LIENHOLDER; AGENT** | You represent and warrant that only the lienholder(s) listed on <u>Page 1</u> of this Agreement, if any, has a lien or security interest in the Space Contents. You will send written notice to Us of the name and address of any other party that obtains a lien or security interest in any Space Contents. If You provide on <u>Page 1</u> of this Agreement (or in a subsequent written notice delivered to Us in accordance with <u>Paragraph 33</u> below) the name and address of an agent to receive notices ("<u>Agent</u>"), We will send to the Agent a copy of all notices that We are required to send to You under the State Self-Service Storage Facility Act (specifically excluding bills and invoices). |
| 9. | **OWNER'S STATUTORY LIEN & ADMINISTRATIVE LIEN FEE** | **PURSUANT TO THE STATE SELF-SERVICE STORAGE FACILITY ACT, WE HAVE A LIEN ON ALL SPACE CONTENTS FOR RENT, LABOR, OR OTHER CHARGES, PRESENT OR FUTURE, IN RELATION TO THE SPACE CONTENTS, AND FOR EXPENSES NECESSARY FOR THE PRESERVATION OF THE SPACE CONTENTS, OR FOR EXPENSES REASONABLY INCURRED IN THE SALE OR OTHER DISPOSITION OF THE SPACE CONTENTS. <u>THE SPACE CONTENTS WILL BE SOLD OR OTHERWISE DISPOSED OF IF NO PAYMENT HAS BEEN RECEIVED FOR A CONTINUOUS 30 DAY PERIOD AFTER DEFAULT.</u>** You will pay to Us the Administrative Lien Fee on the date and in the amount shown on <u>Schedule 1</u> to reimburse Us for Our internal costs to prepare for, and, if applicable, to sell or dispose of the Space Contents (whether or not We actually sell or dispose of the Space Contents). You agree that this fee is reasonable, does not constitute a penalty, and has been agreed upon due to the difficulty of calculating these internal costs. You will also pay to Us any costs We incur from unrelated third parties to enforce Our lien rights. |
| 10. | **DEFAULT, REMEDIES** | You will be in default of this Agreement if (i) We do not receive any Rent when due, (ii) You fail or refuse to perform any of Your other obligations under, or violate any of the terms of, this Agreement, (iii) in Our opinion, You have acted in an abusive or harassing manner towards Our employees, agents, contractors, guests, customers, tenants, or occupants, and/or (iv) You are in default of any other |

agreement between You and Us. If You are in default of this Agreement, We may, at Our option (a) immediately terminate this Agreement, (b) if it is a monetary default, commence to sell, and sell, the Space Contents as set forth in <u>Paragraph 9</u> and this Agreement will terminate on the sale date (and, if the Space Contents do not sell, We may dispose of the Space Contents), and/or (c) exercise any other remedy in this Agreement, at law, or in equity. You will pay to Us any attorneys' fees, court costs, or other expenses that We incur in connection with Your default.

| **11. PERMITTED USE & PROHIBITED ITEMS** | The Space may only be used for the storage of Your own personal property <u>but specifically excluding</u> (i) Prohibited Items (defined below) (ii) items with an aggregate value of more than $5,000.00 unless We have consented in writing, or (iii) items with special or sentimental value or with unknown immediate resale or market value such as collectibles, heirlooms, jewelry, furs, works of art, books, or writings. UNLESS WE HAVE AGREED IN WRITING THAT YOU MAY STORE ITEMS IN THE SPACE WITH AN AGGREGATE VALUE OF MORE THAN $5,000, THE SPACE CONTENTS WILL BE DEEMED TO HAVE AN AGGREGATE VALUE OF NOT MORE THAN $5,000. You will NOT use the Space (a) for residential purposes such as sleeping or living in the Space; (b) to conduct a business, occupation, trade, or hobby; (c) to manufacture, exhibit, or sell items; or (d) for any illegal or illicit purposes. **<u>You will NOT store any of the following "Prohibited Items" in the Space:</u>**<br>• animals, food or other perishable items;<br>• items that, in Our determination, attract vermin or create a nuisance;<br>• items that, in Our determination, have a noxious odor or stench;<br>• items that, in Our determination, danger the safety or health of people or the environment;<br>• illegal drugs, firearms, explosives, stolen, or counterfeit goods; and/or<br>• substances that are toxic, ignitable, reactive, volatile, flammable, explosive, hazardous, or corrosive or that are, at any time, regulated by state, Federal or local authorities;<br>If We believe there are Prohibited Items in the Space, We may, in addition to any other remedies under this Agreement, enter the Space (with or without law enforcement or other governmental authorities) remove and dispose of any Prohibited Items, and charge to Your account any costs We incur to do so. You will not connect to electricity (including plugging into any electrical outlets), cable, internet, and/or any other utilities serving the Space or the Facility unless We have, in our sole discretion, provided written consent to You. |
| **12. ACCESS & DENIAL OF ACCESS** | You will have access to the Space during Our business hours which are posted in Our office at the Facility. **IF YOU DO NOT PAY RENT WHEN DUE, WE MAY, WITHOUT NOTICE, DENY YOU ACCESS TO THE SPACE BY DEACTIVATING YOUR ELECTRIC GATE ACCESS CODE, IF ANY, AND/OR OVERLOCKING THE SPACE; PROVIDED, HOWEVER, THAT WE WILL NOT OVERLOCK YOUR SPACE UNTIL THE DATE SHOWN ON <u>SCHEDULE 1</u>.** If You cut or tamper with any overlock, You will pay to Us the cost to replace the overlock. If Rent is 30 days or more past due, We will remove Your lock from the Space to prepare for the sale of the Space Contents. If We receive all past due Rent before the sale date, We will reactivate Your access code, if applicable, and remove Our overlock from the Space. If Your lock was removed, You will secure the Space with a new lock or We will, without any obligation, place a temporary lock on the Space. We may also deny You access to the Space if You are in default of any other terms of this Agreement until You have cured the default. |
| **13. TERMINATION** | Either You or We may terminate this Agreement by providing written notice to the other ("Termination Notice") at least 10 days before the end of any monthly term. If a Termination Notice is received less than 10 days before the end of a monthly term, then this Agreement will terminate at the end of the next monthly term. If You vacate the Space before this Agreement terminates, You will not receive a Rent refund. If We find the Space unlocked and vacant (except for what appears, in our determination, to be trash), We may assume that You terminated this Agreement, dispose of the trash, and rent the Space to another. |
| **14. MOVING OUT; HOLDOVER; & HOLDOVER RENT** | Before this Agreement terminates You must remove Your lock and all Space Contents from the Space, and you must repair, to Our reasonable satisfaction, any damage that You or Your invitees have caused. If You do not repair this damage, You will pay to Us any costs that We incur to repair the damage. If Your lock and/or any Space Contents remain in or about the Space after this Agreement terminates, or if You have not completed any required repairs, We may, at Our option, either (1) deem Your lock and/or Space Contents abandoned and dispose of these items at Your cost, or (2) consider You a holdover occupant at sufferance from the termination date until You properly move out of and/or repair the Space ("<u>Holdover Period</u>"). The terms of this Agreement will apply during any Holdover Period except that <u>Monthly Rent will automatically increase to 200% of the Monthly Rent in effect immediately before the Holdover Period.</u> We may also exercise any remedies in this Agreement, at law, or in equity. |
| **15. NO BAILMENT** | This Agreement does not create a "bailment"; We are not a warehouseman engaged in the business of storing goods for hire; We do not assume custody of, or control over, the Space Contents (even if We enter or overlock the Space); and We are not responsible to safekeep or return the Space Contents. |
| **16. INSURANCE; RELEASE; &** | **YOU WILL MAINTAIN INSURANCE OR A PROTECTION PLAN COVERING THE LOSS OF, OR DAMAGE TO, THE SPACE CONTENTS. WE DO NOT INSURE THE SPACE** |

| WAIVER OF SUBROGATION | CONTENTS, AND WE ARE NOT LIABLE FOR ANY LOSS OF, OR DAMAGE TO, THE SPACE CONTENTS. YOU BEAR THE ENTIRE RISK OF LOSS WITH RESPECT TO THE SPACE CONTENTS. You waive and release Us, Agent, CubeSmart, L.P., and each of their respective officers, directors, employees, subsidiaries, parents, affiliates, successors, and assigns (collectively, "Released Parties") from any and all claims for the loss of, or damage to, the Space Contents whether by reason of fire, water, elements, acts of God, theft, burglary, vandalism, mysterious disappearance, mold, mildew, rodents, insects, any additional services provided by Us, and/or for any other reason including strict liability or Our negligence, and regardless of whether You maintain insurance or a protection plan or the amount of any proceeds payable by Your insurance or protection plan provider. You waive any right of subrogation Your insurance company may have against any of the Released Parties, and You will cause Your insurance policy to reflect this waiver. This Paragraph is a specific bargained for condition of this Agreement and We would not have entered into this Agreement without it. |
|---|---|
| 17. INDEMNITY | You will indemnify, defend, and hold each of the Released Parties harmless from and against any and all losses, claims, actions, causes of action, costs, expenses (including, without limitation, attorneys' fees and court costs), liabilities, and/or damages arising out of (i) Your or Your agents or invitees acts or omissions, (ii) Your default under this Agreement, (iii) Your or Your agents or invitees use of the Space or the Facility, (iv) any damage to or loss of the Space Contents, and/or (v) the sale of any Space Contents after Your default, including, without limitation any Files described in Paragraph 28. |
| 18. CONSEQUENTIAL DAMAGES | The Released Parties are not liable for, and You release each Released Party from, any indirect, incidental, special, or consequential damages, including, without limitation, emotional or sentimental attachment, arising out of the Space or this Agreement even if a Released Party has been advised of the possibility of such damages. |
| 19. LIMITATION OF LIABILITY | **THE MAXIMUM AGGREGATE LIABILITY OF THE RELEASED PARTIES, IF ANY, IN CONNECTION WITH THE SPACE CONTENTS IS $5,000, AND YOU WAIVE THE RIGHT TO CLAIM SUCH DAMAGES IN ANY AMOUNT ABOVE $5,000.00.** |
| 20. RULES AND REGULATIONS | You will obey all reasonable rules and regulations for the Facility, and You will conduct Yourself in a businesslike manner with Our agents and employees. We may modify, amend, or supplement Our rules and regulations at any time. |
| 21. NO SUBLETTING OR ASSIGNMENT | You will not assign this Agreement or sublease the Space without Our written consent which We may withhold at Our discretion. Any attempt by You to assign this Agreement or sublease the Space without Our written consent is void. You may be required to pay an administrative transfer fee as shown on Schedule 1 with respect to any assignment or sublease. |
| 22. REPAIRS & INSPECTION | You will give Us access to the Space within 10 days after We notify You that We need access to the Space to perform any non-emergency (i) repair, maintenance, or other work or (ii) inspection. If, in Our opinion, We need access to the Space due to an emergency (or if You do not give Us access to the Space within the 10 day period referenced above), We may, without notice (or additional notice) and without incurring any liability, remove Your lock, access the Space, perform the work or inspection, and place a temporary lock on the Space. |
| 23. RELOCATION | If We need to use the Space for any reason, You will relocate the Space Contents to a different space at the Facility or at another facility within 30 days after Our notice to You ("Space Relocation"). If, in Our opinion, the Space Relocation is an emergency (or if You do not perform the Space Relocation within 30 days after Our notice to You), We may, without notice (or additional notice) and without incurring any liability, remove Your lock, access the Space, perform the Space Relocation, and place a temporary lock on the Space. After a Space Relocation, the relocated space will be deemed to be the "Space" under this Agreement. You will pay to Us all costs We incur to perform a Space Relocation unless it resulted from an emergency not caused in any way by You. |
| 24. SECURITY SYSTEMS | Any security systems at the Facility including, without limitation, fencing, gates, and video cameras are for the protection of Our property not Yours. These security systems may not be on, monitored, or operational, and We are not liable for any loss You may suffer if any of these security systems fail. You will not rely on any of Our security systems to protect the Space Contents, and You will not substitute any of Our security systems for Your purchase of insurance, a suitable lock, or other security measures. |
| 25. ELECTRIC GATES | You waive and release each of the Released Parties from any and all claims for loss of, or damage to You, Your passengers, and/or Your vehicle if You follow another car though any electric gates at the Facility without using Your gate code, or if You otherwise use the electric gates improperly. If You damage any gates at the Facility, You will pay to Us all costs We incur to repair and/or replace the gates. |
| 26. TEMPERATURE | We do not control the temperature in the Space unless the Space is identified as "temperature controlled" on Page 1 of this Agreement. If the Space is identified as "temperature controlled", we will use reasonable efforts to maintain a temperature in the Space of between 55 and 80 degrees Fahrenheit. Mold and mildew may grow on the Space Contents regardless of whether the Facility is temperature controlled. You will regularly inspect the Space and protect the Space Contents from the growth of mold or mildew. We are not liable for the growth of mold or mildew on the Space Contents. |
| 27. PETS | No pets are allowed in the Facility other than trained service dogs. If You bring a pet to the Facility, You will be responsible for any damages that Your pet causes whether to person or property. |

