IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : CRIMINAL CASE NO. |
| TODD CHRISLEY, | : 1:19-CR-297-ELR-JSA |
| JULIE CHRISLEY and | : |
| PETER TARANTINO, | |
| Defendants. | : |

## ORDER ON DEFENDANTS' MOTIONS FOR BILLS OF PARTICULARS

All the Defendants in this fraud and tax evasion case request that the Court order the Government to file a bill of particulars, arguing that the Indictment does not provide sufficient detail as to the nature of the scheme, their false statements or other actions, and other information necessary for them to prepare for trial. The Court, however, finds that Defendants have not established their entitlement to any additional particulars. Thus, for the reasons stated below, the Court **DENIES** the Defendants' Motions [35][39][40].

### I. BACKGROUND

The Defendants are joined in a 27-page "speaking" Indictment that includes detailed factual allegations as to three separate schemes, all of which involve Defendants Todd and Julie Chrisley (the "Chrisleys") and one of which also involves Defendant Peter Tarantino ("Tarantino.") The Chrisleys are a married

1

couple who operated a real estate investment operation and starred on a reality television series. Tarantino was the Chrisley's accountant during at least part of the relevant time. The Indictment provides substantial background information as to the Defendants, their business operations, and their business relationships with each other. Indictment [1] ¶¶ 1-14.

The first set of charges relate to an alleged bank fraud conspiracy perpetrated by the Chrisleys from "as early as 2007 and continuing until in or about 2012." Indictment [1] ¶¶ 16. The gist of this scheme is that the Chrisleys, along with an unnamed Co-conspirator A (apparently not Tarantino) conspired to fabricate and submit false bank statements and other financial documents to financial institutions so that the Chrisleys could obtain millions of dollars in loans, for their personal use. *Id*. ¶ 17. The Indictment details specific examples of fabricated documents and transactions, and quotes, verbatim, several examples of email-based conversations among the conspirators as to specific documents or transactions. *Id*. ¶¶ 18-22. In addition to the narrative conspiracy allegations, the Indictment includes five individual bank fraud charges relating to five specific submissions of false paperwork. The Indictment identifies the date, description of the falsified document, and recipient bank in each of these five cases. *Id*. ¶ 25.

The Indictment sets forth a separate wire fraud conspiracy, again involving only the Chrisleys (not Tarantino) in 2014. *Id*. ¶ 27. This scheme allegedly

involved fabricated documents sent to a property owner in California in connection with a lease application. *Id*. The Indictment details specific documents that were falsified, including the dates, the specific information contained on the document, how they were fabricated, and for what purpose. *Id*. ¶¶ 27-33.

The third separate scheme alleges that the Chrisleys, joined for a period of time by Tarantino, conspired to defraud the United States and committed tax evasion, from approximately 2010 through 2018. Again, the Indictment includes detailed descriptions as to the nature of the false documents that were submitted or created and false statements made to the IRS, along with specific examples of such documents and statements. The Indictment also details specific actions and statements by each of the Defendants as part of this scheme. *Id*. ¶¶ 37-60.

In addition to the allegations in the Indictment, the Government represents that the following information has been provided to the Defendants in discovery:

> [H]undreds of thousands of pages of materials have been produced to the defendants, much of which provides the exact information the defendants are seeking, including:
>
> (1) Multiple, lengthy search warrant affidavits discussing both conspiracies in detail;
>
> (2) A several-hundred page IRS Inventory Control System ("ICS") transcript detailing the Chrisleys' taxpayer history and the dates, nature and substance of communications between the IRS and the Chrisleys or their power of attorney (Tarantino); and

>    (3) Audio recordings and accompanying transcripts of the two interviews of Tarantino.

Furthermore, even though it is under no obligation to do so, the Government has voluntarily made early disclosure of potential Jencks Act material that readily identifies the information sought by defendants:

>    (1) Over 30 reports of witness interviews, many of which detail information about one or both conspiracies;

>    (2) Grand jury transcripts; several of which detail information about one or both conspiracies;

>    (3) Five reports of interviews with Co-conspirator A, who described the bank fraud conspiracy; and

>    (4) A lengthy IRS Special Agent Report detailing the tax conspiracy along with accompanying exhibits of particularly relevant documents.

Cognizant of "needle in the haystack" issues with a discovery production of this size, the Government has produced electronic evidence in the manner requested by defense counsel so that counsel could use their preferred technology in case preparation. Moreover, while there is no legal obligation to do so, Government counsel has met with all defense counsel, identified some of the Government's key pieces of evidence against each defendant, and provided an overview of the alleged offense conduct and the Government's theory of criminal prosecution against each defendant. During the eighteen-month period before the Indictment was brought, the Government had more than a dozen face to-face meetings and telephone calls with the Chrisleys' attorneys in which it articulated its theories of the crimes under investigation. The Government's open approach was not limited to meetings; on March 14, 2019 – five months before the Indictment – the Government sent defense counsel copies of a number of documents that were relevant to the bank fraud conspiracy. The Government similarly met with Tarantino's counsel a number of times and – eight months before the Indictment – provided a binder full of relevant materials along with the recordings of Tarantino's two interviews with IRS agents. The undersigned counsel is not aware of a

single discovery request or question from defense counsel that has gone unanswered or unresolved.

