## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **v.** | : | **CRIMINAL CASE NO.** |
| **TODD CHRISLEY and** | : | **1:19-CR-297-ELR-JSA** |
| **JULIE CHRISLEY,** | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

For the reasons explained below, the Motion by the Chrisley Defendants to Suppress Evidence Seized Pursuant to the Search Warrants for Emails and Electronically Stored Information [52] should be **DENIED**.

## I.      BACKGROUND

On August 13, 2019, the grand jury returned an indictment against Defendants Todd Chrisley and Julie Chrisley (the "Chrisley Defendants," or (for purposes of this Report and Recommendation) "Defendants") for bank fraud, wire fraud, tax evasion, and various counts of conspiracy. A third Defendant, Peter Tarantino, is charged in some of the counts but is not a party to these motions.

During the investigation, U.S. Internal Revenue-Criminal Investigations Special Agent Larry Arrow obtained and executed three search warrants for electronic evidence possessed by Google and AOL. On March 1, 2019, U.S.

Magistrate Judge Catherine M. Salinas issued two warrants to Google and AOL for various emails accounts used by the Chrisley Defendants. *See* Doc. 52-1; 52-2. On May 24, 2019, U.S. Magistrate Judge Russell G. Vineyard issued an additional search warrant for some of the same and other email accounts to Google. *See* Doc. 58-1.

The three warrants and their applications were identical in material respects. They each used an Attachment B to identify the material to be seized by the Government. This Attachment B was divided into two sections: Section I, which outlined the information to be provided by the electronic service providers to the Government, and Section II, which detailed the specific material and categories of material that the Government was permitted to search for and seize.

Section I of Attachment B of each warrant required the subject provider to produce various information related to each email account, including "the contents of all emails associated with the account." Section II contained more specific restrictions as to what the investigators could seize in the investigation. First, the Section only allowed the Government to seize "information [produced by the providers] that constitutes fruits, contraband, evidence and instrumentalities of" each of the specific crimes at issue in the case. In addition to referencing the specific crimes at issue, the Section provided an enumerated list of ten specific

categories of documents, including "records relating to federal and state individual and corporate income tax returns," "records reflecting business operations," etc.

Second, Section II only allowed the Government to seize communications pertaining to four listed individuals, including the three named Defendants and another individual (Mark Braddock); Third, the Section imposed a date restriction that allowed the Government to only seize information from January 1, 2005 until the date of the warrant. Only if a document qualified under the subject matter restriction, the pertinent persons restriction, and the date restriction, did the warrant authorize the Government to seize and use the document.

The Government proffers that upon receiving the resulting data from the providers, FBI technicians first segregated all the potentially privileged communications sent to or from email addresses associated with the Defendants (according to a list of lawyers provided by the Defendants during the investigation). Over 24,000 documents were thus segregated from the prosecution team's review. The prosecution team reviewed the remaining documents (over 237,000) and ultimately identified 20,639 that fall within the scope of the items to be seized by the search warrants. The Government proffers that while the entire non-privileged data set is maintained by FBI technicians, the prosecution team's access has been removed except as to the 20,639 responsive, non-privileged

documents. The Government proffers, and the Defendants do not contest, that all the data has been produced to the Defendants.

The Defendants now move to suppress, arguing that the warrants were not sufficiently particularized, that the Government has exceeded the scope of the warrants and has otherwise acted unreasonably in executing the warrants.

## II.   DISCUSSION

### A. *Particularity*

Defendants first argue that the warrants were not sufficiently particularized, in that they allowed the agents to broadly review the emails records for material falling under various "generic" or "catch-all" categories. Relatedly, even if the restrictions delineating what documents could be "seized" in Section II of Attachment B satisfied the particularity requirement, Defendants challenge the two-step nature of this warrant, by which the email providers initially provided the entirety of the Defendants' email accounts to the Government regardless of responsiveness.  Defendants thus argue that the warrant was overbroad and non-particular by allowing the Government access to such large amounts of non-responsive material.

