```
 1                  UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION


 3


 4   UNITED STATES OF AMERICA, )
                               )
 5            PLAINTIFF,        )
                               )
 6    -VS-                      ) DOCKET NO. 1:19-CR-00297-ELR-JSA
                               )
 7   CHRISLEY, ET AL,           )
                               )
 8            DEFENDANTS.       )
     _____

 9


10             TRANSCRIPT OF GARCIA PROCEEDINGS
               BEFORE THE HONORABLE JUSTIN S. ANAND
11                UNITED STATES MAGISTRATE JUDGE
                    FRIDAY, OCTOBER 1, 2021

12


13

14   APPEARANCES:

15   ON BEHALF OF THE GOVERNMENT:
          ANNALISE KATHLEEN PETERS, ESQ.
16        THOMAS J. KREPP, ESQ.
          Assistant United States Attorneys
17

18   ON BEHALF OF THE DEFENDANTS:
          STEPHEN MICHAEL FRIEDBERG, ESQ.
19        BRUCE HOWARD MORRIS, ESQ.
          CHRISTOPHER S. ANUELWICZ, ESQ.
20


21


22


23             VIOLA S. ZBOROWSKI, CRR, CRC, CMR, FAPR
                      OFFICIAL COURT REPORTER
24                 UNITED STATES DISTRICT COURT
                        ATLANTA, GEORGIA
25
```

1                    (HELD IN OPEN COURT AT 10 A.M.)

2             THE COURT:  Good morning.  This is the case of the

3    United States of America v. Julie Chrisley and Todd Chrisley, case

4    number 1:19-CR-00297.

5             Representing the United States are U.S. Assistant

6    Attorneys Annalise Peters and Thomas Krepp, and representing the

7    defendants are Bruce Morris and Stephen Friedberg.  I see also

8    Mr. Griffen is in the back as well.

9             We're here for a so-called Garcia hearing or an attorney

10   conflict hearing specifically with regard to Mr. and Mrs.

11   Chrisley.

12            I'm going to go ahead and take my mask off.  My rules of

13   my courtroom right now are that if you've been fully vaccinated, I

14   mean, much like during the hearing, if you are speaking at the

15   podium or testifying or in my case here at the bench, it is

16   permissible if you wish to, but you're not required to take your

17   mask off.  And so for a Garcia hearing, I typically have a lot of

18   talking to do.  So I'll go ahead and take my mask off, as I have

19   been fully vaccinated.

20            So as I say, we are here for a Garcia or attorney

21   conflict hearing, which we've had prior attorney conflict hearings

22   in this case, but unlike the prior hearings that have also

23   involved Mr. and Mrs. Chrisley, this is not about any current or

24   former joint representation of the defendants.  That's an issue

25   that we've gone over before.

1          The issue today has arisen because, as I understand it,

2   of a possibility of an evidentiary conflict between one or both of

3   the Chrisley defendants and their attorneys.

4          Mr. and Mrs. Chrisley, as I believe you already know

5   because we've gone over this before, under the Constitution of the

6   United States and the Rules of Federal Criminal Procedure, you

7   have the right to be represented by a lawyer who does not have any

8   conflict of interest.  That is, you have the right to be

9   represented by a lawyer whose loyalty to you is not at all

10  compromised by your lawyer's representation of any other person or

11  entity or of any other interest, including the lawyer's

12  self-interest.

13         There are some specific factual issues and allegations

14  that have arisen that may create such conflicts between one or

15  both of you, and your individual lawyer and/or with both of your

16  lawyers, Mr. Morris and Mr. Friedberg.

17         The purpose of today's hearing, therefore, is to make

18  sure that you have notice and you are aware of the issues and the

19  potential for conflict and some of the ways that conflict may

20  impact your case, and to -- if you decide to waive the conflict,

21  because that's a question I'll have to ask you at the conclusion

22  of the hearing, whether you want to go forward with your lawyers

23  and the current situation which would require you to waive the

24  potential conflict.  I have to make sure that your waiver is

25  voluntary and freely given and on the basis of full knowledge of

1   your legal rights.  So that's the purpose of this hearing.

2          I'm going to try to summarize the issue as best I can,

3   but I'm going to also -- the government, I think, may be more

4   better able to explain the factual or evidentiary situation.  The

5   government did bring this to my attention with notice to the -- to

6   Mr. Morris and Mr. Friedberg.

7          The government has given notice that it may introduce at

8   trial evidence of events that occurred during the investigation of

9   this case in which defense counsel, your lawyers, were involved.

10  Specifically, the government has announced that it may seek to

11  introduce certain evidence relating to a document that was

12  submitted to the grand jury during the grand jury's investigation,

13  alledgedly on behalf of the defendants or at least defendant Julie

14  Chrisley and the corporate entity, Seven Seas Productions.

15         The government alleges this document was falsified and

16  submitted to the grand jury for the purposes of obstructing the

17  investigation.  The document was submitted to the grand jury or to

18  the prosecution on behalf of the grand jury through Mr. Morris,

19  who represented the defendants jointly in the investigation and

20  now represents Mr. Chrisley in this case.  And if I understand

21  correctly, although Mr. Friedberg who also jointly represented the

22  defendants during the investigation and now represents

23  Ms. Chrisley, also was involved in the representation at the time

24  that this document was produced to the grand jury.

25         Now, to my understanding, the government is not accusing

1  any of the lawyers of any wrongdoing, but rather the government's

2  theory, as I understand, is that the defendants, either the

3  defendants Mr. and Mrs. Chrisley or at least specifically

4  Mrs. Chrisley and Seven Seas, submitted that letter to the grand

5  jury through Mr. Morris, but that he was not specifically called.

6  Mr. Krepp and Ms. Peters, have I adequately summarized the

7  situation?

8         MS. PETERS:  Yes, Your Honor, just one specific thing to

9  add to it.  On the e-mail that is mentioned in the government's

10 offer of proof, that e-mail came from Mr. Morris to the

11 government.  And one thing, we noted this in a footnote that we

12 would like to address today, is that e-mail the government intends

13 to introduce at trial as the statement of a party opponent.  That

14 information came from Julie Chrisley and was provided to the

15 government through Mr. Morris.  And essentially what happened in

16 the Vadiki trial that Mr. Krepp had, is this exact same situation

17 came up but it wasn't addressed prior to trial.  So Judge Ross did

18 not permit the evidence to come in because Mr. Morris would have

19 had to testify.  So we're raising this now to, hopefully, go ahead

20 and address it ahead of trial so we don't run into the same issue

21 we did there.

22         So to that end, part of the defendant's waiver would be

23 that they are waiving the right to object to the admissibility of

24 that e-mail at trial on the grounds of hearsay because it is a

25 statement of a party opponent.  And we would want that in a

1  written stipulation to -- well, preferably now, but certainly

2  before trial.  Otherwise, you know, if the defendants at trial

3  were to object to that e-mail on the grounds of hearsay, then we

4  would be forced to call Mr. Morris to testify, in which case we

5  would have to recuse.  So we would like to address that as well,

6  specifically with the e-mail.

7           THE COURT:  Well -- but otherwise, I've adequately

8  summarized the nature of the evidence you're seeking to introduce,

9  the theory, the arguments you're making; is that right?

10           MS. PETERS:  Yes, Your Honor.

11           THE COURT:  Okay.  And, also, just for clarity, I asked

12  the government, as Ms. Peters just alluded to, to prepare a

13  statement summarizing this issue in writing.  And so on September

14  17, the government filed an offer of proof or a statement docketed

15  under -- I think it's Docket No. 111 entitled, "Notice of

16  Government's Offer of Proof Regarding Julie Chrisley's Obstruction

17  of the Grand Jury Investigation."  So in that document they -- the

18  government explains in more depth or at least in its own words the

19  nature of the evidence that it is seeking to introduce and the

20  arguments and inferences that it will ask the jury to draw.

21           Have y'all, Mr. and Mrs. Chrisley, have you read that

22  document?  Have you been aware of that document?  Have you read

23  that document?

