IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>TODD CHRISLEY (A/K/A MICHAEL TODD CHRISLEY) AND JULIE CHRISLEY | Criminal Action No.<br><br>1:19-CR-297-ELR-JSA |

### United States' Response to the Chrisley Defendants' Motion in Limine

The United States of America, by Kurt R. Erskine, United States Attorney, and Thomas J. Krepp and Annalise K. Peters, Assistant United States Attorneys for the Northern District of Georgia, files this Response to the Chrisley Defendants' Motion in Limine.

## I.   Background

On August 13, 2019, the grand jury returned an Indictment against defendants Todd Chrisley, Julie Chrisley (hereinafter, "the Chrisley Defendants"), and Peter Tarantino. (Doc. 1). The grand jury returned a Superseding Indictment against all three defendants on February 15, 2022. (Doc. 130).

The Chrisley Defendants are charged with one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count 1), five counts of bank fraud, in violation of 18 U.S.C. § 1344 (Counts 2-6), one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 8), and one count of tax

evasion, in violation of 26 U.S.C. § 7201 (Count 9). Julie Chrisley is also charged with one count of wire fraud, in violation of 18 U.S.C. § 1343 (Count 7), and one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2) (Count 12). Tarantino is charged with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 9), and two counts of willfully filing false tax returns, in violation of 26 U.S.C. § 7206(1) (Counts 10-11).

### A. Overview of the Bank Fraud Conspiracy and Bank Fraud Schemes

The Superseding Indictment alleges that the Chrisley Defendants conspired with "co-conspirator A" (who the United States has identified as Mark Braddock) "to submit false materials, such as fabricated bank statements and false personal financial statements, to financial institutions to obtain millions of dollars in loans, much of which they used for their own personal benefit." (Doc. 130, ¶ 17). The Superseding Indictment specifically alleges a series of steps that the Chrisley Defendants and Braddock took to commit these offenses, which included the submission of "false documents to banks when applying for loans, including fabricated bank statements listing inflated account balances, personal financial statements containing false information about available funds, false invoices, and false audit paperwork." (*Id.*, ¶ 18).

### B. Overview of the Wire Fraud Scheme

Count Seven of the Superseding Indictment alleges that Julie Chrisley engaged in a wire fraud scheme. (*Id.*, ¶¶ 26-33). Specifically, she transmitted a false credit report and fabricated bank statements when seeking to lease a residential property in California. (*Id.*, ¶ 28). After submitting these false

documents through her realtor, Julie Chrisley obtained a lease for the California home. The Chrisley Defendants then refused to pay the October 2014 rent, causing the property owner to have to threaten them with eviction. (*Id.*, ¶ 32).

### C. The Chrisley Defendants' Public Statements About the Charges

While not required to reveal their defense strategy in advance of trial, the Chrisley Defendants have made it publicly known that they intend to lay the blame (at least for the bank fraud charges) squarely at the feet of their co-conspirator Braddock. Upon learning of the Indictment, the Chrisley Defendants issued a public statement via Todd Chrisley's Instagram account regarding the charges against them. As is relevant here, Todd Chrisley claimed he had

> discovered that a trusted employee had been stealing from us big time. I won't go into details but it involved all kinds of really bad stuff, like creating phony documents, forging our signatures, and threatening other employees with violence if they said anything. We even discovered that he illegally bugged our home. Needless to say, we fired the guy and took him to court-and that's when the real trouble started. To get revenge, he took a bunch of his phony documents to the U.S. Attorney's office and told them we had committed all kinds of financial crimes, like tax evasion and bank fraud.

(*See* Ex. A, attached hereto). In other words, the Chrisley Defendants do not deny that fraud took place but maintain that the "trusted employee" (Braddock) was solely responsible.

