IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| TODD CHRISLEY, ) | Criminal Indictment No. |
| JULIE CHRISLEY, and ) | 1:19-cr-00297-ELR-JSA |
| PETER TARANTINO, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### REPLY BRIEF IN SUPPORT OF DEFENDANTS MICHAEL TODD CHRISLEY AND JULIE H. CHRISLEYS' MOTION IN LIMINE

Come now Defendants Michael Todd Chrisley and Julie H. Chrisley (Collectively referred to as "the Chrisleys" or "Defendants") and file this Reply Brief in Support of Defendants' Motion in Limine:[1]

**I.  Evidence of Additional Lenders Is Not Inextricably Intertwined with Bank Fraud Conspiracy Charge.**

The Government claims that because "[c]ount One of the Superseding Indictment alleges a conspiracy to defraud 'multiple financial institutions,'" the

---

[1] As fully set forth in the Defendants' Motion to Require Proof of Admissibility [Doc. 162], the Defendants contend much of the evidence discussed herein was suppressed pursuant to this Court's September 1, 2021 Order [Doc. 107]. Indeed, the extrinsic evidence discussed herein was only obtained after the Government's review of the illegally seized materials. As such, the Defendants adopt and incorporate the arguments made in its Motion to Require Proof of Admissibility herein.

1

Government should be permitted to introduce evidence of alleged fraud to financial institutions that are not included in the Indictment. [Doc. 170, pp. 5-6.] The Government contends this evidence is "inextricably intertwined" with the charged offenses, is part of the same transaction or series of transactions, and is necessary to complete the story of the crime. [*See id.*] The Government is wrong.

Uncharged conduct can be independently admissible if it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense[s], (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense[s]." *United States v. Ford*, 784 F.3d 1386, 1393 (11th Cir. 2015) (quoting *United States v. Baker*, 432 F.3d 1189, 1205 n. 9 (11th Cir.2005)). Whether offered under Rule 404(b) or as intrinsic evidence, the district court must find that the probative value of the proffered evidence is not substantially outweighed by unfair prejudice and that it meets the other requirements of Rule 403. In analyzing whether evidence is "inextricably intertwined" with the charged offenses, the Government bears the burden to establish this evidence is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). The Government must show that introduction of this evidence is an "integral and natural part" of the evidence supporting the charged acts. *U.S. v. Edouard*, 485 F.3d 1324, 1344, 73 Fed. R. Evid. Serv. 980 (11th Cir. 2007).

2

First, the Government alleges the "evidence of false statements made to additional lenders is admissible as they are an uncharged offense which arose out of the same transaction or series of transactions as the charged offense[s]." [Doc. 170, p. 7.] In support of this argument, the Government provides a chart [Doc. 170, Ex. C] showing the alleged fraudulent conduct and the dates of these transactions. For Count One, the Government contends the Defendants engaged in a conspiracy to defraud Crescent Bank, Alpha Bank, Midtown Bank, and Supreme Lending. [Doc. 130]. In addition, the Government accuses the Defendants of more specific charges regarding Midtown Bank (Count Two); Gulfsouth Bank (Count Three); United Community Bank (Count Four); RBC Bank (Count Five); and Wells Fargo (Count Six). [Doc. 130, p. 10]. Outside of these acts identified in the Indictment, the Government wants to also introduce evidence regarding the Defendants' alleged fraud to Athens First Bank, Atlanta Business Bank, Bank of America, Buckhead Bank, Regions Bank, Haven Trust Bank, Reliant Bank, Security Bank, and SWBC Bank. [Doc. 170, Ex. C].

In its Response to the Defendants' Motion in Limine, however, the Government contends these acts are all part of the same transactions, despite that the loans were made to totally separate banks, for different amounts, with different information, at different times, and secured by different properties. Indeed, nothing

3

about these uncharged bank fraud claims are part of the same transaction—they are completely separate from one another and were sent to completely separate entities—which is why the indictment charges them as separate offenses. [*See, e.g.*, Doc. 130.] As set forth in *U.S. v. McAnalley*, 535 Fed.Appx. 809 (11th Cir. 2013), complex financial documents not related to the charges in the indictment should not be admitted as extrinsic evidence, especially when the purported evidence was submitted to entities different than those forming the basis of the indictment.[2]

While the Government relies on *United States v. Ford*, 784 F.3d 1386, 1393 (11th Cir. 2015) to support its argument, this reliance is misplaced. In *Ford*, the tax preparer defendant submitted numerous fake tax returns on behalf of fake clients to the IRS. *Id*. at 1391. The Court permitted the Government to admit evidence from non-charged conduct because the issues surrounding the charged offenses were **identical** to the non-charged ones—which were submitted from the same defendant, to the same entity, and with the same false information. *Id*. at 1391-1393. In particular, the Court focused on a specific address and business name that was on both the charged and non-charged returns, which was critical in proving the

---

[2] The Government should also be prohibited from introducing evidence supporting an entity from Count One to support one of the charges for Counts Two through Six, and vice versa. For the same reasons set forth above, this would have a high likelihood of confusing the jury in an already complex case.

