IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>TODD CHRISLEY (A/K/A MICHAEL TODD CHRISLEY) AND JULIE CHRISLEY | Criminal Action No.<br><br>1:19-CR-297-ELR-JSA |

### United States' Response to the Chrisleys' Motion to Require the United States to Establish Admissibility of Suppressed Evidence

The United States of America, by Kurt R. Erskine, United States Attorney, and Thomas J. Krepp and Annalise K. Peters, Assistant United States Attorneys for the Northern District of Georgia, files this Response to the Chrisleys' Motion to Require the United States to Establish Admissibility of Suppressed Evidence.

As detailed below, the Chrisleys' motion is not only untimely but also without merit. However, should the Court reach the merits of the motion, the United States would request an evidentiary hearing so the Court can make the required factual findings. While the record from the prior suppression hearing supports a finding that the Georgia Department of Revenue's (DOR) unlawful search played no role in obtaining or executing the email search warrants, the United States is prepared to provide additional evidence of those facts. At this limited evidentiary hearing, the United States would further establish that the emails and electronic documents in question were obtained from sources

1

independent of the DOR's search and also would have inevitably been discovered during the course of the investigation.

## I.     Factual and Investigative Background[1]

In the spring of 2017, IRS-CI Special Agent Larry Arrow opened a preliminary IRS criminal investigation into Todd and Julie Chrisley after reviewing a news article about the Chrisleys' potential state tax evasion. (Doc. 107 at 12; T-I at 254; T-II at 5-6, 32-33, 36, 47; Gvt. Hear. Ex. 102).[2] A few months later, in July 2017, the IRS Revenue Officer who was working to assess and collect the Chrisleys' federal income taxes referred the case to IRS-CI for a possible criminal investigation. (T-II at 16, 84; Gvt. Hear. Ex. 108.) After reviewing the Chrisleys' financials, the Revenue Officer had determined that the Chrisleys were making sufficient income that they could have been paying towards the federal taxes they owed and were not doing so. (T-II at 83-84, 94.) At that point, the criminal investigation "was upgraded to a formal investigation." (Doc. 107 at 12).

---

[1] Much of the factual background is taken from the testimony and evidence presented at the two-day evidentiary hearing on the Chrisleys' motion to suppress evidence initially seized by the DOR and from the Court's factual findings in the Report and Recommendation on that motion. (*See* Doc. 107). IRS-CI Special Agent Larry Arrow and FBI Special Agent Steve Ryskoski both testified at that hearing.

[2] The transcript from the evidentiary hearing is cited as T-I and T-II from the first and second day one of the hearing, respectively. Exhibits from that hearing are cited as "Gvt. Hear. Ex."

The U.S. Attorney's Office and the FBI became involved in the federal criminal investigation sometime in late 2017.[3] (T-II at 27). Around that time, a federal grand jury subpoena was issued to the DOR, and a meeting was set up at the DOR for January 4, 2018. (T-II at 19). Agent Arrow, AUSA Thomas Krepp, FBI Special Agent Steve Ryskoski, and various DOR employees attended. (T-II at 20; Gvt. Hear. Exs. 110-112). That meeting was the first time that Agent Arrow recalls learning that the DOR had seized property belonging to the Chrisleys from a warehouse nearly ten months earlier. (T-II at 26, 47). During the meeting, DOR employees discussed how the seizure of the Chrisleys' property came about as well as how the DOR's civil collections case originated. (T-II at 21; Gvt. Hear. Ex. 112).

In the first week of February 2018, the federal criminal investigation into the Chrisleys went overt. On February 1, 2018, a federal grand jury issued nine subpoenas, including one to the Chrisleys' production company, 7C's Productions, and one to CPA Tarantino, the firm owned by Defendant Peter Tarantino.[4] (*See* Exhibits A and B, which are being emailed to the Court under seal). The next day, federal agents served the subpoena on Tarantino at his office and interviewed him. On February 1, agents also obtained federal search warrants for the two locations where the DOR was storing the Chrisleys' seized

---

[3] The United States and the FBI had a prior investigation into the Chrisleys related to the bank fraud scheme alleged in Counts One through Six of the Superseding Indictment.

[4] The grand jury had already issued approximately thirty subpoenas to various financial institutions and other third parties prior to February 1, 2018.

property. (*See* Exhibits C and D, attached hereto). Federal agents executed the DOR warrants on February 7, 2018, and seized boxes of documents. (T-II at 25-26; Gvt. Hear. Ex. 118.) When agents searched the seized materials, they found some physically cut-and-pasted financial documents and other financial records.

On March 16, 2018, CPA Tarantino produced thousands of documents in response to the grand jury subpoena. (*See* Tarantino Business Records Certification, attached hereto as Exhibit E). On March 27, 2018, 7C's Productions made its first production of thousands of documents in response to the grand jury subpoena. (*See* 3/27/18 Letter, attached hereto as Exhibit F). Both productions consisted primarily of emails. Production companies and other third parties also began producing thousands of records—including emails—in the spring of 2018 in response to subpoenas. The federal criminal investigation continued over the next year: Agents reviewed the documents and emails produced by these entities; the grand jury issued dozens of additional subpoenas; agents identified, located, and interviewed dozens of witnesses; and agents analyzed voluminous IRS records related to the Chrisleys.

