IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TODD CHRISLEY (A/K/A MICHAEL TODD CHRISLEY),<br>JULIE CHRISLEY, AND<br>PETER TARANTINO | Criminal Action No.<br><br>1:19-CR-297-ELR-JSA |

**United States' Supplemental Consolidated Motion in Limine**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Thomas J. Krepp and Annalise K. Peters, Assistant United States Attorneys for the Northern District of Georgia, files this Supplemental Consolidated Motion in Limine.

1. **Background**

On August 13, 2019, the grand jury returned an indictment against Todd Chrisley, Julie Chrisley, and Peter Tarantino. (Doc. 1). On February 15, 2022, the grand jury returned a Superseding Indictment against all three defendants. (Doc. 130). Relevant to the instant motion, the defendants are charged with one count of conspiracy to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the functions of the IRS in the ascertainment, computation, assessment, and collection of income taxes, in violation of 18 U.S.C. § 371. (*Id.*, Count 8). Todd and Julie Chrisley are also charged with one count of willfully attempting to evade the IRS's collection of

1

funds due and owing by Todd Chrisley for the 2009 tax year, in violation of 26 U.S.C. § 7201. (*Id.*, Count 9). Peter Tarantino is also charged with two counts of willfully filing false tax returns for 7C's Productions for the 2015 and 2016 tax years, in violation of 26 U.S.C. § 7206(1). (*Id.*, Counts 10-11).

Trial is set for May 16, 2022. In its initial Consolidated Motion in Limine, the United States raised several issues, including that, to date, the defendants had failed to produce almost any discovery pursuant to Rule 16(b) despite the United States' numerous requests for it. (Doc. 157 at 14-15). At the pretrial conference on April 14, 2022, the Court acknowledged the various issued raised in the United States' motion but found that several of the issues were premature. The Court indicated that the United States could revisit these issues at a later date if needed. Since the pretrial conference, the United States continued to request discovery from the defendants, and the defendants have begun to produce discovery. As a result of the recently obtained discovery, the United States files this supplemental motion in limine.

For the reasons set forth below, the United States requests that this Court: (1) exclude the untimely disclosure of one defense expert witness (Manny Kressel); (2) exclude testimony from any "expert" attorneys about whether or not the defendants intentionally violated the law; and (3) exclude evidence of tax filing and tax payment actions taken by the defendants after they learned they were under federal criminal investigation unless the defendants demonstrate the evidence bears on their state of mind at the time of the charged offenses.

### 1. Motion to Exclude Untimely Disclosed Expert Testimony

This Court should exclude expert testimony that was first disclosed to the United States more than two years after the expert disclosure deadline and just two weeks before trial.

In October 2019, United States Magistrate Judge Justin Anand ordered the defendants to "disclose any defense experts and necessary Rule 16 discovery related to such experts by February 28, 2020." (Doc. 31). On February 28, 2020, the defendants provided a list of five experts that would potentially testify at trial (*See* 2/28/2020 Letter, attached as Exhibit A). With the exception of Anthony Kosednar, the defendants did not provide any additional expert report, but indicated "[a]t the present time, defense counsel have not receive written reports from any of the above potential expert witnesses other than Mr. Kosednar. It is anticipated teach each expert will provide written opinions and same will be provided to the Government in a timely fashion." (*Id.*). To date, the United States has not received any of those reports.

On April 29, 2022, two weeks after the pretrial conference in this case, counsel for the Chrisley defendants sent a letter to undersigned counsel titled "Supplemental Reciprocal Discovery and Expert Witness Disclosure." (*See* 4/29/2022 Letter, attached as Exhibit B). The letter disclosed—for the first time— that the Chrisleys plan to call an individual named Manny Kressel as a computer forensics expert to testify about his forensic examination of "computers" and "issues in the attached reports." The letter was not accompanied by any reports or reciprocal discovery. The letter also stated that the Chrisley defendants plan to

3

call attorney Monica Gilroy to testify about Todd Chrisley selling property to satisfy tax liens and that emails related to those transactions would be produced soon. The letter did not specify whether the Chrisleys intend to offer attorney Gilroy as an expert witness. After additional requests by the United States for reciprocal discovery, on May 2, 2022, the Chrisleys produced exhibits they plan to introduce at trial. Among the documents, undersigned counsel discovered a nine-page report by Manny Kressel dated July 30, 2012. The Chrisleys have still not produced Mr. Kressel's qualifications or CV as required by Rule 16(b).

