IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>  *v.*<br><br>TODD CHRISLEY (A/K/A MICHAEL TODD CHRISLEY) AND JULIE CHRISLEY | Criminal Action No.<br><br>1:19-CR-297-ELR-JSA |

**United States' Response to the Chrisleys' Motion in Limine to Exclude Evidence Described in United States' Supplemental Rule 404(b) Notice**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Thomas J. Krepp and Annalise K. Peters, Assistant United States Attorneys for the Northern District of Georgia, files this Response to the Chrisleys' Motion in Limine to Exclude Evidence Described in United States' Supplemental Rule 404(b) Notice.

## I.    Background

On August 13, 2019, the grand jury returned an Indictment against defendants Todd Chrisley, Julie Chrisley (hereinafter, "the Chrisleys"), and Peter Tarantino. (Doc. 1). The grand jury returned a Superseding Indictment against all three defendants on February 15, 2022. (Doc. 130).

The Chrisleys are charged with one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count 1), five counts of bank fraud, in violation of 18 U.S.C. § 1344 (Counts 2-6), one count of conspiracy to defraud the

United States, in violation of 18 U.S.C. § 371 (Count 8), and one count of tax evasion, in violation of 26 U.S.C. § 7201 (Count 9). Julie Chrisley is also charged with one count of wire fraud, in violation of 18 U.S.C. § 1343 (Count 7), and one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2) (Count 12). Tarantino is charged with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 8), and two counts of willfully filing false tax returns, in violation of 26 U.S.C. § 7206(1) (Counts 10-11).

### 1.  Overview of the Tax Charges

The Superseding Indictment alleges that the Chrisleys and Tarantino conspired to defraud the IRS and that the Chrisleys willfully evaded the collection of taxes stemming from the 2009 tax year. (Doc. 130, Counts 8-9).

Specifically, the Chrisleys are alleged to have failed to file and pay any taxes for tax years 2013, 2014, 2015, and 2016, despite earning millions of dollars from their reality television show. (Doc. 130, ¶¶ 5, 14). Additionally, the Defendants, knowing that Todd Chrisley owed hundreds of thousands of dollars for the 2009 tax year, purposely hid funds in the name of 7C's Productions. (*Id.*, ¶ 37). The Defendants purposefully kept Todd Chrisley's name off of 7C's Productions' bank accounts and corporate filings to impede the IRS's ability to determine his income and collect his unpaid 2009 taxes. (*Id.*).

### 2.  The United States' Supplemental Rule 404(b) Notice

On April 25, 2022, the United States filed a supplemental Rule 404(b) notice regarding Todd Chrisley's false statements made during a deposition in a case pending before Chief Judge Batten. (Doc. 185) (citing *Doherty-Heinze v. Chrisley*,

3:21-cv-00105-TCB (Doc. 1) (Doc. 14, Ex. A)). The United States explained that Chrisley's statements were admissible under Rules 401 and 402 as he spoke at length about his involvement with 7C's Productions, the entity at issue in the criminal tax case pending before this Court. In the alternative, the United States provided notice that the testimony should be admitted under Rule 404(b) as evidence of Todd Chrisley's "motive, intent, preparation, plan, knowledge, absence of mistake, and lack of accident." *United States v. Ford*, 784 F.3d 1386, 1393 (11th Cir. 2015) (citing Rule 404(b)(2)).

On March 29, 2022, the Chrisleys filed a motion in limine to exclude the deposition, arguing that it was irrelevant under Rules 401 and 402, that it was inadmissible under Rule 404(b), and that, it should be excluded under Rule 403, as its prejudicial impact substantially outweighed its probative value. (Doc. 190). The United States responds here.

