IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| *v.* | 1:19-CR-297-ELR-JSA |
| TODD CHRISLEY A/K/A MICHAEL TODD CHRISLEY AND JULIE CHRISLEY | |

## United States' Response to the Chrisley Defendants' Motion for a New Trial

The United States of America, by Ryan K. Buchanan, United States Attorney, and Thomas J. Krepp and Annalise K. Peters, Assistant United States Attorneys for the Northern District of Georgia, files this Response to the Chrisley Defendants' Motion for a New Trial. For the reasons that follow, the Chrisley Defendants' Motion should be denied.

## Background

A federal grand jury in the Northern District of Georgia charged Todd Chrisley and Julie Chrisley with multiple counts of bank fraud and bank fraud conspiracy, conspiracy to defraud the IRS, and tax evasion. Julie Chrisley was also charged with wire fraud and obstruction of justice. Following a thirteen-day jury trial, the jury convicted the Chrisley Defendants of all counts. Following that trial, the Chrisley Defendants filed a Motion for New Trial, alleging that (1) the United States violated *Napue* and *Giglio* by knowingly using perjured testimony, (2) the United States violated *Brady* by failing to disclose materially exculpatory

1

evidence, and (3) this Court improperly denied their belated motion to suppress evidence as untimely. (Doc. 258).

## Argument

The Chrisley Defendants fail to establish any violations of *Brady, Giglio,* or *Napue*. The Chrisley Defendants fail to show that IRS Revenue Officer Betty Carter knowingly committed perjury, that the United States suborned her supposed perjury or allowed it to go uncorrected, or that any alleged perjury may have influenced the jury's decision. Additionally, this Court properly exercised its discretion and committed no error when it denied the Chrisley Defendants' eleventh-hour motion to suppress evidence as untimely. This Court should deny the Chrisley Defendant's motion for new trial without a hearing.

## I.   The United States did not violate *Napue, Giglio,* or *Brady.*

"[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see also Giglio v. United States*, 405 U.S. 150, 153 (1972) (same). The Eleventh Circuit has applied *Napue* and *Giglio* in situations where the "estimate of the truthfulness and reliability of the given witness may well be determinative of guilt or innocence." *United States v. Rivera Pedin*, 861 F.2d 1522, 1530 (11th Cir. 1988) (citing *United States v. Cole*, 755 F.2d 748, 763 (11th Cir. 1985)) (citations omitted). To prevail on a *Napue / Giglio* claim, a defendant must demonstrate that (1) a government witness committed perjury, (2) the prosecution knew of and failed to correct the perjury,

and (3) the perjury was material. *Rivera Pedin*, 861 F.2d at 1529; *United States v. Clarke*, 442 F. App'x 540, 543-44 (11th Cir. 2011) (citing *United States v. Bailey*, 123 F.3d 1381, 1395 (11th Cir. 1997)). False testimony is considered material if there is any reasonable likelihood that it could have affected the judgment of the jury. *Id.* at 544 (citing *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995)). But "simply showing a memory lapse, unintentional error, or oversight by the witness is insufficient" for a defendant to prevail on a *Napue / Giglio* claim. *Clarke*, 442 F. App'x at 543-44 (citing *Bailey*, 123 F.3d at 1395). The Chrisley Defendants fail to establish any of the three required prongs.

### A. Background Information

#### 1. The Criminal Tax Charges

Counts Eight and Nine of the superseding indictment charged the Chrisley Defendants with conspiracy to defraud the IRS (18 U.S.C. § 371) and willfully evading the payment of Todd Chrisley's 2009 taxes (26 U.S.C. § 7201). The superseding indictment charged that the Chrisley Defendants committed these tax offenses beginning in or around 2010 until on or about February 2, 2018—the date that they learned they were under criminal investigation for tax crimes. (Doc. 130).

#### 2. IRS Testimony and Records Presented at Trial

During its case-in-chief, the United States called three IRS Revenue Officers who were assigned to collect the Chrisley Defendants' unpaid taxes, including IRS Revenue Officer Betty Carter, who testified on May 17 and 18, 2022. During

3

its direct examination of Officer Carter, the United States elicited testimony about the IRS collection process (Tr. at 574-80), the IRS's efforts to collect the Chrisley Defendants' taxes before and after Todd Chrisley's bankruptcy action (Tr. at 580-603), and Officer Carter's personal efforts to collect the Chrisley Defendants' back taxes, including information that the Chrisley Defendants hid from her (Tr. at 603-05, 639-77). At no point did the United States elicit testimony about the balances that were *still* outstanding or delinquent for the 2014, 2015, or 2016 tax years at the time of trial.

Counsel for all three defendants cross-examined Officer Carter. (Tr. at 677-45). At one point, Todd Chrisley's counsel began to ask about the 2014 tax year, and Officer Carter stated that she "checked yesterday. There is a balance due for 2014." (Tr. at 727). Counsel then clarified that he was asking if the Chrisley Defendants' 2014 tax return claimed a $0 liability, and Officer Carter responded that she had no personal knowledge. (*Id.*). The United States did not object to the lines of questioning about what taxes the Chrisley Defendants currently owed, even though it was outside the scope of Officer Carter's direct examination.

Officer Carter testified on redirect that, as an IRS Revenue Officer, she had no role in assessing taxes, was not a CPA, and had no personal knowledge of whether the information on the Chrisley Defendants' tax returns was accurate or not. (Tr. at 746-47). Officer Carter further testified about her efforts to collect the Chrisley Defendants' back taxes and information that the defendants hid from her during the collection process. (Tr. at 747-67). At no point on redirect

examination did the United States elicit testimony about balances that were still outstanding for the 2014, 2015, or 2016 tax years.

