IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) No. 1:19-CR-00297-ELR-JSA |
| TODD CHRISLEY a/k/a MICHAEL TODD CHRISLEY, JULIE CHRISLEY, and PETER TARANTINO, | ) |
| | ) |
| Defendants. | ) |

**JOINT MOTION TO CONTINUE SENTENCING
AND COMPEL *BRADY* INFORMATION ABOUT LOSS AMOUNTS**

Come now the Defendants, Todd and Julie Chrisley, by and through counsel, and move this Court to continue the sentencing hearing that is currently set for Monday, November 21 and Tuesday, November 22, 2022. The Defendants further move this Court to enter an order compelling the government to respond to the Defendants' Motion for Reconsideration of the Court's Order Denying their Motion for New Trial, and to provide certain information about the alleged loss amounts. In support of these requests, the Defendants rely on the following facts and arguments:

INTRODUCTION

Today is the last business day before this Court is set to proceed to sentencing in a case where the government is seeking "lengthy periods of

1

incarceration" for both Todd and Julie Chrisley. (Doc. 305 at 50.) Yet motions remain outstanding that affect their fundamental rights, and which should give the Court serious pause. Proceeding to sentencing without any hearing on these issues, and without requiring the prosecutors to respond to sworn and corroborated allegations that they have suborned perjury (and then misled this Court about it), would violate the Defendants' due process rights.

This Court can and should take a different path. This Court has no responsibility for the actions of the government at trial, and we respectfully suggest that, at a minimum, a response from the government is required, in addition to an evidentiary hearing. These steps will take time, which requires a continuance of the sentencing hearing.

In addition, the government has not complied with its *Brady* obligations related to the loss, forfeiture, and restitution amounts of the loans at issue. The government's Sentencing Memorandum makes this clear, as it—for the first time—disclosed evidence showing that the government's recommended loss calculation for one of the loans is incorrect. The Chrisleys are entitled to this evidence for each of the loans, as they have previously requested from the government. Without the information, it is not possible for the Court to accurately calculate the appropriate loss amount for the loans, and the Chrisleys will suffer prejudice as a result.

This Court can and should continue sentencing to conduct a hearing on the allegations of perjury and prosecutorial misconduct, as well as order the government to provide all information that undercuts its alleged loss, forfeiture, and restitution calculations. No party is prejudiced by a delay of the sentencing date; the Chrisleys are severely prejudiced by proceeding forward without the time necessary for the Court to fully adjudicate the pending motions and for the government to comply with its *Brady* obligations.

## BACKGROUND

1.  On August 24, 2022, the Chrisleys filed two post-trial motions challenging their convictions. (Doc. 258, 260.)

2.  The first, a Motion for New Trial, alleged that (i) the government knowingly presented false testimony that could have affected the verdict, and (ii) the Court admitted evidence that was previously suppressed as fruits of the poisonous tree without conducting a hearing to determine if the evidence were admissible. (Doc. 258.) The second, a Motion for Judgment of Acquittal, challenged the majority of the convictions on the basis that the evidence was insufficient. (Doc. 260.) Together, the motions consisted of 70 pages of briefing and 16 pages of declarations. (Doc. 258, 260.)

3.  The Chrisleys requested a hearing on both aspects of their Motion for New Trial. (Doc. 260.)

4. After the government sought an extension of time, (Doc. 286), it filed its briefs on October 3, 2022. (Doc. 289, 292). Its response to the Motion for New Trial, including exhibits, filled 106 pages. (Doc. 292.) Its response to the Motion for Judgment of Acquittal spanned another 25. (Doc. 289.)

5. The Chrisleys filed their reply briefs two weeks later. (Doc. 293, 294.) Again, the pleadings were voluminous. The reply brief in support of the Motion for New Trial was 15 pages, and its accompanying declaration ran 8 pages. The reply brief for the Motion for Judgment of Acquittal was another 15 pages.

6. All told, the briefing on the Chrisleys' two post-trial motions consisted of more than 150 pages of legal analysis and argument along with about 100 pages of contested declarations and exhibits. The motions were submitted to the Court on October 18, 2022.

7. Ten days later, after rejecting a defense request for a status conference to reschedule sentencing and address the need for a hearing, the Court summarily denied both motions. (Doc. 300.) In that Order, the Court noted that it would "issue an order fully setting forth its reasoning and analysis regarding the rulings at a later date." (Doc. 300 at 1.)

