# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **vs.** ) | |
| ) | **Criminal Indictment** |
| **TODD CHRISLEY,** ) | **No. 1:19-CR-297-ELR-JSA** |
| **JULIE CHRISLEY, and** ) | |
| **PETER TARANTINO,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANT JULIE CHRISLEY'S MEMORANDUM IN SUPPORT OF A BELOW-GUIDELINE SENTENCE

Defendant Julie Chrisley respectfully submits her Memorandum in Support of a Below-Guideline Sentence as follows:[1]

## I. INTRODUCTION

On June 7, 2022, Ms. Chrisley was convicted on charges of conspiracy to commit bank fraud, bank fraud, wire fraud, conspiracy to defraud the Government, tax evasion, and obstruction of justice. Ms. Chrisley submits this memorandum to assist the Court in imposing a sentence that is "sufficient, but not greater than necessary," to comply with the sentencing purposes set forth in 18 U.S.C. § 3553(a).

As shown in Ms. Chrisley's Corrections and Objections to the Presentence Investigation Report, dated October 24, 2022 ("PSR Objections"), the evidence

---

[1] Julie Chrisley is separately filing a Memorandum more specifically addressing the government's loss and restitution calculations.

presented at trial regarding the bank fraud counts does not support any enhancement of the base offense levels as recommended in the PSR, because there was no evidence presented at trial that Ms. Chrisley participated in or had any role in securing the bank loans at issue. The evidence shows Ms. Chrisley had a minimal role in the charged conspiracy and no role at all during the time period the loans addressed in the PSR were obtained.  In fact, the government has failed to show Ms. Chrisley joined a conspiracy regarding the loans at issue at the time they were procured. Additionally, the trial evidence does not support a finding that Ms. Chrisley intended any loss to the banks at issue.

While Ms. Chrisley should not be assigned any loss related to the subject bank loans for sentencing purposes, the government's bank loss calculations, among other things, fail to account for Ms. Chrisley's lack of involvement in any of the loans, monies recovered on the loans, monies paid by banks acquiring these loan assets from the FDIC (i.e. how much the companies paid and how much they profited), and interest and penalties allegedly owing on these loans. These failures result in the government's gross overstatement of its loss calculation. Additionally, the government's failure to account for these issues and its failure to support its loss calculations shows the government has not borne its burden of proving the bank loss by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e).

An analysis of the factors set forth in 18 U.S.C. § 3553(a) shows a reasonable sentence for Ms. Chrisley does not include incarceration. She has never before been convicted of any crime, the likelihood of her ever committing another crime in the future is nil, she had a minimal role in the offenses charged, she has proved to be an asset to her community, and, most importantly, she has extraordinary family obligations that would make her incarceration unjust. In light of these mitigating factors, a reasonable sentence for Ms. Chrisley would be probation with special conditions.

## II.   INITIAL ADVISORY GUIDELINE CALCULATION

The PSR calculates Ms. Chrisley's sentencing options under the Sentencing Guidelines at a Total Offense Level of 38 with a corresponding sentencing range of 235-293 months incarceration, plus a fine, restitution, and forfeiture. In its Sentencing Memorandum (Doc. 305), the government recommends a Total Offense Level of 32 for Ms. Chrisley with a corresponding sentencing range of 121-151 months incarceration. As detailed in Ms. Chrisley's PSR Objections, the correct sentencing range is much lower than the government contends.

As to Counts 1 through 6 (bank fraud and conspiracy to commit bank fraud), there should be no enhancement of the base offense level of 7 because there is no evidence Ms. Chrisley participated in or had any role in securing the loans at issue,

and no loss should be attributed to her.[2] The government concedes there should be no sophisticated means enhancement for Ms. Chrisley and no two-level enhancement for 10 or more victims. *See* Doc. 305 at 2 n.1.

The government further recommends a 20-level enhancement (instead of the 22-level enhancement stated in the PSR) for total loss amount based on evidence of "the Chrisleys'" conspiracy and "the conspirators'" actions. *See id.* at 5-12. The government points to no evidence, however, showing Ms. Chrisley created or submitted any false bank statements or financial statements related to the bank loans at issue, obtained a loan from any of the banks at issue, or participated in securing any bank loans at issue. The bank statements, financial statements, and other evidence to which the government points as establishing Ms. Chrisley's "involvement from the scheme's inception" in fact do not show that; rather, they merely show Ms. Chrisley made payments on loans and that money was deposited into bank accounts "under the control of both Julie and her husband." *Id.* at 14.  Loan payments do not establish a conspiracy.