| 28. **STORAGE OF FILES/PERSONAL INFORMATION** | We are not responsible, and You assume all risk for, any loss, damage, cost, or liability that You or anyone else may suffer if the Space Contents include any Files (defined below) and any of those Files are lost, damaged, destroyed, or sold. If You are in default We may, without any obligation (i) require that You remove Files from the Space within 5 days after Our notice to You, or (ii) after the Space Contents sale date set forth in any notice to You, destroy or dispose of Files, and You will pay to Us any costs We incur to destroy or dispose of Files. "Files" are any documents, film, or electronic data containing any personal information relating to You or Your clients, customers, patients, or others such as social security numbers; credit card, debit card, bank account or passport information; or tax, employment, medical, or legal records. |
|---|---|
| 29. **VEHICLE STORAGE** | If the Space Contents include a motorized vehicle such as a car, boat, trailer, motorcycle, snow mobile, wave runner, or other vehicle governed by applicable motor vehicle laws, the vehicle must be in good, operational condition and stored over drip trays or cardboard to prevent fluids from leaking into the Space. If the vehicle is stored indoors, the gas tank must be drained prior to storage. At Our request, You will place identification stickers, decals, or tags in the vehicle. If You are in default or if the vehicle remains at the Facility after termination of this Agreement, We may, without notice and without incurring any liability, have the vehicle towed from the Facility at Your expense and/or relocate the vehicle to a different space or to a different facility. If fluids from the vehicle leak into the Space or Facility, You will, at Your expense, remediate such leak in accordance with all applicable laws. |
| 30. **LAW ENFORCEMENT DIRECTIVES** | If We receive what appears to be a search warrant, We may, without incurring any liability, remove Your lock, allow the Space to be searched and, if applicable, the Space Contents to be seized, and We may, without any obligation, place a temporary lock on the Space. If We receive what appears to be a subpoena or if what appears to be a law officer or governmental official requests documents or information about You or the Space, We may provide such information or documents (other than credit reports or other similar financial information, if any) without incurring any liability. |
| 31. **ADDITIONAL SERVICES** | Any additional services that We may provide to You at the Facility or in connection with the Space are subject to Paragraphs 15 through 20, inclusive, together with any other applicable provisions of this Agreement. Any fees for these additional services are considered Rent under this Agreement. You will secure any equipment (such as remote controls or other portable electronic devices) that We may provide in connection with any additional services, and You will be solely responsible for any damages, loss, or costs resulting from or arising out of the loss of or damage to any such equipment. You will pay to Us the cost to replace and/or repair any lost or damaged equipment. |
| 32. **LIMITATION OF WARRANTIES** | WE DO NOT MAKE, AND WE EXPRESSLY DISCLAIM, ANY WARRANTY OF ANY KIND IN CONNECTION WITH THE FACILITY, THE SPACE, ANY ITEMS THAT YOU PURCHASE FROM US (WHICH MAY INCLUDE LOCKS, BOXES, AND PACKING SUPPLIES), AND/OR OUR SERVICES INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, HABITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. YOU WAIVE ANY EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THE FACILITY, THE SPACE, ANY ITEMS THAT YOU PURCHASE FROM US (WHICH MAY INCLUDE LOCKS, BOXES, AND PACKING SUPPLIES), AND/OR OUR SERVICES. |
| 33. **NOTICES; ADDRESS CHANGE; & ADVERTISEMENTS** | Any notices, demands, or requests from You to Us will be in writing and sent by certified mail RRR and postage prepaid to the Facility Address on Page 1 of this Agreement. Unless otherwise required by the state's self-service storage law, any notices, demands, or requests from Us to You will be by phone, e-mail, or regular mail to Your street address, phone number, or e-mail address on Page 1 of this Agreement. You will notify Us immediately in writing if You move or change Your phone number or e-mail address; otherwise, You will not receive important notices. We may, without any obligation, advertise on Our website (www.cubesmart.com or www.cubesmart.com/storage-auctions/) the sale of the Space Contents as described in Paragraph 9. This may be the only advertisement of the Space Contents. |
| 34. **PERMISSION TO CALL & E-MAIL** | You and We have entered into a business relationship and You agree that We may contact You by phone, e-mail, or otherwise with business related communications. |
| 35. **CHANGES TO AGREEMENT** | We may change the terms of this Agreement at any time upon 30 days prior notice to You. Your continued use of the Space after this 30 day period means You agree to and accept the changes. |
| 36. **ATTORNEY FEES** | If We retain counsel to enforce any of Our rights under this Agreement, You will pay Our reasonable attorneys' fees, court costs, and expenses whether incurred during or after the term of this Agreement. |
| 37. **OCCUPANT'S REPRESENTATION AND WARRANTY** | You represent and warrant that all information provided by You in connection with this Agreement is complete, true, and accurate, and that (i) You have at all times been, are now, and will in the future be, in compliance with U.S. Executive Order 13224 ("Order"), and no action, proceeding, investigation, charge, claim, report, or notice has been filed, commenced, or threatened against You alleging any failure to so comply; (ii) You have no knowledge or notice of any fact, event, circumstance, situation, or condition that could reasonably be expected to result in (a) any action, proceeding, investigation, charge, claim, report, or notice being filed, commenced, or threatened against You alleging any failure to comply with the Order, or (b) the imposition of any civil or criminal penalty against You for any failure |

| | to occupy]; and (iii) You are not included in the OFAC List in the Order or in 31 CFR Ch V (Part 595) Appendix A (i.e., You are not a Blocked Person, Specially Designated National, Terrorist, or Global Terrorist, or part of a Foreign Terrorist Organization or Specially Designated Narcotics Trafficker, etc.). |
|---|---|
| **38. MISCELLANEOUS** | This Agreement is the entire agreement between You and Us. You are not relying on anything We have told You if it is different from what is written in this Agreement. You have read and understand all of the terms of, and had the opportunity to consult an attorney before signing, this Agreement. This Agreement binds and inures to the benefit of You, Us, and Our respective successors, heirs, administrators, legal representatives and permitted assigns. YOU AND WE EACH WAIVE OUR RIGHTS TO A TRIAL BY JURY IN ANY ACTION ARISING OUT OF THIS AGREEMENT. This Agreement is governed by the laws of the state in which the Facility is located regardless of its conflict of laws provisions or Your state of residence. If any part of this Agreement is unenforceable, the remaining parts of this Agreement will remain valid and enforceable. Any claim, cause of action, liability or obligation (including without limitation payment and reimbursement obligations) under this Agreement arising during the term of this Agreement will, to the extent not fully performed, survive the expiration or termination of this Agreement. Our delay in taking any action in connection with Your default does not constitute a waiver of the default. Our pursuit of one or more remedies does not preclude Us from pursuing any other remedy. |

You and We, intending to be legally bound, have signed this Agreement as of the Effective Date. **YOU AGREE THAT OUR LIABILITY REGARDING THE SPACE CONTENTS, IF ANY, IS LIMITED TO $5,000 AS DESCRIBED IN <u>PARAGRAPH 19</u>.**

CUBESMART MANAGEMENT, LLC, as Owner's agent

OCCUPANT

By: _____ /S/ _____

    Manager

**SCHEDULE TO**
**GEORGIA SELF-STORAGE RENTAL AGREEMENT**

<u>Fees and Important Dates of the Effective Date*</u>

| Description of Fee or Action | Fee Amount | Date Fee Assessed / Date Action Taken |
|---|---|---|
| Invoice Fee (¶4) | $1.00 per month | Due on same day each month as Monthly Rent. |
| Late Fee (¶6) | $25.00 | • $10.00 if We do not receive all outstanding Rent by 11:59pm local time on the **6th** day after it became due. <br>• Additional $15.00 if We do not receive all outstanding Rent by 11:59pm local time on the **16th** day after it became due. |
| Insufficient Fund Fee (¶7) | $30.00 | Anytime a check, ACH, credit card, or other similar Rent payment is reversed, returned, or refused due to insufficient funds, balance, or otherwise. |
| Administrative Lien Fee (¶9) | $110 | If We do not receive all Rent by 11:59pm local time on the **30th** day after it became due. |
| Date We will overlock the Space or otherwise deny You access to the Space (¶12) | N/A | After You have been in default under the Agreement for **7** continuous days. |
| Administrative Transfer Fee (¶21) | $19 | Upon Our approval of an assignment of this Agreement or sublease of the Space. |

*The above Schedule does not include all fees, expenses, or charges that You may be required to pay under the Agreement. We reserve the right to increase, decrease, supplement, or otherwise modify the above fees and/or dates by posting a notice of any such change in Our office at the Facility 30 days before any such increase, decrease, supplement, or modification becomes effective.