Gov't Br. [45] at 8-10.

## II. DISCUSSION

The purpose of a true bill of particulars is threefold: "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985) (citations omitted). A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information necessary for trial preparation even if not required to be included in the indictment itself. *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (italics omitted).

Generalized discovery, however, is not an appropriate function of a bill of particulars and is not a proper purpose in seeking the bill. *Id*., at 1442; *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981). Similarly, the Eleventh Circuit has held that a bill of particulars should not "automatically [be] accorded the status of a supplement to an indictment." *United States v. Anderson*, 799 F.2d 1438, 1442 (11th Cir. 1986). Furthermore, a defendant is not entitled to a bill of particulars "with respect to information which is already available through other sources," including discovery. *United States v. Martell*, 906 F.2d 555, 558 (11th

Cir. 1990); *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), *modified on other grounds*, 801 F.2d 378 (11th Cir. 1986).

The Government states, without contradiction, that it has provided the information requested as to six of the Chrisleys' demands for particulars, which are therefore moot. *See* Gov't Br. [45] at 6-7. As for the remaining demands, Defendants ask for, among other things, a sweeping listing of all their alleged overt acts during these three conspiracies. Tarantino also asks for a listing of all acts taken to mislead or impede the IRS and false statements made during the conspiracy, and the Chrisleys ask for a listing of all expenditures that they made for their personal benefit as alleged in the tax conspiracy.

"Generally, a defendant facing charges of fraud 'is entitled to a bill of particulars setting forth each false and fraudulent pretense and representation described generally in the indictment.'" *United States v. Alabed*, No. 1:19-CR-89-MHC-JSA, 2019 WL 7842413, *4 (N.D.Ga. Dec. 4, 2019) (*quoting United States v. McCoy*, 492 F.Supp. 540, 545 (M.D. Fla. 1980)). On the other hand, "[a] bill of particulars may not be used to compel the government to provide the essential facts regarding the existence and formation of a conspiracy. Nor is the government required to provide defendants with all overt acts that might be proven at trial." *U.S. v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986). The Government is also

not required to "make a detailed disclosure of the evidence" to be presented at trial. *United States v. Holzendorf*, 576 Fed. App. 932, 935-36 (11th Cir. 2014).

For example, the Court found a bill of particulars to be needed in *Alabed*, in which the Indictment alleged nothing more than that the defendants "gave false and misleading answers and provided deceptive documentation" in response to questions posed by the alleged victims of a fraud scheme. 2019 WL 7842413 at *4. The undersigned found that this conclusory and generalized statement was insufficient to identify the statements referred to and to explain why those statements were "false" or "misleading." The Court thus ordered provision of a bill of particulars to better identify the false statements referred to in this solitary and conclusory sentence. *Id.* Tarantino draws support from the undersigned's opinion in *Alabed* and argues that the Court should rule likewise here, by ordering a listing of every overt act, false statement, and obstructive act taken in this case.

The same concerns that confronted the Court in *Alabed* do not apply here, however. The instant Indictment does not just conclusorily accuse the Defendants of making unspecified false statements, but rather identifies in detail particular statements and falsified documents and explains why those statements were false. Nor did the Government in responding to the motion simply off-handedly assure the Court that all other necessary facts were provided in discovery, as the Government did in *Alabed*. Rather, the Government has explained in great detail

the nature of the evidence and discovery provided, including a substantial amount of witness statements that are arguably not required in discovery at this juncture. The Court thus finds that the Indictment itself, especially as amplified by this substantial discovery production, well advises the Defendants as to the identity and nature of the false statements and other fraudulent actions that are referred to in the Indictment.

To the extent the Defendants demand a more expansive and all-inclusive listing of all other overt acts or conduct that the Government may rely on at trial, that is simply beyond what the rules provide at this stage. To the extent the Defendants demand an accounting of all alleged personal expenditures in furtherance of the fraud or tax schemes, or other proffers of proof, those are also evidentiary details that are also beyond the purpose of a bill of particulars. The Court simply cannot find that the additional information requested by the Defendants is an appropriate basis to order disclosure of a bill of particulars.

### III.   CONCLUSION

The Defendants' Motions for Bills of Particulars [35][39][40] are **DENIED**.

**IT IS SO ORDERED** this 30th day of August, 2021.

_____
**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**