1.  Specificity of the Items to be Seized

A search warrant must "particularly describ[e] ... the persons or things to be seized."  U.S. CONST. AMEND. IV.  As the Supreme Court has explained:

> General warrants of course, are prohibited by the Fourth Amendment. [T]he problem (posed by the general warrant) is not that of intrusion Per se, but of a general, exploratory rummaging in a person's belongings. ... (The Fourth Amendment addresses the problem) by requiring a "particular description" of the things to be seized... (citation omitted). This requirement makes general searches impossible and prevents the seizure of one thing under a warrant describing another.

*Andresen v. Maryland*, 427 U.S. 463, 479 (1976) (internal citations and quotation marks omitted).

The description of the things to be seized is valid if it is "as specific as the circumstances and the nature of the activity under investigation permit." United *States v. Blum*, 753 F.2d 999, 1001 (11th Cir.1985) (*citing United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir.1982)). "It is settled law that generic classifications in a warrant are acceptable only when a more precise description is not possible." *United States v. Bright*, 630 F.2d 804, 812 (5th Cir.1980). "A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad." *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000) (citation omitted). However, "elaborate specificity in a warrant is unnecessary" to satisfy the particularity requirement. *United States v. Peagler*, 847 F.2d 756, 757 (11th Cir.1988). The Eleventh Circuit

instructs that the particularity requirement "be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *Wuagneux*, 683 F.2d at 1349 (citations omitted).

Although the determination is case-specific, the Eleventh Circuit and district courts within the Circuit have generally upheld language that limits the agents to searching premises with reference to the specific crimes under investigation. *See United States v. Santarelli*, 778 F.2d 609, 613-614 (11th Cir. 1985) (finding a warrant allowing search of a loan-sharking suspect's residence for "all property constituting evidence of the crimes of making and conspiring to make extortionate extensions of credit, financing extortionate extensions of credit, and collections of and conspiracy to collect extortionate extensions of credit which are being kept there in violation of Title 18, United States Code, §§ 892, 893 and 894" to be sufficiently particularized); *United States v. Soviravong*, No. 1:19-CR-146-AT-CMS, 2019 WL 7906186, *6 (N.D.Ga. Dec. 2, 2019) (gathering authority for finding that, "[b]y explicitly limiting the scope of what may be searched and seized to evidence of the crimes under investigation, the Yahoo Warrant was sufficiently particular to enable the searchers to reasonably ascertain and identify the documents and information authorized to be seized.") (Report and

Recommendation), *adopted by* 2020 WL 709284 (N.D.Ga Feb. 12, 2020)

(Totenberg, J.); *United States v. Zellner*, No. 1:09–CR–320–TCB–GGB, 2011 WL

530718, at *10 (N.D.Ga. Jan. 14, 2011 (gathering authority for finding "'language

[ ] directed to materials having a nexus to [the crime being investigated] .... meets

the standards of practical accuracy that enable the searcher to ascertain and identify

things authorized to be seized.'"), *adopted by* 2011 WL 529952 (N.D.Ga. Feb. 4,

2011) (Batten, J.).[1]

Moreover, regardless of whether it agrees with the wording of a warrant, the

reviewing court must deny suppression unless the affidavit or warrant was so

lacking as to render official belief in the validity of the warrant entirely

unreasonable. *United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002). This is

because the purpose behind the exclusionary rule–to deter law enforcement

officers from violating the Constitution–is not met where an officer's reliance on a

---

[1] *See also Ganek v. Leibowitz*, 874 F.3d 73, 88 (2d Cir. 2017) (A warrant authorizing a search of an office and any computers and cellphones located therein for "[a]ll financial records, handwritten documents and/or notebooks, letters and correspondence, photographs, telephone and address books, identification documents, travel documents, telephone records, computers and other electronic devices, cellular telephones, and other records and documents that constitute evidence of the [crimes under investigation, specifically] securities fraud, wire fraud, money laundering, [and] commercial bribery" was "not overbroad" and did not violate the Fourth Amendment, and agents were therefore entitled to qualified immunity for executing this authorized search).

search warrant issued by a neutral judge was objectively reasonable. *See United States v. Leon*, 468 U.S. 897, 926 (1984).