24           MR. CHRISLEY:  Yes, sir.

25           MRS. CHRISLEY:  Yes, sir.

1          THE COURT:  Okay.  Now, as it relates in part to a

2   document that is referred to in the indictment in paragraphs 42

3   and 43, a corporate record related to Seven Seas Productions as

4   part of the allegations comprising the conspiracy to defraud the

5   United States and related charges.  Are you both familiar with the

6   allegations in that regard in those paragraphs in the indictment?

7          MR. CHRISLEY:  We are.

8          MRS. CHRISLEY:  Yes, sir we are.

9          THE COURT:  It's my understanding that the allegations

10  of obstruction that are summarized in that offer of proof are not

11  formally charged in the case at this time.  In other words,

12  they're not a separate charge you're facing at this time, although

13  I don't know that it is not -- it's possible that it could be a

14  separate charge that the government obtained by the time you go to

15  trial in this case.  Do you understand that?

16         MRS. CHRISLEY:  Yes, sir.

17         THE COURT:  Okay.  And but in any event, whether a

18  separate charge or not, it sounds like the government is intending

19  to bring up the substance of the information that's described in

20  Document No. 111 as evidence against one or both of you as to the

21  current charges, even if there are no new charges that are

22  brought.  Do y'all understand that?

23         MRS. CHRISLEY:  Yes, sir.

24         MR. CHRISLEY:  Yes, sir.

25         THE COURT:  Now, the potential conflict with this

1   situation arises in a few ways:  First, although the government

2   doesn't accuse Mr. Morris of doing anything wrong by submitting

3   the document that's at issue to the grand jury, the fact of this

4   correspondence may associate Mr. Morris with an act alleged to be

5   obstructive.  So there is a risk that the jury could draw a

6   negative inference as to him or his credibility, integrity, even

7   if that's not what is being alleged by the government, and that

8   could inure to your detriment -- both of your detriments, because

9   Mr. Morris represented both of you at the time of this act and

10  currently represents Mr. Chrisley.

11          Second, the evidence might confuse the jury at trial.

12  The jury might have otherwise heard evidence or had been told that

13  Mr. Morris previously during the investigative phase of the case

14  represented both of you together and the corporate entity Seven

15  Seas, and the correspondence where he's producing something on

16  behalf of Seven Seas and Mrs. Chrisley, where he now represents at

17  trial Mr. Chrisley, might be a source of confusion.

18          Third, the lawyers, both Mr. Morris and Mr. Friedberg,

19  would face potential limits or significant limits in being

20  potential witnesses in the case.  You heard Ms. Peters talk about

21  hoping to be able to work out stipulations or other mechanisms by

22  way -- by which the document may come into evidence without

23  needing to call Mr. Morris as a witness, but it's possible that

24  y'all won't be able to reach such an agreement.  I don't know what

25  your position is on that.

1    If the government calls Mr. Morris as a witness to admit

2 or authenticate this document, Mr. Morris might be obliged to ask

3 to withdraw from the case because, generally speaking, lawyers are

4 not permitted to be both witnesses and attorneys at the same time

5 for a party in the case.

6    Also, either of the lawyers might have personal

7 knowledge that could tend to refute the government's allegations

8 or theories or things they want the jury to infer with regard to

9 the meaning of this document, such as information about how the

10 document was created and transmitted and/or other facts.  This

11 information might tend to exculpate one or both of you and -- but

12 you might not be able to call the lawyers as witnesses for

13 yourselves to present such potentially exculpatory evidence if

14 they had it, because lawyers, again, are generally not permitted

15 by the rules of the bar to be both witnesses and advocates at the

16 same time in a case.

17    So a decision to retain or keep these specific lawyers

18 as your advocates in the case would likely mean that they would be

19 unavailable to you as potential fact witnesses to testify on your

20 behalf at trial or otherwise, even if they had important, helpful

21 information with regards to this document or otherwise on the

22 obstruction issue or some other issue.

23    If you went forward with other lawyers to represent you

24 in the criminal case unaffiliated with Mr. Morris or

25 Mr. Friedberg, you might not face the same restrictions in

1  potentially calling them as witnesses on those issues, and you may

2  not be in the same position of having to consider a stipulation or

3  some other agreement to allow this document to come into evidence

4  at all.

5          A decision at a future date to request to change counsel

6  if you decide -- if you want to go forward with these lawyers here

7  today but change your mind in the future, might not be granted.

8  That's a discretionary -- changing a lawyer, for example, in the

9  middle of trial or close to trial or other circumstances that

10 might delay the case, would be a discretion, a decision up to the

11 district judge that you just can't assume in the middle of trial,

12 for example, that you would be allowed to just make a change at

13 that time.

14         Further, you know, because lawyers generally could face

15 personal and professional discipline for violating bar rules and

16 for putting themselves in the position of being a potential

17 witness and advocate at the same time, your lawyers might have a

18 conflict of interest in even being able to candidly advise you

19 about the choices you might make in deciding, for example, what

20 witnesses to call, or what other evidentiary or tactical choices

21 to make or what defenses to assert regarding this obstruction

22 issue.  As an example, Ms. Peters talked about the government

23 having to -- from the government's standpoint, they believe that

24 they may need to call Mr. Morris as a witness at trial with regard

25 to this document, unless an agreement or stipulation can be

 1  reached to allow it to come in without him as a witness.  In other
 2  words, that you agree in some way to certain facts that would lay
 3  the foundation to allow the document to be admitted without a
 4  witness, which generally you need a witness.  So you would have to
 5  agree and give up certain things and agree to a stipulation with
 6  the government to potentially take Mr. Morris out of that position
 7  of being a potential witness.  He may not be in the -- have a
 8  conflict-free basis to advise you about your decision in that
 9  regard since he has a personal interest in avoiding being a
10  witness.  Because he can't be a witness and also be a counsel for
11  you at the same time.  And, of course, lawyers also generally
12  would have a financial -- a personal financial interest in
13  maintaining their ability to still be trial counsel in a case and
14  to avoid situations that would force them to walk away from the
15  case.  They might have financial incentives to try to stay on the
16  case.  So there are some various ways in which lawyers might have
17  a -- not have a conflict-free ability to even advise you about
18  some of these decisions.
19       So I'm going to turn to counsel, both government counsel
20  but also defense counsel -- my goal here is to try as best as
21  possible to accurately recount or summarize the potential conflict
22  issues and some of the problems that might arise.  Are there
23  things that I missed or should add?
24       MS. PETERS:  We have nothing else, Your Honor.  Thank
25  you.

1          THE COURT:  From y'all's perspective, did I accurately

2   sort of capture the problem?

3          MR. FRIEDBERG:  I believe you have, Your Honor, and just

4   for the Court's edification, also in the courtroom is

5   Mr. Christopher Anulewicz of Balch & Bingham, who we have asked to

6   serve as independent counsel to advise both Mr. Chrisley and

7   Mrs. Chrisley on this issue.

8          THE COURT:  Very good.  Thank you for being here, sir.

9   I was going to get to that to ask, because we talked about that as

10  well about having independent counsel.  So I appreciate you

11  flagging that.

12         MR. FRIEDBERG:  And I concur, Your Honor.

13         THE COURT:  Okay.  Very good.  All right.  Please note,

14  I've endeavored to give you as complete and accurate a summary of

15  the potential conflicts and impacts that these conflicts could

16  have or potential conflict on you if you continue to be

17  represented by your current counsel.  But I may not have been able

18  to think of and recount for you every issue and every problem that

19  the potential evidentiary conflict might present.  If you choose

20  to waive the conflict and continue being represented by your

21  current lawyers, then you will likely not be able to complain

22  about the potential negative impacts that this choice you may

23  ultimately make in your case whether I specifically mention those

24  specific impacts or not, because I can't predict how things might

25  shake out down the road.  Specifically, this waiver may bar you

1  from challenging any conviction in the case on the ground that you

2  are prejudiced by the conflict of interest that's the subject of

3  today's hearing if you waive that conflict of interest.  So let me

4  ask both of you, do you understand that?