### D. The Chrisley Defendants' Motion in Limine

On August 19, 2019, Judge Anand entered a pretrial scheduling order directing the United States, upon a defendant's request, "to provide a summary

of any evidence it intends to offer of other crimes, wrongs or acts pursuant to FED. R. EVID. 404(b)." (Doc. 20 at 6-7). The pretrial scheduling order further instructs that:

> **The 404(b) evidence shall be provided to the defense as soon as practicable after the government has determined to use such evidence, subject to the following deadlines:** If the 404(b) evidence pertains to acts or conduct of the defendant which is alleged to have occurred within the Northern District of Georgia, the summary required to be provided under this heading and the rule shall be provided no later than fourteen (14) days before trial. If the acts or conduct is alleged to have occurred outside the Northern District of Georgia, the summary required to be provided under this heading shall be provided no later than twenty-one (21) days before trial.

(*Id.* at 7) (emphasis in original).

On March 15, 2022, at defense counsel's request, the United States transmitted a list of all lenders that the Chrisley Defendants defrauded or attempted to defraud during the bank fraud conspiracy. (Doc. 158, Ex. 3).

On March 14 and 15, 2022—weeks before it was required to do so—the United States disclosed to the Chrisley Defendants a summary of certain Rule 404(b) evidence that it intended to admit at trial. (Doc. 158, Exs. 1, 2). The United States supplemented this Rule 404(b) notice on March 31, 2022, to include one additional false invoice. (*See* Ex. B, attached hereto).[1] In total, the United States is

---

[1] The United States will not seek to admit evidence regarding the false BP Oil Spill claims if the Chrisley Defendants agree they will not seek to cross examine Braddock on this point. If, however, they intend to cross examine Braddock about his own false claims for reimbursement from the BP Oil Spill, the United States should be permitted to question Braddock about it during his direct examination to make clear that Braddock made these false submissions on behalf

seeking to admit evidence of six extrinsic acts under Rule 404(b). As set forth in greater detail below, the first four extrinsic acts involve the submission of fraudulent invoices to third parties, and the last two involve the submission of false statements to financial institutions.

On March 21, 2022, the Chrisley Defendants filed an Omnibus Motion in Limine that seeks to prevent the United States from admitting evidence of lenders not named in the Superseding Indictment and all Rule 404(b) evidence. (Doc. 158). The United States responds to the Chrisley Defendants' Ominbus Motion here.

## II.   Argument

### A. Evidence of additional lenders is inextricably intertwined with the bank fraud conspiracy charge.

The Eleventh Circuit has repeatedly held that uncharged conduct:

> falls outside the scope of Rule 404(b), and thus is independently admissible, if it is '(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense[s], (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense[s].'

*United States v. Ford*, 784 F.3d 1386, 1393 (11th Cir. 2015) (internal citation omitted).

*Ford* is instructive. In this stolen identity tax refund fraud case before U.S. District Judge Thrash, seventeen identity theft victims testified at trial; of that

---

of the Chrisley Defendants as well as for himself. Otherwise, the jury will be left with the false impression that Braddock submitted the false claims for himself alone.

group, only eight were victims of the offenses charged in the indictment. *Id.* at 1394. Just as the Chrisley Defendants do here, Ford argued that it was impermissible for Judge Thrash to allow the remaining nine identity theft victims to testify. *Id.* The Eleventh Circuit disagreed, holding that it "repeatedly has held that evidence of uncharged conduct that is part of the same scheme or series of transactions and uses the same *modus operandi* as the charged offenses is admissible as intrinsic evidence outside the scope of Rule 404(b)." *Id.* (citing *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1210-11 (11th Cir. 2009) (such evidence is admissible if it "is linked in time and circumstances with the charged crime and concerns the context, motive or setup of the crime; or forms an integral part of the crime; or is necessary to complete the story of the crime"); *United States v. Muscatell*, 42 F.3d 627, 630-31 (11th Cir. 1995) (testimony regarding uncharged conduct that was part of the same fraud scheme "was properly admissible as intrinsic evidence of the same series of transactions as the charged offenses" and was outside the scope of Rule 404(b)). The Eleventh Circuit affirmed this principle in *United States v. Shabazz*, another stolen identity tax refund fraud case, holding that "[t]he uncharged conduct in this appeal is similarly 'inextricably intertwined' with the charged scheme." 887 F.3d 1204, 1217 (11th Cir. 2018).