Government's case. *Id*. at 1393. Thus, because the extrinsic evidence at issue in *Ford* contained the same fraudulent information, from the same defendant, to the same governmental body as the charged offenses, the evidence was deemed to be admissible to show intent, identity, knowledge, and absence of mistake. *Id*. The instant case is much different.

Here, the alleged fraud at the center of the bank fraud conspiracy count were allegedly made to four different banks. To support these claims, the Government seeks to introduce evidence from *thirteen* separate banks. [Doc. 170, p. 7]. The evidence regarding the non-charged banks are made to entirely different parties, and the alleged "fraudulent" information submitted to obtain each one is largely different than the information in the charged offenses. And, unlike in *Ford*, these were submitted to different institutions. As set forth in *McAnalley*, this evidence should not be admitted, as it has little value and is likely to confuse the jury. As such, and because the Government has not shown how this evidence is needed to prove the allegations in the indictment, this evidence should be excluded. *See, e.g., U.S. v. Stein*, 521 F.Supp.2d 266, 271 (S.D.N.Y., 2007) (excluding evidence of additional uncharged conduct because the Government failed to "explain[] why details of the uncharged transaction are necessary to understand the charged transaction.").

Second, evidence regarding these additional lenders is not "inextricably intertwined" with the evidence of the charged conduct and is not "necessary" to complete the story the Government seeks to present. [Doc. 170, p. 7-8]. For evidence to be "inextricably intertwined," it must form "an integral and natural part of the [evidence] of the circumstances surrounding the offenses for which the defendant was indicted." *Edouard*, 485 F.3d at 1344. Here, the Government is more than capable of introducing evidence to support its case with evidence for the charged acts without any mention of the uncharged acts. For instance, documents supporting the Government's charged acts related to Crescent Bank, such as the application and emails to Crescent Bank, are independent and separate from the documents regarding the uncharged banks, such as the application or emails to Bank of America. These loans utilize different applications, were submitted at different times, and do not reference one another. *See U.S. v. Townsend*, 2007 WL 1288597, at *2 (S.D. N.Y., 2007) (excluding evidence of similar criminal conduct due to the Government's failure to demonstrate the need for such evidence). The Government does not point to a single document it seeks to introduce to support the charged offenses that discuss or refer to the uncharged offenses. These acts are different, and are not "inextricably intertwined" with one another.

Finally, evidence regarding these additional lenders is not necessary to tell the story of the crime. As set forth above, the Government is more than capable of introducing evidence regarding the Defendants and the documents referenced in the indictment without introducing evidence regarding these additional lenders. As such, this evidence should be excluded.

## II. The Extrinsic Evidence Is Not Admissible Against the Chrisley Defendants Under Rule 404(b).

The Government next states that it "has identified six extrinsic acts that it seeks to admit under Rule 404(b)." [Doc. 170, p. 11]. The Government explains that "the first four involve the submission of fraudulent invoices to third parties, and the last two involve the submission of false documents to banks." [Doc. 170, p. 11]. The Government contends these acts are "highly probative evidence of the Chrisley Defendants' intent, plan, knowledge, absence of mistake, and lack of accident." [Doc. 170, p. 16]. Yet the Government fails to identify how these specific acts show any intent, plan, knowledge, or absence of a mistake.

Generally, evidence of a crime, wrong, or other act is not admissible to prove a person's character and show that, on a particular occasion, the person acted according to their character. Fed. R. Evid. R. 404(b)(1) (2021); *Edouard*, 485 F.3d at 1344. This evidence may, however, be admissible for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or

7

absence of mistake or accident." Fed. R. Evid. R. 404(b)(2); *Edouard*, 485 F.3d at 1344. The evidence must: (i) be relevant to an issue other than defendant's character; (ii) have sufficient proof enabling a jury to find, by a preponderance of the evidence, that the defendant committed the act(s) in question; and (iii) have probative value that is not substantially outweighed by undue prejudice and satisfy Rule 403. *Edouard*, 485 F.3d at 1344; *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000).