On March 1, 2019, Agent Arrow applied for and obtained federal search warrants for three email accounts used by the Chrisleys: mchrisley1@aol.com, mchrisley1@gmail.com, and jchrisley1@gmail.com.[5] (*See* Exhibits G and H, attached hereto). Crucially, every specific email described in Agent Arrow's affidavit involving one of the two Gmail accounts was produced to the United

---

[5] Agent Arrow's affidavit in support of the two search warrants (one to Google and one to AOL) is identical. (*See* Exs. G and H).

States by the entities controlled by the Defendants (7C's Productions and CPA Tarantino) or by production companies subpoenaed when the investigation became overt. The source of all these emails was *not* the suppressed DOR materials:

| Affidavit ¶ | Email Described in Affidavit | Source of Email[6] |
|---|---|---|
| 22 | Sept. 23, 2016 email from Tarantino to mchrisley1@gmail.com and jchrisley1@gmail.com stating that he "avoided answering" questions about the Chrisleys' living arrangements | 7C's Productions and CPA Tarantino |
| 23 | March 6, 2017 email from Tarantino to mchrisley1@gmail.com and jchrisley1@gmail.com stating that an IRS Revenue Officer had requested copies of all the Chrisleys' bank accounts | 7C's Productions and CPA Tarantino |
| 23 | March 6, 2017 emails between a mortgage broker, mchrisley1@gmail.com, and jchrisley1@gmail.com regarding 7C's ownership | 7C's Productions and CPA Tarantino |
| 25 | Jan. 17, 2018 emails from LittleThings.com employee to mchrisley1@gmail.com, and from mchrisley1@gmail.com to Tarantino instructing Tarantino to send a Form W-9 for 7C's Productions to the LittleThings.com employee | 7C's Productions and CPA Tarantino |
| 25 | May 9, 2016 email from mchrisley1@gmail.com to production director and Tarantino regarding talent payment schedule and other financial matters | 7C's Productions and CPA Tarantino |

_____

[6] As stated, various production companies produced thousands of documents in response to grand jury subpoenas. Several of the emails in the chart were also provided to the United States by production companies. For brevity's sake, the United States is only listing 7Cs' Productions and Tarantino CPA as those entities were controlled by the Defendants.

| 25 | July 22, 2016 email from All3Media production director to mchrisley1@gmail.com and Tarantino attaching earnings reports | 7C's Productions and CPA Tarantino |
|----|------------------------------------------------------------------------------------------------------------------------|-----------------------------------|
| 25 | Jan. 18, 2018 email from Tarantino to mchrisley1@gmail.com and jchrisley1@gmail.com attaching draft 2014, 2015, and 2016 tax returns | 7C's Productions |
| 31 | Feb. 12, 17, and 18, 2015 emails to/from mchrisley1@gmail.com discussing financial terms for his television show | Third party production company |
| 32 | April 18, 2016 email from Tarantino to mchrisley1@gmail.com and jchrisley1@gmail.com that he "did some digging and found some answers" | 7C's Productions and CPA Tarantino |
| 33 | March 17, 2017 email from mchrisley1@gmail.com to Tarantino, with jchrisley1@gmail.com CC'd, asking Tarantino to "send the amounts due to clear Julie with the IRS" | 7C's Productions and CPA Tarantino |
| 34 | March 23, 2017 email from Tarantino to mchrisley1@gmail.com and jchrisley1@gmail.com about IRS Revenue Officer Carter | 7C's Productions and CPA Tarantino |
| 35 | July 30, 2017 email from mchrisley1@gmail.com to Tarantino asking him to "check with the IRS bitch" | 7C's Productions and CPA Tarantino |

As for the AOL account (mchrisley1@aol.com), Agent Arrow's affidavit stated

that it "appears to be an older email account used by Todd Chrisley"

in connection with the bank fraud scheme. (Ex. H, ¶ 30). Every one of the emails

in Agent Arrow's affidavit involving mchrisley1@aol.com was provided to the

United States by Mark Braddock in 2012—six years before agents obtained the

DOR materials (and five years before the DOR unlawfully seized the materials

from the Chrisleys). (*Id.* ¶¶ 27, 28, 30). Agent Arrow's affidavit in support of the

warrants contains two paragraphs about the materials seized from DOR a year earlier, neither of which mentions the Chrisleys' email accounts or email addresses. (Exs. G and H, ¶ 27-28).[7]

Google and AOL produced information in response to the warrants. The results from AOL showed that the pertinent emails from Todd Chrisley's old mchrisley1@aol.com account, which Braddock had produced to the United States back in 2012, had since been deleted. In searching the information produced by Google, agents learned two pieces of relevant information: (1) that "Julie Chrisley was using an additional email account during the relevant time period, jhughes6873@gmail.com," and (2) that the Chrisleys "were using Google One and Google Drive" to store records during the relevant time. (*See* Exhibit I, attached hereto, ¶ 7). Accordingly, Agent Arrow applied for and obtained an additional search warrant directed to Google for that information. (*Id*.). His affidavit was nearly identical to the one submitted in support of the first two search warrants, except that it contained three new paragraphs about Julie Chrisley's use of jhughes6873@gmail.com and Google One and Google Drive, which was obtained from searching the information provided by Google in response to the first warrant. (*Id.*, ¶¶ 34-36). This affidavit made no reference to the seized materials from DOR aside from the two paragraphs noted above (neither of which even mentioned an email account or email address).