    This Court should not allow Mr. Kressel to testify as an expert. The Chrisleys noticed Mr. Kressel as an expert more than two years after the Court's deadline—and just two weeks before trial—and still have not produced Mr. Kressel's qualifications to the United States. And it bears repeating that Mr. Kressel's report was prepared in July 2012—more than ten years ago. The Chrisleys' decision to notify the United States more than two years after the deadline about expert testimony developed a decade ago is inexcusable. Based upon conversations with counsel, the United States understands that Mr. Kressel will be called to testify as a fact witness and an expert witness. While Mr. Kressel may testify as a fact witness, this Court should not permit the Chrisleys to offer him as an expert witness given the untimely disclosure.[1]

---

[1] To the extent the Chrisleys intend to offer attorney Gilroy as an expert witness, that testimony should also be excluded due to inexcusable delay and untimeliness. She should be permitted to testify only as a fact witness.

## 2. Motion to Exclude Improper Expert Testimony

During a phone call earlier this week, counsel for the Chrisleys informed the United States that the Chrisleys intend to call at least one attorney at trial to testify that there was "nothing illegal or improper" about the corporate structure of 7C's Productions, including the fact that Julie Chrisley owned the company. Such testimony would plainly violate Federal Rule of Evidence 704(b) and should not be permitted.

Relevant to this issue, the defendants are charged with willfully conspiring to defraud the United States for the purpose of obstructing the IRS's efforts to assess and collect income taxes from the Chrisleys, and tax evasion. (Doc. 130, Counts 8 and 9). As charged in the superseding indictment, one manner in which the defendants committed these offenses was by keeping "Todd Chrisley's name off of 7C's Productions bank accounts and corporate filings to impede the IRS's ability to determine his income and collect his unpaid 2009 taxes," when, in reality, Todd Chrisley exercised control over the company and held the company's purse strings. (*Id.* ¶ 37).

Federal Rule of Evidence 704(b) prohibits experts from opining about whether a defendant had the requisite state of mind when committing the charged conduct. Rule 704(b) provides that "[n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone." Fed. R. Evid.

704(b); *see also United States v. Stahlman*, 934 F.3d 1199, 1220 (11th Cir. 2019) (Rule 704(b) prohibits experts from rendering opinions about a defendant's state of mind); *Omar v. Babcock*, 177 F. App'x 59, 63 n.5 (11th Cir. 2006) (same). As stated, the United States has learned that at least one attorney will testify that there was "nothing illegal" about Julie Chrisley (as opposed to Todd Chrisley) being listed as the owner of 7C's Productions.

Any conclusion about whether something is "legal or illegal" necessarily requires a conclusion as to whether an individual acted with the requisite intent. *See United States v. Wilson*, 979 F.3d 889, 907 (11th Cir. 2020) (noting that "a crime's mens rea flows out of its text"). Accordingly, any expert (attorney or otherwise) who opines that there was "nothing illegal" about Julie Chrisley running 7C's Productions will *necessarily* reach a conclusion as to whether Julie or Todd Chrisley had the criminal intent to violate the law. *See Stahlman*, 934 F.3d at 1220 (affirming district court's exclusion of expert testimony that there was insufficient evidence to conclude that the defendant intended to have sex with a minor, noting that "[s]uch testimony is plainly impermissible under Rule 704(b)").

Accordingly, the United States requests that the defendants be precluded from eliciting expert testimony as to whether or not the Chrisleys committed an "illegal" act.

3. **Motion to Exclude Evidence of Defendants' Remedial Tax Actions Taken after Learning They Were Under Federal Criminal Investigation**

In its Consolidated Motion in Limine, the United States requested that the defendants be precluded from offering evidence for the purpose of jury nullification. (Doc. 157). As the United States acknowledged in its previously reply brief, it has no objection to the Defendants offering evidence of tax payments to the IRS. (Doc. 175 at 5). However, on April 29, 2022, the United States learned on a phone call with Peter Tarantino's counsel that Tarantino intended to introduce evidence at trial that certain tax returns were filed on behalf of Todd and Julie Chrisley and their company, 7C's Productions, *after* the tax conspiracy ended on February 2, 2018—the date the defendants learned they were under federal criminal investigation. In a phone call earlier this week, the United States also learned from counsel for the Chrisleys that Chrisleys also intend to introduce evidence of tax payments made *after* February 2, 2018.