## II.   Argument

The Chrisleys' motion should be denied. As a preliminary matter, the United States' Notice of Rule 404(b) evidence was timely as it was sent in accordance with this Court's pretrial scheduling order. As to the merits, the Eleventh Circuit has repeatedly held that a defendant's false exculpatory statements are admissible as substantive evidence at trial. The false statements directly bear on Chrisley's consciousness of guilt. In the alternative, Todd Chrisley's statements are admissible under Rule 404(b) as they bear on his motive, intent, preparation, plan, knowledge, absence of mistake, and lack of accident. Finally, the Chrisleys

fail to demonstrate that any unfair prejudice substantially outweighs the probative value of this evidence.

    **1.   To the extent this evidence is admitted under Rule 404(b), the United States' notice was timely.**

In a lengthy footnote, the Chrisleys appear to claim that the United States' motion was somehow untimely as this issue could have been raised prior to the pretrial conference. (Doc. 190 at 2, n.1). But Judge Anand's order made clear that notice of out-of-district Rule 404(b) evidence was due 21 days prior to the start of trial. (Doc. 20 at 6-7). The Chrisleys do not dispute that the United States complied with that order by sending timely notice on April 25, 2022 (which was 21 days before trial) but appear to argue that the United States could have raised this prior to the pretrial conference as it was aware of the existence of the deposition.

To be clear, the United States provided the background information in its Notice to emphasize that it had made the Chrisleys aware that it was attempting to procure this evidence and to note to this Court that undersigned counsel had worked in good faith to obtain this evidence by working through the Chrisleys' counsel. The Chrisleys do not dispute that the United States did not have a copy of the video recording until April 25, 2022 – after the pretrial conference. It was not until undersigned counsel had an opportunity to obtain and watch the video recording to observe Chrisley's demeanor during the questioning that the United States decided that it would seek to admit this evidence.

In the end, any attempt to argue that the notice was untimely fails as the United States complied with the pretrial scheduling order by timely notifying Chrisley of its intent to admit potential out-of-district Rule 404(b) conduct 21 days before trial.[1]

### 2. Todd Chrisley's false exculpatory statements are admissible as consciousness of guilt under Rules 401 and 402.

The Eleventh Circuit has repeatedly held that false exculpatory statements may be used as evidence of a defendant's consciousness of guilt.[2] *See United States v. Hughes*, 840 F.3d 1368, 1385 (11th Cir. 2016) (citing *United States v. McDowell*, 250 F.3d 1354, 1367 (11th Cir. 2001) (holding "'a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt'. . . . and this principle applies equally to false exculpatory statements made pre-trial and false exculpatory statements made on the stand.")); *Seeman v. United States*, 96 F.2d 732, 733 (5th Cir. 1938) ("It is well settled that any act or statement of the accused tending to show consciousness of guilt is admissible in evidence against him, to be considered together with the other evidence in the case.").

The fact that the United States intends to argue that Chrisley lied during his deposition does not somehow convert the evidence into inadmissible "propensity" evidence. *See United States v. Alejandro*, 118 F.3d 1518, 1521 (11th

---

[1] Chrisley, of course, was aware of the existence of his own deposition.

[2] With respect to any hearsay challenge, Todd Chrisley's statements are admissible as statements of a party opponent. *See* Fed. R. Evid. 801(d).

Cir. 1997) ("The jury could also properly consider appellant's false exculpatory statements upon his arrest as substantive evidence of his guilty intent."). And the fact that the false exculpatory statements were not made to a law enforcement agent, but during a separate civil proceeding, does not impact their admissibility. *See United States v. Perry*, 14 F.4th 1253, 1370 (11th Cir. 2021) ("The government also introduced intercepted phone calls between [the defendant] and [a cocaine supplier] after [the defendant] was stopped by the police, calls in which [the defendant] and [the cocaine supplier] discussed false exculpatory explanations for why [the defendant] was carrying so much cash.")); *see generally United States v. Kumar*, 617 F.3d 612, 617 (2d Cir. 2010) (sentencing reversed on other grounds) (noting that the defendant was "charged under 18 U.S.C. § 1512(c) with obstruction of justice arising out of his false exculpatory statements to [corporate] counsel and the SEC.")