Counsel for all the defendants then re-crossed Officer Carter. (Tr. at 767-83). At one point, counsel for Todd Chrisley asked Officer Carter to testify (from memory) how much money Todd and Julie Chrisley owed for each of the tax years from 2009 through 2016. Officer Carter testified that neither defendant owed money for the 2009 tax year. (Tr. at 771-72). She testified that Julie Chrisley owed money for 2010 but when pressed as to how much she stated, "I can't memorize all those numbers." (Tr. at 772). She testified that Todd Chrisley owed money for 2010 and that both Chrisleys owed money for 2011, but that she did not remember how much. (Tr. at 772-73). When asked, "[h]ow much -- do you have any record to show us, any evidence to show us," Officer Carter stated, "I don't. I can get that for you." (Tr. at 773). Next, Officer Carter testified that the Chrisley Defendants owed nothing for the 2013 tax year. (*Id.*). Finally, Officer Carter testified that she thought the Chrisley Defendants owed "around $42,000" for the 2014 tax year and that they owed money for 2015 and 2016 but she again didn't know the exact amount. (Tr. at 774).

Later, on May 18, 2022, the United States called IRS records custodian Salvatore Hazel, who authenticated a number of IRS records, including the Chrisley Defendants' untimely filed 2013, 2014, 2015, and 2016 tax returns and the account transcripts for those tax years, which the United States had produced to the Chrisley Defendants two months before trial. (Tr. at 821-22; Exs. 31-42, 78-

82, 93, 94). No defendants objected to the admissibility of these records or claimed that they were inaccurate. (Tr. at 822). Mr. Hazel testified that the Chrisley Defendants had not paid any taxes for the 2014, 2015, and 2016 tax years as of February 2, 2018 (the date the Chrisley Defendants learned that they were under criminal investigation), but that they made past-due tax payments after that date. (Tr. at 836). During cross-examination, counsel for Todd Chrisley asked a series of questions about the account transcript for the 2016 tax year and established that the transcript did not show an additional payment of $300,000. (Tr. at 853-54). The United States did not object to that line of questioning.[1]

### 3.  The Defendants' Summary Exhibits and Supporting Documentation

The United States rested its case-in-chief on May 26, 2022. (Tr. at 2318). Five days later, on the evening of May 31, 2022, the Chrisley Defendants disclosed multiple summary charts they intended to admit as evidence in their case through their investigator Bill Salinski, along with untimely Rule 16(b) material.[2] (Exhibit A, attached hereto). The materials included a May 18, 2022, email from the firm of the Chrisley Defendants' accountant, Bruce Seckendorf, to Salinski stating that the summary charts reflected "bank info showing payments cleared

---

[1] The undersigned counsel note they were perplexed by defense counsel's questions about a $300,000 tax payment because the payment was not reflected on any of the account transcripts that had been admitted without objection.

[2] The United States had made multiple requests for reciprocal discovery in this case. This Rule 16(b) material was used in the defendants' case-in-chief and should have been disclosed before trial.

from our escrow account for 2014, 2015, and 2016" and that the tax years "2010-2016 should have minimal balances due if any." (Ex. A at 40). The email included records of various payments made by the Chrisley Defendants to the IRS in 2021 and 2022 towards their past-due 2014, 2015, and 2016 tax debts. (Ex. A at 37, 42, 46, 48). Notably, this mid-trial production was the first time that the Chrisley Defendants produced materials regarding late 2021 or 2022 payments to the IRS, even though the United States had disclosed before trial certified account transcripts for the 2014, 2015, and 2016 tax years that did not reflect some of those payments.

Having just received these materials during trial, undersigned counsel forwarded Salinski's charts and the accompanying records to the assigned IRS-CI case agent, Brock Kinsler. That same evening, Special Agent Kinsler sent an email to Officer Carter attaching one of the payments in Salinski's chart (a payment for $592,500 made on January 26, 2022) asking, in part, "Can you tell me where this payment went? It is not showing on the 2016 transcript we have from March 2022. It may have went to a future tax period."[3] (Exhibit B, attached hereto, at 2-4). The same evening, Officer Carter wrote back to Special Agent Kinsler that "[t]he 2016 return was filed under Mrs. C's SSN-she is primary. I tried to attach the IMFOLT for 2016 for Mr. C. That is where the payment is sitting." (Ex. B at 5-

---

[3] The transcript "from March 2022" that Special Agent Kinsler was referring to was the 2016 tax transcript that the United States had produced to the Chrisley Defendants two months earlier and that had been admitted at trial thirteen days earlier without objection through the IRS records custodian. (Tr. at 822).

9). Twenty minutes later, Officer Carter sent another email with an attached IRS record showing a negative balance of $592,500 associated with Todd Chrisley's social security number for the 2016 tax year. (Ex. B at 10-12). Officer Carter's emails did not indicate whether the Chrisley Defendants' past-due balances for 2014, 2015, or 2016 had been fully paid.

As set forth below, in 2021 and 2022, the Chrisley Defendants' accountant, Bruce Seckendorf, incorrectly sent delinquent tax payments to the IRS for the 2014, 2015, and 2016 tax years using *Todd Chrisley's* social security number, even though co-defendant Peter Tarantino had filed the joint tax returns for those years listing *Julie Chrisley* as the primary filer and using her social security number. Because of Seckendorf's mistake, those belated payments were "sitting" under Todd Chrisley's name in the IRS's records and did not appear in the database Officer Carter reviewed before she testified at trial. Special Agent Kinsler and Officer Carter's mid-trial email exchange (which occurred after Officer Carter's testimony) was not produced to the defendants.[4]

---

[4] Agent Kinsler recalls telling undersigned counsel about the information provided by Officer Carter on the morning of June 1, 2022, before trial proceedings commenced that day. Neither undersigned counsel recalls that conversation but has no reason to doubt Agent Kinsler's recollection. In any event, Special Agent Kinsler is clearly part of the prosecution team, meaning the prosecution team possessed the screenshot provided by Officer Carter on May 31, 2022

### 4.  Bill Salinski and Bruce Seckendorf's Testimony

Defense investigator Bill Salinski testified on behalf of the Chrisley Defendants on June 1 and 2, 2022. On direct examination, Salinski testified that the Chrisley Defendants had paid more than $2 million to the IRS towards their tax liabilities. (Tr. at 2936–44; DEX 812). Salinski's summary chart (which the Chrisley Defendants produced to the United States the night before they moved it into evidence) included the 2021 and 2022 payments made toward the Chrisley Defendants' delinquent 2014-16 tax liabilities. *(Id.)*. On cross examination, the United States did not dispute the accuracy of the chart and instead focused on the fact that the payments either coincided with real estate transactions or occurred after the Chrisley Defendants learned about the investigation. (Tr. at 3021-247).