8. In addition, less than two weeks after the Court denied the original post-trial motions, and soon after counsel received additional information to corroborate their claims, Defendants filed a Motion for Reconsideration of the

4

Motion for New Trial. (Doc. 304.) The Reconsideration Motion alleged that, among other things, new evidence showed that (i) IRS Revenue Officer Betty Carter lied in her testimony; (ii) the prosecutors knew about and encouraged her to testify falsely; and (iii) the prosecutors intentionally misled this Court about these matters in the response they filed to the Motion for New Trial. (Doc. 304 at 1-2.)

9. These allegations were not made on mere speculation or conjecture; the motion was based on a 13-page sworn declaration of a retired federal law enforcement agent who was previously in charge of investigating internal matters at the IRS, after she reviewed more than 200 pages of audit trail records provided by the IRS. (Doc. 304-1.) It also relied upon and attached a Memorandum of Interview ("MOI") that prosecutors failed to provide the Court, which detailed some of their prior knowledge of the issues that Officer Carter testified falsely about. (Doc. 304-2 at 10-11.)

10. Based on the evidence presented in the motion, including the audit trails, the MOI, and the government's prior pleadings, Defendants also asked this Court to sanction the prosecutors for their misconduct. (Doc. 304.)

11. The Motion for Reconsideration has been pending for more than a week. The Court has not directed the government to respond to it, and the government has offered no response—including any denial. Nor has the Court either set a hearing on the motion or denied the Defendants' request for one.

5

12. Separately, recent issues arose this week that demonstrate the need for a delay of sentencing to ensure that the government produces all exculpatory information to the Defendants related to loss amounts.

13. For context, back in September, counsel for the Chrisleys sent a letter to the government requesting *Brady* information. This letter specifically requested:

> Unredacted copies of all relevant FDIC agreements in which any entity acquired any of the loans for which the government contends either restitution and/or forfeiture is due and, to the extent the relevant loans were sold as part of a larger group of loans, any document reflecting the value of those loans along with the value received by FDIC when the loan was taken from a failed bank and sold to another bank or entity.
>
> [and]
>
> Any and all information reflecting the amount of proceeds received or "bid in at foreclosure" by any bank or other entity upon foreclosure of any property in this case.

14. The government responded via email but did not provide any of this information. Rather, it claimed that it had no such *Brady* information.

15. But documents defense counsel recently received showed otherwise. For example, the government appears to have withheld from probation and the Defendants an email showing that the loss, forfeiture, and restitution calculations for Regions Bank were $125,000 lower than the

6

amount reported in the PSR. (See Doc. 316: Defendants' Sentencing Memorandum on Loss, Forfeiture, and Restitution at 6-7.)

16. Furthermore, the email from Regions stated that Special Agent Ryskoski would be receiving an official document detailing the losses which, to this day, has not been produced to the Defense. (*See* Gov. Sentencing Exhibit 3.) This document is critical to the Defendants' ability to ensure that the loss amount cited by Regions Bank does not include interest or other penalties. But the prosecutors have not provided it.

17. Nor have they provided similar documents from the FDIC. Specifically, the government continues to withhold the unredacted copies of the FDIC agreements with entities that purchased the loans at issue. These agreements contain information necessary to prove any actual loss and restitution to the failed banks/FDIC, such as the face value of the loans at the time they were sold, the amount received on the sale of the loans, and any proceeds the FDIC obtained on subsequent settlement agreements and foreclosure sales as a result of its retained ~60% equity interest in the loans. (*See* Doc. 316 at 28-29.) To be clear, it is the position of the defense that none of the claimed losses to the FDIC were proximately caused by the Defendants, however, in order to prepare for the government's theory, these materials are necessary to show what credits the Defendants are due for amounts that were recovered by the FDIC.

18. Without these materials, the Chrisleys' ability to dispute certain loss calculations, and thereby prove a lower loss amount, will be materially prejudiced.

## ARGUMENT

The Court should continue the sentencing hearing to permit it to resolve the pending motions on a complete record, which requires an evidentiary hearing. As it stands, the government has not disputed the allegations in the Motion for Reconsideration and Motion for Sanctions, and the Court has taken no steps to address it. The Chrisleys should not have to begin their sentencing hearing unaware of how the Court intends to resolve a dispute of this magnitude.