---

[2] The probation officer's repeated contention to the contrary in the November 8, 2022, Presentence Investigation Report ("Revised PSR") is not supported by the evidence the probation officer cites. *See* Revised PSR at, e.g., 10-12, 15-16. Rather, the evidence shows at most that Ms. Chrisley had a role in making payments on loans that had already been obtained, but that she did not create or submit any false documents to the banks or obtain a loan from any of the banks. Ms. Chrisley's PSR Objections are equally applicable to the Revised PSR.

Similarly, because there is no evidence of Ms. Chrisley's involvement in obtaining the loans at issue, there should be no two-level enhancement for her "deriv[ing] more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense." *Id*. at 23 (quoting U.S.S.G. § 2B1.1(b)(17)(A)). There also should be no enhancement for obstruction of justice because the only conduct the PSR cites in support of this enhancement related to the bank fraud and conspiracy counts relates to the investigation and prosecution of the tax counts—not bank fraud.

Moreover, Ms. Chrisley should receive a four-level reduction, pursuant to U.S.S.G § 3B1.2, because she is "plainly among the least culpable of those involved in the conduct of a group" charged with these counts.[3] Ms. Chrisley's Adjusted Offense Level for Counts 1 through 6, therefore, should be 3.

As to Count 8 (conspiracy to defraud the U.S. to obstruct and impede the Internal Revenue laws) and Count 9 (tax evasion), there should be no enhancement of the base offense levels of 20 because there is no evidence Ms. Chrisley employed sophisticated means or obstructed justice as described in PSR ¶¶ 139 and 144. The government contends the sophisticated means enhancement is warranted because the

---

[3] The government disagrees with this but still points to no evidence showing Ms. Chrisley submitted any false bank statements or financial statements related to the bank loans at issue, obtained a loan from any of the banks at issue, or participated in securing any bank loans at issue. *See* Doc. 305 at 25-27.

Chrisleys used 7C's Productions as a "shell company … to shelter their income from the IRS" and falsely represented Faye Chrisley as the owner of 7C's. Doc. 205 at 29-30. As set forth in Ms. Chrisley's PSR Objections, the government's contention ignores evidence contextualizing the creation and purpose of 7C's that demonstrates no sophisticated means enhancement is warranted for Ms. Chrisley. *See* PSR Objections at 14 ¶¶ 88, 93, 94.

The government seems to believe an allegation with no proof of participation is enough for this Court to throw the book at Ms. Chrisley. The problem for the government is that all the actions attributable to Ms. Chrisley alleged in the bank fraud and tax counts of the Indictment, including obstruction, postdate all the loans at issue. Properly applying the Sentencing Guidelines, the Total Offense Level for Ms. Chrisley should be 20, with a custody Guideline range of 33-41 months and a fine Guideline range of $15,000-$150,000. In addition, Ms. Chrisley should not be held jointly and severally liable for any restitution, and there should be no forfeiture, because she did not personally obtain any proceeds of the bank fraud offenses.

## III.   <u>SENTENCING PROCEDURE AND STANDARDS</u>

To establish the "initial benchmark," the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines, however, "are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."

*Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in original); *see also Rita v. United States*, 551 U.S. 338, 351 (2007) (holding a sentence within Guidelines range is neither per se reasonable nor entitled to presumption of reasonableness at district court level). The Court may not rely exclusively on a Sentencing Guidelines calculation, therefore, and it may not impose a lawful sentence based on an assumption the Sentencing Guidelines calculation is reasonable. The Supreme Court has emancipated the sentencing court from the Guidelines' mandatory restrictions and eliminated references to the "heartland" concept.

Because "[t]he Guidelines are not the only consideration," the sentencing judge, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, … should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50. The judge must independently evaluate the appropriate sentence in light of the § 3553(a) purposes and factors and must consider arguments the Guidelines should not apply on general policy grounds, case-specific grounds (including Guideline-sanctioned departures), or "because the case warrants a different sentence regardless." *Rita*, 551 U.S. at 351. And section 3553(a)(3) "directs the judge to consider sentences other than imprisonment." *Gall*, 552 U.S. at 59.