**CUBESMART**
self storage + logistics

# GEORGIA SELF-STORAGE RENTAL AGREEMENT

THIS GEORGIA SELF-STORAGE RENTAL AGREEMENT ("Agreement") is executed by CUBESMART MANAGEMENT, LLC ("Agent") solely as agent for the owner of the facility described below ("Owner") and the OCCUPANT described below ("Occupant"). In this Agreement, Owner will be referred to as "We", "Us", or "Our", and Occupant will be referred to as "I", "You", "Your", "Yourself" or "My". This Agreement is effective on _____07/28/2014_____ ("Effective Date"). You and We agree as follows:

**OCCUPANT NAME & CONTACT INFORMATION:**

| | |
|---|---|
| **Name:** | Julie Chrisley Hughes |
| **Address:** (*Residential*) | 10945 State Bridge Rd ALPHARETTA GA 30022 |
| **Home Phone #:** | 310-882-0957 |
| **Work Phone #:** | |
| **Cell Phone #:** | |
| **E-Mail Address*:** | jhughes6873@gmail.com |
| **Driver's License #:** | DL# State Exp 5120 - FL - Exp : 01/2019 |
| **Date of Birth:** | 01/12/1973 |
| **Occupant's Military Status:** | _____ Military Member (*military ID must be presented at time of rental*) If in Military, list Service Branch: _____ ✔ Non-Military Member |

*All written notices may be sent to Your e-mail address if legally permitted

**OWNER CONTACT INFORMATION:**

| | |
|---|---|
| **Address:** | 3495 Lawrenceville Suwanee Road Suwanee GA 30024 |
| **Phone #:** | (770)271-3711 |
| **E-Mail Address:** | STORE0698@CUBESMART.COM |

**SPACE:**

| | |
|---|---|
| **Storage Unit # ("Space"):** | 201 |
| **Size of Space:** (*Approximate*) | 10x25 |
| **Access/Gate Code #:** | 201 |
| **Facility Address:** | 3495 Lawrenceville Suwanee Road Suwanee GA 30024 |
| **Temperature Controlled Space** | ____ Yes ✔ No |
| **If a vehicle (car, boat, trailer, motorcycle, etc.) is stored in the Space:** | Make: _____ Year: _____ Model: _____ Color: _____ VIN:_____ License Plate #:_____ State: _____ |

**AGENT*:**

| | |
|---|---|
| **Name:** | |
| **Address:** | |
| **E-Mail Address:** | |

*Legally required notices will be mailed to person & address listed above (if any). Agent is <u>not</u> granted any rights under this Agreement.

**LIENHOLDER(S)*** (*list any person/entity with a lien/security interest in any items stored or to be stored in the Space*):

| | |
|---|---|
| **Lienholder Name(s):** | |
| **Lienholder Address(es):** | |
| **Amount of Lien(s):** | |
| **Items Subject to Lien(s):** | |

*Attach separate page if necessary

## SUMMARY OF MONTHLY CHARGES AND APPLICABLE PROMOTION(S)*:

| | |
|---|---|
| Monthly Rent (must be paid on the Effective Date & on or before the same day of each subsequent calendar month): | 166.00 |
| Monthly Insurance Premium, if any: | 12.00 |
| Monthly Invoice Fee (Optional): | 0.00 |
| Promotion: | |
| **TOTAL MONTHLY AMOUNT DUE** (plus applicable taxes) | 178.00 |
| **RENT PAID THROUGH DATE** | 7/28/2014 |

*Excludes late fees & other charges that may result from a default or otherwise under this Agreement.

| 1. | **SPACE** | You accept the Space "as is" condition. You have inspected the Space and agree that the Space is in good condition and suitable for Your storage needs. You will not modify or alter the Space without Our written consent which We may give or withhold at Our discretion. If You modify or alter the Space without Our written consent, You will pay to Us all costs that We incur to return the Space to its original condition. You will not allow any person or entity (other than You) to use the Space. |
|---|---|---|
| 2. | **LOCKING & SECURING THE SPACE** | We do not secure the Space or the items in the Space (collectively, the "Space Contents"). You must secure the Space and the Space Contents and You must lock the Space with Your lock. Any lock that You purchase from Us is Your lock. We may (but We are not obligated to) place a temporary lock on the Space if We find the Space unlocked, or for any other reason described in this Agreement, or for any other business reason in each case without causing a bailment. If You do not replace a temporary lock within 5 days after Our notice to You, You will be deemed to have purchased the temporary lock and You will be charged for the cost of the temporary lock and, if applicable, the cost to mail to You the keys for the temporary lock. |
| 3. | **TERM & AUTOMATIC RENEWAL** | The initial term of this Agreement is 1 month beginning on the Effective Date and ending at 11:59pm on the day before the 1 month anniversary of the Effective Date. This Agreement will renew automatically upon expiration of the initial term and each renewal term for successive 1 month terms until either You or We terminate this Agreement as permitted in this Agreement. |
| 4. | **RENT** | In consideration for Your right to use the Space You will pay to Us in advance, without demand, setoff, or reduction, the Monthly Rent shown on Page 1 of this Agreement, together with any tax or other assessment levied on the Monthly Rent by any state, county, or local authority. The 1st installment of Monthly Rent is due on the Effective Date, and each subsequent installment of Monthly Rent is due on or before the monthly anniversary of the Effective Date. We will not send a monthly rent invoice to You unless You request a monthly rent invoice and pay to Us the Invoice Fee shown on Schedule 1 attached to and made a part of this Agreement. We may increase the Monthly Rent amount by sending notice to You 30 days in advance of the increase. All fees, charges, and other amounts that You are required to pay under this Agreement are considered "additional rent," and Monthly Rent and "additional rent" are collectively referred to as "Rent". All past due Rent must be paid in cash, a cashier's check, or a money order. You must obtain a receipt from Us for any Cash payments or else they are invalid. Rent payments may be sent to the Facility Address on Page 1 of this Agreement. |
| 5. | **PARTIAL PAYMENTS** | Our acceptance of a partial Rent payment will not cure Your default or waive or preclude Our right to exercise Our remedies under this Agreement or otherwise regardless of any endorsement on, or instruction letter accompanying, the partial Rent payment, and any such endorsements or instruction letters are void and of no effect. Any partial Rent payment will be applied 1st to applicable fee(s) and then to the oldest outstanding Rent until exhausted. |
| 6. | **LATE PAYMENT & LATE FEE** | Any time We do not receive Rent when due, You will pay to Us late fee(s) in the amount and on the date(s) shown on Schedule 1. You agree that the late fee(s) is reasonable, is not a penalty, and has been agreed upon due to the difficulty of calculating actual damages We may sustain when Rent is paid late. |
| 7. | **INSUFFICIENT FUND FEE** | If any check, ACH, credit card, or other similar Rent payment is rejected, You will pay to Us the Insufficient Fund Fee shown on Schedule 1 in addition to the late fee(s) described in Paragraph 6. |
| 8. | **LIENHOLDER; AGENT** | You represent and warrant that only the lienholder(s) listed on Page 1 of this Agreement, if any, has a lien or security interest in the Space Contents. You will send written notice to Us of the name and address of any other party that obtains a lien or security interest in any Space Contents. If You provide on Page 1 of this Agreement (or in a subsequent written notice delivered to Us in accordance with Paragraph 33 below) the name and address of an agent to receive notices ("Agent"), We will send to the Agent a copy of all notices that We are required to send to You under the State Self-Service Storage Facility Act (specifically excluding bills and invoices). |
| 9. | **OWNER'S STATUTORY LIEN & ADMINISTRATIVE LIEN FEE** | **PURSUANT TO THE STATE SELF-SERVICE STORAGE FACILITY ACT, WE HAVE A LIEN ON ALL SPACE CONTENTS FOR RENT, LABOR, OR OTHER CHARGES, PRESENT OR FUTURE, IN RELATION TO THE SPACE CONTENTS, AND FOR EXPENSES NECESSARY FOR THE PRESERVATION OF THE SPACE CONTENTS, OR FOR EXPENSES REASONABLY INCURRED IN THE SALE OR OTHER DISPOSITION OF THE SPACE CONTENTS. THE SPACE CONTENTS WILL BE SOLD OR OTHERWISE DISPOSED OF IF NO PAYMENT HAS BEEN RECEIVED FOR A CONTINUOUS 30 DAY PERIOD AFTER DEFAULT.** You will pay to Us the Administrative Lien Fee on the date and in the amount shown on Schedule 1 to reimburse Us for Our internal costs to prepare for, and, if applicable, to sell or dispose of the Space Contents (whether or not We actually sell or dispose of the Space Contents). You agree that this fee is reasonable, does not constitute a penalty, and has been agreed upon due to the difficulty of calculating these internal costs. You will also pay to Us any costs We incur from unrelated third parties to enforce Our lien rights. |
| 10. | **DEFAULT, REMEDIES** | You will be in default of this Agreement if (i) We do not receive any Rent when due, (ii) You fail or refuse to perform any of Your other obligations under, or violate any of the terms of, this Agreement, (iii) in Our opinion, You have acted in an abusive or harassing manner towards Our employees, agents, contractors, guests, customers, tenants, or occupants, and/or (iv) You are in default of any other |

among You and Us. If You are in default of this Agreement, We may, at Our option (a) immediately terminate this Agreement, (b) if it is a monetary default, commence to sell, and sell, the Space Contents as set forth in Paragraph 9 and this Agreement will terminate on the sale date (and, if the Space Contents do not sell, We may dispose of the Space Contents), and/or (c) exercise any other remedy in this Agreement, at law, or in equity. You will pay to Us any attorneys' fees, court costs, or other expenses that We incur in connection with Your default.