Under the "good-faith exception" set forth by the Supreme Court in *Leon*, *id.*, where officers rely in good faith on a facially valid warrant, the evidence secured thereunder should not be excluded even if the warrant ultimately turns out to be defective. Only in four specific situations is the good-faith exception inapplicable: (1) where the issuing magistrate or judge was misled by information in an affidavit that the affiant knew was false or, except for reckless disregard for the truth, should have known was false; (2) where the judicial officer that issued the warrant "wholly abandoned his judicial role;" (3) where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) where the warrant issued is "so facially deficient... that the executing officers cannot reasonably presume it to be valid." *Id.*, 468 U.S. at 923.

"Good faith" is an objective standard judged by what a reasonable police officer under the circumstances would perceive, not the expert standard of a legally trained judge. *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990). Although the Government bears the burden of demonstrating the applicability of the *Leon* good faith exception, *see United States v. Travers*, 233 F.3d 1327, 1331

n. 2 (11th Cir. 2000), it may do so with reference to the warrant itself, *see United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003).

The language in Section II of Attachment B of these warrants is sufficiently particularized under these standards. The language limited the agents to emails and other data falling under a list of specific categories of documents and information, all of which were limited to material relating to the crimes under investigation and were also separately limited by a date restriction and by the specific persons involved in the communications. While the language defining the categories of documents authorized to be seized was broad, the nature of the evidence relevant in this case was also necessarily broad. The applications supported the need to search for communications relating to a potentially wide range of topics generally covering Defendants' tax and financial matters and related communications including with potential conspirators, over a long period of time. These were complicated matters that generally justified the need for more broader categories and more subjective document-by-document review. At a minimum, the language in Section II of Attachment B was not so clearly overbroad or generalized as to deprive the executing agents of the ability to rely in good faith on the legality of the warrant.

2.     Use of the "Two-Step" Warrant Procedure

Regardless of whether the restrictions in Section II of Attachment B were sufficient to meet the particularity requirement, Defendants more fundamentally

challenge the two-step nature of these warrants, by which the email providers were commanded to initially produce the <u>entire</u> contents of the subject accounts to the Government. Defendants argue that the subsequent restrictions supposedly applied by the Government in reviewing these accounts were a "fiction," because the Government was able to rummage through their entire accounts in applying these restrictions.

The Court notes that the two-step process outlined above was expressly authorized by the warrants themselves, and so can only be the basis of suppression if the procedure was so clearly invalid as to vitiate good faith reliance on the warrant. Further relevant to the good faith analysis, the Federal Rules also expressly contemplate that a warrant for electronically-stored information can use a two-step process. The Rule generally allows the Government to initially seize a corpus of electronically-stored data as it may be ordinarily kept or maintained, and then subsequently review that corpus of data for responsive material consistent with the limitations allowed by the warrant. *See* Fed.R.Crim.P. 4(e)(2)(B).

Indeed, a two-step approach is how warrants have traditionally worked. By their very nature, search warrants permit entry into premises and files that may contain non-responsive material alongside responsive evidence and permit the investigators to search through and cull out the responsive material to be seized. Of course, the Supreme Court in other contexts has made clear that computer or smart

phone data is qualitatively and quantitatively different from traditional premises. *See Riley v. California*, 573 U.S. 373, 392 (2014). But the caselaw outlining how these differences translate into specific rules for particularizing search warrants remains in development.

As noted above, the general standard is that the warrant should allow for a search "as specific as the circumstances and the nature of the activity under investigation permit." *Blum*, 753 F.2d at 1001. The initial question before the Court is, therefore, whether the circumstances permitted the Government to request production of a more limited and definable portion of the Defendants' email accounts, that is, whether there may have been criteria that could have been included in Section I of Attachment B to limit what data would be produced in the first place. With one exception, Defendants do not show that the initial request for production should or could have necessarily been more limited.

Most of the restrictions in Attachment B necessarily required the investigators to cull out the responsive material, and could not have necessarily been "outsourced" to the email providers in the form of limiting what was being requested in Section I. Quite obviously, AOL and Google could not be asked to provide to the IRS only those emails "that constitute[] fruits, contrabands, evidence, and instrumentalities of" the crimes under investigation, or to provide only emails relating to "financial expenditures," "bank records," "preparation of tax returns," and the other

substantive limitations in Attachment B. Those restrictions obviously contemplated subjective analysis, substantial effort and knowledge of the case. These cannot be expected or appropriately delegated to a private third-party data custodian.