5          MR. CHRISLEY:  We do.

6          MRS. CHRISLEY:  Yes, sir.

7          THE COURT:  Okay.  I was going to ask, but I think,

8  Mr. Morris, you have already covered this, that I mention that

9  when we -- when I spoke with counsel in August, I invited you all

10  to bring independent counsel, a neutral counsel, and to consult

11  with such neutral counsel in advance of this hearing.  I would

12  have also entertained any request you might have had for

13  appointment of counsel for that purpose, to have a neutral

14  conflict-free person to consult with about this waiver decision if

15  you wanted to apply.  In other words, make an application for

16  financial or make a financial application for court-appointed

17  counsel, you would have the right to do that if you couldn't pay

18  for independent counsel.  But it sounds like you have already

19  arranged and have -- and I'm sorry, remind me, I know --

20          MR. ANULEWICZ:  Sure, Your Honor.  It's Chris Anulewicz,

21  A-N-U-L-E-W-I-C as in cat, Z as in zebra.

22          THE COURT:  I know you have been present for some of the

23  earlier hearings.  So I recall you, but I just couldn't remember

24  the name.

25          MR. ANULEWICZ:  All right.  Thank you, Your Honor.

1          THE COURT:  It sounds like you already have

2    Mr. Anulewicz here for this purpose of giving you all the

3    opportunity to consult with an independent lawyer who is free of

4    these potential conflicts about your waiver decision; is that

5    right?

6          MRS. CHRISLEY:  Yes, sir.

7          MR. CHRISLEY:  That's correct.

8          THE COURT:  All right.  So now, before I inquire as to

9    your -- well, I guess before I get too much farther down the road,

10   I think Ms. Peters' point is before we can really fully know what

11   you're waiving, we, I think, need to know a little bit more if

12   there is an arrangement on the admission of this document or

13   whether there are some stipulation or something like that.  I

14   don't know that if the government needs to call Mr. Morris as a

15   witness that there is anything we can do here.  I think that's an

16   unwaivable conflict.  Would you agree with that, Mr. Morris?

17         MR. MORRIS:  I would agree that if I had to be called as

18   a witness, that would be an unwaivable conflict.  I do not agree

19   that it is necessary to call me for a witness for any reason.

20         THE COURT:  So what's your -- when we last talked on the

21   phone, I think y'all were going to have conversations and try to

22   see whether there would be some proposed solution, I guess, to --

23   whether that would mean a stipulation or on some other basis for

24   how that document would come into evidence.  I mean, what's your

25   position in that regard?

1          MR. MORRIS:  We've not had any discussion about any

2     stipulation yet, any specific stipulation.

3          THE COURT:  Okay.

4          MS. PETERS:  And, Your Honor, I think we may have

5     miscommunicated.  We did have a conversation about this exact

6     issue, and we intended to have a follow-up conversation with

7     Mr. Morris and Mr. Friedberg before today.  We did not have that

8     conversation, but it seemed that when we did talk, the sticking

9     point was that, you know, the government's position is that the

10    information contained in Mr. Morris' e-mail came from Julie

11    Chrisley.  It is, therefore, not hearsay and a party opponent

12    statement, and should be admissible.  As I recall, Mr. Morris and

13    Mr. Friedberg can certainly correct me, but their position was

14    that the information in the e-mail was provided on behalf of Seven

15    Seas Corporation and not on behalf of Mrs. Chrisley, which very

16    well may be the case because the e-mail came in response to or as

17    further explanation of their response to a grand jury subpoena

18    issued to Seven Seas Corporation.  However, the information

19    contained in the e-mail came from Mrs. Chrisley, and they can't

20    use the, you know, the corporate shield to prevent a statement

21    that she made as coming in as a party opponent.  So I think that

22    may be where we -- kind of have a sticking point.  So we don't yet

23    have a stipulation, but I'm not sure what Mr. Morris' and

24    Mr. Friedberg's response to that is.  But we agree this is

25    certainly an issue that must be addressed, you know, before --

1   certainly before trial but preferably today, because if Mr. Morris
2   were required to testify, it would not be a waivable conflict.
3           THE COURT:  Okay.  Do y'all have any take on this?
4           MR. MORRIS:  I believe -- well, several statements were
5   made.
6           First, the document in question, the corporate
7   resolution was produced in response to a subpoena to Seven Seas
8   Productions.  I on behalf of Seven Seas Productions sent it to
9   Mr. Krepp to give to the grand jury in response to the grand
10  jury's subpoena.  There was a certification, a business
11  certification sign by Julie Chrisley that accompanied it that
12  speaks for itself.  They don't need me as a witness.  I certainly
13  stipulate that's what was done, because that's what was done.
14          The e-mail that followed some days later in response to
15  an e-mail from Mr. Krepp, the e-mail from me I acknowledge is an
16  e-mail from me, and I don't think either party would object on the
17  basis of hearsay.  I don't think that's going to happen.
18          If your -- if the question is would Julie Chrisley say I
19  was wrong in what I said, that would create an issue where the
20  government might need to call me as a witness.  I don't expect
21  that to happen.  If it does, you know, then at that time the
22  conflict will have arisen, and I would agree with Your Honor, it
23  seems to me that it is probably unwaivable -- if it occurs.  I
24  don't know that it will occur.
25          MS. PETERS:  One moment, Your Honor.

1              THE COURT:  Sure.

2              MS. PETERS:  Your Honor, we agree with Mr. Morris that

3      the corporate resolution itself speaks for itself.  It came with a

4      signed certification that this issue is this e-mail that

5      Mr. Morris sent.  And I do want to mention before I forget, we're

6      actually fine redacting Mr. Morris' name from the e-mail if we can

7      reach some sort of stipulation moving forward.  But the fact is

8      Julie Chrisley is the president of Seven Seas Production.  The

9      e-mail was sent on behalf of Seven Seas Productions.  The

10     information came from Julie Chrisley, and, in fact, the

11     information in it -- I mean, it was -- it is about actions that

12     Julie Chrisley took.  She says, you know, the e-mail talks about

13     them going back to the bank and making these changes.  So the

14     information came from Julie Chrisley.  The government plans to

15     argue at trial that Julie Chrisley was the president of the

16     corporation, and that the information, information in Mr. Morris'

17     e-mail came from her, and that this e-mail is, therefore,

18     admissible.  So we just want the defendants to be on notice that

19     that is what we plan to use this e-mail for and introduce it for

20     that purpose.  And if they don't agree or consent to that, then we

21     would need to call Mr. Morris as a witness, we believe.

22             THE COURT:  We're getting into sort of evidentiary

23     arguments, which is a little strange because I'm not going to be

24     the one making those calls.  I mean, it does strike me, though,

25     that the arguments you're making here are inferences that you're

1  drawing from the wording of the documents themselves; right?  So
2  you -- it doesn't strike me as necessarily necessary that you call
3  Mr. Morris specifically to testify to those things.  If the
4  document is in evidence and you have other evidence as to
5  Mrs. Chrisley's role with regard to Seven Seas, you have all of
6  the facts necessary to make the argument you just made.  And I'm
7  not sure -- I mean, we're getting into privilege issues if you
8  call Mr. Morris as to what discussions were had about this
9  document.  That would be very sort of difficult.  I haven't heard
10 that it is really necessary to call him; right?  I mean, it
11 doesn't sound like authentication is an issue, or hearsay
12 specifically is an issue.  And, I mean, I don't know if I would
13 think it's even hearsay, right, because you're not introducing it
14 for the truth of it, it's actually the opposite, you think it is
15 untrue.  The statements in there are not true.
16          MS. PETERS:  That's right, Your Honor.
17          THE COURT:  You're not actually introducing it for the
18 truth of the matter.  So I'm not even sure it would be hearsay
19 specifically, you know.  And, again, I'm not making any of these
20 evidentiary calls.
21          I mean, if it is solely a question as to admissibility
22 of the document, then another -- one option is that -- I mean, I
23 could suggest to Judge Ross, because this is really her area, not
24 mine, in terms of admissibility of trial evidence, but there would
25 be some sort of motion in limine that tees this up, and she could