As a threshold matter, it bears emphasis that Count One of the Superseding Indictment alleges a conspiracy to defraud "multiple financial institutions." (Doc. 130, ¶ 16). The Chrisley Defendants filed a Motion for a Bill of Particulars requesting the names of the financial institutions at issue in Count One, and the

United States agreed to provide it to them. (Doc. 35 at 5). Now, they claim that the very relief they sought (the identities of the financial institutions) is too vague and for that reason, highly probative evidence of their participation in an extensive bank fraud conspiracy should be excluded. In any event, the United States includes here a draft summary chart with the names of the financial institutions as well as the approximate dates that the false materials were submitted to them (*see* Ex. C, attached hereto), thereby addressing the Chrisley Defendants' concern that "it is impossible to determine if the alleged conduct is even within the conspiracy dates alleged or the applicable statute of limitations." (Doc. 148 at 6-7).

Evidence regarding these additional lenders is admissible evidence under each of the three prongs set forth in *Ford*. 784 F.3d at 1393.

**First,** evidence of false statements made to additional lenders is admissible as they are "an uncharged offense which arose out of the same transaction or series of transactions as the charged offense[s]." *See id*. All of the challenged evidence involves the same *modus operandi*, namely, submitting false or fabricated materials to banks to obtain loans, which is exactly what the Chrisley Defendants are charged with doing in Counts One through Six of the Superseding Indictment. In other words, the false submissions to these additional banks formed a series of fraudulent conduct occurring between 2007 and 2012.

**Second,** evidence of false statements to the additional lenders is "inextricably intertwined with the evidence regarding the charged offense[s]." *See id*. As stated, the Superseding Indictment alleges a series of steps that the Chrisley

Defendants and Braddock took to defraud multiple financial institutions, which included the submission of "false documents to banks when applying for loans, including fabricated bank statements listing inflated account balances, personal financial statements containing false information about available funds, false invoices, and false audit paperwork." (Doc. 130, ¶ 18). The false statements sent to the financial institutions listed in Exhibit C is nearly identical. For instance, the conspirators submitted to financial institutions "a personal financial statement that falsely claimed TODD CHRISLEY had $4,000,000 at Merrill Lynch." (Doc. 130, ¶ 18). In fact, the Chrisley Defendants and Braddock submitted false personal financial statements claiming that Todd Chrisley had millions of dollars in a Merrill Lynch account to *fourteen* different financial institutions: Alpha Bank, Athens First Bank, Buckhead Community Bank, Embassy Bank, Integrity Bank, Haven Trust Bank, Regions Bank, Security Bank, Atlanta Business Bank, Bank of America, Crescent Bank, Park Avenue Bank, Sunrise Bank, and SWBC. Accordingly, evidence of false statements to additional lenders is not some separate scheme but is instead inextricably intertwined with the charged conduct.

*Third,* evidence of false statements to the additional lenders is "necessary to complete the story of the crime." *See Ford,* 784 F.3d at 1393. The Chrisley Defendants and Braddock were essentially committing a Ponzi scheme, using the proceeds of some fraudulently obtained loans to pay down the balances of some previously fraudulently obtained loans. As alleged in the Superseding Indictment, "[o]nce it bcame clear that Chrisley Asset Management was insolvent

and the conspirators could no longer pay back the outstanding loans or obtain new loans, [the Chrisley Defendants] sought to hide their involvement in the conspiracy by falsely claiming that they did not know that [Braddock] had submitted false documents to financial institutions." (Doc. 130, ¶ 22). In order to complete the story of the crime, it is necessary to explain to the jury that the Chrisley Defendants defrauded a number of financial institutions.