### a. The Extrinsic Evidence Regarding Non-Financial Institutions Is Inadmissible Under Rule 404(b).

The Government attempts to admit four pieces of extrinsic evidence under Rule 404(b) related to non-financial institutions. [Doc. 170. P. 11]. The Government's analysis of these pieces of evidence under Rule 404(b) is shallow and flawed, as these occurrences are not factually related to the charged conduct, lacks sufficient evidence to show the Defendants committed these acts by a preponderance of the evidence, and are unduly prejudicial and have a high likelihood of confusing the jury. The Government fails to show how evidence related to home repairs or a delta flight can show "intent, plan, knowledge, absence of mistake, or accident" regarding financial fraud as required under FRE 404(b).

Regarding the first prong of 404(b)'s test, each piece of evidence the Government attempts to admit must be "relevant to an issue other than defendant's

8

character." *See Edouard*, 485 F.3d at 1344. Yet, the evidence of these unrelated acts are only sought to be introduced to demonstrate the Defendants' character, and are not factually relevant to the pending charges. The Government would like this Court to believe that it is not offering these pieces of evidence as propensity evidence but rather as "highly probative evidence of the Chrisley Defendants' intent, plan, knowledge, absence of mistake, and lack of accident" in their commission of bank fraud and conspiracy to commit bank fraud. But the first four pieces of evidence—by the Government's own admission—"involve the submission of fraudulent invoices to *third parties*[.]" [Doc. 170, p. 11] (emphasis added). However, the Government's own overview of the Chrisley Defendants' charges indicates they are being charged with defrauding *financial institutions* and the *United States government* and committing wire fraud against a *financial institution*. [Doc. 170, p. 2]; *see also* 18 U.S.C. 371 (allowing cause of action for conspiracy to defraud the *United States government*); 18 U.S.C. 1343 (allowing cause of action for wire fraud against *financial institutions*); 18 U.S.C. 1344 (allowing cause of action for fraud against *financial institutions*); 18 U.S.C. 1349 (allowing cause of action for conspiracy to defraud a *financial institution*) (emphasis added).

The four instances referenced in the Government's motion do not involve a financial institution, and therefore have little probative value to this Court. These

four pieces of evidence concern: (i) Julie Chrisley allegedly submitting a fraudulent invoice to an investment company in January 2014; (ii) Julie Chrisley allegedly submitting a fraudulent invoice to a production company; (iii) Todd Chrisley allegedly submitting a fabricated banking record regarding a Delta Airlines ticket to a production company; and (iv) Julie Chrisley allegedly submitting a fraudulent invoice to a production company. [Doc. 170, p. 11-14; *see also* Doc. 170, Exs. D-G]. Indeed, the Government concedes in its response that each of these instances involved a non-financial institution. [Doc. 170, p. 17]. The Government attempts to gloss over this material, factual distinction by stating it is "of little moment" and incorrectly citing to *Baptiste* to support its shallow analysis. *See United States v. Baptiste*, 618 F. App'x 593, 596 (11th Cir. 2015) (stating evidence of prior credit card fraud of a *financial institution* was relevant in case involving defraud of the United States) (emphasis added). As such, the first prong of the 404(b) analysis fails.

Turning to the second prong, the Government cannot produce sufficient proof for a jury to find, by a preponderance of the evidence, that the defendant committed the acts in the first four pieces extrinsic evidence. The Government can only introduce evidence that the first four pieces of extrinsic evidence involved invoices that are allegedly fabricated. [Doc. 170, Exs. D-G]. The Government points to no

10

additional evidence regarding whether (1) the Defendants actually created these invoices, (2) that these invoices are actually forged (as opposed to not being in the third parties' computers' systems due to the lapse of time), or (3) if Defendants did in fact submit these, whether Defendants were aware of the false nature of these and therefore intended to submit a false invoice. In contrast, the Defendants will present evidence rebutting the assertion that they intentionally fabricated these invoices, denying ever personally sending the emails in question, and affirming the amounts sought for reimbursement were the exact amounts the Defendants were owed. Accordingly, the Government cannot carry its burden of proving the Rule 404(b) evidence by a preponderance of the evidence by simply introducing testimony from these third parties that they could not locate the invoices in their systems. The second prong of the 404(b) analysis fails.