---

[7] Only the last three sentences in paragraph 27 (and the footnote) came from the DOR materials. The information learned from the DOR materials begins with: "The investigation has further revealed that…" (Exs. G and H, ¶ 27).

## II.    Procedural Background

On August 13, 2019, the grand jury returned an Indictment against defendants Todd Chrisley, Julie Chrisley, and Peter Tarantino. (Doc. 1). Relevant to the instant motion, the Chrisleys were charged with wire fraud conspiracy, in violation of 18 U.S.C. § 1349, and wire fraud, in violation of 18 U.S.C. § 1343. (Doc. 1, Cts. 7-8). The Indictment particularly describes three emails and some attachments and a Google Drive link sent from jchrisley1@gmail.com that the United States obtained from the Google search warrant:

> On or about July 23, 2014, JULIE CHRISLEY *sent an email* to the realtor attaching a City National Bank account statement reporting a June 30, 2014, account balance of $86,790.86. In reality, the City National Bank account had a balance of negative $14,530.89 in June 2014.
>
> JULIE CHRISLEY's *email* sent on or about July 23, 2014 also included *a hyperlink to a Google Drive file* containing a false Equifax credit report in JULIE CHRISLEY's name. This false credit report stated that JULIE CHRISLEY's credit scores were as follows: 767 (Equifax), 770 (Experian), and 817 (TransUnion). In reality, JULIE CHRISLEY's credit scores during that approximate timeframe were not that high.
>
> On or about July 26, 2014, JULIE CHRISLEY *sent a copy* of a BB&T account statement reporting a July 23, 2014 account balance of $409,738.85. In reality, this BB&T account had a balance of $0 as of June 20, 2014 and was closed shortly thereafter.

(Doc. 1, ¶¶ 30-32) (emphasis added). As the Chrisleys knew, the physical, cut-and-pasted versions of these three fraudulent documents (*i.e.*, the City National bank statement, the Equifax credit report, and the BB&T account statement) were found among the DOR materials. Plus, the Indictment made that fact plain. (*Id.* ¶ 29 ("JULIE CHRISLEY transmitted multiple fabricated documents that had

8

been physically cut and then glued or taped together…")). At arraignment, the United States produced all the search warrants obtained during the investigation.

The Chrisleys filed two motions to suppress evidence. The first was to suppress the DOR materials that federal agents seized pursuant to valid federal search warrants. (Docs. 107, 127). The United States conceded that the DOR's initial seizure of the Chrisleys' property was done without a warrant and thus violated the Fourth Amendment, but it argued that the exclusionary rule should not be invoked since federal agents and the prosecution team had done nothing wrong. (Docs. 44, 57, 98 at 3). After a two-day evidentiary hearing, U.S. Magistrate Judge Justin Anand issued a Report recommending that the Court grant the Chrisleys' motion based on the DOR's "prior illegal actions." (Doc. 107 at 14). The United States did not object to the Report and Recommendation, and this Court adopted it. (Doc. 127 at 7-8).

However, the Chrisleys gloss over two factual conclusions made by this Court that are relevant to the instant motion. *First*, the Court found no wrongdoing whatsoever by the federal prosecution team. The Report stated, "importantly, that the federal personnel handling the instant case did not participate in any violations themselves." (*Id.* at 2). The Report later reiterated that there was "no culpability at the hands of any members of the federal prosecution or investigative team. This is important." (*Id.* at 14). *Second*, while litigating that motion, the United States explicitly took the position that through the email search warrants, it had independently located electronic versions of some

9

physical documents in the DOR materials. (*See* Doc. 98 at 3 n.1 ("The emails and attached and linked electronic versions of these documents were independently located and seized from the electronic search warrants that the Chrisleys are seeking to suppress on other grounds.")). Notably, the Chrisleys did not challenge the United States' assertion that there was an independent basis for these materials when litigating the DOR motion.

The Chrisleys also moved to suppress the electronic evidence obtained through the email search warrants, claiming that (1) the warrants were not sufficiently particularized, (2) the United States exceeded the scope of the warrants, and (3) the United States acted unreasonably in its execution. (Docs. 52, 58). On January 26, 2022, this Court denied the motion, meaning that electronic records seized from Google and AOL pursuant to the federal search warrants could be used as evidence at trial. (Docs. 105, 127).

On February 15, 2022, the grand jury returned a Superseding Indictment against all three defendants. (Doc. 130).[8] The scheme to defraud section in Count Seven describes the same three emails from jchrisley1@gmail.com that were described in the original Indictment. (*Compare* Doc. 1 ¶¶ 30-32 *with* Doc. 130 ¶¶ 29-31).