In order to admit evidence of remedial tax actions taken by defendants after they learned they were under federal criminal investigation, the defendants must first establish that the subsequent remedial actions are somehow relevant to their state of mind *at the time of the charged tax offenses*—and that the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice under Rule 403. Absent such a showing, the evidence should be excluded. If the defendants do make the required showing and evidence of remedial actions is admitted, the United States requests that the Court instruct the jury that post-offense remedial actions do not negate the charged tax offenses.

### a. The Evidence Should be Excluded Unless the Defendants Establish that It Bears on Their State of Mind at the Time of the Offense

A criminal defendant "does not have an unfettered right to offer testimony that is . . . inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). To the contrary, a criminal defendant is properly required to comply with the Federal Rules of Evidence, and it is not a violation of defendant's rights to require such compliance. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998). To be admissible, evidence must be relevant, and its probative value must not be substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 401, 403. Where evidence is irrelevant, unduly prejudicial, hearsay, or violative of other evidentiary rules, it is properly excluded.

In determining whether to admit evidence of post-offense remedial actions, a court should consider whether evidence concerning the subsequent act is of any probative value in establishing the defendant's state of mind *at the time of the alleged criminal acts*, and if so, whether the evidence "unduly entangle[s] the issues or confuse[s] the jury." *United States v. Stoehr*, 196 F.2d 276, 282 (3d Cir. 1952). Whether evidence of a defendant's subsequent mental state, as demonstrated by a subsequent act, is "of any probative value in establishing his state of mind at the time of the alleged criminal acts" must be determined by the circumstances of the individual case. *United States v. Beavers*, 756 F.3d 1044, 1050 (7th Cir. 2014).

"The district court has considerable discretion in admitting evidence of acts of subsequent conduct of a defendant offered to prove the absence of evil intent." *United States v. Radtke*, 415 F.3d 826, 840 (8th Cir. 2005) (citing *United States v. Woosley*, 761 F.2d 445, 449 (8th Cir. 1985)). Indeed, it long has been recognized that "an ever-present reason demanding latitude for [a court's] ruling on admissibility is that what takes place, particularly after the fact, is often feigned and artificial." *Id.* (citing *Post v. United States*, 407 F.2d 319, 325 (D.C. Cir. 1968)) (internal quotation omitted). "[O]therwise, tax evaders could avoid criminal prosecution simply by paying up after being caught," *United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004). The Court can and should consider the fact that "self-serving exculpatory acts performed substantially after a defendant's wrongdoing is discovered are of minimal probative value as to his state of mind at the time of the alleged crime." *Radtke*, 415 F.3d at 840–41; *Beavers*, 756 F.3d at 1051 ("subsequent remedial actions may not be probative of the defendant's prior state of mind because such actions are equally consistent with (1) promptly correcting a genuine mistake and (2) trying to cover up a purposeful lie in the hope of avoiding prosecution").

Based on these principles, "courts have repeatedly affirmed the exclusion of evidence of remedial action after the taxpayer knows he is under investigation." *Id.* at 1050-51 (upholding exclusion of amended tax returns filed after learning of criminal investigation, observing that such filings had "little bearing" on state of mind at time of filing original returns); *see also Radtke*, 415 F.3d at 840 (finding no abuse of discretion in excluding evidence that defendant filed an amended tax

9

return after being charged with willfully subscribing to a false tax return); *United States v. McClain*, 934 F.2d 822, 834 (7th Cir. 1991) (finding no reason to disturb the district court's ruling that the defendant's 1985 tax return was not probative of the defendant's state of mind at the time he filed his 1984 return, given his indictment in the intervening year); *United States v. Ross*, 626 F.2d 77, 81 (9th Cir. 1980) (holding that the defendant's filing of subsequent accurate tax returns and his offer to pay any delinquent taxes were not relevant to the charge that he had willfully failed to file tax returns in previous years).

Although many Circuits have addressed this issue and affirmed the exclusion of remedial tax activity after a defendant learned he was under investigation, the Eleventh Circuit has not addressed it. Notably, there is a 70-year-old Fifth Circuit case suggesting that evidence of late tax payments should be admitted. *See Berkovitz v. United States*, 213 F.2d 468, 469-72 (5th Cir. 1954)[2] (finding that district court erred in excluding evidence of defendant's remedial tax payments after learning he was under investigation, where the district court also instructed the jury that the defendant's failure to pay his taxes after the offense could be used to show his intent to commit the offense).[3] But the Fifth Circuit's finding in *Berkovitz*

---

[2] Decisions of the former Fifth Circuit issued before October 1, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[3] *See also Hill v. United States*, 363 F.2d 176, 180 (5th Cir. 1966) (citing *Berkovitz* and noting that "[o]n the issue of willfulness [in tax evasion cases,] the prompt correction of errors by filing amended returns and by making tax payments is relevant").