The Chrisleys argue at length that the few exhibits attached to the United States' Notice do not show that Todd Chrisley lied under oath. But the evidence that Chrisley's statements were falsely exculpatory is overwhelming. The United States' Notice did not come close to showcasing the universe of evidence establishing that Chrisley made false exculpatory statements during his deposition. The United States provides a few additional examples here and will provide more at trial. Notably, the United States disclosed *all* of the following emails and materials to Chrisley years before he was deposed on these topics in the civil case pending before Judge Batten.

### a. Todd Chrisley's First Set of False Exculpatory Statements: Lack of knowledge of when 7C's Productions was formed and what it does, and lack of involvement in running 7C's Productions.

Todd Chrisley provided the following testimony during his deposition:

- Q: What is 7C's LLC?

- A: That's a company that my wife owns.

- Q: When was that formed?

- A: I don't know.

- Q: What does it do?

- A: I have been told, through all of these legal proceedings, that it is a loan-out company that handles contracts for our family with different networks and things like that.

- Q: Have you ever had any role in working for that company -- well, let me put it this way -- let me ask it this way. · I'm sorry, that wasn't a very good question. Have you ever had any role in managing that company?

- A: No, ma'am. (Doc. 185, Ex. A at 16).
  ***

- Q: Do you know the correct name of the entity?

- A: I -- I think it's 7C's Productions.

- Q: Okay.

- A: The number 7, and then apostrophe, capital C.

- Q: All right. I think that that's right, and I know you've got it listed in here. Yes, okay. 7, capital C, apostrophe S, Productions LLC. Is that the name of it, to your understanding?

- A: 7C's Productions. I don't know if it's an LLC or if it's an S-corp. I don't -- I don't know. I've seen it both ways in the last six months.

- Q: All right. Actually, let me take that back. All right. 7C's Productions, Inc.?

- A Maybe. Maybe that's it. (Doc. 185, Ex. A at 18).

In sum, Chrisley testified that he did not know when 7C's Productions was formed, that he never had any role in managing the company, that he "had been told during all of these legal proceedings" that 7C's Productions was a loan-out company, and was not familiar with the corporate structure. As the following representative emails demonstrate, each of these statements was demonstrably false:

- Gov. Ex. 305: (July 3, 2013, email): Chrisley forwarded the Certificate of Incorporation for 7C's Productions to his accountant;

- Gov. Ex. 307 (July 31, 2013, email): Chrisley forwarded a Non-Disclosure Agreement on behalf of 7C's Productions to a third party and stated "[p]lease forward both signed documents back to us and we can have your contract signed and sent back to you today."

- Gov. Ex. 327 (April 16, 2014, email): Chrisley told his talent agent that "the way our contracts are set up is thru 7c's productions, and 7c's has contracts with all the talent and agrees to provide our services per what they contract us out for, this will need to stay the same for asset protection, please advise."

- Gov. Ex. 332 (November 24, 2014, email): When his talent agent inquired about "whether you'd like to use your 7C's loanout for all future literary payments," Chrisley responded, "Yes, 7C's."

- Gov. Ex. 343 (February 12, 2016): Chrisley told an insurance company employee that, "[w]e have myself that's with 7C's productions , [sic] all the kids are with 7C's and are adult and we have two assistants that are with 7c's that are employees as well, keep in mind all kids are employees of 7C's and have contracts from the network to show that."

- Gov. Ex. 348 (July 8, 2016): Responding to an email from a mortgage broker asking "what [sic] the name of your business" Need to finalize the app," Chrisley stated, "Name of the business is 7C's productions . . ."