Next, the Chrisley Defendants' accountant Bruce Seckendorf testified that he was asked "to determine, what if, any tax obligations from 2009 through 2016 [the Chrisleys] currently have with the IRS." (Tr. at 3048). Seckendorf testified that he "personally [] called the IRS at least six times. Got a different answer literally every time. We've got balances due. To my knowledge, as of today, the IRS probably owes them a couple thousand dollars at a minimum. They're definitely overpaid for 2016 and prior." (Tr. at 3048-49). During cross examination, the United States did not challenge Seckendorf's statement that the Chrisley Defendants had satisfied or overpaid their tax liabilities based on the returns they filed. (Tr. at 3050-53).

**5.   The Court's Instructions to the Jury and Closing Arguments**

With respect to money paid to the IRS *after* the charged tax conspiracy ended in February 2018, the Court instructed the jury as follows:

> If a person conspires to defraud the IRS or commits an act with the willful intent to evade the payment of tax, later actions do not nullify the completed crime. Accordingly, if you find that the Government has proved beyond a reasonable doubt the defendants Todd Chrisley and Julie Chrisley -- or Julie Chrisley willfully attempted to evade payment of tax, any later payment of tax does not erase the crime.
>
> On the other hand, the evidence of tax filings or tax payment may be considered by you in determining whether in fact the defendants acted willfully to conspire to defraud the IRS or attempt to evade payment of tax.
>
> In determining a defendant's intent based upon their later filing of tax returns or tax payments, you may consider, among other things, what they knew when they filed the tax returns and when the payment was made. Whether the defendants acted with the necessary criminal intent is solely for you to determine based upon all of the evidence in the case.

(Tr. at 3217-18).

The United States never argued in its closing that the Chrisley Defendants were guilty because of a still-unpaid tax debt. (Tr. at 3221-56). Counsel for Todd Chrisley made a good faith argument during his closing argument, telling the jury that "the taxes were fully paid, penalties and interest. Bruce Seckendorf told you they even overpaid a little bit. Betty [Carter] said she thought maybe they owed something. I said, how much? She said, I don't know. I said, if you find evidence of that, please bring it back and show us. She didn't come back because

10

they don't owe anything." (Tr. at 3272). Similarly, Julie Chrisley's counsel argued that "all of the taxes have been paid. As Mr. Salinski talked to you, as Mr. Morris said, the Chrisleys, in fact, paid over $700,000 more than they owed in taxes. Now, they didn't do that out of the kindness of their hearts. It was a penalty. That is what happens. If you file late, you have to pay a penalty. And they paid a huge penalty. And that's where it ought to end." (Tr. at 3288).

In its rebuttal argument, the United States did not dispute that the Chrisley Defendants had paid their delinquent taxes. Rather, the United States pointed to the aforementioned jury instruction and argued those untimely payments did not negate their guilt:

> *Now, you heard in opening and then you heard again in closing that Chrisleys paid their money, they -- you know, why are we here, the Chrisleys paid their taxes?* Well, you got a very specific instruction from the Court. And you will have it when you go back. If a person conspires to defraud the IRS or commits an act with the willful intent to evade the payment of tax, later crimes do not nullify the completed -- *later actions do not nullify the completed crime. You can't rob a bank and return the money. The crime happened, and you have to be held accountable.*

(Tr. at 3325) (emphasis added).

The jury convicted the Chrisley Defendants of both tax counts along with all other charges.

### 6. Seckendorf's Post-Trial Correspondence with Officer Carter and Information in the IRS's records

Following trial, Seckendorf, acting as the Chrisley Defendants' Power of Attorney, contacted Officer Carter about outstanding taxes owed to the IRS.

11

(Doc. 258-1 at ¶ 7) (hereinafter, "Seckendorf Declaration"). During their communications, Officer Carter determined that Seckendorf had sent in all of the delinquent tax payments during 2021 and 2022 incorrectly—that is, he sent payments listing only *Todd* Chrisley's social security number, whereas the Chrisley Defendants had filed their joint returns for those tax years using *Julie* Chrisley's social security number as the primary filer.[5] (Exhibit C at ¶¶ 10-12 (hereinafter, "Officer Carter Declaration"); Exhibit D at ¶¶ 9-12 (hereinafter, "Officer Garcia Declaration")). Upon locating the Chrisley Defendants' payment submission error, Officer Carter rectified the problem in IRS's system by applying the misdirected payments to the tax transcripts listing Julie Chrisley as the primary filer. (Officer Carter Declaration at ¶¶ 10-12; Officer Garcia Declaration at ¶¶ 9-12). Officer Carter then informed Seckendorf that she had updated the IRS records to reflect that the Chrisley Defendants had paid their 2014 and 2015 taxes and that they owed roughly $3,000 for 2016. (Seckendorf Declaration at ¶ 18; Officer Carter Declaration at ¶¶ 11-12). After the Chrisley Defendants filed the instant motion, Seckendorf submitted a $3,287.55 payment

---

[5] The United States presumes that Seckendorf made an honest mistake in failing to follow the IRS's instructions on how to properly submit payments for jointly filed returns. *See* https://www.irs.gov/payments/pay-by-check-or-money-order ("Make sure your check or money order includes the following information: … Social Security number (the SSN shown first if it's a joint return)."); https://www.irs.gov/payments/direct-pay-help (similar instructions for direct payments). The Chrisley Defendants' 2014, 2015, and 2016 tax returns listed Julie Chrisley's social security number first as she was the primary filer.

to the IRS to satisfy their 2016 debt, this time properly listing Julie Chrisley's social security number. (Officer Carter Declaration at ¶ 14(b)).