Nor should the Court proceed to sentencing without holding a hearing. Delaying sentencing to hold a hearing on these issues would promote judicial efficiency. As the record stands, if the Court does not hold a hearing on the Motion for Reconsideration, the appellate court must presume that the prosecutors suborned perjury. *See, e.g.*, *Richardson v. United States*, 360 F.2d 366, 369 (5th Cir. 1966) (holding that allegations in support of a new trial "must stand as confessed [if] no hearing [is] conducted"). Because this level of prosecutorial misconduct certainly has the capability of affecting a verdict, and therefore would satisfy the second prong of the *Giglio* standard, *see Rodriquez v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1277, 1302 (11th Cir. 2014), the Eleventh

8

Circuit is likely to remand for an evidentiary hearing to determine whether the facts are as alleged in the motion, *see Richardson*, 360 F.2d at 369 (remanding "to hold a hearing to determine whether the [misconduct] occurred as alleged and, if so, was harmful"). This Court should preempt that process and hold the hearing now.[1] *Cf. United States v. Espinosa-Hernandez*, 918 F.2d 911, 914 (11th Cir. 1990) (remanding in similar circumstances in part because "[d]iscovery might also enlighten the District Court as to when the United States Attorney's office first learned of the disturbing allegations")

Nor would it be fair to the Defendants to hold a hearing or address these matters in an impromptu fashion at the start of their sentencing hearing. Sentencing is a solemn affair, which requires the Court and the parties to navigate myriad factual and legal issues. Intertwining those issues with the legal issues in the Motion for Reconsideration would deprive the Defendants of a sentencing hearing focused only on the issues the statute directs the Court to address.

In addition, continuing the sentencing hearing would permit the Court to direct the government to comply with its *Brady* obligations and provide the

---

[1] To be sure, if the Court found that—even as alleged—the perjury and prosecutorial misconduct was "harmless beyond a reasonable doubt," *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1333 (11th Cir. 2009), then a hearing would not be necessary. Without the aid of the Court's reasoning, however, it is impossible to know if that is how the Court views the allegations here. The Defendants' briefs make clear that they believe it affected the trial and verdicts in multiple ways.

9

Defendants with *all* information that might undercut its loss amount calculations.[2] As detailed above, the government has failed to provide this information with respect to a number of the loans that will be debated at sentencing. Without such information, the Defendants will not have the information they need to combat the government's claims, which already have been shown in at least one instance to have been wrong.

## CONCLUSION

WHEREFORE, for the reasons detailed above, the Court should continue the sentencing hearing of this matter, schedule a hearing on the outstanding issues, and direct the government to provide all of the requested information related to alleged losses.

Respectfully submitted,

*(signature)*

J. Alex Little (TN Bar #29858)
alex.little@burr.com
    *Pro Hac Vice*
Zachary Lawson (TN Bar #036092)
    *Pro Hac Vice*
Burr & Forman LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201

---

[2] When faced with similar *Brady* issues involving one of the same prosecutors here, another Court in this District indefinitely postponed sentencing until it resolved the *Brady* issues. *See U.S. v. Rhame, et al.*, 1:16-cr-00067. The Defendants respectfully suggest that the same course is warranted here.

10

Telephone: 615-724-3203
Facsimile: 615-724-3303
*Counsel for Todd and Julie Chrisley*

Christopher S. Anulewicz (GA Bar #020914)
canulewicz@balch.com
Balch & Bingham LLP
30 Ivan Allen, Jr. Boulevard, N.W., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656
*Counsel for Todd and Julie Chrisley*

Bruce H. Morris (GA Bar # 523575)
bmorris@fmattorneys.com
Finestone, Morris & White, LLP
Suite 2540 Tower Place
3340 Peachtree Road, N.E.
Atlanta, Georgia 30326
Telephone: (404) 262-2500
*Counsel for Todd Chrisley*

Arthur W. Leach (GA Bar No. 442025)
Laurabeth M. Wilson (GA Bar No. 955623)
Art@ArthurWLeach.com
The Law Office of Arthur W. Leach
4080 McGinnis Ferry Road, Suite 401
Alpharetta, Georgia 30005
Telephone: (404) 786-6443
*Counsel for Todd and Julie Chrisley*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Motion was served on the attorneys of record via the Court's Electronic Case Filing System on this 18th day of November, 2022.

_____
J. Alex Little