The Court "must make an individualized assessment based on the facts presented" and "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Supreme Court in *Gall* reemphasized the broad latitude and discretion entrusted to the Court at sentencing and that the sentencing judge is free to make downward variances if any of the factors enunciated in 18 U.S.C. § 3553(a) are met. *See Gall*, 552 U.S. at 58-60. Thus, the Court may craft a fair and just decision on the reasonableness of a sentence that is outside the Guideline range based on the individual facts and circumstances of the case. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). As the Second Circuit aptly stated, "the Sentencing Guidelines do not displace the traditional role of a district judge in bringing ***compassion*** and ***common sense*** to the sentencing process. … [D]istrict courts should not hesitate to use their discretion in devising sentences that provide ***individualized justice*** …." *United States v. Williams*, 65 F.3d 301, 309-10 (2nd Cir. 1995) (emphasis added; citation and punctuation omitted).

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the

United States may receive and consider for the purpose of imposing an appropriate sentence." *United States v. Booker*, 543 U.S. 220, 251 (2005). Accordingly, this Court may consider factors that the Guidelines discourage, limit, or reject, such as Ms. Chrisley's Mental and Emotional Conditions (§ 5H1.3), Employment Record (§ 5H1.5), Family Ties and Responsibilities (§ 5H1.6), Role in the Offense (§ 5H1.7), and Criminal History/Unlikelihood of Recidivism (§ 5H1.8).

The Court may sentence Ms. Chrisley below the Guidelines range as long as such a reduction is not unreasonable in light of all of the § 3553(a) factors. *See Booker*, 543 U.S. at 244-45. Under *Booker*, the Guidelines are merely "advisory," and sentencing courts are required to consider all the factors listed in 18 U.S.C. § 3553(a) in imposing a sentence. *See id.* at 245. The Court therefore may craft a fair and just decision on the "reasonableness" of a sentence that is outside the sentence range suggested by the PSR.

As shown by the evidence at trial, Ms. Chrisley was a minimal player in the bank fraud, tax fraud, and conspiracy counts of the Superseding Indictment, and she has no history of criminality apart from that charged in the Superseding Indictment. *See* 18 U.S.C. § 3553(a)(1). Additionally, while Ms. Chrisley acknowledges the jury verdict, her sentence need not be severe, as there is no evidence Ms. Chrisley will ever again commit any crime and thus the public is at no risk of Ms. Chrisley doing so in the future. *See* 18 U.S.C. § 3553(a)(2).

## IV.   **ALTERNATIVE SENTENCING OPTIONS**

The Supreme Court has approved the substitution of probation for a custodial sentence in appropriate cases:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled."). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court.

*Gall*, 552 U.S. at 48 (citations omitted).

Since *Booker* and *Gall*, courts have been increasingly receptive to imposing below-Guidelines sentences based on subjective analysis of the 18 U.S.C. § 3553 factors and potential alternative sentences.  *See United States v. Gardellini*, 545 F.3d 1089, 1094 (D.C. Cir. 2008) (collecting cases illustrating affirmance of below-Guideline sentences under *Gall* "reasonableness" standard). In *United States v. Tomko*, 562 F.3d 558 (3rd Cir. 2009) (en banc), for instance, after pleading guilty to evading over $228,000 in income taxes, the defendant received a below-Guidelines split sentence of probation, home confinement, community service, restitution, and a fine. *See* 562 F.3d at 563. The defendant had one prior conviction with Criminal

History I and offense level of 13 (12-18 months incarceration). The Third Circuit affirmed the district court's individualized assessment of the § 3553 factors and upheld the reasonableness of the non-custodial sentence. *See id.* at 563-567; *see also United States v. Del Campo*, 695 Fed. Appx. 453, 458-59 (11th Cir. 2017) (affirming sentence of five years supervised release, instead of Guideline range of 46-57 months imprisonment, for defendant convicted of three counts of bank fraud who had no prior criminal history where Guideline sentence was unnecessary to effect deterrence); *United States v. Hosein*, 581 Fed. Appx. 199, 201 (4th Cir. 2014) (affirming sentence of supervised release for defendants convicted of bank fraud, conspiracy to commit bank fraud, and making false statements to obtain a loan); *United States v. Gray*, 453 F.3d 1323, 1325 (11th Cir. 2006) (affirming below-Guidelines sentence based upon defendant's age, prior minimal criminal record, and medical condition); *United States v. Lahey*, 186 F.3d 272, 275 (2nd Cir. 1999) (holding district court had authority to sentence defendant convicted of bank fraud to three years supervised release given his family circumstances and responsibilities).