| | |
|---|---|
| **11. PERMITTED USE & PROHIBITED ITEMS** | The Space may only be used for the storage of Your own personal property but specifically excluding (i) Prohibited Items (defined below) (ii) items with an aggregate value of more than $5,000.00 unless We have consented in writing, or (iii) items with special or sentimental value or with unknown immediate resale or market value such as collectibles, heirlooms, jewelry, furs, works of art, books, or writings. UNLESS WE HAVE AGREED IN WRITING THAT YOU MAY STORE ITEMS IN THE SPACE WITH AN AGGREGATE VALUE OF MORE THAN $5,000, THE SPACE CONTENTS WILL BE DEEMED TO HAVE AN AGGREGATE VALUE OF NOT MORE THAN $5,000. You will NOT use the Space (a) for residential purposes such as sleeping or living in the Space; (b) to conduct a business, occupation, trade, or hobby; (c) to manufacture, exhibit, or sell items; or (d) for any illegal or illicit purposes. **You will NOT store any of the following "Prohibited Items" in the Space:**<br>• animals, food or other perishable items;<br>• items that, in Our determination, attract vermin or create a nuisance;<br>• items that, in Our determination, have a noxious odor or stench;<br>• items that, in Our determination, danger the safety or health of people or the environment;<br>• illegal drugs, firearms, explosives, stolen, or counterfeit goods; and/or<br>• substances that are toxic, ignitable, reactive, volatile, flammable, explosive, hazardous, or corrosive or that are, at any time, regulated by state, Federal or local authorities;<br>If We believe there are Prohibited Items in the Space, We may, in addition to any other remedies under this Agreement, enter the Space (with or without law enforcement or other governmental authorities) remove and dispose of any Prohibited Items, and charge to Your account any costs We incur to do so. You will not connect to electricity (including plugging into any electrical outlets), cable, internet, and/or any other utilities serving the Space or the Facility unless We have, in our sole discretion, provided written consent to You. |
| **12. ACCESS & DENIAL OF ACCESS** | You will have access to the Space during Our business hours which are posted in Our office at the Facility. **IF YOU DO NOT PAY RENT WHEN DUE, WE MAY, WITHOUT NOTICE, DENY YOU ACCESS TO THE SPACE BY DEACTIVATING YOUR ELECTRIC GATE ACCESS CODE, IF ANY, AND/OR OVERLOCKING THE SPACE; PROVIDED, HOWEVER, THAT WE WILL NOT OVERLOCK YOUR SPACE UNTIL THE DATE SHOWN ON SCHEDULE 1.** If You cut or tamper with any overlock, You will pay to Us the cost to replace the overlock. If Rent is 30 days or more past due, We will remove Your lock from the Space to prepare for the sale of the Space Contents. If We receive all past due Rent before the sale date, We will reactivate Your access code, if applicable, and remove Our overlock from the Space. If Your lock was removed, You will secure the Space with a new lock or We will, without any obligation, place a temporary lock on the Space. We may also deny You access to the Space if You are in default of any other terms of this Agreement until You have cured the default. |
| **13. TERMINATION** | Either You or We may terminate this Agreement by providing written notice to the other ("Termination Notice") at least 10 days before the end of any monthly term. If a Termination Notice is received less than 10 days before the end of a monthly term, then this Agreement will terminate at the end of the next monthly term. If You vacate the Space before this Agreement terminates, You will not receive a Rent refund. If We find the Space unlocked and vacant (except for what appears, in our determination, to be trash), We may assume that You terminated this Agreement, dispose of the trash, and rent the Space to another. |
| **14. MOVING OUT; HOLDOVER; & HOLDOVER RENT** | Before this Agreement terminates You must remove Your lock and all Space Contents from the Space, and You must repair, to Our reasonable satisfaction, any damage that You or Your invitees have caused. If You do not repair this damage, You will pay to Us any costs that We incur to repair the damage. If Your lock and/or any Space Contents remain in or about the Space after this Agreement terminates, or if You have not completed any required repairs, We may, at Our option, either (1) deem Your lock and/or Space Contents abandoned and dispose of these items at Your cost, or (2) consider You a holdover occupant at sufferance from the termination date until You properly move out of and/or repair the Space ("Holdover Period"). The terms of this Agreement will apply during any Holdover Period except that Monthly Rent will automatically increase to 200% of the Monthly Rent in effect immediately before the Holdover Period. We may also exercise any remedies in this Agreement, at law, or in equity. |
| **15. NO BAILMENT** | This Agreement does not create a "bailment"; We are not a warehouseman engaged in the business of storing goods for hire; We do not assume custody of, or control over, the Space Contents (even if We enter or overlock the Space); and We are not responsible to safekeep or return the Space Contents. |
| **16. INSURANCE; RELEASE; &** | **YOU WILL MAINTAIN INSURANCE OR A PROTECTION PLAN COVERING THE LOSS OF, OR DAMAGE TO, THE SPACE CONTENTS. WE DO NOT INSURE THE SPACE** |

| | |
|---|---|
| **WAIVER OF SUBROGATION** | CONTENTS AND WE ARE NOT LIABLE FOR ANY LOSS OF, OR DAMAGE TO, THE SPACE CONTENTS. YOU BEAR THE ENTIRE RISK OF LOSS WITH RESPECT TO THE SPACE CONTENTS. You waive and release Us, Agent, CubeSmart, L.P., and each of their respective officers, directors, employees, subsidiaries, parents, affiliates, successors, and assigns (collectively, "Released Parties") from any and all claims for the loss of, or damage to, the Space Contents whether by reason of fire, water, elements, acts of God, theft, burglary, vandalism, mysterious disappearance, mold, mildew, rodents, insects, any additional services provided by Us, and/or for any other reason including strict liability or Our negligence, and regardless of whether You maintain insurance or a protection plan or the amount of any proceeds payable by Your insurance or protection plan provider. You waive any right of subrogation Your insurance company may have against any of the Released Parties, and You will cause Your insurance policy to reflect this waiver. This Paragraph is a specific bargained for condition of this Agreement and We would not have entered into this Agreement without it. |
| **17. INDEMNITY** | You will indemnify, defend, and hold each of the Released Parties harmless from and against any and all losses, claims, actions, causes of action, costs, expenses (including, without limitation, attorneys' fees and court costs), liabilities, and/or damages arising out of (i) Your or Your agents or invitees acts or omissions, (ii) Your default under this Agreement, (iii) Your or Your agents or invitees use of the Space or the Facility, (iv) any damage to or loss of the Space Contents, and/or (v) the sale of any Space Contents after Your default, including, without limitation any Files described in Paragraph 28. |
| **18. CONSEQUENTIAL DAMAGES** | The Released Parties are not liable for, and You release each Released Party from, any indirect, incidental, special, or consequential damages, including, without limitation, emotional or sentimental attachment, arising out of the Space or this Agreement even if a Released Party has been advised of the possibility of such damages. |
| **19. LIMITATION OF LIABILITY** | **THE MAXIMUM AGGREGATE LIABILITY OF THE RELEASED PARTIES, IF ANY, IN CONNECTION WITH THE SPACE CONTENTS IS $5,000, AND YOU WAIVE THE RIGHT TO CLAIM SUCH DAMAGES IN ANY AMOUNT ABOVE $5,000.00.** |
| **20. RULES AND REGULATIONS** | You will obey all reasonable rules and regulations for the Facility, and You will conduct Yourself in a businesslike manner with Our agents and employees. We may modify, amend, or supplement Our rules and regulations at any time. |
| **21. NO SUBLETTING OR ASSIGNMENT** | You will not assign this Agreement or sublease the Space without Our written consent which We may withhold at Our discretion. Any attempt by You to assign this Agreement or sublease the Space without Our written consent is void. You may be required to pay an administrative transfer fee as shown on Schedule 1 with respect to any assignment or sublease. |
| **22. REPAIRS & INSPECTION** | You will give Us access to the Space within 10 days after We notify You that We need access to the Space to perform any non-emergency (i) repair, maintenance, or other work or (ii) inspection. If, in Our opinion, We need access to the Space due to an emergency (or if You do not give Us access to the Space within the 10 day period referenced above), We may, without notice (or additional notice) and without incurring any liability, remove Your lock, access the Space, perform the work or inspection, and place a temporary lock on the Space. |
| **23. RELOCATION** | If We need to use the Space for any reason, You will relocate the Space Contents to a different space at the Facility or at another facility within 30 days after Our notice to You ("Space Relocation"). If, in Our opinion, the Space Relocation is an emergency (or if You do not perform the Space Relocation within 30 days after Our notice to You), We may, without notice (or additional notice) and without incurring any liability, remove Your lock, access the Space, perform the Space Relocation, and place a temporary lock on the Space. After a Space Relocation, the relocated space will be deemed to be the "Space" under this Agreement. You will pay to Us all costs We incur to perform a Space Relocation unless it resulted from an emergency not caused in any way by You. |
| **24. SECURITY SYSTEMS** | Any security systems at the Facility including, without limitation, fencing, gates, and video cameras are for the protection of Our property not Yours. These security systems may not be on, monitored, or operational, and We are not liable for any loss You may suffer if any of these security systems fail. You will not rely on any of Our security systems to protect the Space Contents, and You will not substitute any of Our security systems for Your purchase of insurance, a suitable lock, or other security measures. |
| **25. ELECTRIC GATES** | You waive and release each of the Released Parties from any and all claims for loss of, or damage to You, Your passengers, and/or Your vehicle if You follow another car though any electric gates at the Facility without using Your gate code, or if You otherwise use the electric gates improperly. If You damage any gates at the Facility, You will pay to Us all costs We incur to repair and/or replace the gates. |
| **26. TEMPERATURE** | We do not control the temperature in the Space unless the Space is identified as "temperature controlled" on Page 1 of this Agreement. If the Space is identified as "temperature controlled", we will use reasonable efforts to maintain a temperature in the Space of between 55 and 80 degrees Fahrenheit. Mold and mildew may grow on the Space Contents regardless of whether the Facility is temperature controlled. You will regularly inspect the Space and protect the Space Contents from the growth of mold or mildew. We are not liable for the growth of mold or mildew on the Space Contents. |
| **27. PETS** | No pets are allowed in the Facility other than trained service dogs. If You bring a pet to the Facility, You will be responsible for any damages that Your pet causes whether to person or property. |