The one exception that, in retrospect, could have likely been applied in Section I to limit the scope of the data being produced, was the date restriction. While the warrants in this case appropriately included a temporal restriction fashioned to the facts of the case, that restriction was only placed in Section II of Attachment, as opposed to in Section I. As a result, the warrant technically called for production of email data pre-dating the temporal restriction (although it is unclear that any such email data was produced). Unlike most other restrictions, a date range is a concrete, objective restriction that usually can be automatically applied. To the Court's understanding, most email providers can and will honor a date range in responding to requests for data, and in many cases even demand a date range.[2]

_____

[2] The warrants also did not include a restriction to Google or AOL to produce only communications involving the specific persons named in Section II. Thus, the warrants allowed the Government to cull through all the communications that were produced to find the ones involving the listed persons, and that which also met the subject matter categories permitted by the warrants. This procedure concerns the Court less, however, than the failure to include a date range in Section I. It is hardly clear that a third-party data custodian such as Google could be expected to readily and completely figure out which communications involved what specific persons. After all, the warrant included just names of individuals, not anything purporting to be an exhaustive list of all specific email addresses corresponding to such persons. At least on the record here, it was appropriate to expect the investigators to cull out the communications involving the relevant persons. At a minimum, the Court cannot find that the procedure set forth by the

Indeed, the Eleventh Circuit in *United States v. Blake*, 868 F.3d 960, 973 n.7 (11th Cir. 2017), in assessing warrants for electronically-stored information in the possession of a social media provider, noted that "the warrants ***should have*** requested data only from the period of time during which [the defendant] was suspected of taking part in illegal activity." (emphasis added). The warrants at issue in *Blake* included no date restriction at all, in either part of the two-step process, that is, in neither requesting data from the providers nor outlining what material could be seized and used by the Government from the produced data sets. The instant warrants to Google and AOL appear to take *Blake*'s comments into account by including a date restriction in Section II, to limit what the Government could seize and use. But *Blake*'s instruction was broader, that is, that a warrant should limit what is even requested to be produced in the first place, at least if possible, by a date restriction. Thus, in retrospect, the warrants here should have included the temporal restriction in the initial request for production itself, that is, in Section I of Attachment B.[3]

Nevertheless, the Court does not find that this issue deprives the warrant of facial validity. Unlike in *Blake*, the warrants in this case included express temporal

---

warrants in this respect was so clearly in derogation of existing legal standards such as to vitiate good faith reliance.

[3] In the undersigned's experience, some ESI warrants in this District are presented in that fashion already, but some (like the ones here) include the restriction only in Section II. The Court urges the Government to consider a uniform practice in this regard, which the Court believes should be to include a temporal restriction, where applicable, in Section I, or in both sections.

and other specific limitations in what could be seized and used by the Government. While some of those limitations might have been better placed in a different section of Attachment B, the Court cannot find that the facial legality of the warrant would clearly turn on such distinction based on the state of then-existing law.

Moreover, even if the failure to include the date limitation (and/or persons limitation) in Section I resulted in a potential improper overproduction of material to the Government, the remedy would not be suppression of the entire dataset. This Circuit has stated that, in the case of an overbroad warrant, if possible, the Court is to sever the "infirm portion of the warrant and suppress[] only the evidence seized under that portion of the warrant." *United States v. Cook*,  , 731 (5th Cir. Unit A 1981); *see also United States v. Brown*, 984 F.2d 1074, 1078 (10th Cir. 1993) ("although one sentence in the warrant may have been overbroad, the infirm portion may be isolated and severed from the constitutionally adequate part.")[4]  As *Cook* explained:

> [S]uppression of all of the fruits of the search is hardly consistent with the purposes underlying exclusion. Suppression of only the items improperly described prohibits the Government from profiting from its own wrong and removes the court from considering illegally obtained evidence. Moreover, suppression of only those items that were not particularly described serves as an effective deterrent to those in the Government who would be tempted to secure a warrant

---

[4] The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11 Cir. 1981), adopted the decisions of the Fifth Circuit dated prior to October 1, 1981 (including *Cook*, which was issued one day earlier, on September 30, 1981) as binding precedent.

without the necessary description. As the leading commentator has observed, "it would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and the magistrate erred in seeking and permitting a search for other items as well." 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment s 4.6(f) (1978).