 1  have a hearing under Rule 104 -- I think it is Rule 104 -- to
 2  determine the admissibility of the document as a pretrial matter
 3  and determine whether it's admissible based on evidence.  And in
 4  other words, pre-admit it based on evidence produced in that
 5  hearing.  Now, I don't know if that solves all the issues, but --
 6          MR. KREPP:  If I may, Your Honor.  The reason we brought
 7  this to the Court is -- and I know the Court is familiar with the
 8  Divecky case that we keep referring to, the one that is now up on
 9  appeal in the Eleventh Circuit, our concern is, and I think we
10  just heard it from Mr. Morris, he doesn't know what Julie Chrisley
11  is going to say.  So if we take the position -- we stand up in
12  opening statement and we say, ladies and gentlemen, you're going
13  to hear that Julie Chrisley tried to obstruct the grand jury
14  proceedings by sending a fraudulent document through her attorney
15  to the grand jury, if what plays out, is exactly what played out
16  in Divecky was that defense counsel said, well, we don't know
17  where the document came from, and in order to figure this out we
18  would need to stop trial and call Mr. Morris, which we certainly
19  can't do.  That is our concern.  So we believe you're correct that
20  we -- this is not -- you're right, it's not hearsay.  It is a
21  false statement.  We're not admitting it for the truth of the
22  matter asserted.  What we don't want to be is ambushed during
23  trial by the argument that suddenly Bruce Morris is a key defense
24  witness to explain that, no, actually, these materials came from
25  some random person the government doesn't even know about and

```
 1  Julie Chrisley had no idea about it.  But then Judge Ross would be
 2  in the position of saying, well, we can't kick Mr. Morris off the
 3  case, it's too late now, so I'm just going to strike this evidence
 4  and the government can't get into it at trial, which is very close
 5  to what happen in Divecky.  So that's what we're trying to avoid
 6  here.  We were clear on the conference call, whether it's in front
 7  of Your Honor or in front of Judge Ross, Judge Ross was very clear
 8  with the government in that case, she wanted that issue addressed
 9  well in advance of trial.  So we just thought it was appropriate
10  to bring it up when we did now.  So I'll leave it to Your Honor's
11  discretion to whether to kick this to Judge Ross to figure out.  I
12  really -- the defendant should have an answer on this, though.  We
13  have had conversations with them for months about this issue.  So
14  I really do think Mr. Morris and Mr. Friedberg should be in a
15  position of knowing are they going to take the position at trial
16  that, no, the information -- the government is just wrong, and
17  Mr. Morris is now a necessary witness to exculpate Julie Chrisley.
18          THE COURT:  I guess I'm failing to really appreciate the
19  specifics.  So Mr. Morris sent the e-mail that explained the
20  document, and you're concerned that at trial they're going to say
21  what with regard to that e-mail?
22          MR. KREPP:  They're going to say that -- so we would
23  stand up as the government and we would say that Julie Chrisley is
24  the president of Seven Seas Corporation.  She's responsible for
25  that company, and she directed her attorney to send through Seven
```

1   Seas to send this e-mail, and this e-mail was false.  And this
2   e-mail was obstructive.  Again, not Mr. Morris, but the
3   information was obstructive.  And the government would be arguing
4   whether it is through a superseding indictment and an obstruction
5   charge or just by way of 40(b) or just regular evidence that Julie
6   Chrisley intended to obstruct the grand jury through this
7   information in this e-mail.
8           What happened in Divecky was Mr. Morris represented one
9   defendant.  Obstructive material was sent through Mr. Morris to
10  the case agent on that case, and it was patently obstructive
11  material.  And then on the eve of trial, the defendants took the
12  position that it wasn't actually Mr. Morris' client that sent the
13  material and they were going to invoke privilege.  They wouldn't
14  say who sent the material.  And Judge Ross was then in the
15  position of saying, well, we can't kick Mr. Morris off the case.
16  If I had known this in advance of trial, well in advance of trial,
17  we could have dealt with this.
18          So, again, the government's concern, and it's an
19  unfounded concern if the defendants can stand here today on the
20  record and say that this is not going to be an issue, they're not
21  going to somehow ambush us and say that Mr. Morris is a key
22  witness at trial to explain away this e-mail.  Because
23  hypothetically, Mr. Morris could take the stand and say, no, this
24  information didn't come from Julie Chrisley.  I was wrong.  I got
25  it from some guy in the street and I thought, you know -- I just

1  thought that maybe I would put it in an e-mail because the story

2  made sense to me.  Or it came from Elizabeth Chrisley, who is also

3  referenced in the e-mail, Mr. Chrisley's mother.  There are

4  certain explanations we can envision for this e-mail aside from

5  Julie Chrisley being responsible for it.

6            But again, our assertions are Julie Chrisley is

7  responsible for this e-mail.

8            THE COURT:  And in this hypothetical, you think -- you

9  think it would be on the basis of a crime of fraud exception --

10           MR. KREPP:  Yes.

11           THE COURT:  -- that you think you would be able to get

12  into that at trial --

13           MR. KREPP:  Absolutely, Your Honor.

14           THE COURT:  -- as to the conversations and the source of

15  this information.

16           MR. KREPP:  We believe we would -- we haven't litigated

17  this yet, and we tried to avoid going down this road by talking in

18  good faith with defense counsel, but we had -- if need be, if that

19  was going to be their position, we would have every intention of

20  filing motions to keep -- motions to compel testimony, whether in

21  a grand jury or at trial from Mr. Morris on the basis of a crime

22  fraud exception.  And I do think there is a very good faith basis

23  for doing so because I think this material is patently

24  obstructive.

25           THE COURT:  Okay.

1          MR. MORRIS:  May I respond?

2          THE COURT:  Yes.

3          MR. MORRIS:  A couple of things, Judge.  The document in

4    question the government alleges is false.  That's the obstruction,

5    that it was submitted and it's a false document.  That's the

6    obstruction.  The explanation for where that -- how that document

7    came about and when it was given to the bank was my response to an

8    e-mail from Mr. Krepp, and, frankly, I thought we were just

9    talking amongst the lawyers.  He asked -- he asked, was this the

10   original resolution that was given to the bank with Julie Chrisley

11   e-mail?  I said, no, this is not the original.  This was found

12   later and provided later.  Two lawyers talking.  No intention of

13   making a representation that was going to end up in court.

14          But the obstructive act is not the e-mail.  The

15   obstructive act is the document itself, which was submitted on

16   behalf of Seven Seas, and it carried with it a certification from

17   Julie Chrisley on behalf of Seven Seas.  Now, the government can

18   argue any inference in the world they want to from the fact that

19   the document is allegedly false and was allegedly certified by

20   Julie Chrisley as being a legitimate Seven Seas document.  They

21   don't need me to do that.  The document is going to be in

22   evidence.  We can't object to the document.  We provided the

23   document in response to a grand jury subpoena.

24          THE COURT:  So I don't think Mr. Krepp or Ms. Peters

25   would agree that it's just the document itself, because the e-mail

```
1  explanation they would, to my understanding of their theory,
2  allege also contained false statements of fact in that it claimed
3  the document had been submitted -- provided to the bank when they
4  alleged it had not been.
5           MR. MORRIS:  Correct.
6           THE COURT:  And so by making these alleged false
7  statements to the investigators, or, you know, to the grand jury
8  through the government, that was part of what I think they're
9  alleging was obstructive, again not pejorative to you
10 specifically, but rather their theory was passing on false
11 information that you were provided.
12          MR. MORRIS:  And I guess -- I guess if the government is
13 looking for a stipulation, the stipulation would be that the
14 defendants would not seek to call me as a witness to explain
15 anything in my e-mail.
16          THE COURT:  I think -- I guess walking in here that's
17 what I was thinking what we were waiving.  But I think what
18 Mr. Krepp's point is, he's wondering or concerned that the
19 government may need to call you not just to authenticate the
20 document or admit it, that seems like not an issue --
21          MR. MORRIS:  Not an issue.
22          THE COURT:  -- but to refute a defense that you
23 expressly here today said you can't foreclose, that at trial the
24 argument is going to be made that the -- that information did not,
25 in fact, come from Julie Chrisley.  The government can't show who
```

1  it came from.  It may come from a guy on the street, as Mr. Krepp

2  said.  But I think specifically there is Elizabeth Chrisley, other

3  potential sources of that information, and that's where the

4  government's natural next step would be to seek to call you.  Now,

5  there might be a fight about that on privilege grounds, but this

6  isn't a contest of allegedly obstructive statements, so it would

7  trigger consideration of the crime fraud exception.  And all of

8  this would be in front of the district judge, not me.  So I'm just

9  sort of -- I'm not the one making these calls, but Mr. Krepp's

10  point is, if all of this needs to happen and, you know, you've

11  stood here and said you can't foreclose that, that could very well

12  happen in the trial, and normally you don't have to assert or

13  identify your defenses or arguments or foreclose defenses, but

14  then how do they deal with that if that eventuality comes to pass?