### B. The extrinsic evidence is admissible against the Chrisley Defendants under Rule 404(b) as it shows intent, plan, knowledge, absence of mistake and lack of accident.

Evidence of uncharged conduct is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Ford*, 784 F.3d at 1393 (citing Fed. R. Evid. 404(b)(2)). The Eleventh Circuit has set forth the following factors to determine the admissibility of Rule 404(b) evidence:

> (1) it must be relevant to an issue other than defendant's character;

> (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and

> (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403.

*Id.* (internal citations omitted). When determining the probative value of extrinsic act evidence, district courts should consider: "(1) the Government's incremental need for the evidence to prove guilt beyond a reasonable doubt; (2) the similarity

of the extrinsic act and the charged offense; and (3) the closeness or remoteness in time between the extrinsic act and the charged offense." *United States v. Baptiste*, 618 F. App'x 593, 596 (11th Cir. 2015) (citing *United States v. Ellisor*, 522 F.3d 1255, 1268 (11th Cir. 2008)). "A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007) (citing *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998)).

The Eleventh Circuit has repeatedly affirmed the admission of Rule 404(b) evidence in fraud cases where a defendant's intent is a central issue:

- *United States v. Prince*, 783 F. App'x 895, 902 (11th Cir. 2019) (prior guilty plea to Medicaid fraud and sentencing properly admitted as intrinsic evidence, or in the alternative, under Rule 404(b) as it demonstrated the defendant's "fraudulent intent and absence of mistake in committing the charged offenses");

- *United States v. Jemmott*, 596 F. App'x 896, 901-03 (11th Cir. 2015) (Rule 404(b) evidence deemed admissible where "Defendant made clear that he was vigorously challenging the contention that he had conspired with [another individual] as to the overall food stamp fraud conspiracy");

- *Ford*, 784 F.3d at 1393 (defendant's personal tax returns admissible under Rule 404(b) where they listed the same addresses as the returns charged in the indictment and were therefore "directly relevant to proving the fraud scheme alleged by the government because they utilize the same methods as the charged conduct");

- *Baptiste*, 618 F. App'x at 597 (evidence of prior credit card fraud was "highly relevant" under Rule 404(b) in theft of government funds prosecution); and

- *United States v. Brown*, 665 F.3d 1239, 1248 (11th Cir. 2011) (defendant's involvement in "two prior bank fraud schemes was admissible to show his fraudulent intent and absence of mistake in committing the charged fraud scheme").

### 1. Summary of Rule 404(b) evidence

The United States has identified six extrinsic acts that it seeks to admit under Rule 404(b). As set forth in greater detail below, the first four involve the submission of fraudulent invoices to third parties, and the last two involve the submission of false documents to banks. All six extrinsic acts are probative of the Chrisley Defendants' intentional participation in the bank fraud scheme (Counts 1-6) and Julie Chrisley's intentional participation in the wire fraud scheme (Count 7).

### a. In January 2014, Julie Chrisley submitted a fraudulent invoice from "The Right-Hand Man" to an investment company.

On January 18, 2014, Defendant Julie Chrisley submitted two invoices totaling $12,132.96 to an investment company for reimbursement. (*See* Ex. D, attached hereto). The attached invoices were purportedly from a Georgia company named "The Right-Hand Man." (Ex. D at 3-4). Julie Chrisley included a copy of a check written to The Right-Hand Man in the amount of $12,132.96. (Ex. D at 5). The owner of The Right-Hand Man has confirmed to the investigating agent that these are fraudulent invoices, that he did not do the work reflected in the invoices, and that he was never paid this amount of money from the Chrisley

Defendants. Furthermore, the investigating agents have reviewed the bank records for 7C's Productions and have determined that the check Julie Chrisley attached to her email was never cashed.