Lastly, the third prong must fail because the undue prejudice created by these four pieces of evidence substantially outweighs their limited probative value. When determining the probative value of evidence under Rule 404(b), the Court should consider: (i) the Government's incremental need for the evidence to prove guilt beyond a reasonable doubt; (ii) the similarities between charged and extrinsic offenses; and (iii) the temporal proximity between the charged and extrinsic offenses. *See Baptiste*, 618 F. App'x at 596; *Edouard*, 485 F.2d at 1345. As stated

above, the evidence involves conduct that is materially different from the charged conduct; the alleged transmission of false invoices to *non-financial institutions* is distinguishable from the alleged transmission of false banking documents to *financial institutions*. The Government failed to sufficiently address this issue in their analysis; this damages the probative value and relevance of those first four pieces of evidence because these pieces of evidence are factually distinct from the charged conduct. In contrast, it is highly prejudicial for the jury to be shown this evidence, as it has a high risk of confusing the jury in a case involving complicated financial records. It logically follows that, without any analysis tethering these pieces of evidence to an admissible purpose under 404(b), the Government is attempting to admit four pieces of inadmissible propensity evidence.

### b. The Government's Extrinsic Evidence Regarding Financial Institutions Is also Inadmissible Under Rule 404(b).

The Government's extrinsic evidence regarding financial institutions also fails the 404(b) test. The Government contends that "Todd Chrisley provided materially false information to a bank while trying to get an IRS tax lien released from one of their properties," and that "Todd and Julie Chrisley sent fabricated documents to a bank to falsely claim they had sufficient funds on deposit during a loan application process." [Doc. 170, p. 13-15]. However, the Government admits these were sent, once again, to entities other than those outlined in the indictment,

12

and were made years after the events in the indictment allegedly occurred. In addition, this evidence is substantially outweighed by its prejudicial effect on the jury.

As set forth above, evidence regarding these submissions to entities other than those included in the indictment should not be admitted. *See McAnalley*, 535 Fed.Appx. 809. While these were sent to financial institutions, these events are still irrelevant to showing the intent of the Defendants to defraud the institutions referenced in the indictment. These two instances do not assist the trier of fact in determining whether the Defendants committed the acts identified in the indictment.

In addition, permitting these items to be presented to a jury will only serve to confuse the jury in an already complex financial fraud case. At issue in the indictment are multiple banks, loans, amounts, and entities. Permitting the Government to introduce evidence of additional uncharged offenses—with questionable evidence to show the Defendants did anything improper—would be unfairly prejudicial to the Defendants. *See, e.g, United States v. Stephenson*, 550 F.Supp.3d 1246, 1253 (M.D. Fla., 2021) (excluding extrinsic evidence of defendant's prior conduct despite the evidence being closely related to the acts alleged in the indictment, as its probative value was strongly outweighed by its likely prejudicial effect). As the decision whether extrinsic evidence's prejudicial

effect outweighs its probative value prejudicial "lies within the sound discretion of the district judge," this Court should exclude this evidence. *United States v. Jernigan*, 341 F.3d 1273, 1282 (11th Cir. 2003).

### III. CONCLUSION

Accordingly, Defendants request this Court grant Defendants' Motion in Limine.

Respectfully submitted this 11th day of April, 2022.

>  */s/ Bruce H. Morris*
> Bruce H. Morris
> Georgia Bar No. 523575
> bmorris@fmattorneys.com
> **Finestone, Morris & White, LLP**
> Suite 2540 Tower Place
> 3340 Peachtree Road, N.E.
> Atlanta, Georgia 30326
> Telephone: (404) 262-2500
> *Attorney for Todd Chrisley*
>
> */s/ Stephen M. Friedberg*
> Stephen M. Friedberg
> Georgia Bar No. 277350
> steve@smflawdawg.com
> Suite 2250, Resurgens Plaza
> 945 East Paces Ferry Road, N.E.
> Atlanta, Georgia 30326
> Telephone: (404) 842-7243
> *Attorney for Julie Chrisley*
>
> */s/ Christopher S. Anulewicz*
> Christopher S. Anulewicz
> Georgia Bar No. 020914

canulewicz@balch.com
Jonathan R. DeLuca
Georgia Bar No. 228413
jdeluca@balch.com
**Balch & Bingham LLP**
30 Ivan Allen, Jr. Boulevard, N.W.
Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656
*Attorneys for Todd Chrisley and Julie Chrisley*

## **CERTIFICATE OF COUNSEL REGARDING FONT SIZE**

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(B)(3) and 7.1(D).

This 11th day of April, 2022.

                                               */s/ Christopher S. Anulewicz*
                                               Christopher S. Anulewicz

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2022, I caused the foregoing **Reply Brief in Support of Defendants' Motion in Limine** to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

*/s/ Christopher S. Anulewicz*
Christopher S. Anulewicz