The Chrisleys have had notice from the day they received the original Indictment that the United States intends to introduce evidence at trial obtained from the email search warrants. That is why they moved to suppress the

---

[8] The Superseding Indictment dropped the wire fraud conspiracy charge but still charges Julie Chrisley with one count of wire fraud. (Doc. 130, Ct. 7).

evidence obtained from the email warrants more than two years ago in early 2020. (Doc. 52). They also had notice from the United States' briefing on their motion to suppress the DOR materials that the email evidence would be used at trial. (*See* Doc. 98 at 3 n.1). And finally, almost two months ago, when the grand jury returned a Superseding Indictment with the same descriptions of the emails and attached and linked doctored-up documents as the original Indictment, the Chrisleys had undeniable notice of the United States' plan to use the electronic evidence.

At no point during the two years after the Chrisleys filed their initial motions, or during the seven months after the DOR materials were suppressed, did the Chrisleys claim that they had a "fruit of the poisonous tree" concern about the email evidence in this case. But now, on the near eve of trial, and ten days after the Court's deadline to file motions in limine, the Chrisleys have filed this belated motion seeking to suppress virtually all the evidence in this case. (Doc. 162). The United States now files this response in opposition.

## III. Argument

At this stage, the Chrisleys' motion to suppress should be denied as untimely. But even if the Court reaches the merits, it should be denied because (1) independent sources led to the discovery of the electronic evidence they are challenging; (2) the United States would have inevitably discovered the electronic evidence during the investigation; and (3) excluding the electronic evidence would undermine the purpose of the exclusionary rule.

## A. The Chrisleys have waived this belated suppression argument, and their motion should be denied as untimely.

A defendant who "fail[s] to file his motion within the deadlines set by the court ... waives his right to assert [a] motion to suppress evidence." *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990); Fed. R. Crim. P. 12(b)(3)(C). The court may excuse a late-filed motion if a defendant demonstrates "good cause" for the delay, Fed. R. Crim. P. 12(c)(3), but "[n]o good cause exists if the defendant had all the information necessary to bring a Rule 12(b) motion before the date set for pretrial motions, but failed to file it by that date." *United States v. Andres*, 960 F.3d 1310, 1316 (11th Cir. 2020) (quoting *United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013)). Moreover, "[n]either a strategic decision nor inadvertence constitutes good cause." *Id.*

As stated above, the Chrisleys have known from day one that the United States plans to introduce electronic evidence obtained through the email search warrants. Nevertheless, the Chrisleys never raised their "fruit of the poisonous tree" claim until March 31, 2022—ten days after the Court's deadline to file motions in limine—when the United States is in full preparation mode for this specially set May 16 trial, which is anticipated to last three to four weeks.

In an attempt to justify their tardiness, they claim that the electronic evidence at issue has been "already excluded by virtue of the uncontested Exclusion Order," and that they have filed this eleventh-hour, out-of-time motion "in an abundance of caution" based on comments made by the undersigned counsel

during a March 28, 2022 phone conference[9] that the United States plans to use evidence at trial obtained from the email search warrants. (Doc. 162 at 7). The notion that the Chrisleys thought the Order suppressing the DOR materials also suppressed the email search warrant evidence is implausible—as is the notion that the March 28 phone conference was the first time they learned after the Court suppressed the DOR materials that the United States plans to use the electronic evidence at trial. As stated, the United States has made clear through this litigation that there was an independent basis for the cut-and-pasted documents that are primarily at issue. (*See* Doc. 98 at 3 n.1 ("The emails and attached and linked electronic versions of these documents were independently located and seized from the electronic search warrants that the Chrisleys are seeking to suppress on other grounds.")).

This Court should reject the Chrisleys' claim that they thought the electronic evidence had already been suppressed and deny their motion—which should have been filed long ago—as untimely. *See, e.g., United States v. Jones*, 241 F. App'x 676, 678 (11th Cir. 2007) (affirming denial of motion to suppress as untimely where "the facts of the case are the same as those under the previous indictment, and Jones was provided open discovery. Given that all the files were available at least nine months before the trial, there is no reason Jones's counsel should not have previously discovered the basis for this motion to suppress."); *United States v. Cox*, 281 F. App'x 943, 945 (11th Cir. 2008) (affirming denial of

---

[9] Their motion refers to a conference on March 27 and March 29, but the conference with Judge Anand was held on Monday, March 28. (Doc. 162 at 1, 7).

motion to suppress as untimely without reaching the merits where defendant "waited to file his motion to suppress until after his motion to dismiss on speedy trial grounds was denied," and "the late filing of the motion appear[ed] to have been a strategic move"); *United States v. Echols*, 577 F.2d 308, 311 (5th Cir. 1978) (district court acted within its discretion by denying a motion to suppress that was filed "over one year after the trial court had set pretrial motions to be heard and just six days before trial").