10

in the early 1950s is inconsistent with subsequent Supreme Court precedent. *See Sansone v. United States*, 380 U.S. 343, 354 (1965) (paying tax owed in a later year does not "detract from the criminality" of willfully evading that tax in an earlier year).

Moreover, the Eleventh Circuit has routinely affirmed the exclusion of post-offense payments in embezzlement and other fraud cases. In *United States v. Morales*, 978 F.2d 650 (11th Cir. 1992), for example, the Eleventh Circuit explained that where a defendant "intentionally provided false information to acquire loan accounts . . . evidence of subsequent repayment could not negate [his] intent." *Id.* at 655 (discussing *United States v. Scott*, 701 F.2d 1340 (11th Cir. 1983)); *see also Scott*, 701 F.2d at 1347–48 ("If, however, evidence of repayment cannot shed light on the defendant's intent to do the forbidden act, such as in this case, then evidence of repayment is irrelevant and it will only mislead and confuse a jury."); *United States v. Fields*, 327 F. App'x 133, 134 (11th Cir. 2009) (explaining that repayment was not relevant to defendant's intent to deprive government of funds); *United States v. Suba*, 132 F.3d 662, 677 (11th Cir. 1998) (explaining in mail fraud case that "[r]epayment in the face of litigation does not show a lack of fraudulent intent") (citation omitted).

In short, *Beavers*, *Radtke*, *McClain*, and *Ross* are all instructive, and the Fifth Circuit's finding in *Berkovitz* should not be read to require this Court to admit evidence of the defendants' post-offense tax filings and tax payments carte blanche. Instead, this Court should require the defendants to articulate how their tax filings and tax payments that occurred after they learned of the federal

11

criminal investigation are relevant (*i.e.*, how the evidence bears on their state of mind at the time of the charged tax offenses). They should also demonstrate why the probative value of their remedial actions (which do not nullify the charged offense) is not substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 401, 403. Absent those showings, the Court should preclude the evidence.

### b. If the Evidence is Admitted, the Court Should Instruct the Jury that Remedial Actions Do Not Negate the Charged Offenses

If the defendants establish that their post-offense tax filings and payments bear on the defendants' state of time at the time of charged offenses, then that evidence should be admitted. But evidence of remedial actions does not negate the tax evasion as charged. *See Sansone*, 380 U.S. at 354 (paying tax in a later year does not "detract from the criminality" of willfully evading that tax in an earlier year). Accordingly, if the evidence is admitted, the United States will request that the Court give a jury instruction like the one below in addition to other instructions about the charged tax offenses:

> You have heard evidence that the defendants paid the tax owed. If a person commits an act with the willful intent to evade the payment of tax, later actions do not nullify the completed crime. Accordingly, if you find that the Government has proved beyond a reasonable doubt that the defendants willfully attempted to evade payment of tax, any later payment of tax does not erase the crime.
>
> On the other hand, the evidence of payment may be considered by you in determining whether in fact the defendants acted willfully to evade payment of tax. In determining the defendants' intent based upon their later payment of the tax, you may consider, among other things, what they knew when they made the payment and when the payment was made.

Whether the defendants acted with the necessary criminal intent is solely for you to determine, based upon all of the evidence in the case.

## 4. Conclusion

For the reasons set forth herein, the United States requests that this Court: (1) exclude the expert testimony of Manny Kressel; (2) exclude testimony from attorneys about the legal implications of the structure and ownership of 7C's Corporation; and (3) exclude evidence of post-offense remedial tax actions unless the defendants can show how the remedial actions bear on the defendants' state of mind at the time of the charged offenses.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

/s/THOMAS J. KREPP
*Assistant United States Attorney*
Georgia Bar No. 346781
thomas.krepp@usdoj.gov

/s/ANNALISE K. PETERS
*Assistant United States Attorney*
Georgia Bar No. 550845
annalise.peters@usdoj.gov

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

        Counsel for Todd Chrisley

        Counsel for Julie Chrisley

        Counsel for Peter Tarantino

May 6, 2022

        /s/ ANNALISE K. PETERS
        ANNALISE K. PETERS
        *Assistant United States Attorney*