- Gov. Ex. 366 (December 18, 2016): Chrisley sent a PowerPoint presentation entitled "Miss FL USA Presentation." The first slide of the presentation states, "7C's Productions / Todd and Julie Chrisley." The final slide lists the contact information as follows:

    7C's Productions, Inc.
    Todd and Julie Chrisley
    4117 Hillsboro Pike
    Ste 103-265
    Nashville, TN 37215
    Ph: REDACTED

Chrisley's deposition testimony regarding his knowledge of and relationship with 7C's Productions was false. As demonstrated above (and as will be demonstrated through additional exhibits at trial), Chrisley was intimately involved in all aspects of 7C's Productions' operations. He was well aware that

7C's Productions was formed at least as early as 2013. He had repeated discussions with industry officials in which 7C's Productions was referred to as a loan-out company. And he repeatedly conducted business dealings through 7C's Productions, including by directing his wife to make financial transactions on behalf of the company. Todd Chrisley's statements during his deposition were simply an effort to offer false exculpatory statements regarding one of the key issues in the pending criminal tax case: whether he used 7C's Productions to evade the payments of taxes.

      **b. Todd Chrisley's Second Set of False Exculpatory Statements: Lack of knowledge of payments to 7C's Productions and 7C's Productions' bank accounts.**

Chrisley provided the following testimony during his deposition concerning the finances of 7C's Productions:

- Q: If that money is being paid to you and/or your wife and/or 7C's, do you know where it's going?

- A: I imagine -- and this is speculation, but, I mean, I would imagine that any monies that are paid on behalf of the podcast, just like any production company, would go to 7C's, and then Julie would disburse that however she -- however she's supposed to or whatever, however she's told to do it by the accountants.

- Q: She's the person who's in charge of that -- or who makes those decisions, in connection with the · accountants?

- A: Yes, ma'am.

- Q: Where are 7C's bank accounts located? Do you know?

- A: I have no idea. (Doc. 185, Ex. A at 24-25).

In sum, Chrisley testified that "this is just speculation" that his and his wife's income was paid to 7C's Productions, that his wife made those decisions while consulting accountants, and that he had no idea where the company banked. As the following representative emails demonstrate, each of these statements was demonstrably false:

- Gov. Ex. 323 (March 21, 2014): Chrisley told his son-in-law that "[w]e do have the checks and just deposited them today, George is finishing the returns for 7C's and we can cut you your check next week."

- Gov Ex. 357 (September 7, 2016): Chrisley instructed his wife to send their mortgage broker "the current activity on 7c's showing the 153k gifting to Savannah."

- Gov. Ex. 260 (January 29, 2017): Chrisley wrote to a business associate, "[c]an we confirm again that you have the BOFA 7C's account info Prior to processing payment this month?"

- Gov. Ex. 369 (November 29, 2017): Responding to a request from a mortgage broker, Chrisley instructed his wife that "[w]e need to get him everything on this list tomorrow morning , This is hugely important." Julie then emailed Chrisley and the mortgage broker two Bank of America statements from 7C's Productions.

- Gov. Ex. 264 (November 29, 2017): Following up on the prior email thread, Julie Chrisley sent Todd Chrisley and the mortgage broker the twelve most recent Bank of America statements for 7C's Productions.

Todd Chrisley lied during his deposition about his knowledge of 7C's Productions' bank accounts. As demonstrated above (and as will be demonstrated through additional exhibits at trial), he was well aware that 7C's Productions has banked at Bank of America for years. Chrisley would have the world believe his wife and their accountants take care of banking issues and that he is not involved whatsoever with those decisions. The representative sampling listed above and the additional exhibits to be admitted at trial tell a far different story: Todd Chrisley not only knew where 7C's Productions banked, but for years, he directed payments to and from 7C's Productions' bank accounts.

   c.  **Todd Chrisley's Third Set of False Exculpatory Statements: Lack of Knowledge of 10945 State Bridge Road, Suite 401-300, Alpharetta, Georgia.**

Lastly, Chrisley provided the following testimony about a PO Box in Alpharetta, Georgia—a key address in the criminal tax case:

- Q: What is located at 10945 State Bridge Road, Suite 401-300, in Alpharetta, Georgia?

- A: Can you repeat that again?

- Q: Yes. 10945 State Bridge Road, Suite 401-300,

- Q: What is located at 10945 State Bridge Road, Suite 401-300, in Alpharetta, Georgia?

- A: Can you repeat that again?