**B. The United States did not violate *Napue* or *Giglio*.**

### 1. Officer Carter did not commit perjury during the trial.

The Chrisley Defendants do not allege that Officer Carter committed perjury about the IRS's repeated attempts to collect their back taxes, their efforts to obstruct those collection efforts, or their failure to timely file or pay their 2014, 2015, or 2016 taxes—the topics she testified about on direct examination that formed the heart of the criminal tax case. Rather, they claim that during cross examination, Officer Carter knowingly committed perjury by testifying that they *still* owed money for the 2014, 2015, and 2016 tax years. The Chrisley Defendants' arguments are meritless.

Officer Carter answered a series of questions on cross and re-cross examination about whether the Chrisley Defendants still owed taxes for the 2009 through 2016 tax years. (Tr. at 772-74). As explained in the accompanying Declaration of IRS Fraud Enforcement Advisor and Revenue Officer Cheryl Garcia, who had no role in this prosecution, IRS civil employees use an internal system called the "Employee User Portal" ("EUP") to retrieve a taxpayer's records. (Officer Garcia Declaration at ¶ 8). EUP generates user-friendly versions of a taxpayer's records by pulling raw data from the IRS's Information Data Retrieval System ("IDRS"). (*Id.* at ¶¶ 7-8). The tax transcripts admitted at trial through the IRS records custodian were pulled from EUP, and EUP is where

Officer Carter reviewed the Chrisleys' tax data before testifying at trial. (Officer Carter Declaration at ¶ 6). Crucially, for married filing joint taxpayers, EUP produces only *one* account transcript for each tax year by pulling IDRS data that is tied to the primary filer's social security number; EUP does not pull data from IDRS the listed spouse on jointly filed returns. (Officer Garcia Declaration at ¶ 9). In this case, the Chrisley Defendants untimely filed 2014, 2015, and 2016 tax returns listing Julie Chrisley as the primary filer and Todd Chrisley as the spouse. (Exs. 27, 29, 30). Accordingly, the tax transcripts for those years generated in EUP show the returns filed and payments made under Julie Chrisley's name and social security number. (Exs. 40, 41, 42).

As explained above, Bruce Seckenforf incorrectly sent belated payments to the IRS for the 2014, 2015, and 2016 tax years using only Todd Chrisley's social security number, whereas the Chrisley Defendants had filed those returns listing Julie Chrisley as the primary filer. In other words, the untimely payments sent in by Seckendorf did not match the untimely returns that Tarantino had filed and did not comply with the IRS's instructions on submitting payments. Because Seckendorf never called the IRS to request a transfer of the funds, the funds were not transferred from Todd Chrisley (spouse) to Julie Chrisley (primary filer) in IDRS data, and thus outstanding tax debts for 2014, 2015, and 2016 continued to show in EUP for their joint tax return. Accordingly, the EUP records that Officer Carter reviewed before she testified (and that the United States offered into

evidence through the IRS records custodian) did not reflect the late payments sent in 2021 and 2022.

Officer Carter testified *truthfully* and *accurately* on cross examination based on what the EUP database reflected regarding the untimely filed 2014, 2015, and 2016 joint returns for the Chrisley Defendants. After the trial ended, Seckendorf continued to contact Officer Carter about the late payments he had sent in for the 2014, 2015, and 2016 tax years. (Seckendorf Declaration at ¶¶ 7-10). Based on that communication, Officer Carter then applied the untimely 2021 and 2022 payments towards the Chrisley Defendants' 2014, 2015, and 2016 joint tax returns. (*Id.* at ¶ 13; Officer Carter Declaration at ¶¶ 9-12; Officer Garcia Declaration at ¶ 12). Importantly, this all occurred *after* Officer Carter's testimony and *after* the jury's verdict. Officer Carter did not know all this when testifying and merely relayed what the EUP database did in fact reflect at that point in time.

Perjury occurs when "any person under oath in any proceeding before or ancillary to any court or grand jury of the United States [to] knowingly make[] any false material declaration or make[] or use[] any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration." *United States v. Walser*, 3 F.3d 380, 387 (11th Cir. 1993) (citing 18 U.S.C. § 1623). The record shows that Officer Carter did her best to recall outstanding tax balances for eight different tax years for both Todd and Julie Chrisley from memory during a lengthy set of questions

from defense counsel. She emphasized that she did not have the records with her when asked if she had anything to support her recollection; she stated that "I can't memorize all those numbers" when pressed about the specific amount of money Julie Chrisley owed for the 2010 tax year; and she said that she did not know the exact amounts they owed for the 2015 and 2016 tax years (Tr. at 772-73). Officer Carter also explicitly stated that it was not her standard practice to review account transcripts. (Tr. at 773).

The Chrisley Defendants fail to ascribe any conceivable motive for Officer Carter to commit a felony and lie under oath. This is no great mystery, as Betty Carter is a dedicated public servant who has no motive to lie under oath.[6] Despite being asked questions about complex tax matters dating back to 2009, Officer Carter did her best to accurately recall what she had observed in an IRS database before coming to court. She cannot be deemed to have committed perjury for reporting from memory to the best of her recollection during extensive cross examination what the EUP records reflected at that time. This is particularly true where Officer Carter stated that she did not generally review account transcripts and explained, "I can't memorize all those numbers." (Tr. at

---

[6] That has not stopped the Chrisley Defendants from launching these demonstrably false allegations against her, which has unfairly resulted in substantial press coverage regarding the issue. *See* https://radaronline.com/p/todd-julia-chrisley-demand-new-trial-tax-evasion-30-years-prison-sentence.