In light of these standards, and for the reasons set forth below, a below-Guidelines sentence for Ms. Chrisley of probation with other special conditions is sufficient, but not greater than necessary, to achieve the goals of § 3553(a).

## V.   <u>REQUEST FOR A BELOW-GUIDELINE SENTENCE</u>

The offenses of which Ms. Chrisley was convicted are serious federal offenses, and she is mindful her conduct and the potential negative impact of her actions are not to be taken lightly. In imposing a reasonable and appropriate sentence, Ms. Chrisley requests the Court to consider several mitigating factors.

> Imposing a sentence on a fellow human being is a formidable responsibility. It requires a court to consider, with great care and sensitivity, a large complex of facts and factors. The notion that this complicated analysis, and moral responsibility, can be reduced to the mechanical adding-up of a small set of numbers artificially assigned to a few arbitrarily-selected variables wars with common sense. Whereas apples and oranges may have but a few salient qualities, human beings in their interactions with society are too complicated to be treated like commodities, and the attempt to do so can only lead to bizarre results.

*United States v. Gupta*, 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2012).

Ms. Chrisley respectfully requests the Court impose a non-custodial sentence that includes a combination of probation, restitution, and community service.  This below-Guidelines sentence is reasonable and reflects the seriousness of Ms. Chrisley's offenses and meets the needs of the public while taking into consideration such mitigating factors as her extraordinary family obligations, her minimal role in the bank fraud conspiracy, and the absence of factors generally found in cases in which defendants have been sentenced to incarceration.

A. **Mitigating Factors Supporting a Below-Guidelines Sentence**

As explained in Ms. Chrisley's PSR Objections, which are equally applicable to the Revised PSR, the trial evidence shows Ms. Chrisley's role in the case was limited and she had the least involvement among all the conspirators in the actions giving rise to the charges. No evidence was presented at trial that Ms. Chrisley created or submitted any false bank statements or financial statements related to the bank loans at issue, that she obtained a loan from any of the banks at issue, or that she participated in securing any bank loans at issue. The evidence shows Ms. Chrisley did not join the conspiracy until many years after the loans addressed in the PSR were obtained, and that she had a minimal role in the conspiracy and no role at all during the time the loans addressed in the PSR were obtained.

Importantly, Ms. Chrisley's extraordinary family obligations counsel in favor of a below-Guidelines sentence. *See* U.S.S.G. § 5H1.6. Ms. Chrisley and her husband, co-defendant Todd Chrisley, have three children together, including Grayson Chrisley, who is 16 years old and in high school. ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

13

████████████████████████████████████████████████████

██████████████████████████

The Chrisleys also have full custody of their ten year old granddaughter, Chloe Chrisley, whose father, Kyle Chrisley, is Todd's son from a prior marriage.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████

     Ms. Chrisley is also the primary caregiver for her 79 year old mother-in-law, Faye Chrisley, who is battling bladder cancer. Ms. Chrisley takes Faye to her doctor appointments and treatments and takes care of Faye's delicate post-treatment needs. Losing Ms. Chrisley would require Faye to hire an in-home nurse, which would be very stressful for Faye and possibly harmful to her recovery.

Ms. Chrisley has the love and respect of her family and friends, who have submitted approximately ▮ letters of support attesting to Ms. Chrisley's character for this Court's consideration (copies of which are attached as collective **Exhibit C**). These letters show Ms. Chrisley is hard-working, unfailingly selfless, devoted to her family and friends, highly respected by all who know her, and strong of character. They describe her among other things as "honest and sincere in every way" and "greatly respected in [her] community;" a cancer survivor who unhesitatingly aids and comforts others dealing with cancer and other medical traumas, including by bringing them home-cooked meals; a volunteer helping foster children with the Tennessee Alliance for Kids; the "caretaker" of her family and friends and community; "the nucleus, the core, the heartbeat to all who[] love her;" and "the glue that holds everyone together."