| 28. | STORAGE OF FILES/PERSONAL INFORMATION | We are not responsible, and You assume all risk for any injury, damage, loss, or liability that You or anyone else may suffer if the Space Contents include any Files (defined below) and any of those Files are lost, damaged, destroyed, or sold. If You are in default We may, without any obligation (i) require that You remove Files from the Space within 5 days after Our notice to You, or (ii) after the Space Contents sale date set forth in any notice to You, destroy or dispose of Files, and You will pay to Us any costs We incur to destroy or dispose of Files. "Files" are any documents, film, or electronic data containing any personal information relating to You or Your clients, customers, patients, or others such as social security numbers; credit card, debit card, bank account or passport information; or tax, employment, medical, or legal records. |
|---|---|---|
| 29. | VEHICLE STORAGE | If the Space Contents include a motorized vehicle such as a car, boat, trailer, motorcycle, snow mobile, wave runner, or other vehicle governed by applicable motor vehicle laws, the vehicle must be in good, operational condition and stored over drip trays or cardboard to prevent fluids from leaking into the Space. If the vehicle is stored indoors, the gas tank must be drained prior to storage. At Our request, You will place identification stickers, decals, or tags in the vehicle. If You are in default or if the vehicle remains at the Facility after termination of this Agreement, We may, without notice and without incurring any liability, have the vehicle towed from the Facility at Your expense and/or relocate the vehicle to a different space or to a different facility. If fluids from the vehicle leak into the Space or Facility, You will, at Your expense, remediate such leak in accordance with all applicable laws. |
| 30. | LAW ENFORCEMENT DIRECTIVES | If We receive what appears to be a search warrant, We may, without incurring any liability, remove Your lock, allow the Space to be searched and, if applicable, the Space Contents to be seized, and We may, without any obligation, place a temporary lock on the Space. If We receive what appears to be a subpoena or if what appears to be a law officer or governmental official requests documents or information about You or the Space, We may provide such information or documents (other than credit reports or other similar financial information, if any) without incurring any liability. |
| 31. | ADDITIONAL SERVICES | Any additional services that We may provide to You at the Facility or in connection with the Space are subject to Paragraphs 15 through 20, inclusive, together with any other applicable provisions of this Agreement. Any fees for these additional services are considered Rent under this Agreement. You will secure any equipment (such as remote controls or other portable electronic devices) that We may provide in connection with any additional services, and You will be solely responsible for any damages, loss, or costs resulting from or arising out of the loss of or damage to any such equipment. You will pay to Us the cost to replace and/or repair any lost or damaged equipment. |
| 32. | LIMITATION OF WARRANTIES | WE DO NOT MAKE, AND WE EXPRESSLY DISCLAIM, ANY WARRANTY OF ANY KIND IN CONNECTION WITH THE FACILITY, THE SPACE, ANY ITEMS THAT YOU PURCHASE FROM US (WHICH MAY INCLUDE LOCKS, BOXES, AND PACKING SUPPLIES), AND/OR OUR SERVICES INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, HABITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. YOU WAIVE ANY EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THE FACILITY, THE SPACE, ANY ITEMS THAT YOU PURCHASE FROM US (WHICH MAY INCLUDE LOCKS, BOXES, AND PACKING SUPPLIES), AND/OR OUR SERVICES. |
| 33. | NOTICES; ADDRESS CHANGE; & ADVERTISEMENTS | Any notices, demands, or requests from You to Us will be in writing and sent by certified mail RRR and postage prepaid to the Facility Address on Page 1 of this Agreement. Unless otherwise required by the state's self-service storage law, any notices, demands, or requests from Us to You will be by phone, e-mail, or regular mail to Your street address, phone number, or e-mail address on Page 1 of this Agreement. You will notify Us immediately in writing if You move or change Your phone number or e-mail address; otherwise, You will not receive important notices. We may, without any obligation, advertise on Our website (www.cubesmart.com or www.cubesmart.com/storage-auctions/) the sale of the Space Contents as described in Paragraph 9. This may be the only advertisement of the Space Contents. |
| 34. | PERMISSION TO CALL & E-MAIL | You and We have entered into a business relationship and You agree that We may contact You by phone, e-mail, or otherwise with business related communications. |
| 35. | CHANGES TO AGREEMENT | We may change the terms of this Agreement at any time upon 30 days prior notice to You. Your continued use of the Space after this 30 day period means You agree to and accept the changes. |
| 36. | ATTORNEY FEES | If We retain counsel to enforce any of Our rights under this Agreement, You will pay Our reasonable attorneys' fees, court costs, and expenses whether incurred during or after the term of this Agreement. |
| 37. | OCCUPANT'S REPRESENTATION AND WARRANTY | You represent and warrant that all information provided by You in connection with this Agreement is complete, true, and accurate, and that (i) You have at all times been, are now, and will in the future be, in compliance with U.S. Executive Order 13224 ("Order"), and no action, proceeding, investigation, charge, claim, report, or notice has been filed, commenced, or threatened against You alleging any failure to so comply; (ii) You have no knowledge or notice of any fact, event, circumstance, situation, or condition that could reasonably be expected to result in (a) any action, proceeding, investigation, charge, claim, report, or notice being filed, commenced, or threatened against You alleging any failure to comply with the Order, or (b) the imposition of any civil or criminal penalty against You for any failure |

| | to comply; and (iii) You are not included in the OFAC List in the Order or in 31 CFR Ch V (Part 595) Appendix A (i.e., You are not a Blocked Person, Specially Designated National, Terrorist, or Global Terrorist, or part of a Foreign Terrorist Organization or Specially Designated Narcotics Trafficker, etc.). |
|---|---|
| **38. MISCELLANEOUS** | This Agreement is the entire agreement between You and Us. You are not relying on anything We have told You if it is different from what is written in this Agreement. You have read and understand all of the terms of, and had the opportunity to consult an attorney before signing, this Agreement. This Agreement binds and inures to the benefit of You, Us, and Our respective successors, heirs, administrators, legal representatives and permitted assigns. YOU AND WE EACH WAIVE OUR RIGHTS TO A TRIAL BY JURY IN ANY ACTION ARISING OUT OF THIS AGREEMENT. This Agreement is governed by the laws of the state in which the Facility is located regardless of its conflict of laws provisions or Your state of residence. If any part of this Agreement is unenforceable, the remaining parts of this Agreement will remain valid and enforceable. Any claim, cause of action, liability or obligation (including without limitation payment and reimbursement obligations) under this Agreement arising during the term of this Agreement will, to the extent not fully performed, survive the expiration or termination of this Agreement. Our delay in taking any action in connection with Your default does not constitute a waiver of the default. Our pursuit of one or more remedies does not preclude Us from pursuing any other remedy. |

You and We, intending to be legally bound, have signed this Agreement as of the Effective Date. **YOU AGREE THAT OUR LIABILITY REGARDING THE SPACE CONTENTS, IF ANY, IS LIMITED TO $5,000 AS DESCRIBED IN <u>PARAGRAPH 19</u>**.

CUBESMART MANAGEMENT, LLC, as Owner's agent                OCCUPANT

By: _____ /S/ _____                _____
        Manager

# SCHEDULE 4 TO
## GEORGIA SELF-STORAGE RENTAL AGREEMENT

### Fees and Important Dates of the Effective Date*

| Description of Fee or Action | Fee Amount | Date Fee Assessed / Date Action Taken |
|---|---|---|
| Invoice Fee (¶4) | $1.00 per month | Due on same day each month as Monthly Rent. |
| Late Fee (¶6) | $25.00 | • $10.00 if We do not receive all outstanding Rent by 11:59pm local time on the **6th** day after it became due.<br>• Additional $15.00 if We do not receive all outstanding Rent by 11:59pm local time on the **16th** day after it became due. |
| Insufficient Fund Fee (¶7) | $30.00 | Anytime a check, ACH, credit card, or other similar Rent payment is reversed, returned, or refused due to insufficient funds, balance, or otherwise. |
| Administrative Lien Fee (¶9) | $110 | If We do not receive all Rent by 11:59pm local time on the **30th** day after it became due. |
| Date We will overlock the Space or otherwise deny You access to the Space (¶12) | N/A | After You have been in default under the Agreement for **7** continuous days. |
| Administrative Transfer Fee (¶21) | $19 | Upon Our approval of an assignment of this Agreement or sublease of the Space. |

*The above Schedule does not include all fees, expenses, or charges that You may be required to pay under the Agreement. We reserve the right to increase, decrease, supplement, or otherwise modify the above fees and/or dates by posting a notice of any such change in Our office at the Facility 30 days before any such increase, decrease, supplement, or modification becomes effective.

## GREAT AMERICAN STORED PROPERTY INSURANCE PROGRAM
## offered by City Securities Insurance LLC, a Licensed Agent

### Personal Property Insurance Participation Form

**Name:** 0698        **Phone:** (770)271-3711

**Address:** 3495 Lawrenceville Suwanee Road

**City:** Suwanee    **State:** GA    **Zip Code:** 30024

As a condition of your lease, the Customer is required to insure their personal property for Fire and Extended Coverage perils including Burglary and Transit.  The Customer may participate in the Great American Stored Property Insurance Program from City Securities Insurance LLC, a licensed agent.  Neither the landlord nor the leasing agent is an insurance agent.

**CUSTOMER INFORMATION**

**Customer's Name(s):** Julie Chrisley Hughes      **Effective Date:** 6/22/2014

**Customer's Address:** 10945 State Bridge Rd      **Cube #:** 260-267

     ALPHARETTA GA 30022      **Disc/Cylinder Lock:** ✔YES or NO

**City, State, Zip:**

**Daytime Phone #:** 310-882-0957

**Email Address:** jhughes6873@gmail.com

**COVERAGE SELECTION (Initial one box and complete the information)**

[✔] **I AGREE TO PARTICIPATE IN THE GREAT AMERICAN STORED PROPERTY INSURANCE PROGRAM** from City Securities Insurance, LLC.  The coverage from Great American is for goods you store at this leased Cube. Covered causes of loss include fire or lightning, sonic boom, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, falling objects, weights of snow, ice, or sleet, water damage and earthquake.  **Flood coverage is not provided**. The policy contains exclusions, limitations, definitions and conditions. Coverage is in effect only in the event you pay the monthly cost listed below and you continue to pay monthly through the duration of your lease.  I understand a portion of the cost I pay is applicable to the storage company's expense in collecting, accounting and remitting payment to the Insurance Company.

| Coverage: | ✔$2,000 | ☐$3,000 | ☐$5000 |
|---|---|---|---|
| Monthly Cost: | $ 12 | $17 | $27 |

**Type of Goods Stored:** ✔ Household Goods/Personal Property) Furniture
☐ Business/Trade Property (describe) _____
☐ Vehicle, Boat/Trailer (describe) _____

All Insurance related questions and requests should be directed to: City Securities Insurance, LLC, 8900 Keystone Crossing, Ste. 300, Indianapolis, IN 46240, (317) 808-7177 (office), (317) 972-7101 (fax), storage@citysecurites.com

**Signature(s):** _____      **Date:** 6/22/2014

[  ] **I have contents coverage of the type checked below.**  A copy of my policy Declarations page is attached as evidence of coverage.  I agree to keep coverage in force during the term of my lease.