*Id*. at 735.

Here, even if a date range or any other restriction should have applied, in Section I, to limit what the providers would provide to the Government, the clear and obvious remedy would be to simply restrict or suppress those emails (if any) in the production that fall outside that restriction. Notably, Defendants have not alleged that there were any such emails. Defendants do not state that any of the emails identified by the Government as responsive and potentially subject for use in this case fall outside the warrants' authority. Moreover, Defendants do not even allege that any of the non-responsive documents fall outside the date restriction either. In other words, Defendants have not even alleged that the Government ever obtained and looked through any emails pre-dating the temporal scope of this warrant at all. There is simply nothing to suppress even if there may have been a theoretical imperfection in the wording of Attachment B.

In short, the Court does not find that the use of the two-step procedure challenged by Defendants necessarily violates the particularity standards. While it would have been better—and the Court urges the Government in the future—to

include the date restriction in the first step, the Court does not find grounds to suppress any evidence on this basis for the reasons explained above.

### B. *Execution*

Defendants make a second, related argument: that even if the warrants were not facially invalid for allowing the investigators to receive the entire contents of Defendants' email accounts, the investigators acted unreasonably in using the agents assigned to the investigation to separate the responsive and non-responsive material. Defendants argue that the investigators should have set up a separate "filter" team of agents and/or computer technicians to first review and conduct automated searches to cull out the material specifically called for in Section II, and to thereby limit the prosecution team's access to only that material permitted by the warrant. Defendants argue that the Government's failure to use such procedures was unreasonable and should result in suppression.[5]

To the extent the Defendants' argument suggests that the warrant itself was defective for not expressly mandating use of a "filter" team, search terms, or other search protocols, that is meritless. Traditionally, the role of the Court is to

---

[5] The Government states that it did implement such a "filter" procedure to separate potentially privileged materials from the prosecution team's access, and in doing so first reached out to the defense to obtain names of attorneys, and then used automated means to filter out the communications involving those attorneys. Defendants do not make any challenge or argument for suppression based on the Government's treatment of potentially privileged documents.

determine what law enforcement may search for and where. Otherwise, "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant." *Dalia v. United* States, 441 U.S. 238, 257 (1979).

Whether Magistrate Judges should consider and pre-approve specific search methods and protocols in the case of searches for ESI has been a subject of legal debate. Different circuit courts have reached different conclusions. *Compare United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989, 1006-1007 (9 Cir. 2009) (en banc) (requiring search protocols) *with United States v. Galpin*, 720 F.3d 436, 451 (2d Cir. 2013) (declining to require that warrants for ESI include search protocols). Here, as in most jurisdictions, there is no controlling authority requiring the imposition of search protocols. *See, e.g., United States v. Khanani*, 502 F.3d 1281, 1290-1291 (11th Cir. 2007) (rejecting argument that warrant for search computer files was invalid for not including specific written protocols).

Indeed, while individual judges may make different decisions in issuing warrants based on specific facts, many judges in this District and elsewhere have declined to include search protocols or to suppress searches based on warrants lacking search protocols. *See, e.g., United States v. Mesika*, 1:16-CR-224-MHC-CMS, 2018 WL 2124899, *14 (N.D. Ga. March 30, 2018) (warrant was not facially invalid for lacking search protocols because "[t]he U.S. Constitution does

not require that warrants of this nature specify search protocols.") (Report and Recommendation), *adopted by* 2018 WL 2125949. The warrant in this case was likewise not facially invalid for omitting specific search instructions to the officers.

Rather, the specific search methods to be used are "generally left to the discretion of the executing officers," within the bounds of reasonableness. *Dalia*, 441 U.S. at 257. The Court reviews the execution of a warrant for whether the acts of law enforcement were "reasonable under all the circumstances." *United States v. Wuagneux*, 683 F.3d 1343, 1352 (11th Cir. 1982). The issue, in other words, is whether "a reasonable officer [would] have interpreted the warrant to permit the search at issue." *United States v. Gorman*, 104 F.3d 272, 274 (9th Cir. 1996). The Court should consider factors such as the scope of the warrant, the behavior of the searching agents, the conditions under which the search was conducted, and the nature of the evidence being sought in determining whether the search was reasonable. *United States v. Schandl*, 947 F.2d 462, 465 (11th Cir. 1991).