15  And at that point they would want to call you, but you would have

16  a clear conflict, and it would be unmanageable to -- and, you

17  know, put you in the middle of the trial both from a practical

18  standpoint but also how does the jury even deal with that.  I

19  think that's the concern that I'm hearing from Mr. Krepp.

20        So I walked in here thinking that if the issue was that

21  the defendants had to understand that they would be restricted in

22  calling you as a witness if they needed to if you had exculpatory

23  information, that would be something that we could waive here.

24  But Mr. Krepp's point is, how do we know that there is not going

25  to be a conflict at trial with regard to this document?  There's

1  no stipulation that can -- well, do you have any response to

2  Mr. Krepp's concern about what if the eventuality comes to pass

3  that you flagged and said you can't foreclose that you -- your

4  client or Mrs. Chrisley denies at trial and says how do we know

5  where this information came from, and it didn't come from her or

6  from us or, you know, it could have come from anything, and it

7  could have just come from the lawyer making it up.  How do we know

8  that it came from her?  Then we're in the mode of you potentially

9  being a witness with a crime fraud issue.  Do you have any

10 response to how that can be dealt with you still a lawyer in the

11 case?

12         MR. MORRIS:  It only arises if Mrs. Chrisley takes the

13 position that what is said is inaccurate.

14         THE COURT:  Am I right, Mr. Krepp, it's more if she

15 takes the position of what is said did not come from her?

16         MR. KREPP:  It is both.  Yeah.  I think, yeah, if it is

17 a factual dispute, but also if -- I agree with Mr. Morris, if she

18 says, no, that's just not accurate, then I would say we have a

19 factual issue then.  But also to Your Honor's point, yes, if she

20 says, I've never seen that e-mail before, I didn't tell Mr. Morris

21 to send that e-mail, I was the president of the company but I had

22 nothing to do with that information getting transmitted to the

23 grand jury, then we would need to peel back the layers and see who

24 the information actually came from, and the other way to do so

25 would be to remove the crime fraud exception and call Mr. Morris.

 1          MR. MORRIS:  Well, that's an option the government has.

 2          THE COURT:  Yeah, but if you're a lawyer in the case,

 3    then it effectively is not.

 4          MR. MORRIS:  I mean now.  If the government wants to

 5    conduct an investigation of where it came from and pursue a crime

 6    fraud exception opportunity to examine me before a grand jury,

 7    they can do that.

 8          MR. KREPP:  Candidly, Your Honor, we've been trying to

 9    avoid that.  The whole reason we did this is because we are

10    operating in good faith.  We were hoping that we could come to

11    some agreement as to how we could deal with this so we

12    wouldn't have to -- if Mr. Morris is called before a grand jury,

13    he is now a fact witness.  We are really trying not to interfere

14    with his client and his choice of -- his client's choice of

15    counsel and Mrs. Chrisley's choice of counsel.  So, really, we

16    were practically sitting here caught off guard by Mr. Morris

17    saying we can't predict what is going to happen at trial.  I don't

18    know what position Mrs. Chrisley is going to take.  So the fact

19    that that is on the table now, we're going to have to evaluate

20    other options, I guess.

21          MR. MORRIS:  Well, I would like to see -- the

22    opportunity to stipulate exists; we just don't know exactly what

23    the stipulation would be.  And, frankly, I don't know that it's my

24    decision as much as it is Mr. Friedberg's on behalf of

25    Mrs. Chrisley.

1          THE COURT:  That's part of the complication.

2          MR. MORRIS:  Yeah.

3          THE COURT:  But, you know, we talked about there being

4   the joint representation issues previously.  This is one of those

5   problems that has arisen as a result of a joint representation,

6   the prior joint representation.

7          So what -- I mean, Mr. Krepp, what are you proposing?

8   Are you saying that nothing short of a binding election by

9   Mrs. Chrisley that she would not -- I mean, this gets real

10  unusual.

11         MR. KREPP:  One thing I was going to propose was, it may

12  be helpful for the government to step out and for the Court to

13  have an ex parte conversation with defendants as to -- if they

14  know sort of what their theory of defense is on this document.  So

15  the Court at least has some idea of what the defendants are

16  thinking.  I don't know if the defendants are in any position

17  today to do that or not.  But I mean, really, we reached

18  out -- we've reached out to defense counsel.  We had a lengthy

19  conversation to confront all these issues with them.  We still

20  need the Garcia hearing as to a conflict as to the document which

21  Your Honor has gone through pretty thoroughly.  It is unusual.  I

22  mean, I'm not going to, you know, dispute that.  So I candidly

23  don't know what to do now that the defendants are taking the

24  position that they don't know what they're going to say at trial

25  about this e-mail.

1          MR. MORRIS:  Well, let me take a step back.  I'm the one

2    who said that, but it's not my place to say that exactly.  There's

3    been no suggestion that my client, Todd Chrisley, was involved in

4    any of this alleged conduct, which by the way, we don't think is

5    an obstructive act anyway, but that said, I can't say for the

6    record that we haven't made a decision.  I guess I would have to

7    defer to Mr. Friedberg.

8          THE COURT:  Well, do y'all want to take a bit of a break

9    and discuss this privately with -- either ex parte with me now or

10   with just each other privately or break up in your respective --

11   to discuss this further?

12         MR. MORRIS:  I have one question before we get there, if

13   I may.  Is the government only wanting a stipulation that the

14   document will come into evidence and then you can argue whatever

15   inferences you want to argue from it, or is it more than that?

16         MR. KREPP:  Well, e-mail.  Let's just -- it will be

17   easier for the record if we separate them out.  The document is

18   not an issue.

19         MR. MORRIS:  I mean, the e-mail.

20         MR. KREPP:  The e-mail.  You're right, we want a

21   stipulation as to that.  But I think to just avoid -- I'm going to

22   call it the Vadiki issue, to avoid what happened in Vadiki -- and

23   this may be an issue we can bring up with Judge Ross, so maybe the

24   Court can defer on this specific issue -- and if the defendants

25   are going to take the position at trial, if they know their trial

1  strategy is that they are going to claim that Julie Chrisley had

2  nothing to do with the e-mail, and the e-mail came from facts

3  given by some other third party, if they are going to call that

4  witness or they're going to try to make that argument at trial,

5  then Mr. Morris is necessarily at that point a fact witness.  So I

6  don't know if that is something Your Honor needs to get into right

7  now.  But I know for a fact having lived through this experience,

8  it is not something Judge Ross is going to want to deal with the

9  Friday before we're impanelling the jury.  That's the issue.

10          THE COURT:  Right, nor would that be an appropriate time

11  to be dealing with this, all the disruptions and delays that would

12  impose on the case.

13          At the same time, I'm not aware of any real authority I

14  have to, you know, require an election of a defense or, you know,

15  disclosure of an argument or a defense.  And so that seems to me

16  to get real dicey.  And so if what you're saying is nothing short

17  of an election announced now or a waiver of an argument would lift

18  the cloud of a potential conflict, then is what you're arguing,

19  there is nothing we could do but to disqualify Mr. Morris at this

20  time -- anything short of an election or waiver of this argument

21  or defense?