    **b.  In November 2014, Julie Chrisley submitted a fraudulent invoice from "Pineapple House" to a production company.**

On November 11, 2014, Defendant Julie Chrisley submitted an invoice for two antique chairs in the amount of $7,200 to a production company for reimbursement. (Ex. E, attached hereto, at 1-3). The invoice was purportedly from a Georgia company named "Pineapple House." (Ex. E at 3). However, a representative of Pineapple House confirmed to the investigating agent that "[t]his is not an invoice from Pineapple House. The header incorporates our information, but it is not our form, and the transaction is not in our system." (Ex. E at 4).

    **c.  In August 2015, Todd Chrisley submitted a fabricated banking record regarding a Delta Airlines ticket to a production company.**

On August 8, 2015, Defendant Todd Chrisley emailed a PDF file entitled "copy of Delta Ticket" to his talent agency (Ex. F, attached hereto, at 23-25). The file was an image of a Bank of America debit card charge in the amount of $2,430.30 from Delta Airlines. (Ex. F at 25). When the talent agency told him that NBC would only reimburse him for the cost of a business class ticket, which was approximately $1,300, Todd Chrisley falsely claimed "we did pay 2300 for that ticket." (Ex. F at 26). However, records obtained from email search warrants and

subpoenaed records from Bank of America confirm that the Chrisleys actually purchased two tickets, each in the amount of $1,235.70. (Ex. F at 33).

### d. In October 2015, Julie Chrisley submitted a fraudulent invoice from "Ken Knight Interiors" to a production company.

On October 2, 2015, Defendant Julie Chrisley sent an invoice and check for furniture repair in the amount of $9,863.97 to a production company. (Ex. G, attached hereto, at 1-4). The invoice was purportedly from a Georgia company named "Ken Knight Interiors, Inc." (Ex. G at 3). The check was purportedly issued from the 7C's Productions' bank account. (Ex. G at 4). However, the investigating agents have confirmed from reviewing the subpoenaed bank records that the check attached to Julie Chrisley's email was never cashed. Additionally, the owner of Ken Knights Interiors has confirmed that the invoice attached to Julie Chrisley's email was fabricated. In fact, the owner confirmed that his business name is actually 14th Street Antiques & Interiors, Inc. (not "Ken Knight Interiors"). Later in 2015, Todd Chrisley and Julie Chrisley purchased a number of items from 14th Street Antiques & Interiors, Inc., but that business never did any repair work for the Chrisley Defendants as Julie Chrisley falsely represented to the production company. (Ex. G at 5-23).

### e. In December 2016, Todd Chrisley altered an email from a bank employee to get the IRS to release a lien.

In December 2016, Defendant Todd Chrisley provided materially false information to a bank while trying to get an IRS tax lien released from one of their properties. (Ex. H, attached hereto). To do so, he moved money from his

minor son's bank account to Tarantino. (Ex. H at 4). An employee of U.S. Trust, Bank of America Private Wealth Management told Todd Chrisley: "Todd: [MINOR CHILD'S] wire to Peter has been disbursed.  The reference number is 20161212B6B7HU012080." (*Id*.).

In communicating with a different financial institution about the release of the lien, a bank employee told Todd Chrisley and Tarantino:

> One condition to it, he said we need to be able to document the source of where the funds to remit payment came from. Looks like it was your Firm's account according to the certified check. I presume that 7Cs has funds your Firm holds for quarterly tax payments or misc...  If this is correct, is there something you can send to source this.

(Ex. H at 8-9). Todd Chrisley subsequently forwarded the email from the U.S. Trust employee but deleted the reference to the minor child. The altered email stated: "Todd: The wire to Peter has been disbursed. The reference number is 20161212B6B7HU012080." (Ex. H at 32). Todd Chrisley also altered the initial email subject line from [MINOR CHILD's] wire" to "Tarantino and company wire."[2] (Ex. H at 32).

### f. In April 2017, Todd and Julie Chrisley submitted copies of cashier's checks that contained material omissions to apply for a loan.