In *United States v. Taylor*, 792 F.2d 1019, 1025 (11th Cir. 1986), the Eleventh Circuit affirmed the district court's denial of a motion to suppress filed on the day of trial as untimely and found there was no good cause for the delay where substitute counsel noticed his appearance and took over the case three weeks earlier. The court of appeals found that appearing in the case three weeks before trial "hardly explains his failure timely to raise the motion to suppress." *Id.* at 1025. In the Eleventh Circuit's view, "[s]urely three weeks is enough time to examine the documents that are to be used against one's client." *Id.*

In this case, the Chrisleys attempt to shift blame for this tardy motion, but they have had the relevant warrants for more than two and a half years, and the United States noted it would not object to Judge Anand's Report and Recommendation five months ago. (Doc. 118 at 4-5 n.3). At the very latest, they should have filed their motion then. The Chrisleys have not shown any credible justification for their long delay in filing this motion—much less good cause for it. "These facts demonstrate inexcusable delay and last-minute motion filing." *Jones*, 241 F. App'x at 678 (quoting *United States v. Milian–Rodriguez*, 828 F.2d 679,

683 (11th Cir. 1987)). At this stage, the Court should deny the motion without reaching the merits.

### B. Even if the Court reaches the merits, the Chrisleys' motion should be denied.

A Fourth Amendment violation can trigger the exclusionary rule, but that rule has several exceptions. Exceptions exist because the exclusionary rule "has always been [a] last resort, not [a] first impulse." *Utah v. Strieff*, 579 U.S. 232, 237-38(2016) (quotation marks omitted). Accordingly, the Eleventh Circuit does not "indiscriminate[ly] appl[y]" the exclusionary rule because it "generates substantial social costs, which sometimes include setting the guilty free and the dangerous at large" and which take a "costly toll upon truth-seeking and law enforcement objectives." *United States v. Delancy*, 502 F.3d 1297, 1314 (11th Cir. 2007) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). Instead, courts reserve the exclusionary rule "only [for] where its remedial objectives are thought most efficaciously served—that is, where its deterrence benefits outweigh its substantial social costs." *Id.* (quoting *Hudson*, 547 U.S. at 591). "And to justify application of the rule those deterrence benefits cannot be merely incremental, marginal, or simply possible; they must be substantial and must actually outweigh the costs." *United States v. Watkins*, 13 F.4th 1202, 1210 (11th Cir. 2021) (citing *Herring v. United States*, 555 U.S. 135, 141, 147-48 (2009)).

Thus, evidence is not automatically tainted "simply because it would not have come to light but for the illegal actions of the police." *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). Neither is all evidence inadmissible that "somehow

came to light through a chain of causation that began with [illegal police activity]." *United States v. Ceccolini*, 435 U.S. 268, 276 (1978). In the Eleventh Circuit, there are multiple "exceptions to the fruit of the poisonous tree doctrine [], under which the government may break that causal chain and defeat a motion to suppress," including:

1. "[T]he government may use evidence that it has obtained in fact from a source independent of the primary illegality;" and

2. "[E]vidence may be admissible if the government inevitably would have discovered it without the aid of the unlawful police conduct."

*United States v. Timmann*, 741 F.3d 1170, 1182-83 (11th Cir. 2013) (internal quotations and citations omitted). These two exceptions—the independent source doctrine and the inevitable discovery doctrine—are different and distinct from one another.[10] Under both theories, the evidence obtained through the email search warrants in this case is admissible.

### 1. The United States obtained the electronic evidence at issue from sources independent of the suppressed DOR materials.

Under the independent source doctrine, even where a Fourth Amendment violation has occurred, evidence "obtained from a lawful source, independent of the illegal conduct" is admissible. *United States v. Davis*, 313 F.3d 1300, 1303 (11th Cir. 2002); *see also Segura v. United States*, 468 U.S. 796, 805 (1984) (explaining that the exclusionary rule is not implicated when the government learned of the

---

[10] In their motion, the Chrisleys conflate and refer interchangeably to these doctrines.

challenged evidence from an independent source). The rationale for the independent source doctrine is that the government should be put "in the same, not a worse, position tha[n it] would have been in if no . . . error or misconduct had occurred." *Murray v. United States*, 487 U.S. 533, 537 (1988) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)); *see also id.* at 542 ("The independent source doctrine [rests] upon the policy that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied. So long as a later, lawful seizure is genuinely independent of an earlier, tainted one … there is no reason why the independent source doctrine should not apply.").

The Eleventh Circuit applies a two-part analysis under the "independent source" doctrine. *United States v. Barron-Soto*, 820 F.3d 409, 414-15 (11th Cir. 2016) (citing *United States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012)). The first step is to excise from the search warrant affidavit any information gained from the illegal source and determine whether the remaining information supports a finding of probable cause. *Id.* The second step is to determine whether the agent's decision to obtain a search warrant was "prompted by" what he observed during the illegal action, and that is a question of fact. *Id.* If the warrant would have been sought without the illegality, then the evidence seized pursuant to the warrant is admissible. *United States v. Thomas*, 818 F.3d 1230, 1243 (11th Cir. 2016).

### a. The email search warrants are supported by ample probable cause without the two paragraphs about the DOR materials.