- Q: Yes. 10945 State Bridge Road, Suite 401-300, Alpharetta.

- A: I -- I don't know. I mean, unless it's like a -- I don't know. I mean, if it's a P.O. Box or something. I know that for a number of years when we lived there, that the accountants and our former CFO had made sure that all the mail went to one location. So I don't know if it's that or not.

- Q: Okay.

- A: It may be a UPS post office or something. I don't know.

- Q: That would be where you would maintain such a box?

- A: I don't know. I just remember something about a State Bridge Road. Ma'am, I don't know. It just seems like I've heard that -- I've heard that address before.

- Q: Yes. And are you aware that -- so the -- so I will represent to you that your wife has used that address on things. Does that --

- A: Then that might be where I know it from. That would -- then it's probably a P.O. Box that they had there, that the accountants set up in early 2000, I would think.

- Q: Do you still have that P.O. Box?

- A: I don't, no. I've never had it.

- Q: Do you know whose name is on that P.O. Box?

- A: I do not.

- Q: Have you ever been to that P.O. Box?

- A: I've never been to it. I don't know anything about it, I mean, other than I've seen it before on -- I remember that address.

- Q: Have you ever used it personally?

- A: No, ma'am.

- Q: Have you ever used it in connection with any of your businesses?

- A: I don't know, because I never handled any of that kind of stuff. Our former CFO handled all that stuff for us.

- Q: Who was the former CFO?

- A: Mark Braddock.

- Q: And you sued him -- or your wife sued him, right?

- A: Yes.

- Q: Do you know who pays for that address?

- A: I don't know who paid for it. I don't know that -- I haven't seen that address in years, so it may have been when the litigation was going on that I knew about that. But I don't believe that my wife uses that anymore. (*Id.* at 26-28).

Chrisley testified that he was only vaguely familiar with this address and that he had never personally used it. As the following representative emails demonstrate, each of these statements was false:

- Gov. Ex. 212 (March 31, 2015): Chrisley sent an email that stated, in part, "[h]ere is the address for the account

        7C's Productions, Inc.
        10945 State Bridge Road

Ste 401-300
Alpharetta, GA 30022

- Gov. Ex. 262 (February 17, 2017): A business associate emailed Julie Chrisley to confirm the State Bridge address was correct. Julie Chrisley, CC'ing Todd Chrisley wrote back:

    7C's Productions, Inc.
    10945 state bridge rd
    Ste 401-300
    Alpharetta, ga 30022

Chrisley's testimony regarding this PO Box was unquestionably false. As demonstrated above (and as will be demonstrated through additional exhibits at trial), he was well aware that he and his family members used this address for years. Crucially, this was not a false exculpatory statement about an ancillary issue. As will be shown at trial, the IRS repeatedly sent correspondence to this PO Box about Todd Chrisley's unpaid taxes. His false statements about the PO Box were an attempt by Chrisley to claim that he had no knowledge of this PO Box and therefore never would have received that correspondence. Yet, the representative sampling of emails listed above and the additional emails to be presented at trial demonstrate this was yet another false exculpatory statement and that Chrisley was quite familiar with this address.

### 3. In the alternative, Todd Chrisley's testimony is admissible under Rule 404(b).

As stated, Chrisley's testimony should be admitted under Rules 401 and 402 as post-offense false exculpatory statements. However, the United States would

not oppose the Court giving the jury a limiting instruction under Rule 404(b), as Todd Chrisley's perjury demonstrates his intent, knowledge, absence of mistake, and lack of accident regarding 7C's Productions. *Ford*, 784 F.3d at 1393 (citing Fed. R. Evid. 404(b)(2)).

As previously briefed to this Court, the Eleventh Circuit has set forth the following factors to determine the admissibility of Rule 404(b) evidence:

> (1) it must be relevant to an issue other than defendant's character;
>
> (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and
>
> (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403.