772-73). At most, this was an unintentional error.[7] But "[s]imply showing a memory lapse, unintentional error, or oversight by the witness is insufficient" for a defendant to prevail on a *Napue* claim." *Clarke*, 442 F. App'x at 543-44 (citing *Bailey*, 123 F.3d at 1395). Accordingly, the argument that Officer Carter knowingly committed perjury is meritless.

### 2. The United States did not suborn perjury or fail to correct it.

Even if the Chrisley Defendants could establish that Officer Carter committed perjury (which she did not), they fail to establish that the prosecution team was aware of any perjury or failed to correct it. To the contrary, the Chrisley Defendants—who of course knew that they had made these delinquent payments—chose to explore the existence of those payments on cross-examination but did not reveal the payments to the prosecution team until after the United States had closed its case in chief.

As a threshold matter, the Chrisley Defendants incorrectly state that Officer Carter was part of the prosecution team. She was not. The government's discovery and disclosure obligations "appl[y] only to information possessed by the prosecutor or anyone over whom he has authority." *United States v. Naranjo*, 634 F.3d 1198, 1211-12 (11th Cir. 2011) (citing *United States v. Cagnina*, 697 F.2d

---

[7] There was no error at all in Officer Carter's testimony regarding the 2016 tax year. On re-cross examination, Officer Carter testified that the Chrisley Defendants owed money but that she could not recall how much. Seckendorf's own declaration confirms they still owed over $3,000 in penalties and interest for the 2016 tax year during trial. (Seckendorf Declaration at ¶ 18).

915, 922 (11th Cir. 1983)); *see also United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989) (same). This typically includes federal agents and counsel conducting the investigation and prosecution, referred to as the "prosecution teams." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1354 (11th Cir. 2004) ("Of course, *Brady* and its progeny apply only to evidence possessed by the prosecution team, which includes both investigative and prosecutorial personnel.")

Here, the prosecution team consisted of two Assistant United States Attorneys, two FBI agents, and an IRS-CID agent. Officer Carter testified that she was not a criminal investigator and was responsible for tax collection as opposed to criminal law enforcement:

> Government Counsel: …. I believe Mr. Griffin indicated -- he asked you a question about the referral that you made. What does that mean, a referral?

> Officer Carter: Part of my job is to identify any indications of fraud. And once I build a case on various indicators of fraud, we can make the referral to our criminal investigation unit.

> Government Counsel: So that goes to a special agent like -- it wasn't Agent Kinsler at the time, but it would go to a special agent like Agent Kinsler?

> Officer Carter: It would be assigned to a special agent, yes.

> Government Counsel: And that's completely separate from the civil division; is that correct?

> Government Counsel: Yes.

18

(Tr. at 746).

Officer Carter was a lay witness employed by the IRS. After she made a fraud referral to the IRS-Criminal Investigation Division, her civil collection actions were stayed. (Officer Carter Declaration at ¶ 4). Officer Carter was a "cooperating revenue officer," meaning she was permitted to share confidential, taxpayer information with IRS-CI upon request, but she played no active role in the investigation (such as by attending strategy sessions, playing any role in execution of the search warrants, or interviewing witnesses). (*Id.*). In fact, when the prosecution team interviewed Officer Carter, the case agents prepared a report about the interview, just like the agents did for all other fact witnesses interviewed during the investigation. Finally, neither of the AUSAs nor any of the case agents, including Special Agent Kinsler, has any "authority over" Officer Carter whatsoever. *Naranjo*, 634 F.3d at 1211-12. As a civil servant, she reports to a supervisory revenue officer in the IRS's civil division. (Carter Declaration at ¶ 2). Accordingly, Officer Carter was not part of the prosecution team. *See Meros*, 866 F.2d at 1309.

The Chrisley Defendants claim that information about the delinquent payments they made leading up to trial was also "known to and available to the prosecutors," and that the prosecutors failed "to correct [Officer Carter's] statements with the Court or the jury." (Doc. 258 at 8). This too is untrue. The prosecution team relied upon the IRS account transcripts from EUP that were produced to the defendants two months before trial and admitted during trial without objection from any defendant. (Exs. 31-42, 78-82, 93, 94). No defendant

challenged any of the transcripts as in any way "inaccurate," despite knowing that some post-conspiracy payments they had made using Todd Chrisley's social security number were not reflected on those transcripts for their joint returns. (*Id.*; Tr. at 821-22).[8]

The prosecution team only became aware of the payments sent by Seckendorf after the close of the government's case-in-chief when the Chrisley Defendants disclosed their summary charts and the May 18, 2022, email from Seckendorf's accounting firm. (Ex. A). To be clear, on May 31, 2022—five days after the United States rested its case-in-chief—the Chrisley Defendants disclosed an email they received on *May 18*, the same day that Officer Carter testified. If the Chrisley Defendants were concerned about inaccurate evidence or testimony, they would have disclosed these records before the United States rested its case on May 26, 2022. Instead, they chose to wait and disclose the evidence five days after the prosecution had closed its case-in-chief, present the evidence to the jury through

---

[8] The Chrisley Defendants seize upon Officer Carter's off-the-cuff remark that she would bring back payments records as evidence of the United States' alleged bad faith. (Doc. 258 at 7). While the government is obligated to disclose favorable evidence in its possession, it is not required to hunt down or create evidence that might be helpful to the defense or to conduct the defense's investigation. *See Werth v. United States*, 493 F. App'x 361, 366 (4th Cir. 2012); *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011); *United States v. Alverio-Melendez*, 640 F.3d 412, 424 (1st Cir. 2011); *United States v. Nguyen,* 98 F. App'x 608, 609 (9th Cir. 2004); *United States v. Harvey*, 756 F.2d 636, 643 (8th Cir. 1985). The Chrisley Defendants subpoenaed a number of witnesses to testify and could have subpoenaed Officer Carter to re-appear with whatever records they deemed necessary. They chose not to do so, but that is not a ground for a new trial.

Salinski and Seckendorf, and then claim that the prosecution team suborned perjury.