Her friends and family, and indeed the public in general, would be much better served if Ms. Chrisley is given a non-custodial sentence. As one of Ms. Chrisley's friends summed it up, "We need more role models in our communities like [her], not less." Letter from Lee White, attached within collective **Exhibit C**.

During the entirety of the time since 2016 that Ms. Chrisley has been on bond pending trial and after conviction, she has been a model probationer. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

## B.    <u>Incarceration Is Unnecessary for Deterrence</u>

"In determining the particular sentence to be imposed, a sentencing court is required to consider, among other factors, 'the need for the sentence imposed to protect the public from further crimes of the defendant,' and 'to afford adequate deterrence to criminal conduct.' Those sentencing factors cover both specific deterrence and general deterrence." *United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022) (quoting 18 U.S.C. § 3553(a)(2)(B), (C)) (citation and punctuation omitted).

As to specific deterrence, the likelihood a defendant will engage in future criminal conduct is "a central factor that district courts must assess when imposing sentence." *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(2)(B)-(C)). Ms. Chrisley, a first time offender, has no prior criminal record and is therefore at very low risk of recidivism. This case is an isolated event in Ms. Chrisley's life-long abidance of the law.  Moreover, the Government's investigation and prosecution of Ms. Chrisley, as well as her trial and conviction, were widely

reported by media across the country, publicly humiliating her. This damage to Ms. Chrisley's reputation serves as additional deterrence. The "scarlet letter" of the federal conviction she will bear for the rest of her life, combined with the prospect of being incarcerated away from her family, has deepened her respect for the law, ensuring she will never engage in recidivist behavior. *See Gall*, 552 U.S. at 59 ("Gall's self-motivated rehabilitation ... lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts."). Thus, protecting the public from further crimes by Ms. Chrisley is not a concern. ███████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████

As to general deterrence, "even if criminals are rational actors and general deterrence worked to decrease the likelihood of criminal action by increasing the probability and severity of punishment, surely what effects general deterrence … is the probability and ***expected*** severity of punishment attending a given offense, rather than the extent of an upward or downward variance in an outlier case." *Del Campo*, 695 Fed. Appx. at 459 (emphasis in original). There is no reason to believe a below-Guidelines sentence for Ms. Chrisley "will in any way affect the ***expected*** sentence

to be handed down for committing bank fraud" and similar offenses. *Id*. (emphasis in original). Whether Ms. Chrisley "receives a sentence of probation surely cannot meaningfully affect whether would-be criminals … decide that their own potential criminal activity is worth the risk of being caught and punished." *Id*. Because a sentence within the original Guidelines range will not serve the needs of the public any better than the requested non-custodial sentence, the sentence proposed by the PSR is greater than necessary to comply with the purposes of § 3553(a)(2).

### C.   An Alternative Sentence Better Satisfies the Purpose of Rehabilitation

After *Booker*, courts need not impose imprisonment, but may use a non-prison alternative that better satisfies the purposes of punishment, including the need for treatment, medical care, or rehabilitation in the most effective manner. In fact, the Sentencing Reform Act "rejects imprisonment as a means of promoting rehabilitation." *Mistretta v. United States*, 488 U.S. 361, 367 (1989) (citing 28 U.S.C. § 994(k) ("The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant …."). Given § 994(k)'s dictate that rehabilitation is only proper outside a prison setting, an alternative sentence for Ms. Chrisley of probation and community service serves the rehabilitative goals of punishment better than a prison sentence.

### D.    An Alternative Sentence Better Enables Restitution

A non-custodial sentence for Ms. Chrisley will also advance the public's interest in receiving payment of restitution and any fine. *See* 18 U.S.C. § 3553(a)(7). Ms. Chrisley currently receives income from her work on "Chrisley Knows Best" and the "Chrisley Confessions" podcast. As the PSR states, Ms. Chrisley "does not have the ability to pay a fine in addition to the total amount of restitution and federal tax payments due in this case instanter. However, [s]he may be able to pay a fine in addition to restitution and tax payments on a payment schedule."  PSR ¶ 188.