**Insurance Company Name:** _____

☐ Homeowners    ☐ Renters    ☐ Business    ☐ Owners    ☐ Other: _____

Policy #: _____    Limit $: _____    Effective Date: _____    Term: _____

**Signature(s):** _____      **Date:** _____



Customer Name: Julie Chrisley Hughes      Cube or Space Number: 260-267

**CUBESMART**
self storage + logistics

# GEORGIA SELF-STORAGE RENTAL AGREEMENT

THIS GEORGIA SELF-STORAGE RENTAL AGREEMENT ("Agreement") is executed by CUBESMART MANAGEMENT, LLC ("Agent") solely as agent for the owner of the facility described below ("Owner") and the OCCUPANT described below ("Occupant"). In this Agreement, Owner will be referred to as "We", "Us", or "Our", and Occupant will be referred to as "I", "You", "Your", "Yourself" or "My". This Agreement is effective on _____06/22/2014_____ ("Effective Date"). You and We agree as follows:

**OCCUPANT NAME & CONTACT INFORMATION:**

| | |
|---|---|
| **Name:** | Julie Chrisley Hughes |
| **Address:** (*Residential*) | 10945 State Bridge Rd ALPHARETTA GA 30022 |
| **Home Phone #:** | 310-882-0957 |
| **Work Phone #:** | |
| **Cell Phone #:** | |
| **E-Mail Address*:** | jhughes6873@gmail.com |
| **Driver's License #:** | DL# State  Exp 5120 - GA - Exp : 01/2019 |
| **Date of Birth:** | 01/12/1973 |
| **Occupant's Military Status:** | _____ Military Member (*military ID must be presented at time of rental*) If in Military, list Service Branch: _____ ✔ Non-Military Member |

*All written notices may be sent to Your e-mail address if legally permitted

**OWNER CONTACT INFORMATION:**

| | |
|---|---|
| **Address:** | 3495 Lawrenceville Suwanee Road Suwanee GA 30024 |
| **Phone #:** | (770)271-3711 |
| **E-Mail Address:** | STORE0698@CUBESMART.COM |

**SPACE:**

| | |
|---|---|
| **Storage Unit # ("Space"):** | 508 |
| **Size of Space:** (*Approximate*) | 12x30 |
| **Access/Gate Code #:** | 11073 |
| **Facility Address:** | 3495 Lawrenceville Suwanee Road Suwanee GA 30024 |
| **Temperature Controlled Space** | ____Yes   ✔ No |
| **If a vehicle (car, boat, trailer, motorcycle, etc.) is stored in the Space:** | Make: _____ Year: _____ Model: _____ Color: _____ VIN:_____ License Plate #:_____ State: _____ |

**AGENT*:**

| | |
|---|---|
| **Name:** | |
| **Address:** | |
| **E-Mail Address:** | |

*Legally required notices will be mailed to person & address listed above (if any). Agent is not granted any rights under this Agreement.

**LIENHOLDER(S)*** (*list any person/entity with a lien/security interest in any items stored or to be stored in the Space*):

| | |
|---|---|
| **Lienholder Name(s):** | |
| **Lienholder Address(es):** | |
| **Amount of Lien(s):** | |
| **Items Subject to Lien(s):** | |

*Attach separate page if necessary

## SUMMARY OF MONTHLY CHARGES AND APPLICABLE PROMOTION(S)*:

| | |
|---|---|
| Monthly Rent (must be paid on the Effective Date & on or before the same day of each subsequent calendar month): | 220.00 |
| Monthly Insurance Premium, if any: | 12.00 |
| Monthly Invoice Fee (Optional): | 0.00 |
| Promotion: | |
| **TOTAL MONTHLY AMOUNT DUE** (plus applicable taxes) | 232.00 |
| **RENT PAID THROUGH DATE** | 7/21/2014 |

*Excludes late fees & other charges that may result from a default or otherwise under this Agreement.

| 1. | **SPACE** | You accept the Space on an "as is" condition. You have inspected the Space and agree that the Space is in good condition and suitable for Your storage needs. You will not modify or alter the Space without Our written consent which We may give or withhold at Our discretion. If You modify or alter the Space without Our written consent, You will pay to Us all costs that We incur to return the Space to its original condition. You will not allow any person or entity (other than You) to use the Space. |
|----|-----------|---|
| 2. | **LOCKING & SECURING THE SPACE** | We do not secure the Space or the items in the Space (collectively, the "Space Contents"). You must secure the Space and the Space Contents and You must lock the Space with Your lock. Any lock that You purchase from Us is Your lock. We may (but We are not obligated to) place a temporary lock on the Space if We find the Space unlocked, or for any other reason described in this Agreement, or for any other business reason in each case without causing a bailment. If You do not replace a temporary lock within 5 days after Our notice to You, You will be deemed to have purchased the temporary lock and You will be charged for the cost of the temporary lock and, if applicable, the cost to mail to You the keys for the temporary lock. |
| 3. | **TERM & AUTOMATIC RENEWAL** | The initial term of this Agreement is 1 month beginning on the Effective Date and ending at 11:59pm on the day before the 1 month anniversary of the Effective Date. This Agreement will renew automatically upon expiration of the initial term and each renewal term for successive 1 month terms until either You or We terminate this Agreement as permitted in this Agreement. |
| 4. | **RENT** | In consideration for Your right to use the Space You will pay to Us in advance, without demand, setoff, or reduction, the Monthly Rent shown on <u>Page 1</u> of this Agreement, together with any tax or other assessment levied on the Monthly Rent by any state, county, or local authority. The 1st installment of Monthly Rent is due on the Effective Date, and each subsequent installment of Monthly Rent is due on or before the monthly anniversary of the Effective Date. We will not send a monthly rent invoice to You unless You request a monthly rent invoice and pay to Us the Invoice Fee shown on <u>Schedule 1</u> attached to and made a part of this Agreement. We may increase the Monthly Rent amount by sending notice to You 30 days in advance of the increase. All fees, charges, and other amounts that You are required to pay under this Agreement are considered "additional rent," and Monthly Rent and "additional rent" are collectively referred to as "<u>Rent</u>". All past due Rent must be paid in cash, a cashier's check, or a money order. You must obtain a receipt from Us for any Cash payments or else they are invalid. Rent payments may be sent to the Facility Address on <u>Page 1</u> of this Agreement. |
| 5. | **PARTIAL PAYMENTS** | Our acceptance of a partial Rent payment will not cure Your default or waive or preclude Our right to exercise Our remedies under this Agreement or otherwise regardless of any endorsement on, or instruction letter accompanying, the partial Rent payment, and any such endorsements or instruction letters are void and of no effect. Any partial Rent payment will be applied 1st to applicable fee(s) and then to the oldest outstanding Rent until exhausted. |
| 6. | **LATE PAYMENT & LATE FEE** | Any time We do not receive Rent when due, You will pay to Us late fee(s) in the amount and on the date(s) shown on <u>Schedule 1</u>. You agree that the late fee(s) is reasonable, is not a penalty, and has been agreed upon due to the difficulty of calculating actual damages We may sustain when Rent is paid late. |
| 7. | **INSUFFICIENT FUND FEE** | If any check, ACH, credit card, or other similar Rent payment is rejected, You will pay to Us the Insufficient Fund Fee shown on <u>Schedule 1</u> in addition to the late fee(s) described in <u>Paragraph 6</u>. |
| 8. | **LIENHOLDER; AGENT** | You represent and warrant that only the lienholder(s) listed on <u>Page 1</u> of this Agreement, if any, has a lien or security interest in the Space Contents. You will send written notice to Us of the name and address of any other party that obtains a lien or security interest in any Space Contents. If You provide on <u>Page 1</u> of this Agreement (or in a subsequent written notice delivered to Us in accordance with <u>Paragraph 33</u> below) the name and address of an agent to receive notices ("Agent"), We will send to the Agent a copy of all notices that We are required to send to You under the State Self-Service Storage Facility Act (specifically excluding bills and invoices). |
| 9. | **OWNER'S STATUTORY LIEN & ADMINISTRATIVE LIEN FEE** | **PURSUANT TO THE STATE SELF-SERVICE STORAGE FACILITY ACT, WE HAVE A LIEN ON ALL SPACE CONTENTS FOR RENT, LABOR, OR OTHER CHARGES, PRESENT OR FUTURE, IN RELATION TO THE SPACE CONTENTS, AND FOR EXPENSES NECESSARY FOR THE PRESERVATION OF THE SPACE CONTENTS, OR FOR EXPENSES REASONABLY INCURRED IN THE SALE OR OTHER DISPOSITION OF THE SPACE CONTENTS. THE SPACE CONTENTS WILL BE SOLD OR OTHERWISE DISPOSED OF IF NO PAYMENT HAS BEEN RECEIVED FOR A CONTINUOUS 30 DAY PERIOD AFTER DEFAULT.** You will pay to Us the Administrative Lien Fee on the date and in the amount shown on <u>Schedule 1</u> to reimburse Us for Our internal costs to prepare for, and, if applicable, to sell or dispose of the Space Contents (whether or not We actually sell or dispose of the Space Contents). You agree that this fee is reasonable, does not constitute a penalty, and has been agreed upon due to the difficulty of calculating these internal costs. You will also pay to Us any costs We incur from unrelated third parties to enforce Our lien rights. |
| 10. | **DEFAULT, REMEDIES** | You will be in default of this Agreement if (i) We do not receive any Rent when due, (ii) You fail or refuse to perform any of Your other obligations under, or violate any of the terms of, this Agreement, (iii) in Our opinion, You have acted in an abusive or harassing manner towards Our employees, agents, contractors, guests, customers, tenants, or occupants, and/or (iv) You are in default of any other |

agreement between You and Us. If You are in default of this Agreement, We may, at Our option (a) immediately terminate this Agreement, (b) if it is a monetary default, commence to sell, and sell, the Space Contents as set forth in <u>Paragraph 9</u> and this Agreement will terminate on the sale date (and, if the Space Contents do not sell, We may dispose of the Space Contents), and/or (c) exercise any other remedy in this Agreement, at law, or in equity. You will pay to Us any attorneys' fees, court costs, or other expenses that We incur in connection with Your default.