Here, Defendants do not dispute that the Government took care to avoid accessing attorney-client privileged material, through use of a filter team. Defendants focus on the Government's failure to restrict the prosecution team from reviewing the remainder of the production to cull out what was responsive. In other words, Defendants complain that the officers on the prosecution team may have

reviewed the non-privileged emails produced by Google and AOL, including the material ultimately deemed not relevant.

Defendants acknowledge that no existing precedent in the Eleventh Circuit requires such a filter procedure. The Court cannot find that the Government's failure to implement one here to determine "relevance," in the absence of such authority, was unreasonable. After all, it is traditionally the role of the investigative team to search through documents and other premises authorized by a warrant, as those materials are maintained in the ordinary course by the Defendants or third-party custodians, to find the subset of materials that might be relevant. That the agents did so here is not in itself "unreasonable" as a matter of law, given the state of legal guidance on this issue. Indeed, while a filter team could have potentially reduced the population of materials for the investigative team to review, it was inevitable that the investigative team would have to make the ultimate subjective decisions of relevance in a complicated financial case such as this one.

Further, Defendants identify no concrete, substantial prejudice from the investigative team having culled out responsive and non-responsive emails. The Government certifies that the prosecution team's access to the non-responsive documents has been deleted. And Defendants have not identified any documents improperly included as "responsive" and seized for use in the case.

It follows from this Circuit's opinion in *Cook*, *infra*, that if the search team reviewed more than was ultimately contemplated in the warrant, the remedy would not generally be to suppress everything. The natural remedy, rather, would be suppress whatever materials the investigators should not have reviewed. In other words, even if the Government's failure to use a filter team was unreasonable, the most that should be suppressed would be whatever non-responsive documents that would have been culled out by a hypothetical filter team. That remedy is moot here, because the non-responsive emails have been separated out will not be used. Again, Defendants identify nothing to suppress. The argument that the entire production should be suppressed because the agents may have seen some non-privileged material that was irrelevant and now separated from use in the case is meritless, at least on the record here.[6]

---

[6] If there were a violation, the Court notes that a better remedy, short of suppression of relevant material, would be to disqualify the current prosecution team and require replacement with personnel who have not accessed the non-responsive material. Defendants have not requested this remedy, and the Court does not find it to be warranted, as the Court does not find any unreasonable conduct in the first place. But if there were any disagreement with this conclusion, the Court suggests that the last-resort remedy of suppression of relevant material would ultimately be unjustified in any event, because the lesser remedy of disqualification would fully resolve any concern about the prosecution team's allegedly prior overbroad access to unresponsive material.

### C. Return of Documents

Finally, Defendants ask that, now that all the non-responsive documents have been separated out, those materials should at least be completely returned to them and no longer allowed to remain in the Government's possession in any way.

At the outset, the Court notes that Defendants are not asking for "return" of seized property in the traditional sense. At issue is electronic data, which they never lost access to via their Google/AOL accounts, and for which complete copies of what was produced have already been provided to them by the Government. Rather, Defendants are really requesting that the Court order the Government to delete from its own files that portion of the material produced pursuant to the search warrant that has been deemed "non-responsive."

As noted above, the Government has already certified that the prosecution team's access to the non-responsive data has been terminated. The original data set, including the non-responsive materials, is being maintained in the custody of non-prosecution team personnel. The Government submits that it is necessary to maintain the original data in the form produced by the custodians (Google and AOL) for purposes, among of things, of maintaining forensic chain-of-custody records and to authenticate the data if necessary. This is a legitimate concern, and generally would justify the Government maintaining the original evidence as produced at least at this juncture in this active case. The Court otherwise finds that

the separation of the non-responsive material from the prosecution team's access is more than sufficient at this juncture. Defendants' request to entirely delete (or "return") that portion of the originally-produced data set from Government custody altogether is unwarranted at least at this time, at least pending trial.

### III.   CONCLUSION

Defendants' Motion to Suppress Electronically-Stored Information [52] should be **DENIED.**

**IT IS SO RECOMMENDED** this 30th day of August, 2021.

**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**