22          MR. KREPP.  Right.  I think, Judge, I think at a certain

23  point that's right.  Again, we're dealing with this in our

24  district.  We have things are certified -- we're now actually

25  certified for trial.  So things could go up to Judge Ross.

```
1              THE COURT:  I thought maybe --

2              MR. KREPP:  I thought everything was.  Objections

3    aren't.

4              THE COURT:  Typically, I certify, but since we had this

5    still going on, I thought I used that language.  I don't know,

6    maybe I used that language because I usually do.  But I intended

7    not to use that language until this was resolved.

8              MR. KREPP:  Got it.  I apologize.

9              THE COURT:  So I don't think we're certified

10   technically, but we're about to be as soon as this get resolved.

11             MR. KREPP:  It may be that it would just -- we've had

12   this hearing now.  The government -- and I'm sure the Court may

13   have a few more inquiries from the defendants.  The government is

14   comfortable with the Garcia aspect of the hearing.  It may be that

15   we have to reschedule a hearing with Judge Ross and that she can

16   make a 104 ruling that Your Honor suggested.

17             THE COURT:  Well, the 104 hearing would be about the

18   admissibility of the document, which I'm increasingly of the view

19   is not an issue or the two documents.

20             MR. KREPP:  That's fair.

21             THE COURT:  And they're not challenging authenticity or

22   hearsay to either, as I understand it -- the corporate resolution

23   or the e-mail.

24             MR. FRIEDBERG:  That is correct.

25             THE COURT:  So the issue is not -- so that would be, in
```

1  my view, the purpose of the 104 hearing if we needed some advance

2  ruling as to whether it came in or not, and the result of that

3  hearing would then determine whether it was -- really, Mr. Morris

4  would ever have to be a witness.  That's easy, we just have a 104

5  hearing and then we know the answer to that.  But that's not the

6  issue.

7       The issue is the document is in, both documents are in,

8  and you can make whatever arguments and inferences or argue for

9  whatever inferences come from the face of those documents and any

10 other evidence that you have, including the independent evidence

11 you have as to Mrs. Chrisley's role with the company at the time,

12 from which it sounds like I think you could argue very easily that

13 the jury should infer that this came from her because of her role.

14 But you might also want on top of that to -- if they deny this at

15 trial, to call Mr. Morris and deal with, more or less, crime/fraud

16 to sort of get into the attorney/client conversations to

17 definitively show that, in fact, it was from Mrs. Chrisley.

18 Although I think you would agree, you would have enough evidence

19 to argue from other facts that that is exactly what the jury

20 should conclude.  You also want the chance of maybe calling

21 Mr. Morris if they raise this defense.  That, I don't think, can

22 get fleshed out in a 104 hearing.

23       MR. KREPP:  I think that's fair.

24       THE COURT:  It only gets fleshed out if I order them to

25 make this election, whether they do or don't raise this argument

1   in defense, and I'm not sure I can do that.

2           MR. KREPP:  I don't think Your Honor can.  I have had

3   district judges order advice of counsel in defense be disclosed to

4   the government 90 days prior to trial.

5           THE COURT:  Oh, yes.  Absolutely.

6           MR. KREPP:  That's what I'm envisioning, it teams this

7   up to Judge Ross in that manner so we could all come back and have

8   some type of hearing -- and if it's ex parte, that's fine, but

9   just so Judge Ross has full visibility to -- what the defendants

10  plan on arguing about this document.  Frankly, I'm fine if we're

11  not even present for that.  I just want to make sure that Judge

12  Ross is aware of all of the issues so she can foresee whether or

13  not -- you know, whether or not Mr. Morris is going to have to be

14  a fact witness at a certain point.

15          THE COURT:  Okay.  Okay.  So you would propose that we

16  conclude essentially the Garcia hearing but reserve for another

17  day, whether it's in front of me or Judge Ross, the question of

18  what their defense is on this issue?  What do y'all think?

19          MR. MORRIS:  I think if -- I think the wisest thing is

20  to leave it open so that the government and the defense can see if

21  we can reach some resolution.

22          THE COURT:  Do y'all want time right now to talk?

23          MR. MORRIS:  That might help.  Can we have 10 or 15

24  minutes?

25          THE COURT:  Yes, or I can give you more.  But if that's

1  sufficient, that's fine.  We'll say 15.  We'll check in if you

2  need more time, then we could --

3          MR. MORRIS:  Can we have until 11:30, Your Honor?

4          THE COURT:  That's fine.  That's fine.  Why don't we

5  take a break, and y'all can talk in whatever groups you feel

6  appropriate privately, and then you can -- I'll ask Mr. Krepp and

7  Ms. Peters to remain outside the room in case you want to consult.

8  And so we'll reconvene at 11:30.

9          MR. MORRIS:  Thank you, Your Honor.

10         THE COURT:  All right.

11         (Whereupon, a break was taken from 11:05 to 11:30 a.m.)

12         THE COURT:  Any updates?

13         MR. MORRIS:  Judge, thank you for your guidance.  I

14  think we have reached a resolution in principle which we'll write

15  up --

16         THE COURT:  Okay.

17         MR. MORRIS:  -- and I think it will resolve the issue.

18         THE COURT:  Okay.  Great.  Do y'all want to summarize it

19  at least?  I think that's important for waiver purposes.

20         MR. MORRIS:  You want me to say it?

21         MS. PETERS:  Sure.

22         MR. MORRIS:  Please correct me if I misstate it.

23         MS. PETERS:  Sure.

24         MR. MORRIS:  I believe, Your Honor, we're going to enter

25  into an agreement that, number one, with regard to the e-mail in

1   question, Julie Chrisley agrees that what I said in the e-mail is

2   accurate, that is, she's not going to claim that I misstated

3   anything.

4          Number two, that the information in that e-mail came

5   from Julie Chrisley.

6          That number three, the e-mail was provided by an

7   attorney for Seven Seas Productions.

8          And number four, there is no need to call Bruce Morris

9   as a witness either by the defense or the prosecution with regard

10  to this issue.

11         THE COURT:  Okay.  And so it's contemplated -- is it

12  contemplated that what you just said would essentially be a

13  stipulation and that would be entered in the evidence in the case?

14         MR. MORRIS:  Yes.

15         THE COURT:  Okay.

16         MR. MORRIS:  Yes.

17         THE COURT:  Okay.  All right.  So let me, I guess,

18  continue where we left off.

19         As you recall, I had gone through a nonexclusive list of

20  potential problems or scenarios that could come up by a decision

21  to keep the current representation and, you know, waive these

22  conflicts, and among those now, in addition, is that the -- part

23  of what you are agreeing to as part of waiving the conflict, is

24  that you're agreeing to the stipulation as just described by

25  Mr. Morris.  So that would be evidence introduced in the case that

1   could be used against you, Mrs. Chrisley.  And it relates

2   generally to an issue that is part of the conspiracy.  So it

3   also -- while your name isn't associated with this document,

4   Mr. Chrisley, the underlying allegations in paragraph 42 and 43 of

5   the indictment to which this document is introduced, relate to the

6   conspiracy between you and Mrs. Chrisley on the tax issues as

7   well.  So it is evidence that could inure to your detriment at

8   trial as well.  But you're agreeing that to avoid the issues that

9   would potentially create a conflict for which we would need to

10  excuse Mr. Morris, you're agreeing to this evidentiary stipulation

11  that could be used against you.  That's not something that you

12  have to do.  If you had -- if y'all had other counsel, without

13  that conflict, you would have more ability to challenge that

14  document and not agree that it came to you, Mrs. Chrisley, or all

15  the other things that are in there, you could make any argument

16  that you want in defense with regard to that issue, and you

17  wouldn't be as constrained as this stipulation may constrain you.

18          So that's part of the -- one of the choices you're

19  making if you do decide to waive the conflict and go forward.  So

20  I just want to make sure that you understand that.  I guess I'm

21  going to ask both of you, but it's obviously most pertinent as to

22  Mrs. Chrisley, but it affects both of you as well.

23          Mrs. Chrisley, do you understand that?

24          MRS. CHRISLEY:  Yes, sir, I do.

25          THE COURT:  And Mr. Chrisley as well?

1          MR. CHRISLEY:  Yes, sir, I do.

2          THE COURT:  All right.  So we've gone through these

3    scenarios.  Let me just ask:  -- you've been through this before

4    so you know that I have a little bit of a script.  I'm going to

5    ask these to both of you, but you'll answer separately.  And the

6    purpose of this is to just to confirm for the record that you have

7    a basis to make this decision voluntarily, the decision to waive

8    potential conflicts freely and voluntarily.