In April 2017, Defendants Todd and Julie Chrisley sent fabricated documents to a bank to falsely claim they had sufficient funds on deposit during a loan

---

[2] It appears that Chrisley forgot to change "[MINOR CHILD's] wire" from the forwarded subject line.

application process. (Ex. I, attached hereto). In early April 2017, Todd and Julie Chrisley helped their daughter obtain a mortgage from a bank. (Ex. I at 1-3). The bank required supporting documentation for a deposit into the daughter's bank account. (Ex. I at 1). Julie Chrisley, CC'ing Todd Chrisley, sent over copies of bank checks that had been deposited into her corporate bank account, which was named "Faith Over Fear Inc." (Ex. I at 5-13).

Also in early April 2017, Todd and Julie Chrisley tried to get a mortgage for themselves. The lender required them to provide "all the documentation on your funds to verify and also all email/contract information regarding your new bonus and income with the late night show." (Ex. I at 14). Julie Chrisley then emailed Todd Chrisley copies of 7C's Productions bank records as well as the same bank checks that had been deposited into her daughter's Faith Over Fear business account. (Ex. I at 19-64). Upon receiving these items, Todd Chrisley chastised Julie Chrisley, "[t]his isn't what I asked you to do. Why would I want to show that the money went into savannah's account ? Think about it, how stupid is that? I merely asked for copies of the damn cashiers checks to show we had the money." (Ex. I at 18). Following Todd Chrisley's instructions, Julie Chrisley sent the lender copies of the cashier's checks but removed any reference to her daughter's Faith Over Fear business account. (Ex. I at 66-75). After Julie Chrisley sent these materials to the lender, Todd Chrisley emailed the lender that, "[t]hese checks we have for the down payment as well as 100k that's sitting in escrow and the 150k wire that comes this week from late night and two other deposits that hit this week for the balance of what you said you need for the

down payment, please let me know what else you need." (Ex. I at 65). At no point did Todd or Julie Chrisley tell the lender that the cashier's checks had actually been deposited into their daughter's business account. Instead, Todd Chrisley did the opposite by representing that "these checks we have for the down payment." (Ex. I at 65).

### 2. The Rule 404(b) evidence is relevant to an issue other than the defendants' character.

This evidence is not being offered as character evidence but instead as highly probative evidence of the Chrisley Defendants' intent, plan, knowledge, absence of mistake, and lack of accident. *See* Fed. R. Evid. 404(b)(2).[3] A cornerstone of the bank fraud charges is the allegation that the Chrisley Defendants and Braddock intentionally fabricated documents—including invoices—when applying for loans. (Doc. 130, ¶ 18). As stated above, the Chrisley Defendants have publicly agreed that fraud took place, but claim it was all Braddock's doing. (Ex. A). The fact that the Chrisley Defendants *continued* to submit falsified invoices and fabricated banking documents after severing ties with Braddock belies that assertion. *See Jemmott*, 596 F. App'x at 901-03 (Rule 404(b) evidence deemed admissible where "Defendant made clear that he was vigorously challenging the contention that he had conspired with [another individual] as to the overall food stamp fraud conspiracy."). The sole difference between this evidence and the

---

[3] The United States' notices indicated that this evidence would be offered to demonstrate preparation and identity. It no longer intends to offer this evidence for those reasons.

bank fraud conspiracy is the fact that these false invoices went to non-financial institutions, but that is of little moment given the Chrisley Defendants' claims about Braddock. *See Baptiste*, 618 F. App'x at 597 (evidence of prior credit card fraud was "highly relevant" under Rule 404(b) in theft of government funds prosecution).

The evidence is also relevant to Julie Chrisley's conduct charged in Count 7, where she is separately charged with sending falsified documents to a third party during a lease application process. (Doc. 130 at 26-33). Two of the above-listed false invoices were submitted during the same year that Julie Chrisley committed the wire fraud scheme charged in Count 7. Accordingly, the extrinsic evidence is not just relevant as to the bank fraud scheme but the wire fraud scheme as well.