In step one of the analysis, the Court should examine the search warrant. Here, Agent Arrow's affidavits submitted in support of the email search warrants contain just two paragraphs about information obtained from the DOR's illegal search of the warehouse. (Exs. G and H at ¶¶ 27-28, Ex. I at ¶¶ 28-29). None of the other information in the affidavits came from the DOR materials—nor have the Chrisleys made that claim. Much of it came from IRS documents and filings, records previously obtained from third parties, and publicly available information. (*See* Ex. G. at ¶¶ 7-21). And, as set forth in the chart above, the mchrisley1@gmail.com and jchrisley1@gmail.com emails described in the affidavits were produced to the United States by entities controlled by the Defendants or third-party production companies in response to subpoenas issued before agents viewed or even obtained the DOR materials. The information about the Chrisleys' bank fraud scheme, including the mchrisley1@aol.com emails relating to the bank fraud, all stemmed from information and materials provided to federal investigators by Mark Braddock as far back as 2012. Finally, the juliehughes6873@gmail.com emails described in the second Google search warrant were seen in plain view when executing the first Google search warrant and were thus untainted by anything having to do with DOR.

When the DOR evidence is excised from the affidavits, "the remaining information supports a finding of probable cause." *Barron-Soto*, 820 F.3d at 415. After striking those paragraphs, the affidavits contain detailed information about

the Chrisleys' tax filing obligations, income, failure to file and pay taxes as required, and their bank fraud scheme, including descriptions of numerous emails to and from the target email accounts about these issues. None of that information had nothing to do with the DOR materials. Accordingly, the email search warrants were supported by ample probable cause.

**b. Agents' decision to seek the email search warrants was not prompted (or even influenced) by what they observed in the DOR materials.**

The second step in the Court's analysis is to "determine whether the officer's decision to seek the warrant was 'prompted by' what he had seen during the arguably illegal" search. *Barron-Soto*, 820 F.3d at 414. This step requires the Court to make factual findings. *Id.*; *see also United States v. Garcia*, No. 12-11994, 2013 WL 10509665, at *5 (11th Cir. June 6, 2013) (remanding case to district court to make factual findings on whether police would have sought a search warrant had they not initially searched the house unlawfully).

U.S. District Judge Leigh Martin May recently confronted a similar situation in *United States v. Pendergrass*, 995 F.3d 858, 873-76 (11th Cir. 2021). In that case, the United States proffered to the Court that the suppressed evidence did not prompt agents to seek a subsequent warrant. *Id.* Based on that proffer, Judge May denied the defendant's motion to suppress. *Id.* The Eleventh Circuit ultimately affirmed, but on harmless error grounds. *Id.* at 875-76. While the situation here is different—in that facts have already been developed at a two-day evidentiary hearing—the United States is prepared to buttress the record by

establishing that viewing the DOR materials did not "prompt" agents to seek the email search warrants. Indeed, nothing in the DOR materials even pointed agents towards the Chrisleys' email accounts at issue—hence the footnote in Agent Arrow's affidavit showing that agents had no information connecting the physical "cut and paste bank statements" to the target email accounts.[11] (*See, e.g.,* Ex. G at ¶ 27 n.4).

Citing Agent Arrow's affidavit in support of the search warrants for the DOR materials, the Chrisleys claim that "the United States' entire investigation of [the] Chrisleys' emails stemmed from [the] illegally obtained [DOR] information and would not have proceeded but for this information." (Doc. 162 at 4-5). But nothing in Agent Arrow's affidavit says or even suggests that.[12]

———————————

[11] Notably, as this Court has already found, no federal agents or members of the prosecution team participated in the DOR's warrantless search. Agents obtained a valid federal search warrant for the DOR materials without knowing that DOR had unlawfully seized those materials from the Chrisleys. Accordingly, this case is unlike most independent source cases, where an initial unlawful search was committed by the same investigators who later seek a search warrant. *See, e.g., United States v. Momodu,* 909 F. Supp. 1571, 1582 (N.D. Ga. 1995) (suppressing evidence and finding that "[t]he second search of Davis's apartment is inextricably linked to the prior illegality, and no intervening circumstances are presented which would attenuate that link").

[12] The Chrisleys are in essence attempting to improperly convert their motion to suppress into a *Kastigar* motion. *See Kastigar v. United States,* 406 U.S. 441 (1972) (permitting an immunized witness to be prosecuted if the United States can prove that the evidence to be used against the defendant was not derived from the immunized testimony); *see also United States v. Hampton,* 775 F.2d 1479 (11th Cir. 1985) (holding that the government must demonstrate that each step of the investigative chain through which the evidence was obtained is untainted). This

Accordingly, while the United States believes the record is likely sufficiently developed on this issue, it respectfully requests the opportunity to further establish that the DOR materials did not prompt agents to seek the email search warrants.[13]

### 2. The United States would have inevitably discovered the electronic evidence it intends to introduce at trial.

In their motion, the Chrisleys conflate the independent source and inevitable discovery doctrines. But as the Court is undoubtedly aware, these are distinct legal doctrines. Inevitable or ultimate discovery "allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Strieff*, 579 U.S. at 238. "This exception is akin to the harmless error rule that is applied for constitutional violations generally." *Watkins*, 13 F.4th at 1210 (citing *Nix*, 467 U.S. 431 at 443 n.4); *see generally United States v. Roy*, 855 F.3d 1133, 1167 (11th Cir. 2017) (en banc) (recognizing that "the harmless error doctrine is alive and well" because it "serves vital interests and promotes public respect for the criminal process").