*Id.* (internal citations omitted). When determining the probative value of extrinsic act evidence, district courts should consider: "(1) the Government's incremental need for the evidence to prove guilt beyond a reasonable doubt; (2) the similarity of the extrinsic act and the charged offense; and (3) the closeness or remoteness in time between the extrinsic act and the charged offense." *United States v. Baptiste*, 618 F. App'x 593, 596 (11th Cir. 2015) (citing *United States v. Ellisor*, 522 F.3d 1255, 1268 (11th Cir. 2008)). "A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007) (citing *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998)).

**a. Chrisley's perjury is not being offered as character evidence but to demonstrate his intent to evade paying taxes, his knowledge concerning 7C's Productions, and an absence of mistake and lack of accident regarding his control over 7C's Productions.**

Chrisley's lies are not being offered as character evidence, but to demonstrate his intent to evade paying taxes, his knowledge of 7C's Productions, and an absence of mistake and lack of accident regarding his control over and 7C's Productions. By pleading not guilty to tax evasion and conspiracy to defraud the United States, Todd Chrisley has put squarely at issue that he purposefully kept his name off of 7C's Productions bank accounts and ownership documents, despite that he had control over the company and its finances, all for the purpose of hiding his income and evading the IRS's efforts to collect his 2009 tax liability of more than $500,000. Those issues are central to the tax conspiracy and tax evasion charges, as set forth in Counts 8 and 9 of the superseding indictment.

Thus, Todd Chrisley's demonstrably false claims during his deposition that he has no knowledge of numerous key facts about 7C's Productions shows that he did in fact know—at the time of the tax offenses—when 7C's Productions was formed, where 7C's Productions banked, where 7C's Productions received mail, and that he received his income through 7C's Productions. Chrisley's demonstrably false statements also show that his control over and knowledge about 7C's Productions during the charged tax offenses – and thus his criminal intent and conduct at the time of those offenses - were not the result of a mistake or accident. *See, e.g., United States v. Grissom*, 44 F.3d 1507, 1513 (10th Cir. 1995) (affirming admission of evidence that defendant underreported employee hours

to labor union as proper 404(b) evidence in bank fraud case where "Defendant contended at trial that he lacked the intent to deceive the bank or to influence the bank's actions" because "the government legitimately attempted to controvert Defendant's contention of good faith at the time the government offered the prior acts evidence."); *United States v. Foster*, 22 F. App'x 617, 618-19 (7th Cir. 2001) (affirming introduction of uncharged information concerning alleged false statements that defendant made on a loan application to show intent and absence of mistake in defendant's charged check-kiting scheme); *United States v. Jackson*, 714 F.2d 809, 813 (8th Cir. 1983) (holding that in prosecution for making false statements in certain invoices, other invoices and accompanying testimony were admissible to show intent and lack of mistake).

### b. The United States can demonstrate by a preponderance of the evidence that Chrisley committed perjury.

To the extent this testimony is admitted under Rule 404(b), the United States would argue that Chrisley committed perjury about his knowledge of various key aspects of 7C's Productions. "To sustain a conviction for perjury under 18 U.S.C. § 1623(a), the government must prove beyond a reasonable doubt that the testimony was: (1) false; (2) material; and (3) made with knowledge of its falsity." *United States v. Lewis*, 514 F. App'x 924, 927 (11th Cir. 2013). "The test for materiality is whether the false statement has a natural tendency to influence, or was capable of influencing, the decision making body to which it was addressed. Even if the statement did not actually influence the tribunal, it is sufficient if it could have possibly influenced it." *Id.* (internal citations and quotations deleted).

As outlined above, Chrisley repeatedly lied about his role with 7C's Productions, his knowledge of the company's bank accounts, and his knowledge of the Alpharetta address. This was material to the proceedings before Judge Batten as the parties were litigating jurisdictional discovery. As to this case, a cornerstone of the tax charges is the allegation that defendants used 7C's Productions to hide Todd Chrisley's income. (Doc. 130, ¶ 37). The fact that Todd Chrisley has continued to lie about his role with 7C's Productions even after being charged in this case—and a mere *three months* before his pending criminal trial—is highly probative of his motive, intent, preparation, plan, knowledge, absence of mistake, and lack of accident. *See United States v. Jemmott*, 596 F. App'x 896, 901-03 (11th Cir. 2015) (Rule 404(b) evidence deemed admissible where "Defendant made clear that he was vigorously challenging the contention that he had conspired with [another individual] as to the overall food stamp fraud conspiracy.").