After receiving a copy of those payment records from the Chrisley Defendants mid-trial, Special Agent Kinsler noted that the $592,500 payment listed in the summary chart did not appear on the certified transcript from EUP of the 2016 joint tax return, which listed Julie Chrisley as the primary filer. (Ex. 42). Accordingly, he emailed Officer Carter to inquire about the discrepancy between the 2016 account transcript admitted at trial and this brand new information the prosecution team had just received from the Chrisley Defendants.[9] (Officer Carter Declaration at ¶ 7; Ex. B). Officer Carter sent back a report for Todd Chrisley from IDRS—one she had not previously reviewed—showing that a $592,500 credit was attributed to Todd Chrisley. (*Id.* at ¶ 8; Ex. B). It bears emphasis that this information was provided to the United States during the Chrisley Defendants' case-in-chief, while the prosecution team was grappling with the untimely produced Fed. R. Evid. 1006 and Fed. R. Crim. P. 16(b) material and preparing for cross examinations (not reminiscing on Officer Carter's ancillary testimony during her cross examination).

Additionally, the new report from IDRS that Officer Carter pulled and sent to Agent Kinsler did not show what the $592,500 credit was for or what the current balance was for the 2016 tax year. (Ex. B). It merely showed that Todd Chrisley's

---

[9] Special Agent Kinsler does not have access to IDRS, as those systems are used by civil IRS employees during the tax assessment and collection process.

social security number was tied to a credit in the amount of $592,500. (*Id.*). The prosecution team did not receive additional information during trial from the IRS regarding how much money the Chrisley Defendants still owed in back taxes. That determination was not made until after the jury returned its verdict, when Seckendorf continued to call Officer Carter about the issue, and she was able to transfer the payments from Todd Chrisley's account to Julie Chrisley's account. (Seckendorf Declaration at ¶¶ 7-14; Officer Carter Declaration at ¶¶ 9-12). Simply stated, the prosecution team could not be found to have suborned perjury or failed to have corrected false testimony for facts not in its possession.

Next, the Chrisley Defendants' argument that the prosecution team acted "intentionally" is meritless, as the United States never argued that the Chrisley Defendants still owed money to the IRS or suggested that the untimely payments sent by Seckendorf did not take place. On the contrary, the United States argued that the payments were irrelevant to guilt:

> Now, you heard in opening and then you heard again in closing that Chrisleys paid their money, they -- you know, why are we here, the Chrisleys paid their taxes? Well, you got a very specific instruction from the Court. And you will have it when you go back. If a person conspires to defraud the IRS or commits an act with the willful intent to evade the payment of tax, later crimes do not nullify the completed -- later actions do not nullify the completed crime. You can't rob a bank and return the money. The crime happened, and you have to be held accountable.

(Tr. at 3325).

The Chrisley Defendants' approach to this issue at this stage amounts to an ambush. Notably, following Officer Carter's testimony on May 18, counsel for Todd Chrisley confirmed with the IRS record custodian, Salvatore Hazel, that the 2016 account transcript did not reflect a $300,000 payment. (Tr. at 854). Defense counsel responded, "[T]hat's what I needed to know. Thank you very much." (*Id.*). This shows that the Chrisley Defendants knew on *May 18* that certain delinquent payments that they had made for their jointly filed tax returns were not reflected on the account transcripts that the prosecution team had relied upon, disclosed two months before trial, and tendered into evidence without any objection. Rather than bring this to the attention of the prosecution team before trial or during the United States' case-in-chief (when undersigned counsel would have had an opportunity to further confer with the civil side of the IRS about the discrepancy before resting and potentially address the issue), the Chrisley Defendants chose to lie in wait and disclose the evidence only during their case-in-chief. They cannot now cry foul: They created the payment discrepancy in IRS's system by incorrectly sending the untimely payments using Todd Chrisley's social security number and did not timely disclose the payment records as required Rule 16(b). In short, they made a strategic decision that failed. They cannot now use their unsuccessful strategic decision to drum up a false allegation that the United States suborned perjury.

### 3. The Chrisley Defendants fail to establish that any alleged perjury may have had an effect on the outcome of the trial.

Even if the Chrisley Defendants could demonstrate that Officer Carter committed perjury and that the United States knowingly suborned perjury, they fail to meet their burden of establishing "a reasonable likelihood that it could have affected the judgment of the jury." *Clarke*, 442 F. App'x at 544 (citing *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995)). This entire issue is a sideshow: None of the charged offenses—tax or otherwise—concerned whether the Chrisleys properly made delinquent payments in 2021 and 2022, years after they were indicted for a tax evasion scheme that ended in February 2018. Delinquent payments made later are not what this case was about.

It is undisputed that the Chrisley Defendants failed to timely file their tax returns for the 2014, 2015, or 2016 tax years or pay taxes for those years. And as set forth in the United States' Response to the Chrisley Defendants' Rule 29 Motion, the evidence in support of the tax charges was overwhelming: The Chrisley Defendants used their company, 7C's Productions, and Todd Chrisley's mother to hide money from the IRS; they received repeated notices from the IRS that they owed significant sums of money in unpaid taxes; and they falsely claimed to third parties that certain tax returns had been filed when they had not. (*See* Doc. 289).

The Chrisley Defendants launched a robust defense against the government's evidence, including testimony and documents showing that they had made large delinquent tax payments to the IRS in 2021 and 2022. They also presented

uncontested testimony from Seckendorf, who testified, "I personally have called the IRS at least six times. Got a different answer literally every time. We've got balances due. To my knowledge, as of today, the IRS probably owes them a couple thousand dollars at a minimum. They're definitely overpaid for 2016 and prior." (Tr. at 3048-49). The United States acknowledged those payments submitted by Seckendorf in closing argument. The Chrisley Defendants argued that those payments negated criminal intent, and the United States argued that the crime had already been committed: A bank robber can't unrob a bank. Based on the verdict, the jury agreed with the United States' view that the delinquent payments submitted by Seckendorf were irrelevant.