If Ms. Chrisley is sentenced within the Guidelines, however, she will undoubtedly lose this work, her income, and all ability to pay restitution, tax payments, or any fine. If Ms. Chrisley is given a sentence of probation, on the other hand, she will be able to continue working and earning income, so she can pay restitution and tax payments on a payment schedule, thereby satisfying the goal of § 3553(a)(7).

### E.    The Combination of Extraordinary Factors Allows a Downward Departure

If the Court determines none of the grounds submitted above standing alone forms a valid basis for a downward departure, the Court nevertheless may consider whether any combination of factors would authorize a downward departure. *See United States v. DeVegter*, 439 F.3d 1299, 1308 (11th Cir. 2006) ("The sentencing Guidelines envision situations in which a combination of departure factors could

20

result in a departure, even if none of the factors taken individually would warrant a departure."). In fact, the Sentencing Commission endorses the policy of affording the sentencing court wide latitude and discretion in examining factors for a downward departure. *See* U.S.S.G. § 5K2.0(c) ("The court may depart from the applicable Guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure ….").

The combination of factors set forth above authorizes a sentence for Ms. Chrisley that recognizes the severity of her offenses and respects the reality of her circumstances. A below-Guidelines sentence of probation and accompanying conditions is warranted.

### F.    If the Court Imposes a Sentence that Includes Incarceration, Ms. Chrisley Requests the Court to Impose a Split Sentence

If the Court determines a sentence for Ms. Chrisley that falls within Zone C of the Sentencing Table, and if the Court is inclined to impose a period of incarceration, Ms. Chrisley would request the Court to impose a split sentence under U.S.S.G. § 5C1.1(d)(2). Specifically, Ms. Chrisley would request the Court to impose a sentence consisting of a period of imprisonment followed by home detention or supervised release.

### G.   If the Court Imposes any Sentence that Includes Incarceration, Ms. Chrisley Requests the Court to Delay or Stagger the Confinement

If the Court determines a sentence including a period of incarceration is warranted for Ms. Chrisley, and in the event Todd Chrisley is also sentenced to a period of incarceration, Ms. Chrisley requests that her incarceration and Mr. Chrisley's incarceration be staggered to allow Ms. Chrisley to remain on supervised release until Mr. Chrisley finishes serving his sentence or, in the alternative, until Chloe Chrisley finishes high school or turns 18 years old.  As discussed above, both Chloe and Grayson are substantially dependent on Ms. Chrisley and Mr. Chrisley for their wellbeing. Were both parents to serve incarceration at the same time, it would cause an extreme hardship on both these minor children.

"Staggered sentences allow[] for one parent to remain with the children while the other parent is serving a period of incarceration." *United States v. Lanier*, No. 2:14-CR-83, 2016 WL 8710017, *5 (E.D. Tenn.  Dec. 16, 2016) (citing *United States v. Gary*, 613 F.3d 706 (7th Cir. 2010)).  In circumstances such as those presented here, staggered sentences are warranted. *See id.*

## VI.   CONCLUSION

For the foregoing reasons, Ms. Chrisley respectfully requests the Court to exercise its discretion and downwardly depart from the advisory Guidelines sentence and impose instead a combined sentence of a term of probation, restitution, and

community service. Alternatively, Ms. Chrisley requests the Court to impose a split

sentence of incarceration followed by home detention, pursuant to U.S.S.G. §

5C1.1(d)(2).

Respectfully submitted,

*/s/ Christopher S. Anulewicz*
Christopher S. Anulewicz
Georgia Bar No. 020914
canulewicz@balch.com
Balch & Bingham LLP
30 Ivan Allen, Jr. Boulevard, N.W., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656

Stephen M. Friedberg
Georgia Bar No. 277350
steve@smflawdawg.com
Suite 2250, Resurgens Plaza
945 East Paces Ferry Road, N.E.
Atlanta, Georgia 30326
Telephone: (404) 842-7243

*Attorneys for Julie Chrisley*

## **CERTIFICATE OF COUNSEL REGARDING FONT SIZE**

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D).

This 16th day of November, 2022.

/s/ Christopher S. Anulewicz
Christopher S. Anulewicz
Georgia Bar No. 020914

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of November, 2022, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system and will email a copy of such filing to all counsel of record.

*/s/ Christopher S. Anulewicz*
Christopher S. Anulewicz
Georgia Bar No. 020914