| 11. **PERMITTED USE & PROHIBITED ITEMS** | The Space may only be used for the storage of Your own personal property but specifically excluding (i) Prohibited Items (defined below) (ii) items with an aggregate value of more than $5,000.00 unless We have consented in writing, or (iii) items with special or sentimental value or with unknown immediate resale or market value such as collectibles, heirlooms, jewelry, furs, works of art, books, or writings. UNLESS WE HAVE AGREED IN WRITING THAT YOU MAY STORE ITEMS IN THE SPACE WITH AN AGGREGATE VALUE OF MORE THAN $5,000, THE SPACE CONTENTS WILL BE DEEMED TO HAVE AN AGGREGATE VALUE OF NOT MORE THAN $5,000. You will NOT use the Space (a) for residential purposes such as sleeping or living in the Space; (b) to conduct a business, occupation, trade, or hobby; (c) to manufacture, exhibit, or sell items; or (d) for any illegal or illicit purposes. **You will NOT store any of the following "Prohibited Items" in the Space:** <ul><li>animals, food or other perishable items;</li><li>items that, in Our determination, attract vermin or create a nuisance;</li><li>items that, in Our determination, have a noxious odor or stench;</li><li>items that, in Our determination, danger the safety or health of people or the environment;</li><li>illegal drugs, firearms, explosives, stolen, or counterfeit goods; and/or</li><li>substances that are toxic, ignitable, reactive, volatile, flammable, explosive, hazardous, or corrosive or that are, at any time, regulated by state, Federal or local authorities;</li></ul> If We believe there are Prohibited Items in the Space, We may, in addition to any other remedies under this Agreement, enter the Space (with or without law enforcement or other governmental authorities) remove and dispose of any Prohibited Items, and charge to Your account any costs We incur to do so. You will not connect to electricity (including plugging into any electrical outlets), cable, internet, and/or any other utilities serving the Space or the Facility unless We have, in our sole discretion, provided written consent to You. |
|---|---|
| 12. **ACCESS & DENIAL OF ACCESS** | You will have access to the Space during Our business hours which are posted in Our office at the Facility. **IF YOU DO NOT PAY RENT WHEN DUE, WE MAY, WITHOUT NOTICE, DENY YOU ACCESS TO THE SPACE BY DEACTIVATING YOUR ELECTRIC GATE ACCESS CODE, IF ANY, AND/OR OVERLOCKING THE SPACE; PROVIDED, HOWEVER, THAT WE WILL NOT OVERLOCK YOUR SPACE UNTIL THE DATE SHOWN ON <u>SCHEDULE 1</u>.** If You cut or tamper with any overlock, You will pay to Us the cost to replace the overlock. If Rent is 30 days or more past due, We will remove Your lock from the Space to prepare for the sale of the Space Contents. If We receive all past due Rent before the sale date, We will reactivate Your access code, if applicable, and remove Our overlock from the Space. If Your lock was removed, You will secure the Space with a new lock or We will, without any obligation, place a temporary lock on the Space. We may also deny You access to the Space if You are in default of any other terms of this Agreement until You have cured the default. |
| 13. **TERMINATION** | Either You or We may terminate this Agreement by providing written notice to the other ("Termination Notice") at least 10 days before the end of any monthly term. If a Termination Notice is received less than 10 days before the end of a monthly term, then this Agreement will terminate at the end of the next monthly term. If You vacate the Space before this Agreement terminates, You will not receive a Rent refund. If We find the Space unlocked and vacant (except for what appears, in our determination, to be trash), We may assume that You terminated this Agreement, dispose of the trash, and rent the Space to another. |
| 14. **MOVING OUT; HOLDOVER; & HOLDOVER RENT** | Before this Agreement terminates You must remove Your lock and all Space Contents from the Space, and You must repair, to Our reasonable satisfaction, any damage that You or Your invitees have caused. If You do not repair this damage, You will pay to Us any costs that We incur to repair the damage. If Your lock and/or any Space Contents remain in or about the Space after this Agreement terminates, or if You have not completed any required repairs, We may, at Our option, either (1) deem Your lock and/or Space Contents abandoned and dispose of these items at Your cost, or (2) consider You a holdover occupant at sufferance from the termination date until You properly move out of and/or repair the Space ("Holdover Period"). The terms of this Agreement will apply during any Holdover Period except that Monthly Rent will automatically increase to 200% of the Monthly Rent in effect immediately before the Holdover Period. We may also exercise any remedies in this Agreement, at law, or in equity. |
| 15. **NO BAILMENT** | This Agreement does not create a "bailment"; We are not a warehouseman engaged in the business of storing goods for hire; We do not assume custody of, or control over, the Space Contents (even if We enter or overlock the Space); and We are not responsible to safekeep or return the Space Contents. |
| 16. **INSURANCE; RELEASE; &** | YOU WILL MAINTAIN INSURANCE OR A PROTECTION PLAN COVERING THE LOSS OF, OR DAMAGE TO, THE SPACE CONTENTS. WE DO NOT INSURE THE SPACE |

| | |
|---|---|
| **WAIVER OF SUBROGATION** | **CONTENTS, AND WE ARE NOT LIABLE FOR ANY LOSS OF, OR DAMAGE TO, THE SPACE CONTENTS. YOU BEAR THE ENTIRE RISK OF LOSS WITH RESPECT TO THE SPACE CONTENTS.** You waive and release Us, Agent, CubeSmart, L.P., and each of their respective officers, directors, employees, subsidiaries, parents, affiliates, successors, and assigns (collectively, "Released Parties") from any and all claims for the loss of, or damage to, the Space Contents whether by reason of fire, water, elements, acts of God, theft, burglary, vandalism, mysterious disappearance, mold, mildew, rodents, insects, any additional services provided by Us, and/or for any other reason including strict liability or Our negligence, and regardless of whether You maintain insurance or a protection plan or the amount of any proceeds payable by Your insurance or protection plan provider. You waive any right of subrogation Your insurance company may have against any of the Released Parties, and You will cause Your insurance policy to reflect this waiver. This Paragraph is a specific bargained for condition of this Agreement and We would not have entered into this Agreement without it. |
| **17. INDEMNITY** | You will indemnify, defend, and hold each of the Released Parties harmless from and against any and all losses, claims, actions, causes of action, costs, expenses (including, without limitation, attorneys' fees and court costs), liabilities, and/or damages arising out of (i) Your or Your agents or invitees acts or omissions, (ii) Your default under this Agreement, (iii) Your or Your agents or invitees use of the Space or the Facility, (iv) any damage to or loss of the Space Contents, and/or (v) the sale of any Space Contents after Your default, including, without limitation any Files described in Paragraph 28. |
| **18. CONSEQUENTIAL DAMAGES** | The Released Parties are not liable for, and You release each Released Party from, any indirect, incidental, special, or consequential damages, including, without limitation, emotional or sentimental attachment, arising out of the Space or this Agreement even if a Released Party has been advised of the possibility of such damages. |
| **19. LIMITATION OF LIABILITY** | **THE MAXIMUM AGGREGATE LIABILITY OF THE RELEASED PARTIES, IF ANY, IN CONNECTION WITH THE SPACE CONTENTS IS $5,000, AND YOU WAIVE THE RIGHT TO CLAIM SUCH DAMAGES IN ANY AMOUNT ABOVE $5,000.00.** |
| **20. RULES AND REGULATIONS** | You will obey all reasonable rules and regulations for the Facility, and You will conduct Yourself in a businesslike manner with Our agents and employees. We may modify, amend, or supplement Our rules and regulations at any time. |
| **21. NO SUBLETTING OR ASSIGNMENT** | You will not assign this Agreement or sublease the Space without Our written consent which We may withhold at Our discretion. Any attempt by You to assign this Agreement or sublease the Space without Our written consent is void. You may be required to pay an administrative transfer fee as shown on Schedule 1 with respect to any assignment or sublease. |
| **22. REPAIRS & INSPECTION** | You will give Us access to the Space within 10 days after We notify You that We need access to the Space to perform any non-emergency (i) repair, maintenance, or other work or (ii) inspection. If, in Our opinion, We need access to the Space due to an emergency (or if You do not give Us access to the Space within the 10 day period referenced above), We may, without notice (or additional notice) and without incurring any liability, remove Your lock, access the Space, perform the work or inspection, and place a temporary lock on the Space. |
| **23. RELOCATION** | If We need to use the Space for any reason, You will relocate the Space Contents to a different space at the Facility or at another facility within 30 days after Our notice to You ("Space Relocation"). If, in Our opinion, the Space Relocation is an emergency (or if You do not perform the Space Relocation within 30 days after Our notice to You), We may, without notice (or additional notice) and without incurring any liability, remove Your lock, access the Space, perform the Space Relocation, and place a temporary lock on the Space. After a Space Relocation, the relocated space will be deemed to be the "Space" under this Agreement. You will pay to Us all costs We incur to perform a Space Relocation unless it resulted from an emergency not caused in any way by You. |
| **24. SECURITY SYSTEMS** | Any security systems at the Facility including, without limitation, fencing, gates, and video cameras are for the protection of Our property not Yours. These security systems may not be on, monitored, or operational, and We are not liable for any loss You may suffer if any of these security systems fail. You will not rely on any of Our security systems to protect the Space Contents, and You will not substitute any of Our security systems for Your purchase of insurance, a suitable lock, or other security measures. |
| **25. ELECTRIC GATES** | You waive and release each of the Released Parties from any and all claims for loss of, or damage to You, Your passengers, and/or Your vehicle if You follow another car though any electric gates at the Facility without using Your gate code, or if You otherwise use the electric gates improperly. If You damage any gates at the Facility, You will pay to Us all costs We incur to repair and/or replace the gates. |
| **26. TEMPERATURE** | We do not control the temperature in the Space unless the Space is identified as "temperature controlled" on Page 1 of this Agreement. If the Space is identified as "temperature controlled", we will use reasonable efforts to maintain a temperature in the Space of between 55 and 80 degrees Fahrenheit. Mold and mildew may grow on the Space Contents regardless of whether the Facility is temperature controlled. You will regularly inspect the Space and protect the Space Contents from the growth of mold or mildew. We are not liable for the growth of mold or mildew on the Space Contents. |
| **27. PETS** | No pets are allowed in the Facility other than trained service dogs. If You bring a pet to the Facility, You will be responsible for any damages that Your pet causes whether to person or property. |