9          So how old are y'all?  I'll ask Mr. Chrisley first.

10          MR. CHRISLEY:  53.

11          MRS. CHRISLEY:  48.

12          THE COURT:  And how far did each go in school,

13    Mr. Chrisley?

14          MR. CHRISLEY:  High school.

15          MRS. CHRISLEY:  High school.

16          THE COURT:  And have you had any drugs, alcohol or

17    medications in the last 72 hours?

18          MR. CHRISLEY:  No, sir.

19          MS. CHRISLEY:  No, sir.

20          THE COURT:  Have you ever been under the care of a

21    psychologist, psychiatrist, mental health professional in any way?

22          MR. CHRISLEY:  No, sir.

23          MRS. CHRISLEY:  No.

24          THE COURT:  And do either -- I'm asking the lawyers, do

25    you have any doubts or concerns or any of the lawyers in the case

```
 1   as to either of the defendants' competency to make the decision
 2   that has to be made here on the conflict issue?
 3          MR. MORRIS:  No, sir.
 4          MR. FRIEDBERG:  I think Mr. Chrisley wanted to amend
 5   something, Your Honor.
 6          THE COURT:  Let me first get the answer to that, and I
 7   turn back.
 8          MR. FRIEDBERG:  I have no reason to believe that there
 9   is any defect whatsoever; that she completely understands,
10   Mrs. Chrisley completely understands both the nature of this
11   hearing and exactly what she's waiving.
12          THE COURT:  Very good.  From the prosecution's
13   standpoint, any competency issues?
14          MS. PETERS:  No, Your Honor.
15          THE COURT:  And, Mr. Chrisley, I'm sorry.
16          MR. CHRISLEY:  We have -- we have a therapist or a
17   counselor that -- a Christian counselor that my wife and I talk to
18   since this has started.
19          THE COURT:  Okay.  Thank you for clarifying.  And, you
20   know, my main goal is to make sure that you're not under -- you
21   don't currently have any conditions --
22          MR. CHRISLEY:  I do not.
23          THE COURT:  -- to your understanding that impact your
24   ability to -- your thinking cognition or your ability to make
25   rational decisions.
```

```
 1              MR. CHRISLEY:  We do not.

 2              MRS. CHRISLEY:  No, sir.

 3              THE COURT:  All right.  I'm going to ask the government

 4    to remind you of the potential charges -- potential penalties that

 5    could be imposed upon conviction in the counts in this case.

 6    Ms. Peters.

 7              MS. PETERS:  Yes, Your Honor.  And would the Court like

 8    us to go over all of the charges pending against the defendant or

 9    just the one that this relates to?

10              THE COURT:  Well, all of them, because, you know, their

11    decision to waive any conflict would potentially impact their

12    defenses to all of the charges.  So before they need to make that

13    decision, they -- we need to make sure they're aware of their

14    bottom line risk that they're facing here in this case.

15              MS. PETERS:  Yes, Your Honor.  Both Todd and Julie

16    Chrisley are charged in Count 1 with bank fraud conspiracy and in

17    Counts 2 through 6 with bank fraud.  And the penalties for each of

18    those crimes are -- there is no mandatory minimum, but they carry

19    a maximum term of imprisonment of up to 30 years.  They carry up

20    to five years on supervised release.  The Court can impose a fine

21    of up to $1 million or twice the gain or the loss amount,

22    whichever is greater.  The Court will order full restitution to

23    all victims of the offense and relevant conduct.  There is a $100

24    mandatory special assessment for each count of conviction, as well

25    as forfeiture from any and all proceeds from the commission of the
```

1    offense.

2            In Counts 7 and 8, Todd and Julie Chrisley are both

3    charged with wire fraud conspiracy and substantive wire fraud,

4    which carries a maximum term of imprisonment of up to 20 years.

5    There is no mandatory minimum.  The Court can impose a term of

6    supervised release of up to three years.  The maximum fine that

7    the Court can impose is $250,000 or twice the gain or twice the

8    amount of loss, as well as full restitution, forfeiture and a $100

9    mandatory special assessment.

10           In Count 9 the defendants are charged with conspiracy to

11   defraud the United States.  The maximum term of imprisonment is up

12   to five years.  There's no mandatory minimum.  The Court could

13   impose a term of supervised release of up to three years and a

14   maximum fine of up to $250,000 or twice the gain or loss.  There

15   is a $100 mandatory special assessment, as well as restitution and

16   forfeiture.

17           In Count 10 the defendants are charged with tax evasion.

18   The maximum term of imprisonment that the Court can impose is up

19   to five years.  There is no mandatory minimum.  A term of

20   supervised release of up to three years, a maximum fine of up to

21   $250,000 or twice the gain or total loss.  A mandatory special

22   assessment of $100, as well as restitution.

23           And then finally, Your Honor, the Court noted that it is

24   possible that by the time of trial the defendants could be facing

25   a potential charge for obstruction.  And so while it's not

1  currently charged, if it is okay with the Court, I would like to

2  read --

3          THE COURT:  Yes.

4          MS. PETERS:  -- the penalties for obstruction of a Grand

5  Jury investigation, which would be in violation of

6  Title 18 U.S. Code § 1512(C), and the defendants, if convicted, if

7  charged and if convicted of an obstruction crime, could face up to

8  20 years imprisonment with no mandatory minimum, up to three years

9  supervised release, a fine of up to $250,000, a mandatory $100

10 special assessment, as well as a forfeiture and restitution.

11         THE COURT:  Okay.  So my question is to both of you, do

12 you understand the potential penalties that the government takes

13 the position of applying here in this case?

14         MR. CHRISLEY:  I do.

15         MS. CHRISLEY:  Yes, sir.

16         THE COURT:  Okay.  Now, the -- as I think I told you,

17 the Constitution and U.S. law gives every defendant the right to

18 effective assistance of counsel, and you have the right to be

19 represented by a lawyer who does not have a conflict of interest.

20 That is, you have the right to be represented by a lawyer whose

21 loyalty to you is not at all compromised by his or her

22 representation or former representation of any other person or

23 entity or by any other interests, including the lawyer's own

24 self-interests.  Do you both understand these rights,

25 Mr. Chrisley?

1          MR. CHRISLEY:  I do.

2          MRS. CHRISLEY:  Yes, sir.

3          THE COURT:  Okay.  Now, I've gone over with you the

4  description of the potential evidentiary conflict in this case or

5  some of the things that could occur.

6          Do you understand the issue here that we've talked

7  about, Mr. Chrisley?

8          MR. CHRISLEY:  I do.

9          THE COURT:  Mrs. Chrisley?

10          MRS. CHRISLEY:  Yes, sir.

11          THE COURT:  I've tried to summarize the various ways in

12  which the potential conflict could negatively impact your rights

13  going forward if you were to maintain your current representation.

14  Do you understand the potential issues that I've discussed?

15          MR. CHRISLEY:  I do.

16          MRS. CHRISLEY:  Yes, I do.

17          THE COURT:  But you understand that those are not

18  exclusive, in other words, there could be things that come up as a

19  result of these choices you're making here today that I haven't

20  described or foresaw or stated here, but because we can't always

21  predict everything that is going to happen going forward.  But if

22  you waive your right to the conflict -- to the conflict that we've

23  discussed, you're going to give up your right to object or to

24  complain about or to challenge any conviction on the basis of any

25  such problems that may occur, whether I've described them or not?

1           MR. CHRISLEY:  I do.

2           MRS. CHRISLEY:  Yes.

3           THE COURT:  Okay.  Do you understand that if you were to

4    decide not to waive this conflict, you would have the right to

5    hire new counsel of your choice, or if you couldn't afford a

6    lawyer, you would have the right to receive appointed counsel

7    which would be a lawyer given to you or furnished to you free of

8    charge by the Court if you met the financial qualifications?