### 3. The United States can demonstrate the proposed Rule 404(b) evidence by a preponderance of the evidence.

As reflected above and in the attached exhibits, the United States can prove the Chrisley Defendants committed the above-listed acts by a preponderance of the evidence. *See Ford*, 784 F.3d at 1393. The false and fabricated materials were all transmitted from Todd and/or Julie Chrisley's email accounts. For the first four extrinsic acts (the false invoices), witnesses will confirm that the invoices are false. For the last two extrinsic acts, the emails speak for themselves and can be admitted through the case agent. Accordingly, the United States can carry its burden of proving the Rule 404(b) evidence by a preponderance of the evidence.

### 4. Any unfair prejudice from this evidence does not substantially outweigh its probative value.

Any unfair prejudice from this evidence does not substantially outweigh its probative value. *See Ford*, 784 F.3d at 1393. As previously stated, "[w]hen determining the probative value of extrinsic act evidence, district courts should consider: "(1) the Government's incremental need for the evidence to prove guilt beyond a reasonable doubt; (2) the similarity of the extrinsic act and the charged offense; and (3) the closeness or remoteness in time between the extrinsic act and the charged offense." *Baptiste*, 618 F. App'x at 596 (internal citation omitted). Under this standard, all six extrinsic acts should be admitted.

*First*, as the Eleventh Circuit has repeatedly held, "[a] defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *Edouard*, 485 F.3d at 1345 (citing *Zapata*, 139 F.3d at 1358). The Chrisley Defendants have made plain their defense: blame Mark Braddock for the bank fraud scheme. Accordingly, their use of falsified invoices *after* severing ties with Braddock is essential evidence to prove that they did in fact intentionally submit falsified invoices as alleged in the Superseding Indictment. (*See* Doc. 130, ¶ 18). Given the Eleventh Circuit's recognition of the United States' "substantial burden" of proving intent, this evidence is important to prove this element.

*Second*, as stated above, the Rule 404(b) evidence is identical to the charged conduct: the transmission of false invoices or banking documents to defraud third parties.

*Third*, the extrinsic acts occurred after the Chrisleys severed ties with Braddock. And the first two extrinsic acts occurred in 2014 – the same year that Julie Chrisley is alleged to have participated in a wire fraud scheme. (Doc. 130, ¶¶ 26-33).

*Finally*, contrary to the Chrisley Defendants' hyperbolic claim that this will "result in a 'trial within a trial' and will confuse the issues, mislead, the jury, and lead to undue delay and lengthening of the trial," (Doc. 158 at 9), the evidence supporting these six acts is quite straightforward. With respect to the four false invoices, the United States will move the relevant materials into evidence and then ask the proprietor if the invoices are legitimate or not. With respect to the remaining two extrinsic acts, the United States will seek to admit the relevant emails through the case agent who can explain how it is that he determined they were false. The Chrisley Defendants vaguely claim that this will "confuse the issues" even though their public statements make clear that one of the key issues for the jury will be to determine whether Braddock alone committed the bank fraud scheme. There is little to no risk that evidence concerning the Chrisley Defendants' continued use of falsified invoices will confuse the jury, cause an undue delay or waste the jury's time. To the contrary, this evidence squarely addresses what appears to be *the* essential issue with respect to the bank fraud charges.

## III.    Conclusion

For the reasons stated in this Response Brief, the United States respectfully requests that this Court deny the relief sought by the Chrisley Defendants in their Omnibus Motion in Limine.

Respectfully submitted,

KURT R. ERSKINE
    *United States Attorney*

/s/ THOMAS J. KREPP
    *Assistant United States Attorney*
Georgia Bar No. 346781
thomas.krepp@usdoj.gov

/s/ ANNALISE K. PETERS
    *Assistant United States Attorney*
Georgia Bar No. 550845
annalise.peters@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

> Counsel for Todd Chrisley
>
> Counsel for Julie Chrisley
>
> Counsel for Peter Tarantino

April 4, 2022

> /s/ THOMAS J. KREPP
> _____
> THOMAS J. KREPP
> *Assistant United States Attorney*