"If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful

---

Court should reject that attempt outright as the Eleventh Circuit has never extended *Kastigar* and its progeny to the Fourth Amendment.

[13] The Chrisleys' belated motion demands that the United States provide this evidence "before" the pretrial conference set for April 14. The United States does not presume to know the Court's schedule but will be ready at the Court's convenience to supplement the record with testimony.

means ... then the deterrence rationale has so little basis that the evidence should be received." *Watkins*, 13 F.4th at 1210 (quoting *Nix*, 467 U.S. at 443)), accord *United States v. Watkins*, 10 F.4th 1179, 1185 (11th Cir. 2021) ("[W]e hold that the standard of predictive proof the government must satisfy in order to establish the proper application of the ultimate discovery exception is preponderance of the evidence ...."). "Excluding evidence where it would have been discovered anyway would not restore the parties to their previous positions and would upset the careful weighing of competing interests underlying the exclusionary rule." *Watkins*, 13 F.4th at 1210-11 (internal quotations and citations omitted). "It would 'put the police in a worse position than they would have been in if no unlawful conduct had transpired,' and would 'fail[ ] to take into account the enormous societal cost of excluding truth in the search for truth in the administration of justice.'" *Id.* (quoting *Nix*, 467 U.S. at 445). "Courts would be 'withholding from juries relevant and undoubted truth that would have been available to police absent any unlawful police activity,' which would 'add[ ] nothing to either the integrity or fairness of a criminal trial.'" *Id.* (quoting *Nix*, 467 U.S. at 445).

Accordingly, evidence obtained in violation of the Fourth Amendment is admissible under the inevitable discovery exception if the government can make two showings. *Id.* **First**, the government must show by a preponderance of the evidence that if there had been no constitutional violation, the evidence in question would have been discovered by lawful means. *Id.* "Absolute certainty is not required, only a showing that it is more likely than not the evidence would

have been discovered without the violation." *Id.* **Second**, the government must show "that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *Id.* (quoting *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir. 2015) (quotation marks omitted)).

"'Active pursuit' in this sense does not 'require that police have already planned the particular search that would obtain the evidence' but only 'that the police would have discovered the evidence by virtue of ordinary investigations of evidence or leads already in their possession.'" *Id.* (quoting *Johnson*, 777 F.3d at 1274). Eleventh Circuit "precedents make clear that the purpose of the requirement of active pursuit is to exclude evidence that was not being sought *in any fashion*." *Johnson*, 777 F.3d at 1275 (emphasis added). Thus, the Eleventh Circuit has found that agents were "actively pursuing" evidence and upheld inevitable discovery even where agents were not yet aware that a cooperating party would provide relevant information or they were not yet searching for a witness. "Active pursuit" can be based on leads that develop in the investigation after the unlawful search and to investigators' surprise. *Id.* (discussing *Terzado-Madruga*, 897 F.2d 1099 at 1114-15 and *United States v. Brookins*, 614 F.2d 1037, 1040 (5th Cir. 1980)).

### a. Agents would have discovered the electronic evidence, regardless of viewing the DOR materials.

As set forth above, nothing agents viewed in the DOR materials prompted them to seek the email search warrants. Before agents ever viewed or obtained

those materials, grand jury subpoenas were issued to entities controlled by the Defendants as well as various production companies, who in turn and produced numerous incriminating emails involving the target email accounts, which led to agents seeking search warrants for those email accounts. In other words, agents inevitably would have gotten the email search warrants.

Not only that, but agents inevitably would have seized the specific electronic evidence produced by Google that the Chrisleys complain about, regardless of viewing the DOR materials. In their motion, the Chrisleys point to the following specific evidence as supposed "fruit of the poisonous tree":

(1) three July 2014 emails from jchrisley1@gmail.com with accompanying fabricated documents attached or linked (a City National Bank statement, a BB&T bank statement, and a credit report), described in Count Seven of the Superseding Indictment. (Doc. 130 ¶¶ 29-31).

(2) an August 2015 email from Todd Chrisley attaching a fabricated Bank of America statement, which the United States noticed as Rule 404(b) evidence.

(3)  a December 2016 email to Angel Oak Home Loans, an October 2015 invoice from Ken Knight Interiors, a November 2014 invoice from Pineapple House, and documents related to the BP Oil Spill, all of which the United States noticed as Rule 404(b) evidence.

The three fabricated documents that Julie Chrisley emailed (Count Seven) and the Bank of America statement that Todd Chrisley emailed (Rule 404(b) evidence) were found in the suppressed DOR materials. (*See* Photo at Doc. 162-

2)).[14] However, these four fabricated documents were also found within the email search warrant returns.

At a minimum, "it is more likely than not" that agents would have found and seized electronic versions of these materials even if they had never seen hard copies of those documents in the DOR materials. *Watkins*, 13 F.4th at 1211. By the time agents sought the email search warrants, Braddock had already described to agents—at length—how he and Todd and Julie Chrisley had sent fabricated documents to financial institutions (a term he called "scrapbooking"). And Braddock supplied voluminous emails to the United States containing fabricated banking statements.