### c. Any unfair prejudice from this evidence does not substantially outweigh its probative value.

Any unfair prejudice from this evidence does not substantially outweigh its probative value. *See Ford*, 784 F.3d at 1393. "When determining the probative value of extrinsic act evidence, district courts should consider: "(1) the Government's incremental need for the evidence to prove guilt beyond a reasonable doubt; (2) the similarity of the extrinsic act and the charged offense; and (3) the closeness or remoteness in time between the extrinsic act and the charged offense." *United States v. Baptiste*, 618 F. App'x 593, 596 (11th Cir. 2015)

(citing *United States v. Ellisor*, 522 F.3d 1255, 1268 (11th Cir. 2008)). In reviewing the admissibility of evidence under Rule 403, courts "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Edouard*, 485 F.3d at 1344 n. 8. "Rule 403 is an extraordinary remedy which should be used sparingly, and the trial court's discretion to exclude evidence as unduly prejudicial is narrowly circumscribed." *United States v. Cross*, 928 F.2d 1030, 1048 (11th Cir. 1991). Under this standard, the deposition should be admitted.

*First*, as the Eleventh Circuit has repeatedly held, "[a] defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *See Edouard*, 485 F.3d at 1345 (internal citation omitted). Given the Eleventh Circuit's recognition of the United States' "substantial burden" of proving intent, this evidence is important to prove that Todd Chrisley intended to evade paying his taxes by sheltering his income in 7C's Productions. Additionally, by pleading not guilty and proceeding to trial, Chrisley denies the core allegations underpinning the tax evasion and tax conspiracy charges: that he controlled 7C's Productions and had knowledge of the company's finances. His demonstrably false statements show his knowledge about 7C's Productions and that his apparent control of the company demonstrated in the various emails presented to this Court (and others) was no mistake or accident.

*Second*, as stated above, the Rule 404(b) evidence is identical to the charged conduct: Todd Chrisley's lies about the extent of his role in managing 7C's Productions.

*Third*, the extrinsic acts occurred after Todd Chrisley was charged with conspiring to defraud the IRS and with tax evasion. (Doc. 130, ¶¶ 26-33).

*Fourth*, the evidence supporting these lies is straightforward and will not waste the Court or jury's time. The exhibits attached to this notice are a representative sample of the emails and other records that the United States otherwise intends to admit during its case-in-chief. The admission of less than twenty minutes from a sworn deposition will not distract the jury from the key issue with respect to the tax charges. To the contrary, this evidence squarely addresses Todd Chrisley's willfulness – a necessary element for the tax charges.

*Finally*, the Eleventh Circuit repeatedly has held that the risk of unfair prejudice can be minimized when the court instructs the jury about the limited permissible uses of 404(b) evidence, which the court can do at the time the evidence is introduced and again before they begin their deliberations. *See United States v. Ellisor*, 522 F.3d 1255, 1268 (11th Cir. 2008) ("[T]he 'scalpel' of an appropriate limiting instruction at the time [Rule 404(b)] evidence [is] admitted can reduce the risk of inherent prejudice...."). The United States has no objection

to such an instruction.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*


/s/THOMAS J. KREPP
*Assistant United States Attorney*
Georgia Bar No. 346781
thomas.krepp@usdoj.gov


/s/ANNALISE K. PETERS
*Assistant United States Attorney*
Georgia Bar No. 550845
annalise.peters@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Counsel for Todd Chrisley

Counsel for Julie Chrisley

Counsel for Peter Tarantino

May 6, 2022

/s/ THOMAS J. KREPP

THOMAS J. KREPP

*Assistant United States Attorney*