In all, the Chrisley Defendants fail to establish that Officer Carter perjured herself, that the United States knowingly suborned perjury, or "a reasonable likelihood that [her testimony] could have affected the judgment of the jury." *Clarke*, 442 F. App'x at 544.

### C. The United States did not violate *Brady*.

For the same reasons, the Chrisley Defendants' *Brady* argument are without merit. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." During the discovery process, the United States must disclose evidence favorable to the defendant that, if suppressed, would deprive the accused of a fair trial. *Id.*

25

at 86-87; *United States v. Bagley*, 473 U.S. 667, 674-75 (1985). This duty extends both to exculpatory evidence and to evidence that might be used to impeach the government's witnesses. *Id.* at 676; *Giglio*, 405 U.S. at 153-54. The constitutional underpinning for the Government's obligation to disclose impeachment information to the defense is the right to a fair trial found in the Due Process Clause of the Fifth Amendment. *See, e.g., Bagley*, 473 U.S. at 675; *Brady*, 373 U.S. at 86; *Giglio*, 405 U.S. at 153-54; *Kyles v. Whitley*, 514 U.S. 419, 432 (1995).

Motions for new trials are "highly disfavored" in the Eleventh Circuit, and "district courts should use 'great caution' in granting a new trial motion based on newly discovered evidence." *United States v. Garcia*, 13 F.3d 1464, 1472 (11th Cir. 1994) (quoting *United States v. Johnson*, 713 F.2d 654, 661 (11th Cir. 1983)); *see also United States v. Scrushy*, 721 F.3d 1288, 1304 (11th Cir. 2013). A defendant is not entitled to a new trial based on a *Brady* violation unless he can show that:

> (1) the government possessed … evidence [that was favorable] to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

*United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002).

The Eleventh Circuit has consistently held that there cannot be a *Brady* violation if the defendant knew of the information or could have obtained it "with any reasonable diligence." *United States v. Valera*, 845 F.2d 923, 928 (11th Cir. 1988) ("[T]he government is not obliged under *Brady* to furnish a defendant

with information which he already has or, with any reasonable diligence, he can obtain himself.") (internal citation omitted)); *see also United States v. Wenxia Man*, 891 F.3d 1253, 1276 (11th Cir. 2018) (rejecting defendant's *Brady* claim where the record reflected the defendant knew of the existence of the allegedly suppressed material); *United States v. Stein*, 846 F.3d 1135, 1146–47 (11th Cir. 2017) (no *Brady* violation where the document the defendant claimed the government suppressed was publicly available).[10]

An evaluation of the materiality of the allegedly suppressed information is also critical to the *Brady* analysis. In *Kyles v. Whitley*, 514 U.S. at 434–37, the Supreme Court examined *Bagley*'s four aspects of materiality:

> First, "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. . . . *Bagley*'s touchstone of materiality is a 'reasonable probability' of a different result . . . A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'"

---

[10] *See also Parker v. Allen*, 565 F.3d 1258, 1277 (11th Cir. 2009); *Mills v. Singletary*, 63 F.3d 999, 1019 (11th Cir. 1995) (prison psychiatric records equally available to defense, and thus not *Brady* material); *United States v. Cortez*, 757 F.2d 1204, 1208 (11th Cir. 1985) (no *Brady* violation where "defendant has equal access to the material at issue"); *Maharaj v. Sec'y of the Dep't of Corr.*, 432 F.3d 1292, 1315 n.4 (11th Cir. 2005) ("Our case law is clear that '[w]here defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged *Brady* material, there is no suppression by the government.'"); *United States v. Catone*, 769 F.3d 866, 871–72 (4th Cir. 2014) (no *Brady* violation exists when the evidence is "available to the defense from other sources" or through a "diligent investigation by the defense.").

> Second, materiality "is not a sufficiency of evidence test. . . . One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.
>
> Third, . . . there is no need for further harmless-error review. . . .
>
> Fourth, . . ."suppressed evidence [should be] considered collectively, not item by item. . . . , the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.

The Chrisley Defendants' *Brady* argument fails.

*First*, as set forth above, the Chrisley Defendants possessed the information they complain of. These were tax payments that *they* made to the IRS presented to the jury. Accordingly, any argument that they were unaware of these payments is frivolous. *See Wenxia Man*, 891 F.3d at 1276 (rejecting the defendant's claim that the Government suppressed an email because the record reflected that the defendant "knew about the email because Liu mentioned it to her during their conversation, yet she failed to exercise 'reasonable diligence' in procuring it before trial."); *Alverio–Melendez*, 640 F.3d at 424 ("It is well established that '[i]n general, 'evidence is not suppressed if the defendant either knew, or should have known of the essential facts permitting him to take advantage of any exculpatory evidence.''"); *Carter*, 218 F.3d at 601 ("[T]here is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to

him from another source."). Because the Chrisley Defendants knew that they made these payments, there was no *Brady* violation.

*Second*, no *Brady* violation occurred because the jury was presented with the allegedly suppressed information. *See generally United States v. Park*, 517 F. App'x 770, 771–72 (11th Cir. 2013) ( "[The information contained in these [allegedly suppressed] documents was either known to the jury, and was thus cumulative, or had no relevance to Park's guilt or innocence, and was thus merely impeachment material."); *United States v. Foskey*, 570 F. App'x 878, 879-80, 882 (11th Cir. 2014) ("The portions of the [allegedly suppressed materials] contained witness statements, which were cumulative to the evidence presented"); *Baxter v. Thomas*, 45 F.3d 1501, 1506–07 (11th Cir. 1995) (rejecting *Brady* claim regarding allegedly suppressed transcripts where "the written transcripts only would have provided cumulative impeachment evidence"); *United States v. Swindall*, 971 F.2d 1531, 1557 (11th Cir. 1992) ("[T]he majority of the allegedly newly discovered evidence is either cumulative of evidence raised in Swindall's first post-trial motion or is cumulative of evidence actually introduced in the original trial."). Here, the Chrisley Defendants presented evidence through their accountant and summary chart that they no longer owed money for the 2014 through 2016 tax years, making any so-called suppressed evidence cumulative, and thus, by definition, not *Brady* material. (Tr. at 3048-49).