| 28. STORAGE OF FILES/PERSONAL INFORMATION | We are not responsible, and You assume all risk for, any loss, damage, cost, or liability that You or anyone else may suffer if the Space Contents include any Files (defined below) and any of those Files are lost, damaged, destroyed, or sold. If You are in default We may, without any obligation (i) require that You remove Files from the Space within 5 days after Our notice to You, or (ii) after the Space Contents sale date set forth in any notice to You, destroy or dispose of Files, and You will pay to Us any costs We incur to destroy or dispose of Files. "Files" are any documents, film, or electronic data containing any personal information relating to You or Your clients, customers, patients, or others such as social security numbers; credit card, debit card, bank account or passport information; or tax, employment, medical, or legal records. |
|---|---|
| 29. VEHICLE STORAGE | If the Space Contents include a motorized vehicle such as a car, boat, trailer, motorcycle, snow mobile, wave runner, or other vehicle governed by applicable motor vehicle laws, the vehicle must be in good, operational condition and stored over drip trays or cardboard to prevent fluids from leaking into the Space. If the vehicle is stored indoors, the gas tank must be drained prior to storage. At Our request, You will place identification stickers, decals, or tags in the vehicle. If You are in default or if the vehicle remains at the Facility after termination of this Agreement, We may, without notice and without incurring any liability, have the vehicle towed from the Facility at Your expense and/or relocate the vehicle to a different space or to a different facility. If fluids from the vehicle leak into the Space or Facility, You will, at Your expense, remediate such leak in accordance with all applicable laws. |
| 30. LAW ENFORCEMENT DIRECTIVES | If We receive what appears to be a search warrant, We may, without incurring any liability, remove Your lock, allow the Space to be searched and, if applicable, the Space Contents to be seized, and We may, without any obligation, place a temporary lock on the Space. If We receive what appears to be a subpoena or if what appears to be a law officer or governmental official requests documents or information about You or the Space, We may provide such information or documents (other than credit reports or other similar financial information, if any) without incurring any liability. |
| 31. ADDITIONAL SERVICES | Any additional services that We may provide to You at the Facility or in connection with the Space are subject to Paragraphs 15 through 20, inclusive, together with any other applicable provisions of this Agreement. Any fees for these additional services are considered Rent under this Agreement. You will secure any equipment (such as remote controls or other portable electronic devices) that We may provide in connection with any additional services, and You will be solely responsible for any damages, loss, or costs resulting from or arising out of the loss of or damage to any such equipment. You will pay to Us the cost to replace and/or repair any lost or damaged equipment. |
| 32. LIMITATION OF WARRANTIES | WE DO NOT MAKE, AND WE EXPRESSLY DISCLAIM, ANY WARRANTY OF ANY KIND IN CONNECTION WITH THE FACILITY, THE SPACE, ANY ITEMS THAT YOU PURCHASE FROM US (WHICH MAY INCLUDE LOCKS, BOXES, AND PACKING SUPPLIES), AND/OR OUR SERVICES INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, HABITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. YOU WAIVE ANY EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THE FACILITY, THE SPACE, ANY ITEMS THAT YOU PURCHASE FROM US (WHICH MAY INCLUDE LOCKS, BOXES, AND PACKING SUPPLIES), AND/OR OUR SERVICES. |
| 33. NOTICES; ADDRESS CHANGE; & ADVERTISEMENTS | Any notices, demands, or requests from You to Us will be in writing and sent by certified mail RRR and postage prepaid to the Facility Address on Page 1 of this Agreement. Unless otherwise required by the state's self-service storage law, any notices, demands, or requests from Us to You will be by phone, e-mail, or regular mail to Your street address, phone number, or e-mail address on Page 1 of this Agreement. You will notify Us immediately in writing if You move or change Your phone number or e-mail address; otherwise, You will not receive important notices. We may, without any obligation, advertise on Our website (www.cubesmart.com or www.cubesmart.com/storage-auctions/) the sale of the Space Contents as described in Paragraph 9. This may be the only advertisement of the Space Contents. |
| 34. PERMISSION TO CALL & E-MAIL | You and We have entered into a business relationship and You agree that We may contact You by phone, e-mail, or otherwise with business related communications. |
| 35. CHANGES TO AGREEMENT | We may change the terms of this Agreement at any time upon 30 days prior notice to You. Your continued use of the Space after this 30 day period means You agree to and accept the changes. |
| 36. ATTORNEY FEES | If We retain counsel to enforce any of Our rights under this Agreement, You will pay Our reasonable attorneys' fees, court costs, and expenses whether incurred during or after the term of this Agreement. |
| 37. OCCUPANT'S REPRESENTATION AND WARRANTY | You represent and warrant that all information provided by You in connection with this Agreement is complete, true, and accurate, and that (i) You have at all times been, are now, and will in the future be, in compliance with U.S. Executive Order 13224 ("Order"), and no action, proceeding, investigation, charge, claim, report, or notice has been filed, commenced, or threatened against You alleging any failure to so comply; (ii) You have no knowledge or notice of any fact, event, circumstance, situation, or condition that could reasonably be expected to result in (a) any action, proceeding, investigation, charge, claim, report, or notice being filed, commenced, or threatened against You alleging any failure to comply with the Order, or (b) the imposition of any civil or criminal penalty against You for any failure |

| | to comply; and (iii) You are not included in the OFAC List in the Order or in 31 CFR Ch V (Part 595) Appendix A (i.e., You are not a Blocked Person, Specially Designated National, Terrorist, or Global Terrorist, or part of a Foreign Terrorist Organization or Specially Designated Narcotics Trafficker, etc.). |
|---|---|
| **38. MISCELLANEOUS** | This Agreement is the entire agreement between You and Us. You are not relying on anything We have told You if it is different from what is written in this Agreement. You have read and understand all of the terms of, and had the opportunity to consult an attorney before signing, this Agreement. This Agreement binds and inures to the benefit of You, Us, and Our respective successors, heirs, administrators, legal representatives and permitted assigns. YOU AND WE EACH WAIVE OUR RIGHTS TO A TRIAL BY JURY IN ANY ACTION ARISING OUT OF THIS AGREEMENT. This Agreement is governed by the laws of the state in which the Facility is located regardless of its conflict of laws provisions or Your state of residence. If any part of this Agreement is unenforceable, the remaining parts of this Agreement will remain valid and enforceable. Any claim, cause of action, liability or obligation (including without limitation payment and reimbursement obligations) under this Agreement arising during the term of this Agreement will, to the extent not fully performed, survive the expiration or termination of this Agreement. Our delay in taking any action in connection with Your default does not constitute a waiver of the default. Our pursuit of one or more remedies does not preclude Us from pursuing any other remedy. |

You and We, intending to be legally bound, have signed this Agreement as of the Effective Date. **YOU AGREE THAT OUR LIABILITY REGARDING THE SPACE CONTENTS, IF ANY, IS LIMITED TO $5,000 AS DESCRIBED IN <u>PARAGRAPH 19</u>.**

CUBESMART MANAGEMENT, LLC, as Owner's agent                    OCCUPANT

By: _____/S/_____                    _____
        Manager

**SCHEDULE TWO TO**
**GEORGIA SELF-STORAGE RENTAL AGREEMENT**

<u>Fees and Important Dates of the Effective Date*</u>

| Description of Fee or Action | Fee Amount | Date Fee Assessed / Date Action Taken |
|---|---|---|
| Invoice Fee (¶4) | $1.00 per month | Due on same day each month as Monthly Rent. |
| Late Fee (¶6) | $25.00 | • $10.00 if We do not receive all outstanding Rent by 11:59pm local time on the **6th** day after it became due.<br>• Additional $15.00 if We do not receive all outstanding Rent by 11:59pm local time on the **16th** day after it became due. |
| Insufficient Fund Fee (¶7) | $30.00 | Anytime a check, ACH, credit card, or other similar Rent payment is reversed, returned, or refused due to insufficient funds, balance, or otherwise. |
| Administrative Lien Fee (¶9) | $110 | If We do not receive all Rent by 11:59pm local time on the **30th** day after it became due. |
| Date We will overlock the Space or otherwise deny You access to the Space (¶12) | N/A | After You have been in default under the Agreement for **7** continuous days. |
| Administrative Transfer Fee (¶21) | $19 | Upon Our approval of an assignment of this Agreement or sublease of the Space. |

*The above Schedule does not include all fees, expenses, or charges that You may be required to pay under the Agreement. We reserve the right to increase, decrease, supplement, or otherwise modify the above fees and/or dates by posting a notice of any such change in Our office at the Facility 30 days before any such increase, decrease, supplement, or modification becomes effective.



👤 Julie Chrisley Hughes – 1001993159

| ≡ Notes | ⊘ Upload | 📷 Webcam Photo | ≡ Add cube |

| 🖿 Cube 110 | 🖿 Cube 116 | 🖿 Cube 116 | 🖿 Cube 116 | 🖿 Cube 200 | 🖿 Cube 201 | 🖿 Cube 201 | 🖿 Cube 201 | 🖿 Cube 260-267 |

**Cube Balance Due:**
## $0.00
Account Balance Due: $0.00

View Statement

**Security Deposit:**
$0.00

Pre
$0.

**Moved Out on Feb 9th, 2017**

Filter by 📅  mm-dd-yyyy  —  mm-dd-yyyy   Apply

| Date | Description | Service Period | Promo | Cha |





**DASH**

**LEADS**

**⬤ Julie Chrisley Hughes - 1001993159**

**JSTOMERS**

≡ Notes    ⬗ Upload    📷 Webcam Photo    ≣ Add cube

**CUBES**

≣ **Cube 110**    ≣ Cube 116    ≣ Cube 116    ≣ Cube 116    ≣ Cube

**BILLING**

**Cube Balance Due:**
# $0.00

View

Account Balance Due: $0.00

**PAST DUE**

**Moved Out on Feb 9th, 2017**

Filter by 📅  mm-dd-yyyy  —  mm-dd-yyyy   Apply

**REPORTS**

| Date | Description | Service |
|------|-------------|---------|

**MMUNICATION**



**Julie Chrisley Hughes** · 1601955159

≡ Notes  ⌀ Upload  📷 Webcam Photo  ▤ Add cube

▤ Cube 110    ▤ Cube 116    ▤ Cube 116    **▤ Cube 116**    ▤ C

**Cube Balance Due:**

# $0.00

**Account Balance Due: $0.00**

**Moved Out on Jul 25th, 2018**

Filter by 📅  | mm-dd-yyyy |  —  | mm-dd-yyyy |  Apply

**Date**                    **Description**



## 👤 Julie Chrisley Hughes – 1001993159 🔲

[ ▤ Notes ] [ ✏ Upload ] [ 📷 Webcam Photo ] [ ▤ Add cube ]

▤ Cube 110      ▤ Cube 116      ▤ Cube 116      ▤ Cube 116      ▤ **Cube 200**      ▤

**Cube Balance Due:**

# $0.00

Account Balance Due: $0.00

View Statement

**Moved Out on Aug 29th, 2014**

Filter by 📅 [ mm-dd-yyyy ] — [ mm-dd-yyyy ] [ Apply ]



👤 Julie Chrisley Hughes – 1001993159  ▤

| ▤ Notes | ✎ Upload | 📷 Webcam Photo | ▤ Add cube |

| ▤ Cube 110 | ▤ Cube 116 | ▤ Cube 116 | ▤ Cube 116 | ▤ Cube 200 | ▤ Cube 201 | ▤ Cube 201 | ▤ Cube 201 |

**Cube Balance Due:**
## $0.00
Account Balance Due: $0.00

View Statement

**Security Deposit:**
$0.00

**Moved Out on Mar 29th, 2016**

Filter by 📅 [mm-dd-yyyy] — [mm-dd-yyyy]  Apply

| Date | Description | Service Period | Promo |

LEASE OF PREMISES

AGREEMENT

THIS LEASE OF PREMISES AGREEMENT (this "Agreement"), effective July 6th 2016 is entered into between **Printer & Parts Warehouse, LLC**, a Georgia limited liability company ("PPW") and TCs Productions Inc a Georgia limited liability company.

WHEREAS _____ requires use of limited physical office located at 3270 Summit Ridge Parkway, Suite 110, Duluth, GA, 30096 (the "Premises").

NOW, THEREFORE, in consideration of the mutual promises set forth below, the parties hereby agree as follows:

1) Term. The term of this Agreement shall begin July 6th as of the date hereof and run on a calendar month-to-month basis for a period of 30 days.

2) Rent _____ shall pay PPW a monthly rental fee of $4043.00 in advance. Rent shall include all utilities, including electric and water.

3) Furniture & Equipment: Any furniture or equipment delivered to the premises by _____ shall remain the property and responsibility of _____.

4) IN WITNESS WEHREOF, the parties hereto have caused the Agreement to be executed in their respective names by their duly authorized representatives as of the day and year set forth below.

Dated July 6, 2016

Printer & Parts Warehouse, LLC
By: _____
Patti Bezzati, Owner

By: _____