9    Mr. Chrisley?

10          MR. CHRISLEY:  I do.

11          MRS. CHRISLEY:  Yes, I do.

12          THE COURT:  And I want to touch back on the stipulation

13   that was talked about because it's also worth noting how this

14   interrelates with the prior waivers that we've gone over with you.

15          At the inception of the case, we had a similar Garcia

16   hearing where you waived objections to the joint representation or

17   former joint representation.  This is another example of something

18   that was a result of the joint representation.  Mrs. Chrisley,

19   what you're agreeing to is to make stipulations that affect you in

20   order, essentially, to allow Mr. Morris to continue in the case to

21   represent your codefendant.

22          MRS. CHRISLEY:  Yes, sir.

23          THE COURT:  So, I mean, is that something that you are

24   willing and voluntarily doing?

25          MRS. CHRISLEY:  Yes, sir.  It is.

1          THE COURT:  And it relates to the fact that as you've

2    previously waived the conflict from the fact that Mr. Morris

3    represented at one point you and your company jointly with

4    Mr. Chrisley, but is that still something you're continuing to

5    waive?  In other words, to waive any complaint or objection to the

6    fact that Mr. Morris is now representing your codefendant, that

7    situation is putting you in the position of entering into this

8    stipulation?  Is that something you're agreeable to?

9          MRS. CHRISLEY:  Yes, sir.  I am.

10          THE COURT:  Now, we've mainly talked about the

11    hypothetical where the government might need to call Mr. Morris,

12    which is being addressed by the agreements that have been reached,

13    but, also, by this waiver, it would limit your -- both of your

14    abilities to call either of your lawyers yourselves if you were to

15    want to in your case if they -- if you thought they had

16    exculpatory evidence to help you in your defense on this or other

17    issues.  That is also a result or implication of the waiver here

18    today, not just dealing with the government not needing to call

19    him, you also would not -- may be limited calling, for example,

20    Mr. Morris, as a witness to provide background or exculpatory

21    evidence as to that document or other things related to that

22    issue, you wouldn't be able to do that under the current

23    representation situation; do you all understand that?

24          MR. CHRISLEY:  We do.

25          MRS. CHRISLEY:  Yes, sir.

1          THE COURT:  Okay.  Any there any other inquiries that

2     y'all think I should make?  I'm primarily asking the government,

3     but the defense may have suggestions as well.

4          MS. PETERS:  No, Your Honor.  Thank you.

5          MR. MORRIS:  No, Your Honor.  Thank you.

6          MR. FRIEDBERG:  No.  Thank you, Your Honor.

7          THE COURT:  All right.  Before I ask for your final

8     decisions, do you -- as to waiving the conflict, do you -- do

9     either of you want more time either here today or to continue this

10    to another date to continue to consider this issue, either to

11    consult with your current lawyers or to consult further with your

12    neutral lawyer who is here as to the question of whether to waive

13    the conflict here today?  Are you all prepared to do that here

14    today or would you want more time?

15         MR. CHRISLEY:  I'm prepared today.

16         MRS. CHRISLEY:  Yes, I'm prepared today.

17         THE COURT:  And are you satisfied with the opportunity

18    that you've had to discuss this with both your own lawyer in the

19    case and Mr. Anulewicz who is here with you today?  You've had the

20    opportunity to consult previously.  Are you satisfied with your

21    opportunity to consult with the lawyers on this question?

22         MR. CHRISLEY:  Yes, sir.

23         MRS. CHRISLEY:  Yes, I am.

24         THE COURT:  Okay.  I'm going to ask each of you then

25    directly, do you waive, that is, give up your right to have a

1  different lawyer or set of lawyers in this case, and do you waive

2  any conflict that may have resulted from Mr. Morris' role in

3  providing this document that has been discussed here today with

4  the Grand Jury?  First, Mr. Chrisley.

5          MR. CHRISLEY:  I do.

6          THE COURT:  Mrs. Chrisley?

7          MRS. CHRISLEY:  I do.

8          THE COURT:  And are you each making that decision freely

9  and voluntarily?  Mr. Chrisley?

10          MR. CHRISLEY:  I am.

11          MRS. CHRISLEY:  I am.

12          THE COURT:  Okay.  Have you been promised any benefit or

13  threatened with any adverse action or harm if you were to decline

14  to waive any rights about your legal representation?

15          MR. CHRISLEY:  I have not.

16          MR. MORRIS:  No, I have not.

17          MRS. CHRISLEY:  No, I have not.

18          THE COURT:  I'm going to ask counsel, both Mr. Morris

19  and Mr. Friedberg, have you assessed for yourselves the issues

20  with regard to conflict here, and are you satisfied that you can

21  appropriately move forward in this case representing your clients

22  with the agreements that have been reached?  Mr. Morris?

23          MR. MORRIS:  Yes, sir.

24          THE COURT:  Mr. Friedberg?

25          MR. FRIEDBERG:  Yes, sir.

1           THE COURT:  All right.  Well, I think we have those

2    written forms that I've provided to y'all, and have y'all both had

3    a chance to read those in advance?

4           MRS. CHRISLEY:  Yes, sir.

5           MR. FRIEDBERG:  We're waiting to sign them in open

6    court.

7           THE COURT:  That's fine.  Mr. Chrisley, have you read

8    this --

9           MR. CHRISLEY:  I have read this, yes.

10          THE COURT:  All right.  So if y'all would, if you, in

11   fact, waive and agree to waive the conflicts that we discussed

12   here, go ahead and sign that form.  And I'll ask Mr. Morris if you

13   could hand both up.

14          MR. MORRIS:  Thank you, Your Honor.

15          THE COURT:  It's easier for you to get up.

16          All right.  The forms have been handed up and I've

17   reviewed them.  And I'll state for the record that the defendants

18   both signed here in open court, and so I will direct the filing of

19   these waiver documents.  I'll issue a short written order, but I

20   do find that the defendants have willfully, knowingly, and

21   voluntarily waived their rights to conflict-free counsel as

22   discussed here today and have done so with notice of their legal

23   rights.  And so I will accept the waivers and permit the continued

24   representation.  I don't find that this is an unwaivable conflict

25   in the way that it has been handled here today.  I think it is --

```
 1  I've considered the factors described in the Wheat case as to what
 2  is waivable and unwaivable conflicts, and I don't think -- or I
 3  think this is waivable.  It doesn't create such an issue that we
 4  can't accept a waiver.  I think it might have gotten there if
 5  there was still the potential of Mr. Morris being a witness, but
 6  that has been obviated by the discussions here today.  And I think
 7  the defendants are -- I think they have the ability to make that
 8  agreement or make that -- to waive the conflict to that extent.
 9  So I'll accept the waivers, and y'all will go forward as you are.
10          MR. CHRISLEY:  Thank you, Your Honor, so much.  Thank
11  you.
12          MR. FRIEDBERG:  Thank you, Your Honor.
13          THE COURT:  I'll do the written order, and that just
14  sort of says, basically, what I just said.  But any -- and we will
15  at that point probably certify the case as ready for trial.  I
16  don't recall there is anything else in front of me specifically at
17  this point.
18          MS. PETERS:  That's right, Your Honor.  We just have the
19  objections.
20          THE COURT:  Y'all have the objections in front of Judge
21  Ross, and then, presumably, you will be dealing with her with
22  regard to trial scheduling.  So I'll certify the case as ready for
23  trial at that time.
24          All right.  So we'll be in recess.  Thank you very much.
25  Thank you.  Have a nice weekend, and I'll do that.
```

1          MR. MORRIS:  Thank you, Your Honor.

2          MR. CHRISLEY:  Thank you, Your Honor.

3          (Whereupon the hearing concluded at 12 noon.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3   UNITED STATES DISTRICT COURT

4   NORTHERN DISTRICT OF GEORGIA

5

6       I do hereby certify that the foregoing pages are a true and

7   correct transcript of the proceedings taken down by me in the case

8   aforesaid.

9       This the 1st day of October, 2021.

10

11

12

13

14       _____
                    VIOLA S. ZBOROWSKI, CRR, CRC, CMR, FAPR
15                  OFFICIAL COURT REPORTER

16

17

18

19

20

21

22

23

24

25
```