As the Chrisleys note, Google produced more than 237,000 non-privileged records in response to the search warrants, (Doc. 162 at 4 n.3), which authorized the United States to seize, among other items, "all bank records, [] account information, and other financial information," "records related to financial expenditures, including bills, receipts, and invoices, and "records pertaining to personal expenses." (*See* Warrant Attachment B to Exs. G, H, and I). Agents reviewed the 237,000 records and seized 20,639 of them. (Doc. 162 at 4 n.3). The four fabricated documents and related emails described above, which the Chrisleys agree were "within the scope of the search warrant," (*id.*), are just a few of the thousands of financial documents, bank statements, and related emails

---

[14] Much of the other evidence the Chrisleys complain of (*i.e.*, the bulk of the United States' Rule 404(b) evidence) was not located in the DOR materials and is thus not implicated by their motion, despite their sweeping attempt to have all evidence in this case suppressed.

that agents reviewed and seized. (Doc. 162 at 4 n.3). Given that the search warrants authorized agents to seize the challenged evidence, and given that agents reviewed and seized thousands of financial documents, bank statements, and invoices produced by Google, the United States has shown that it is more likely than not (in fact, it is almost certain) that agents would have seized the challenged evidence even if they had never seen hard copies of the fraudulent documents. *See Watkins*, 13 F.4th at 1211 ("Absolute certainty is not required, only a showing that it is more likely than not the evidence would have been discovered without the violation.").

### b. Agents were "actively pursuing" the electronic evidence before they viewed the DOR materials.

All that is required to show agents were "actively pursuing" the challenged evidence is "that the police would have discovered the evidence by virtue of ordinary investigations of evidence." *Id.* at 1215. And this is a textbook case of finding evidence through "ordinary investigations of evidence or leads already in [agents'] possession." *Id.* As discussed above, a federal criminal investigation into the Chrisleys was opened by IRS-CI based on multiple reports from within the IRS and from news outlets about the Chrisleys' tax issues.  During that investigation, the grand jury issued subpoenas that led agents to seek the email search warrants. In executing those warrants, agents seized all of the financial and bank records produced by Google. It was inevitable that agents would seize the four challenged documents and related emails along with the thousands of other financial and bank records.

### 3. Suppressing the electronic evidence would undermine the purpose of the exclusionary rule.

This Court granted the Chrisleys' motion to suppress the DOR materials because it found that suppression "would [] deter[] the [DOR] officers involved in the search [of the warehouse] from violating Defendants' rights, or at least would deter reasonable officers in the future." (Doc. 107 at 2). In suppressing the evidence illegally seized by the DOR, this Court achieved the sole purpose of the exclusionary rule: "to deter misconduct by law enforcement officers." *United States v. Davis*, 598 F.3d 1259, 1266 (11th Cir. 2010).

The Court was clear that the bad actors to be deterred were DOR employees—not anyone on the federal prosecution team. (*Id.* at 14 (finding "no culpability at the hands of any members of the federal prosecution or investigative team")). That fact is important because "*Leon* instructs [] that the identity of the responsible party is indispensable to determining whether courts should apply exclusion as a remedy."). *United States v. Laist*, 702 F.3d 608, 615 (11th Cir. 2012). In this case, the Court has already made the finding that the only "responsible party" is the DOR, and suppressing the evidence it illegally seized sends a deterrent message to those DOR employees.

Now that the purpose of the exclusionary rule has been accomplished (i.e., deterring the unlawful actors at the DOR), this case is in a different posture. The federal agents who investigated the Chrisleys did nothing wrong and obtained valid search warrants in this case not knowing that DOR had unlawfully seized from the Chrisleys' property. If the Court were to suppress the challenged

evidence obtained from the valid search warrants, it would undermine the purpose of the exclusionary rule. Instead of deterring the bad actors (who have already been deterred), suppression would unfairly punish federal agents who did nothing wrong and would impose a high cost by keeping the jury from its truth-seeking function. *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (exclusionary rule should be applied only "where its deterrence benefits outweigh its substantial social costs.").

## IV.    Conclusion

For the reasons stated in this Response Brief, the United States respectfully requests that, should the Court reach the merits of this untimely motion, it schedule an evidentiary hearing so that the United States can further perfect the record that (1) nothing within the suppressed materials prompted agents to seek the electronic search warrants, and (2) agents would have inevitably discovered these materials as they were actively conducting a complex fraud investigation.

Respectfully submitted,

KURT R. ERSKINE
*United States Attorney*

/s/THOMAS J. KREPP
*Assistant United States Attorney*
Georgia Bar No. 346781
thomas.krepp@usdoj.gov

/s/  ANNALISE K. PETERS
*Assistant United States Attorney*
Georgia Bar No. 550845
annalise.peters@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Counsel for Todd Chrisley

Counsel for Julie Chrisley

Counsel for Peter Tarantino

April 11, 2022

/s/ ANNALISE K. PETERS

ANNALISE K. PETERS

*Assistant United States Attorney*