*Finally*, even if the Chrisley Defendants could show that the allegedly suppressed information was in the prosecution team's possession (which it was

not), the Chrisley Defendants fail to establish "a reasonable probability" that the outcome at trial would have been different. *See United States v. Brester*, 786 F.3d 1335, 1339 (11th Cir. 2015) (Defendant bears the burden of establishing that there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."). As set forth above and in the United States' accompanying Rule 29 Response Brief (Doc. 289), the evidence in this case was overwhelming, and none of it hinged upon whether the Chrisley Defendants had paid their delinquent taxes from an evasion scheme that ended in 2018 by the start of trial in 2022. Plus, the evidence was cumulative of what the Chrisley Defendants themselves presented to the jury. The reality is that the jury didn't buy their argument that they never intended to defraud the IRS. For those reasons, the Chrisley Defendants cannot establish a "reasonable probability" that the jury's verdict would have been any different.

In all, the Chrisley Defendants' claim involves evidence that they themselves presented at trial and argued to the jury. They fail to meet their burden of establishing that the United States knowingly suborned perjury which "may have had an effect on the outcome of the trial" or that the United States suppressed any information that was not in their possession. For those reasons, their motion should be denied.

**D. No Evidentiary Hearing Is Required.**

The Chrisley Defendants have requested an evidentiary hearing regarding this issue. (Docs. 258). But no hearing is necessary because they cannot meet their burden of establishing "a reasonable likelihood that" any so-called perjury "could have affected the judgment of the jury" or that any or that any so-called suppressed *Brady* evidence "leads to a reasonable probability that the outcome would have been different." *See Clarke*, 442 F. App'x at 544 (citing *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995)); *see generally United States v. Kapordelis*, 569 F.3d 1291, 1308 (11th Cir. 2009) (citing *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) ("Generally, a district court's decision about whether to hold an evidentiary hearing lies within the court's sound discretion and will be reviewed only for an abuse of discretion.").

II.   **The Court properly denied the Chrisley Defendants' eleventh-hour motion to suppress electronic evidence as untimely.**

District courts have the inherent authority to manage their own docket to ensure "the orderly and expeditious disposition of [their] cases." *Equity Lifestyle Prop., Inc. v. Fla. Mowing & Landscape Servs., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (citation and internal quotation marks omitted). Accordingly, "[t]he court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions and may also schedule a motion hearing." Fed. R. Crim. P. 12(c)(1). "A defendant who "fail[s] to file his motion within the deadlines set by the court ... waives his right to assert [a] motion to suppress

evidence." *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990); Fed. R. Crim. P. 12(b)(3)(C).

The United States reiterates and incorporates the arguments it made in response to the Chrisley Defendants' untimely motion to suppress evidence. (Doc. 178). The Chrisley Defendants fail to establish that this Court erred in denying their motion to suppress evidence as untimely. Now, in a last-ditch attempt to save their untimely motion to suppress evidence, they seize upon an off-the-cuff comment made during the pretrial conference by one of the assigned prosecutors and claim that the United States "withdrew" its argument that their belated motion to suppress was untimely. (Doc. 258 at 24-25, 28). This is simply not true.

The full exchange involving the so-called waiver shows that undersigned counsel was merely responding to this Court's belief (at that point in time) that the United States had misinterpreted United States Magistrate Judge Justin S. Anand's Report and Recommendation about the United States asserting an independent source theory for the electronic evidence it obtained through the email search warrants. (Doc. 193 at 23-24). The comment was made during a lengthy back-and-forth between the Court and the parties, during which counsel for the Chrisley Defendants misconstrued Judge Anand's Report and Recommendation. During a break, the Court conferred with Judge Anand, and then reported back that it agreed with the United States that the Chrisley Defendants had never argued that the email search warrant results were

somehow "fruit of the poisonous tree" from the warehouse search, as they claimed in their belated motion to suppress (and still claim to this Court). (Doc. 192 at 51). After the pretrial conference, this Court issued a written order denying the motion as untimely. (Doc. 204).

In short, this Court was well-within its discretion to deny the Chrisley Defendants' last-minute motion to suppress as untimely. The notion that the United States has the power or authority to strip the Court of its ability to enforce its own pretrial scheduling order is silly, and the Chrisley Defendants cite no authority to support that proposition. Waiver is the "intentional relinquishment or abandonment of a known right or privilege." *United States v. Brown*, 569 F.2d 236, 238 (5th Cir. 1978)[11] (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Waiver requires "(1) the existence, at the time of the waiver, of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit." *United States v. Duke*, 739 F. App'x 970, 972 (11th Cir. 2018) (citing *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1279 (11th Cir. 2014)). The right and the power to enforce its own scheduling order belongs solely to this Court—not to any of the parties. For the reasons set forth herein and in the

---

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

United States' response to the belated motion to suppress, this Court properly denied the Chrisley Defendants' motion to suppress as untimely.[12]

## Conclusion

For the above-stated reasons, the United States respectfully requests that the Court deny the Chrisley Defendants' motion for a new trial without holding an evidentiary hearing.

This 3rd day of October, 2022.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

/s/  THOMAS J. KREPP
    *Assistant United States Attorney*
Georgia Bar No. 346781

/s/ ANNALISE K. PETERS
    *Assistant United States Attorney*
Georgia Bar No. 550845

---

[12] For purposes of completing the record only, the United States rescinds its comments at the pretrial conference about "waiving" the untimeliness argument.

34

## CERTIFICATE OF SERVICE

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

October 3, 2022

/s/ ANNALISE K. PETERS

ANNALISE K. PETERS

*Assistant United States Attorney*